JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-05626 RGK (AJWx) | Date | March 27, 2009 |
|---|---|---|---|
| Title | RAMCHANDRA ADHIKARI, *et al.*, v. DAOUD & PARTNERS, *et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS)** Order Re Defendant Kellogg Brown & Root, Inc.'s Motion to Transfer Venue to the Southern District of Texas Pursuant to 28 U.S.C. § 1404(a) (DE 39)

## I.   INTRODUCTION

The family members of twelve Nepali laborers, along with one Nepali laborer ("Plaintiffs"), sued Daoud & Partners ("Daoud"), a Jordanian company, and Kellogg Brown & Root Services, Inc., ("KBR") (collectively, "Defendants")[1] on August 27, 2008.[2] Plaintiffs' claims arises out of Defendants alleged trafficking of the Nepali laborers across international borders to provide labor at a United States military facility. (First Amended Complaint, ("FAC") ¶ 1). KBR, a Houston-based company, is currently the only served defendant.

Presently before the Court is KBR's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the Southern District of Texas. For the following reasons, the Court **GRANTS** KBR's Motion.

## II.   FACTUAL BACKGROUND

Plaintiffs allege the following facts:

---

[1] Other named defendants include Kellogg Brown & Root, Inc.; KBR, Inc.; KBR Holdings, LLC; Kellogg Brown & Root LLC; KBR Technical Services, Inc.; Kellogg Brown & Root International, Inc.; Service Employees International Inc.; and Overseas Employment Administration. These defendants, along with KBR, are referred to throughout the First Amended Complaint as the "KBR defendants."

[2] KBR, a Houston-based company, is currently the only served defendant.

A.  **The Parties**

Plaintiffs include family members of twelve deceased Nepali men ("Decedents") aged 18-27, who were recruited to work various jobs at a hotel in Amman, Jordan.[3] ( FAC ¶¶ 7-18.) Many of the families relied on these men for financial support, and many of the families took out loans in order to help these men take the promised jobs. (FAC ¶¶ 7-18.) The other plaintiff is Buddi Prasad Gurung, ("Gurung") who was living in Nepal when he was recruited to work outside of Nepal. (FAC ¶ 19.)

Daoud is a Jordanian corporation which has its principal places of business in Amman, Jordan, and Geneva, Switzerland. (FAC ¶ 22.) Daoud has entered into a number of contracts with the United States for the provision of services at military bases, including the Al Asad Air Base in Iraq. (FAC ¶ 22.)

KBR is incorporated in the State of Texas, and maintains its principal place of business in Houston, Texas. (FAC ¶ 23.) KBR has several contracts to perform specified duties in United States military facilities in Iraq, including at least one contract with Daoud. (FAC ¶ 24.)

B.  **Unnamed Participants**

Plaintiffs also allege the participation of three other co-conspirators who are not named as defendants in this action. (FAC ¶ 33.) These are Moonlight Consultant Pvt, Ltd ("Moonlight"), Morning Star for Recruitment and Manpower Supply ("Morning Star"), and Bisharat & Partners ("Bisharat").(FAC ¶ 33.)

Moonlight is a Nepali company. Plaintiffs allege Moonlight recruited laborers, and then transferred the laborers to Morning Star. (FAC ¶ 34.)

Morning Star is a Jordanian job brokerage company that operates in Amman, Jordan. (FAC ¶ 35.)  Plaintiffs allege Morning Star housed the laborers in Amman, Jordan. (FAC ¶ 35.)

Bisharat is a Jordanian corporation. (FAC ¶ 36.)  Plaintiffs allege Bisharat transported laborers from Amman, Jordan, to Iraq. (FAC ¶ 36.)

C.  **The Journey of the Decedents**

Moonlight conducted the recruiting of the Decedents and Gurung, through advertisements in Nepali newspapers for jobs in Amman, Jordan, paying between $220 and $500 per month. (FAC ¶ 58.) Operating along with Morning Star, Moonlight transported the laborers that had been recruited to Amman, Jordan, where Morning Star housed them. (FAC ¶ 58-59.) Once in Jordan, agents of Daoud held the men, and required the men to turn their passports over to Daoud. (FAC ¶¶ 67-68.) Daoud and its agents did not provide the promised jobs, and instead, charged the men an additional fee. (FAC ¶ 69.) The men then learned that they were headed to Iraq, to work for Defendants at the Al Asad Air Base. (FAC ¶ 70.) Several of the men called family members in Nepal in a panic. (FAC ¶¶ 70-72.) Daoud and its agents compelled the men to proceed to Iraq because of the debts their families had assumed to allow them to take the promised jobs in Jordan. (FAC ¶ 74.)

On or about August 19, 2004, Daoud transported the men into Iraq via an unprotected

---

[3] The twelve men were Prakash Adhikari, Ramesh Khadka, Lalan Koiri, Mangal Limbu, Jeet Magar, Gyandendra Shrestha, Rajendra Shrestha, Budhan Sudi, Monoj Thakur, Sanjay Thakur, BishnuThapa, and Jhok Bahadur Thapa.

automobile caravan of 17 vehicles, which traveled along the Amman-to-Baghdad highway, well-known as one of the most dangerous roads in the world at that time. (FAC ¶¶ 75-76.) Decedents and Gurung were in different cars in the same caravan. (FAC ¶¶ 81-90.) Decedents were in the two lead cars, while Gurung was in a car further back in the caravan. (FAC ¶¶ 81-90.) The two lead cars were stopped by several men 40 miles south of the Al Asad base. (FAC ¶ 81.) These men told the drivers to leave the workers at the checkpoint, and that the Americans would come from the base to pick them up. (FAC ¶ 81.) The other cars in the caravan, including the car carrying Gurung, reached the Al Asad base. (FAC ¶ 90.) The men at the checkpoint later revealed themselves to be the Ansar al-Sunna Army, an insurgent group in Iraq. (FAC ¶ 82.)

On or about August 20, 2004, the Ansar al-Sunna Army posted an internet statement that it had captured the Decedents, listing the captives' names. (FAC ¶ 83.) On or about August 24, 2004, the Foreign Ministry of Nepal received a video of ten of the men, who recounted the details of how they were trafficked from Nepal to Iraq. (FAC ¶ 86.) On or about August 31, 2004, international media outlets broadcasted video of the Ansar al-Sunna Army executing the twelve Decedents. (FAC ¶ 87.) Decedents' families saw the execution video. (FAC ¶ 88.)

Gurung, whose journey to Iraq was similar to the Decedents' journey, made it safely to Al Asad. (FAC ¶¶ 91-92.) Once there, he began work as a loader/unloader in a warehouse, supervised by representatives of KBR. (FAC. ¶ 93.) Gurung, scared for his safety, wanted to return to Nepal, but his employers (Daoud and KBR) told him that he could not leave until his work in Iraq was complete. (FAC ¶ 94.) During his time there, mortar fire was frequent, and Gurung's only protection was to take shelter in a bunker. (FAC ¶ 95.) Despite the fact that his supervisors wore bulletproof vests, they did not provide Gurung a bulletproof vest. (FAC ¶ 95.) After fifteen months, Gurung's employers permitted him to return to Nepal. (FAC ¶ 96.)

Plaintiffs contend that laborers had told employees and managers of KBR in Iraq that they had been taken to Iraq against their will. (FAC ¶ 98.) Plaintiffs contend that KBR already knew or should have known of the human trafficking scheme from which it was benefitting. (FAC ¶ 97.)

Plaintiffs contend that Defendants conspired to traffic Decedents and Gurung to Iraq, in order to provide the labor and services of the men for menial work on the United States Al Asad Air Base.

As a result, Plaintiffs sued Defendants on August 27, 2008. Plaintiffs claims are for: (1) Violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595; (2) Violation of Racketeering Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. § 1962(c), including predicate acts: (a) Violation of 18 U.S.C. § 1951: Extortion; (b) Violation of 18 U.S.C. § 1581: Peonage; (c) Violation of 18 U.S.C. §1584: Involuntary Servitude; (d) Violation of 18 U.S.C. § 1589: Forced Labor; (e) Violation of 18 U.S.C. § 1590: Trafficking; (f) Violation of 18 U.S.C. § 1592: Unlawful Conduct with Respect to Documents in Furtherance of Trafficking; (g) Violation of Cal. Penal Code § 518: Extortion; (h) Violation of Cal. Penal Code § 207(C): Kidnaping; (3) Violation of 18 U.S.C. § 1962(d) by Conspiring to Violate 18 U.S.C. § 1962(c); (4) Vicarious RICO Violation of 18 U.S.C. § 1962(c);[4] (5) Alien Tort Claims Act, 28 U.S.C. § 1350; (6) Breach of Contract;[5] (7) Common

---

[4] This claim is only against the KBR defendants.

[5] This claim is only against Daoud.

Law Fraud;[6] (8) False Imprisonment;[7] (9) Negligence; (10) Negligent Hiring; and (11) Negligent Supervision.[8]

## III. JUDICIAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Courts have discretion to adjudicate motions to transfer according to "individualized, case-by-case considerations of convenience and fairness." *See Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988).

## IV. DISCUSSION

In order to grant a motion to transfer under § 1404(a), a court must find that: (1) the action might have been brought in the transferee court; and (2) the convenience and the interest of justice factors weigh in favor of transfer.[9] *See Hoffman v. Blaski*, 363 U.S. 335, 343-344 (1960); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000).

KBR contends that the Court should grant its Motion to Transfer because it has satisfied the above-stated requirements. For the following reasons, the Court agrees.

### A. Plaintiffs' Action Might Have Been Brought in the Southern District of Texas

An action "might have been brought" in a transferee court if (1) the court would have had subject matter jurisdiction, (2) defendants would have been subject to personal jurisdiction, and (3) venue would have been proper. *Hoffman*, 363 U.S. at 343-44. Venue is proper in, for example, a judicial district in which any defendant may be found. 28 U.S.C. § 1391(b)(3).

The Court finds that this action might have been brought in a district court in the Southern District of Texas because (1) the court would have had subject matter jurisdiction, which is based on federal question jurisdiction (FAC ¶ 3),[10] (2) Defendants would have been subject to personal jurisdiction in Texas because KBR's principal place of business is in Texas, (FAC ¶ 23), and (3) venue would have been proper because KBR can be found in Texas (FAC ¶ 23).

---

[6] This claim is only against Daoud.

[7] This claim is only against Daoud.

[8] This claim is only against the KBR defendants.

[9] The moving party has the burden of showing that the convenience of the parties and witnesses and the interests of justice require transfer to another district. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

[10] Notwithstanding the KBR Defendants' Motion to Dismiss the First Amended Complaint (DE 83), which is currently under submission and will be decided by the transferee court.

### B. The Balance of Convenience and Interest of Justice Factors Weigh in Favor of Transfer

Once a court determines that an action may have been brought in the transferee forum, the final decision to transfer rests on whether a transfer in this case would be convenient and in the interest of justice. *Jones*, 211 F.3d at 498. The Ninth Circuit employs a multi-factor test when determining whether a convenience transfer is appropriate. *Id.*

The factors from the multi-factor test relevant to transfer in this action include (1) convenience of parties and witnesses, (2) interests of justice, (3) plaintiff's choice of forum, (4) ease of access to sources of proof, (5) the state that is most familiar with the governing law, and (6) docket congestion. *Jones*, 211 F.3d at 498-99 (listing factors relevant to this case); *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1109 (C.D. Cal. 2007).

#### 1. *Plaintiff's Choice of Forum*

Generally, a plaintiff's choice of forum is given deference. *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 953 (9th Cir. 1968). When deciding the weight given to the plaintiff's choice, a court should look to the plaintiff's contacts with the chosen forum, and whether the operative facts occurred within the chosen forum. *Id.* at 954. If the chosen forum lacks a connection to the parties and to the events relating to the allegations, the plaintiff's choice is entitled to less deference. *Id.*

In *Saleh v. Titan Corp.*, a case brought by Iraqi detainees based on events that occurred in Iraq, the plaintiffs' choice of forum in the Southern District of California was given less deference because the plaintiffs did not reside in the district and the events giving rise to their claims took place abroad. *Saleh v. Titan Corp*, 361 F. Supp. 2d 1152, 1157-59 (S.D. Cal. 2005).

Here, Plaintiffs are residents of Nepal, and have not alleged ties to California. (Opp. at 5.) Plaintiffs also do not allege that any of the events giving rise to their claims took place in California. (Opp. at 12.) Thus, the Court gives Plaintiffs' choice of forum very little deference and this factor only slightly weighs against transfer.

#### 2. *Convenience of Parties*

A plaintiff's choice of forum alone does not necessarily show that the forum is the most convenient for it. *Pacific Car & Foundry Co.*, 403 F.2d at 955 (holding transfer should have been granted where an Australian plaintiff sued a Washington corporation in Hawaii, despite a lack of connection between Hawaii and either the parties or the events giving rise to the suit). A plaintiff must also show that the choice of forum also serves the interest of their convenience. *Id.* Showing inconvenience based necessarily on the plaintiff's need to sue far away from home is not persuasive in itself; the purpose of a venue transfer is to maximize convenience, not to equalize inconvenience. *Id.*

Courts that have confronted situations involving plaintiffs bringing suit in forums where they do not reside, and where the operative events did not occur, have said that if the transfer leads to a large increase in convenience to the defendant, with either no decrease in convenience or a small decrease in convenience to the plaintiff, then this factor favors transfer. *See e.g., Coors Brewing Co. v. Oak Beverage, Inc.*, 549 F. Supp. 2d 764, 773 (E.D. Va. 2008); *Recht v. MGM Studio, Inc.*, 2008 WL 4460379 at *4 (W.D. Wis. 2008).

For example, in *Coors*, the plaintiff, a Colorado-based company, was already traveling a long distance to its chosen forum, the Eastern District of Virginia. *Coors*, 549 F. Supp. 2d at 773. Transfer to New York was found to not be any more or less convenient for the plaintiff, while such a transfer increased the New York-based defendant's convenience significantly. *Id.*

In another case, *Recht*, the plaintiff, an Israeli resident, had already committed to traveling to the United States, and did not allege any familiarity or connections with Wisconsin, and the transfer from Wisconsin to the Central District of California, where the defendant was located, greatly decreased the defendant's inconvenience, while not greatly increasing the plaintiff's inconvenience. *Recht*, 2008 WL 4460379 at *4.

Here, Plaintiffs are already traveling from Nepal to the United States. Just as the transfer in *Recht* from Wisconsin to California did not greatly increase the inconvenience of a plaintiff already traveling from Israel, a transfer to Texas will not greatly increase the inconvenience of Plaintiffs. On the other hand, transferring to the Southern District of Texas will greatly reduce the inconvenience to KBR. Accordingly, the Court finds that this factor favors transfer.

### 3. *Convenience of Witnesses*

Another factor to consider is the convenience of witnesses. 28 U.S.C. § 1404(a). Some courts have found that the convenience of witnesses is the most important factor to consider. *Saleh*, 361 F. Supp. 2d at 1160 (citing *State Street Capital Corp. v. Dente*, 855 F. Supp. 192, 197 (S.D. Tex 1994). The convenience of non-party witnesses deserves more weight than party witnesses. *Saleh*, 361 F. Supp. 2d at 1160 (*citing Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990)).

Courts generally require the party seeking transfer to provide details about its witnesses, including the nature of the testimony, the importance of each witness' testimony, how far away the witnesses are from both the original forum and the transferee forum, how long the witnesses are needed at trial, and if any employee witnesses are vitally important to the operation of the corporation such that their extended absence is detrimental. *See, e.g., Cochran v. NYP Holdings*, 58 F. Supp. 2d 1113 (C.D. Cal. 1998); *Kaiser Industries Corp. v. Wheeling-Pittsburgh Steel Corp.*, 328 F. Supp. 365, 369 (D. Del. 1971); *Recht,* 2008 WL 4460379 at *4; *Coors*, 549 F. Supp. 2d at 773.

In *Recht*, both sides agreed that most of defendant's witnesses resided in the Central District of California, though the plaintiff contended that some of the defense witnesses resided in Israel. *Recht*, 2008 WL 4460379 at *4. Notably, the plaintiff did not contend that any of the defendant's witnesses resided in or worked in Wisconsin, and did not mention any intention to call any witnesses from the area. *Id.* Similarly, in *Coors*, all of the plaintiff's witnesses resided in Colorado, while all of the defendant's witnesses resided in New York. *Coors*, 549 F. Supp. 2d at 773. Both courts found this factor to favor transfer.

KBR has identified several witnesses who live and work in Houston, or who have homes in Houston, and has provided descriptions of what these witnesses may testify about, including:

- John Stewart, who was responsible for overall security in the Middle East, and can testify to KBR's security policies and procedures, including convoy procedures for the transportation of KBR and subcontractor employees to KBR operated military bases. (Stewart Decl. ¶ 4.) Mr. Stewart works and lives in Houston. (Stewart Decl. ¶ 2.)

- Rex Williams also has knowledge of security conditions, and KBR's security and convoy procedures. (Stewart Decl. ¶ 5.) While he is currently working in Virginia, he has a home in Texas that he returns to periodically. (Stewart Decl. ¶ 6-7.)
- David Poe has knowledge of the living conditions and treatment of subcontract workers, including third country nationals, by KBR and agents of KBR subcontractors, including Daoud, as well as knowledge of security and convoy procedures. (Hill Decl. ¶¶ 3-4.) While he is based in Iraq, Mr. Poe has a home in Texas. (Hill Decl. ¶ 9.)
- Allan Heath is KBR's Record Manager, and is responsible for maintaining hard copies of KBR's documents and microfilm. (Heath Decl. ¶ 2.) Mr. Heath lives and works in Houston.

While Plaintiffs point to other witnesses mentioned by KBR who are based in other locations such as the Middle East, Georgia, Maryland, and Arizona, and refer to their own witness who will travel from Nepal, Plaintiffs do not claim that any witnesses for either side are located in the Central District of California. (Opp. at 8.) Because transfer to the Southern District of Texas would increase the convenience of at least some of KBR's witnesses, while only inconveniencing one witness who is already traveling from Nepal, this factor favors transfer.

### 4. *Ease of Access to Sources Proof*

Another consideration is the ease of access to sources of proof. *Jones*, 211 F.3d at 499. For example, in *Saleh*, most of the documentary evidence was located in, and more easily accessible in, Virginia. *Saleh*, 361 F. Supp. 2d at 1166. Because of the nature of the allegations involving a conspiracy with high-ranking government officials, the plaintiffs needed access to sensitive government documents, in the possession of the Defense Department and other agencies located in and around the Eastern District of Virginia. *Id.* at 1167.

KBR contends that the ease of access to sources of proof favors transfer, because its documents are located in Texas, Iraq, and Kuwait. According to their records manager, the Records and Information Management Department, which is responsible for maintaining hard copies of KBR documents and microfilm, is located in Houston, Texas. (Heath Decl. ¶ 2.) Original KBR documents created in the Middle East are generally kept in the Middle East. (Heath Decl. ¶ 4). In 2007, KBR began shipping original documents created in the Middle East to Houston, Texas. (Heath Decl. ¶ 5.)

While Plaintiffs argue that electronic copies of the documents could be made available in California, they do not contend that any documents, or other sources of proof, are located in the Central District of California. Plaintiffs also contend that not all the documents identified by KBR will be relevant. However, it appears that the sources of proof are located in the Middle East, possibly Nepal, and Houston. Since neither party points to sources of proof located in or near the Central District of California, this factor favors transfer.

### 5. *Local Interest and Familiarity with Applicable Law*

When determining whether the district has an interest in having a case decided there, a court can consider parties' contacts with the forum, such as whether parties are residents of the district, the contacts between the action and the chosen forum, such as whether the alleged acts occurred in the district, and whether the state has a significant interest in applying and interpreting its laws. *Jones*, 211 F.3d at 498-99; *see e.g.*, *Saleh,* 316 F. Supp. 2d at 1167. Part of this consideration is the Court's familiarity with the applicable law. *Coors*, 549 F. Supp. 2d at 773. In *Coors*, the suit brought in the Eastern District of Virginia involved an agreement governed by a New York statute. *Id.* at 774. While the court could have familiarized itself with New York law, New York courts had a strong interest in having local controversies involving the state's statutes decided at home, and so this factor weighed in

favor of transfer. *Id.*

Plaintiffs contend that this factor weighs against transfer, as they have brought claims under the RICO Act predicated on violations of the California Penal Code. (FAC ¶¶ 136(g)-(h).) Because Plaintiffs have brought California state law claims, this factor does not favor transfer.

### 6. *Docket Congestion*

Another factor is whether a trial may be speedier in another court because of its less crowded docket. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984). In *Saleh*, the original forum's median time from the filing of a civil case until trial was 30 months, while the transferee forum's median time was 9.2 months. *Saleh*, 316 F. Supp. 2d at 1167 (data from www.uscourts.gov/cgi-bin/cmsd2004.pl).

Plaintiffs contend that this factor weighs against transfer, because the Central District of California has a less congested docket than the Southern District of Texas. However, according to the U.S. Courts Judicial Caseload Profile Report, the median time in 2008 from the filing of a suit until trial is 22 months in the Central District of California, and 18.8 months in the Southern District of Texas.[11] Factoring in the fact that several months have already passed from the filing of the case here, the Court finds the congestion to be about the same, and this factor to be neutral.

Since only two factors weigh against transfer, the Court finds that the balance of factors favor transfer.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** KBR's Motion to Transfer.

**IT IS SO ORDERED.**

                                                 : _____

Initials of Preparer      slw

---

[11] Data from www.uscourts.gov/cgi-bin/cmsd2008.pl.