UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RAMCHANDRA ADHIKARI, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. 09-cv-1237 |
| § | |
| DAOUD & PARTNERS, et al., § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion to Certify Order on Motion to Dismiss for Interlocutory Appeal of Defendants Kellogg Brown & Root, Inc.; Kellogg Brown & Root Services, Inc.; KBR, Inc.; KBR Holdings, LLC; Kellogg Brown & Root, LLC; KBR Technical Services, Inc.; Kellogg Brown & Root International, Inc.; Service Employees International, Inc.; and Overseas Administration Services, Ltd. ("KBR" collectively) (Doc. No. 170). For the following reasons, KBR's Motion is denied.

### I.   BACKGROUND

A detailed factual background of this case is set forth in this Court's Memorandum and Order granting in part and denying in part KBR's Motion to Dismiss ("Order") (Doc. No. 168). Accordingly, the Court will not reproduce it here. In the Order, this Court dismissed Plaintiffs' negligence claims but allowed Plaintiffs to proceed with their claims under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. Section 1595 ("TVPRA"), Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. Section 1962(c) ("RICO"), and Alien Tort Statute, 28 U.S.C. Section 1350 ("ATS"). KBR now moves this Court to certify the Order for interlocutory appeal

1

pursuant to 28 U.S.C. Section 1292(b). KBR asserts that the Order "presents controlling questions of law as to which there are substantial grounds for difference of opinion with the result reached by the Court, many of which involve issues of first impression in the Fifth Circuit." (KBR Br., Doc. No. 171, at 2.) The issues that KBR seeks to certify are:

(1) whether the TVPRA may be extraterritorially and retroactively applied as in the Order;

(2) whether claims for lost wages are cognizable under RICO, and if so, whether they survive the death of an injured party; whether RICO applies in spite of extraterritorial concerns; and

(3) whether Plaintiffs have stated an ATS cognizable claim, whether the TVPRA preempts any such claim, and whether any such claim also requires state action.

## II.   LEGAL STANDARD

The final judgment rule states that "a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994); *see also Henry v. Lake Charles American Press, LLC*, 566 F.3d 164, 171 (5th Cir. 2009) (noting that "as a general rule, parties must litigate all issues in the trial court before appealing any one issue"). Nonetheless, 28 U.S.C. Section 1292(b) provides for interlocutory appeals of trial court decisions when such decisions (1) involve a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). The Fifth Circuit has, in the past, reasoned that Section 1292(b) appeals are appropriate under only "exceptional" circumstances or in "big" cases. *Clark-Dietz and Associates-Engineers v. Basica Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983). However, in other cases, the Fifth Circuit has employed a more flexible approach to Section 1292(b)

2

appeals. *See Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 702-03 (5th Cir. 1961) (finding that Section 1292 gave the appellate machinery "a considerable amount of flexibility" so that "disadvantages of piecemeal and final judgment appeals might both be avoided"). Regardless of which approach is adopted, the decision to permit interlocutory appeal is firmly within the district court's discretion. *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 405 n.9 (2004).

"Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the [order] would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (citing cases); *see also Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (finding that a question of law can be controlling if it determines the outcome or "even the future course of the litigation"). "On the other hand, an issue is not seen as controlling if its resolution on appeal would have little or no effect on subsequent proceedings." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) (citing authority). Whether an issue of law is controlling generally hinges upon its potential to have some impact on the course of the litigation. *Id.*

Courts have varied in their approach to the question of whether there is substantial grounds for difference of opinion on a particular issue. Nonetheless, they have generally found that there is a substantial ground for difference of opinion when "a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law,

3

or if novel and difficult questions of first impression are presented." *Id.* at 723-24. First and foremost, there must be a discernible *opinion* triggering the requisite disagreement. *Id.* But simply because a court is the first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement. *Id.* (citing 4 AM.JUR.2D APPELLATE REVIEW § 128 (2005)). The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case. WRIGHT, MILLER & COOPER, FED. PRAC & PROC.: JURISDICTION 2D § 3930. However, distinctions must be drawn between disagreements on questions of law, and questions that turn on the facts. "There is indeed no reason to suppose that interlocutory appeals are to be certified for the purpose of inflicting upon courts of appeals an unaccustomed and ill-suited role as factfinders." *Id.*

The requirement that an appeal should materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law. *Id.* A key concern consistently underlying Section 1292(b) decisions is whether permitting an interlocutory appeal will speed up the litigation. *Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)). Unless all the above-mentioned criteria are satisfied, a district court may not and should not certify its order for immediate appeal. *Id.* With these guiding principles in mind, we now turn to the issues that KBR seeks to certify for interlocutory review.

### III.   ANALYSIS

First, this Court agrees that all three issues proposed by KBR for direct appeal are controlling questions of law. The holdings of this Court as to each of these issues allowed

Plaintiffs' RICO, TVPRA, and ATS claims to proceed to discovery. While the Court considered the particular facts of this case to varying degrees in arriving at its conclusions, its ultimate determinations were primarily, if not exclusively, on matters of law. Although reversal as to any of the three issues raised by KBR would not terminate the entirety of the case, the Court acknowledges that a ruling in KBR's favor, on even one of the three, would significantly affect the scope of discovery and the conduct of the case as a whole.[1] As such, the Court does not hesitate in characterizing these issues as "controlling."

Accordingly, the Court also does not dispute that immediate appeal in this case may advance the ultimate termination of this litigation. As stated above, should any of the key questions of law that KBR seeks to certify be decided differently, one or more of Plaintiff's remaining complex claims could be foreclosed entirely. As KBR points out, "such a ruling would potentially preclude further litigation in district court, and may be partially or fully dispositive of the issues." (KBR. Br. at 9.) Moreover, immediate appeal could potentially conserve judicial resources and spare the parties from possible expense. Therefore, the Court does not dispute that factors one and three of Section 1292(b) are met.

This Court's decisions will, therefore, turn on whether KBR has demonstrated that there is "substantial grounds for difference of opinion" on the issues decided by the Court such that they are appropriate for immediate review. Before moving to the analysis, it is worth noting that, without a doubt, the subject matter and relevant legal background

---

[1] Although most of the individual questions presented by KBR within each of the three issues were controlling to this Court's holdings, the Court does note a few of the questions were not given dispositive weight in this Court's determination. The Court notes any such questions in its analysis below, and declines to certify them for appeal.

of this case are ones that call for clarity. Presented with a unique set of facts, this Court made a decision that contributes to what can only be described as an ongoing discussion. KBR clearly disagrees with this Court's holding, and is more than entitled to continue to contest it. However, it deserves mention that the question now before the Court is not whether the law relevant to these issues can be characterized as "unclear," a fact that is now explicitly conceded. The question is, rather, whether clarity should be sought through the normal channels of appeal, when a richer factual and legal history can be presented to the Fifth Circuit, or, conversely, whether immediate review is both advantageous and necessary.

### A.     TVPRA

KBR seeks to certify several individual questions comprising this Court's holdings under the TVPRA. First, as to the extraterritorial application of this statute, this Court held, after analyzing Supreme Court precedent regarding retroactive application of statutes, that "[s]ection 1596, which explicitly recognizes this Court's jurisdiction over extraterritorial TVPRA claims, only enlarges jurisdiction of courts within the United States, but does not change the operative substantive laws." (Order at 9.) Accordingly, we held that the TVPRA could be extraterritorially applied to KBR's actions even though they were committed before Section 1596 was passed. As further support of this holding, we noted that "to find that Section 1596 did not apply retroactively would contravene the purpose of the TVPRA." (*Id.*)

KBR asserts that there are substantial grounds for difference of opinion as to whether not applying Section 1596 retroactively would contravene the purpose of the TVPRA. (KBR Br. at 5.) KBR argues that, in reaching its conclusion, the Court

6

"incorrectly considered Congress' repeated alternations of the scope of TVPRA, which make it clear that trafficking offenses were neither understood nor intended to be punishable outside of the U.S. . . . during KBR's alleged offenses." (*Id.*) First, this Court doubts whether improper consideration of legislative history can be the basis for certifying an opinion for interlocutory appeal. Indeed, judges vary enormously in the their opinions as to the proper weight to be placed upon legislative history, and this Court's decision not to consider such history in its analysis does not, in its view, create the type of inconsistency and lack of clarity requisite for interlocutory certification. Moreover, this Court's discussion as to the purposes of the TVPRA was secondary to its primary analysis, which found that, under *Republic of Austria v. Altmann*, 541 U.S. 677 (2004), Section 1596 did not impair substantive rights and was therefore not subject to the presumption against retroactive application. (Order at 7-9.) To the extent, therefore, that the Court did rely on its view of the statute's purpose, its determination was not controlling.

Second, this Court also held that retroactive application of Section 1596 did not violate the Ex Post Facto Clause of the Constitution, because the law did nothing to alter the criminality of the act of trafficking, but only the way in which it was enforced and adjudicated. KBR, however, argues that "contrary to the Court's [Order], the Ex Post Facto Clause's prohibition is triggered, because the retroactive application of Section 1596 would deprive KBR of a defense that was available when the act was committed, namely, that the TVPRA provisions were without extraterritorial effects." (KBR Br. at 6.) The Court acknowledges that KBR's well-articulated arguments demonstrate that the extent and manner of a law's enforcement, as distinguished from the substance of the

7

laws themselves, can operate to have some retroactive effect on an individual's vulnerability to criminal sanction. Nonetheless, while *any* change in the way we adjudicate substantive crimes could indeed implicate retroactivity concerns, it is well understood that not all of these implications were contemplated by the Constitution's prohibition on ex post facto application of criminal laws. *See Wilson v. Lensing*, 943 F.2d 9, 11 (5th Cir. 1991) (noting that the Constitution requires more for an ex post facto violation than simply a retrospective law that alters the situation of a defendant to his disadvantage) (citing *Collins v. Youngblood*, 497 U.S. 37 (1990)). In this Court's opinion, application of Section 1596 to KBR fell short of infringing upon constitutional ex post facto prohibitions. While the merits of this conclusion will undoubtedly be questioned and debated, at this juncture, KBR can cite to no directly contrary judicial authority that would warrant immediate review.

Furthermore, the cases that KBR cites in support of its proposition that, at the time that the acts in question were committed, extraterritoriality was an established and recognized defense to liability under the TVPRA are of limited significance. (KBR Br. at 6.) First, neither of these district court cases is from the Fifth Circuit, and thus did not establish law that Houston-based companies such as KBR could safely rely upon. Second, in one of these opinions, *John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988 (S.D. Ind. June 26, 2007), the Court discusses the case of *United States v. Bowman*, 260 U.S. 94 (1922), in which the Supreme Court upheld the extraterritorial application of a criminal statute that was silent as to its territorial scope. Although the *Bridgestone* court went on to reject the extraterritorial application of certain TVPRA provisions, its analysis makes it clear that it was far from settled that, at the time KBR committed the alleged

acts at issue, they could have escaped liability entirely through an extraterritoriality defense had the case been brought before Section 1596 was passed. The other case cited by KBR, *Nattah v. Bush*, 541 F. Supp. 2d 223, 234-35 (D.D.C. 2008), cites to *Bridgestone* without any additional analysis. Thus, the lack of clarity as to the extraterritoriality of the TVPRA prior to the passage of Section 1596, combined with the lack of any authority contrary to this Court's finding as to the its scope, leads to the conclusion that this Court's holding should not be subject to immediate interlocutory review.

### B. RICO

KBR asserts that several questions regarding this Court's RICO holdings are appropriate for immediate appeal. As to the question of whether claims for lost wages are cognizeable under RICO, this Court relied on the Fifth Circuit case *Abraham v. Singh*, 480 F.3d 351 (5th Cir. 2007). The Court's reliance on controlling legal precedent on this issue weighs heavily against certification, even in the face of a contrary district court holding. *See, e.g.*, *In re Norplant Contraceptive Products Liability Litigation*, 907 F. Supp 244, 245 (E.D. Tex. 1995). KBR further seeks to certify the question of whether claims for lost wages can survive the death of the injured party under RICO. As Plaintiffs point out, this Court concurred with and cited *Faircloth v. Finesod*, 938 F.2d 513, 518 (4th Cir. 1991) to support its conclusion that they do. KBR does not question our reliance on this case. Instead, it argues that the question should be certified because this Court acknowledged that there is no controlling case law from the Fifth Circuit. KBR cites to no directly conflicting authority, however. Although the cited Fourth Circuit opinion is not technically binding on this Court, the opinions of other Circuits are certainly highly

9

persuasive and often cited by district courts. Moreover, "simply because a court is the first to rule on a question does not qualify the issue as one over which there is substantial disagreement." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723-24 (N.D. Tex. 2006) (citing 4 AM.JUR.2D APPELLATE REVIEW § 128 (2005)). Therefore, because the holding of the Fourth Circuit is the most persuasive opinion on the issue, and KBR can point to no contrary rulings, this Court holds that this question is not appropriate for interlocutory appeal.

KBR also seeks to certify the question of whether RICO applies in light of extraterritorial concerns. First, KBR questions this Court's analysis under the Military Extraterritorial Jurisdiction Act ("MEJA"). The Court acknowledged in its Order, however, that this is a relatively murky area of the law, and accordingly chose explicitly not to rest its holding on this section. (Order at 20.) As such, this question is not, in fact, a controlling question of law, because a reversal would in no way disturb the Court's ultimate conclusion. The question is therefore not appropriate for interlocutory review.

KBR also asserts that the Court's analysis "effects" test for extraterritorial application of RICO is subject to the possibility of a substantial difference in opinion. KBR argues that this Court "rejected the approach of the Southern District of New York" in holding that Plaintiffs did not need to be actually injured within the United States for the effects test to be met. (KBR Br. at 7.) First, the Court notes that in the case cited by KBR in its Motion, the Southern District of New York did not explicitly hold that the plaintiff must have been injured only in the United States to meet the effects prong of RICO, but only that the actions of the defendants must have had a significant effect on American commerce sufficient to demonstrate the propriety of subject matter jurisdiction.

*Norex Petroleum Ltd v. Access Industries, Inc.*, 540 F. Supp. 2d 438, 448 (S.D.N.Y. 2007). The other case distinguished by this Court, *Interbrew v. Edperbrascan Corp.*, 23 F. Supp. 2d 425, 429-30 (S.D.N.Y. 1998), does contain language suggesting that the intended victims of the alleged fraudulent scheme should be located within the United States to meet the effects test, and that effects on the American economy or American investors generally will not suffice. Accordingly, in its Order, this Court reasoned that, in its view, Plaintiffs had sufficiently pointed to victims of KBR's fraudulent scheme within the U.S. to meet the effects test standard. (Order at 22-23.) Thus, this Court's holding did not, as KBR suggests, wholly reject the approach of the courts in the Southern District of New York.

Moreover, the Court set forth its reasons for believing that this case is factually unique among the cases considered by those courts, and must therefore be analyzed according to such facts. (Order at 22.) Finally, as mentioned above, to the extent that other district courts outside of this Circuit may have analyzed RICO in a manner that is not entirely consistent with this Court's holding, we cannot hold that, without more, lack of uniformity in district courts constitutes substantial grounds for a difference of opinion. District courts across the country often disagree as to their interpretations and applications of the law, but allowing that consideration to qualify a question for interlocutory appeal in every instance would severely undermine the general rule against piecemeal litigation in federal courts.

Finally, KBR questions this Court's holding that Plaintiffs met the association-in-fact prong of an actionable RICO enterprise under *Boyle v. United States*, 129 S. Ct. 2237 (2009). That KBR disagrees with this Court's analysis and application of this binding

11

precedent does not render it subject to appeal at this stage. Therefore, this Court declines to certify its RICO analysis for interlocutory appeal.

### C. ATS

The primary issue under the ATS that KBR seeks to certify for appeal is whether state action is required as an element under ATS. This Court, in its Order, held that the crimes alleged by Plaintiff did not require state action to be enforced under the ATS because, as with other crimes in regard to which courts had previously found no state action requirement, the underlying offenses of slavery and forced labor do not require state action to be punishable under international legal norms. (Order at 12-14.) The Court did acknowledge in its Order that the Fifth Circuit had yet to address this precise issue. (Order at 13.) Nowhere in its opinion does this Court deny that most courts have articulated a state action requirement for claims brought under the ATS. However, the Court did acknowledge, and KBR does not dispute, that this requirement cannot be absolute, as many Circuits have also acknowledged an exception to the requirement in the context of certain crimes such as war crimes and genocide. This Court was therefore tasked with determining whether the crimes alleged by Plaintiff fell within the general rule requiring state action for ATS actionability, or within the recognized exceptions carved out by many courts, including one district court in this Circuit. *See Beanal v. Freeport-McMoRan, Inc.*, 969 F. Supp. 362, 371 (E.D. La. 1997). We held that the crimes alleged by Plaintiffs fell within the exception, because the underlying offense of forced labor, as recognized by international law, requires no state action. (Order 14-15.) KBR points to no authority that has held differently as to this precise issue, because, to this Court's knowledge, it is one of first impression. Again, while the Court fully

acknowledges that its analysis is not immune from scrutiny or criticism, we cannot conclude that this renders the issue appropriate for interlocutory review. Indeed, this question strikes this Court as particularly appropriate for review only after the factual record and its potential legal implications have been more fully fleshed out.

As to KBR's assertion that a difference of opinion exists as to whether Plaintiffs have stated a *Sosa*-cognizeable claim, we agree with KBR that previous courts that have allowed ATS claims to proceed on the basis of alleged forced labor were presented with very different facts from those at issue here. The Court made no determination, however, as to whether the facts presented in this case would allow Plaintiffs ultimately to succeed in their ATS forced labor claim. Instead, what this Court held was that it had jurisdiction to hear Plaintiffs' ATS claim because they alleged that KBR was engaged in systematic forced labor practices, and prohibition on forced labor has been widely recognized as an international norm.

The Court's holding, therefore, goes only to the cognizeability of Plaintiff's claims. While KBR's arguments with regard to potential lack of clarity in the law certainly speak to the inevitably difficult determination of whether KBR's actions rise to the level of internationally-sanctioned forced labor, they do not suggest that there should be immediate review of this Court's holding that Plaintiffs should be afforded the opportunity to present their ATS case. Indeed, KBR will, at a later date, also be afforded the opportunity to present its arguments as to how KBR's alleged conduct does not constitute or rise to the level of internationally-prohibited forced labor.[2] However, that

---

[2] Indeed, the Court notes that international law remains somewhat unsettled even as to those norms that are clearly *Sosa*-cognizable, such as genocide and torture. While there is a consensus that such crimes should be prohibited, differences and debates persist as to the full scope of these international crimes, and as to whether certain actions should fall within their boundaries. With no recognized international governing

13

the ostensible facts of this case are distinct from the facts of those cases in which other courts were called upon to make this determination does not mean that this Court should have eschewed the task. Indeed, KBR points out that the novelty of the facts presented in this case renders prior decisions on this issue of limited applicability; this is precisely the reason why the facts and record should be allowed to develop more fully before this case is presented for appellate review. KBR does not, therefore, demonstrate that this decision is subject to substantial difference of opinion such that this Court should certify its decision for interlocutory review.

Finally, KBR argues that substantial grounds for difference of opinion exist as to whether TVPRA preempts Plaintiffs' forced labor and trafficking claims under ATS. More specifically, KBR cites the Seventh Circuit case that found that Torture Victims Protection Act ("TVPA) does in fact preempt ATS claims brought on the basis of alleged torture. *Enahoro v. Abubakar*, 408 F.3d 877, 885 (7th Cir. 2005). In the Order, the Court acknowledges that "there is a clear divide among circuits as to the preemptive effect of the TVPA on claims brought under ATS." (Order at 17.) We chose to adopt the reasoning of the Second and Ninth Circuits to find that TVPRA did not disturb the actionability of trafficking and forced labor under the ATS. Plaintiffs point out that the Sixth and Fourth Circuits have recently also allowed claims under both the ATS and the TVPA to proceed in tandem, further bolstering the merit of this Court's holding. *See Chavez v. Carranza*, 559 F.3d 486 (6th Cir. 2009); *Yousef v. Samantar*, 552 F.3d 371 (4th Cir. 2009). Finally, the only court within the Fifth Circuit to decide the issue concluded that the TVPA did not preempt the ATS. *Beanal*, 969 F. Supp. at 380. Notably, no Circuit court, nor any

---

body, it seems all international legal norms will continue to suffer this fate, and forced labor is no exception.

14

district court within this Circuit, has ruled upon the precise issue of whether TVPRA preempts a claim under ATS.[3]

While noting that the decision of whether to certify this question for appeal was a close one, this Court nonetheless declines to do so. When ruling upon an analogous statute, four Circuits have found that ATS remedies remain undisturbed in the face of additional statutes creating causes of action for international crimes. Only the Seventh Circuit has ruled differently. While that Circuit's ruling is certainly not insubstantial, the Court must recognize its limited influence in light of the number of Circuits that have taken contrary positions. Moreover, none of these cases even mentions the statute which is at issue here. This Court was the first to decide the question of the TVPRA's effect on ATS claims. Weighing these considerations, the Court concludes that interlocutory review is not appropriate.

This case presents a myriad of novel legal and factual questions, many of which will be developed and perhaps clarified as discovery and motion practice continue. In light of the strong disfavor of piecemeal litigation in federal courts, the Court finds and holds that review of such novel questions by the Fifth Circuit should occur in the ordinary course, after a record has been more fully developed, and the strength of Plaintiffs' claim under RICO, the ATS, and the TVPRA has been further analyzed and clarified. Therefore, the Court declines to certify these issues for appeal.

## IV. CONCLUSION

Because the Court has declined to certify the questions presented by KBR for interlocutory review, we need not reach the question of whether this case should be

---

[3] The lack of case law on this question could stem, in part, from the fact that few courts have considered the related question of whether trafficking and forced labor can be actionable under the ATS.

stayed while such review is pending. KBR's Motion to Certify Order on Motion to Dismiss for Interlocutory Appeal (Doc. No. 170) is hereby **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 1st day of March, 2010.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE