IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RAMCHANDRA ADHIKARI, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DAOUD & PARTNERS, *et al.*, <br><br> Defendants. | **CIVIL ACTION NO. H-09-1237** <br> **JUDGE KEITH P. ELLISON** |

# DAOUD & PARTNERS' REQUEST TO CERTIFY DECEMBER 12, 2011 ORDER ON MOTIONS TO DISMISS FOR INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. 1292(b)

Geoffrey Bracken (Bar No. 02809750)
Scott Davis (Bar No. 05547030)
GARDERE WYNNE SEWELL, LLP
1000 Louisiana St., Suite 3400
Houston, Texas 77002-5011
(713) 276-5500

Christopher Tayback (*admitted pro hac vice*)
Susan R. Estrich (*admitted pro hac vice*)
Scott L. Watson (*admitted pro hac vice*)
Zachary D. Krug (*admitted pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
(213) 443-3000

Attorneys for DAOUD & PARTNERS

## **TABLE OF CONTENTS**

          **Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................2

I.    THE DECEMBER ORDER PRESENTS JURISDICTIONAL ISSUES THAT
ARE APPROPRIATE FOR INTERLOCUTORY REVIEW ...........................................2

        A.    Issue No. 1: Whether Daoud's Performance Of Government Subcontracts
Overseas Gives Rise To General Jurisdiction In The United States. .....................2

        B.    Issue No. 2:  Whether Separate Jurisdictional Inquiries Were Required For
Each Daoud Entity ..................................................................................................6

        C.    Issue No. 3:  Whether The Daoud-KBR Indemnification Clause
Establishes Specific Jurisdiction In Texas Because It Is Performed Where
KBR Is Sued ...........................................................................................................8

II.    THE COURT SHOULD GRANT A STAY PENDING APPELLATE REVIEW.............9

CONCLUSION................................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

APCC Services, Inc. v. Sprint Communications Co., L.P.,
  297 F. Supp. 2d 90 (D.D.C. 2003) ...................................................................................5, 10

Asahi Metal Indus. Co., Ltd. v. Superior Court,
  480 U.S. 102 (1987) .................................................................................................................5

Bayou Steel Corp. v. M/V Amstelvoorn,
  809 F.2d 1147 (5th Cir. 1987) .................................................................................................2

Bearry v. Beech Aircraft Corp.,
  818 F.2d 370 (5th Cir. 1987) ...................................................................................................2

GTE New Media Services Inc. v. Ameritech Corp.,
  44 F. Supp. 2d 313 (D.D.C. 1999) ............................................................................... 2, 5, 10

GTE New Media Services Inc. v. BellSouth Corp.,
  199 F.3d 1343 (D.C. Cir. 2000) ...............................................................................................4

Goodyear Dunlop Tires Operations, S.A. v. Brown,
  131 S. Ct. 2846 (June 27, 2011) ...........................................................................................4, 7

Growden v. Ed Bowlin & Assocs.,
  733 F.2d 1149 (5th Cir. 1984) .................................................................................................2

Johnston v. Multidata Sys. Int'l Corp.,
  523 F.3d 602 (5th Cir. 2008) ................................................................................................2, 4

Johnston v. Multidata Sys. Int'l Corp.,
  2007 WL 3998804 (S.D. Tex. Nov. 14, 2007) .....................................................................4, 5

Kelly v. Syria Shell Petroleum Dev. B.V.,
  213 F.3d 841 (5th Cir. 2000) ...................................................................................................7

Lemery v. Ford Motor Co.,
  244 F. Supp. 2d 720 (S.D. Tex. 2002).....................................................................................5

Nocando Mem Holdings, Ltd. v. Credit Commercial De France, S.A.,
  2004 WL 2603739 (W.D. Tex. Oct. 6, 2004) ......................................................................4, 5

Nova Vaults, Inc. v. Inductotherm Indus., Inc.,
  39 F.3d 1192 (10th Cir. 1994) .................................................................................................7

Nuovo Pignone, SpA v. Storman Asia M/V,
  310 F.3d 374 (5th Cir. 2002) ...................................................................................................2

Padilla ex rel. Newman v. Rumsfeld,
  256 F. Supp. 2d 218 (S.D.N.Y. 2003).....................................................................................4

United Philippine Lines, Inc. v. Metalsrussia Corp. Ltd.,
  1997 WL 214959 (S.D.N.Y. 1997) ........................................................................................9

Walters v. Dollar Gen. Corp.,
  2011 WL 759555 (S.D. Ind. 2011) ................................................................................... 8, 9

**Statutes**

28 U.S.C. § 1292(b) ................................................................................................................ 1, 10

**Other Authorities**

Federal Practice & Procedure: Jurisdiction § 3930 ......................................................................4

**Preliminary Statement**

On December 12, 2011, this Court issued an order granting in part and denying in part Daoud's separate renewed motions to dismiss the plaintiffs' first amended complaint and KBR's cross-claim. See Mem. Order, dated Dec. 12, 2011 (Dkt. No. 273) (the "December Order"). The Order held Daoud subject to personal jurisdiction with regard to both plaintiffs' claims and KBR's cross-claim for indemnification. See Order at 23-24; 43-44.

Daoud respectfully requests the Court to certify the December Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). As discussed below, the Order presents controlling questions of law as to which there are substantial grounds for difference of opinion with the holdings of the December Order, in particular:

(1) Whether Daoud's performance of government subcontracts overseas gives rise to general jurisdiction in the United States;

(2) Whether separate jurisdictional inquiries were required for each Daoud entity;

(3) Whether the Daoud-KBR indemnification clause establishes specific jurisdiction in Texas because it is performed where KBR is sued.

Prompt resolution of these issues will materially advance the ultimate termination of this litigation, thereby conserving the resources of this Court and the parties.

**Standard of Review**

Immediate review of a non-final order is appropriate under 28 U.S.C. § 1292(b) "when such decisions (1) involve a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." Mem. Order, dated March 1, 2010 (Dkt. 183) ("March Order").

**Argument**

I. **THE DECEMBER ORDER PRESENTS JURISDICTIONAL ISSUES THAT ARE APPROPRIATE FOR INTERLOCUTORY REVIEW**

The Fifth Circuit regularly hears interlocutory appeals of decisions finding personal jurisdiction after a motion to dismiss. See, e.g., Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 611 (5th Cir. 2008) (accepting appeal after certification and reversing trial court's denial of motion to dismiss because foreign defendants various contacts with Texas did not constitute doing business in Texas for general jurisdiction); Nuovo Pignone, SpA v. Storman Asia M/V, 310 F.3d 374, 385 (5th Cir. 2002) (accepting appeal and affirming district court denial of motion to dismiss as jurisdiction); Bearry v. Beech Aircraft Corp., 818 F.2d 370, 373 (5th Cir. 1987) (accepting appeal and reversing district court denial of motion to dismiss where non-resident's business transactions with forum residents were "enormous in volume" did not establish a "general presence" in Texas); Bayou Steel Corp. v. M/V Amstelvoorn, 809 F.2d 1147, 1148 (5th Cir. 1987) (accepting appeal and reversing district court's denial of motion to dismiss because exercise of jurisdiction over Bulgarian manufacturer-seller of ship involved in collision in the United States would be "constitutionally impermissible"); Growden v. Ed Bowlin & Assocs., 733 F.2d 1149, 1150 (5th Cir. 1984) (accepting appeal and reversing district court denial of motion to dismiss as non-resident's sale of aircraft to forum residents did not show purposeful availment); see also GTE New Media Services Inc. v. Ameritech Corp., 44 F. Supp. 2d 313, 316 (D.D.C. 1999) ("Several circuits have held that interlocutory appeal may be taken on the issue of personal jurisdiction.") (collecting cases). Here, the December Order presents several jurisdictional issues that are appropriate for interlocutory review.

A. **Issue No. 1: Whether Daoud's Performance Of Government Subcontracts Overseas Gives Rise To General Jurisdiction In The United States.**

In the December Order, the Court held that Daoud's performance of U.S. government subcontracts overseas gave rise to sufficient minimum contacts to support an assertion of general personal jurisdiction anywhere in the United States. The Court emphasized that Daoud's business "depends entirely on its relationship with forum entities" and that Daoud's activities

resulted in "contacts with the United States that are so extensive as to warrant the exercise of general jurisdiction." December Order at 14, 22. In so holding, the Court rejected Daoud's argument that jurisdiction was inappropriate because its work under the subcontracts was performed entirely overseas and involved only ancillary U.S. contacts. Further, the Court rejected Daoud's argument "that this case should be compared to other cases involving foreign corporations performing U.S. Government contracts abroad" and instead relied on cases that largely involved defendants from one U.S. state selling goods or services to residents in another U.S. state. December Order at 14-15, 22. Daoud respectfully submits that this ruling is appropriate for certification and review.

***The Issue Is "Controlling."*** Whether Daoud's work overseas under U.S. government subcontracts gives rise to general jurisdiction in the United States is a "controlling" issue because reversal of the Court's jurisdictional holding would likely result in Daoud's dismissal from this case. See March Order 3. Moreover, even if interlocutory review did not result in outright dismissal of Daoud, the issue would remain controlling to the extent it relates to the jurisdictional standard to be applied at summary judgment or trial. See id. at 3 ("Whether an issue of law is controlling generally hinges upon its potential to have *some impact* on the course of the litigation.") (emphasis added).

***There Is Sufficient Disagreement or Uncertainty.*** There is substantial ground for difference of opinion as to whether Daoud's work on government subcontracts which occurs entirely overseas can give rise to general personal jurisdiction in the absence of significant in-forum activities akin a "general presence" in the United States. In its December Order, the Court concluded that "[i]t is difficult to conceive of a scenario in which a company could derive 100% of its business from a forum, but lack sufficient forum contacts for general jurisdiction." December Order at 15. Daoud respectfully submits that this is precisely that case. It has never been disputed that Daoud derives the majority of its revenue from its work in Iraq on U.S. government subcontracts. While that work necessarily generates ancillary contacts with entities and personnel in the U.S., Daoud contends that has not resulted in the kind of substantial in-

forum activities on which general personal jurisdiction must be predicated. As the Supreme Court recently instructed, "general jurisdiction is appropriately exercised" only in a forum "in which the corporation is fairly regarded as at home." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853-54 (June 27, 2011); see also Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 611 (5th Cir. 2008) ("This circuit has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues"). It is undisputed that Daoud has no operations or employees in the United States, and Daoud contends its ancillary contacts do not rise to that level. Given the limited nature of its activities in the United States, certification is appropriate.

Certification is also appropriate where, as here, the jurisdictional issues presented are novel or otherwise present unusual circumstances. See Johnston v. Multidata Sys. Int'l Corp., 2007 WL 3998804 (S.D. Tex. Nov. 14, 2007) (certification of decision on personal jurisdiction appropriate given, inter alia, "the complexity of the fact-intensive issues that cross international borders"); Nocando Mem Holdings, Ltd. v. Credit Commercial De France, S.A., 2004 WL 2603739 (W.D. Tex. Oct. 6, 2004) (certification appropriate where the "case involves difficult and unique issues regarding personal jurisdiction for which it has found no clear guidance").[1] The work of foreign entity performing work on U.S. government subcontracts overseas presents unique circumstances since little or none of the work is performed in the United States, yet necessarily generates ancillary contacts with the United States.

As the Court previously noted, "[t]he level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case." March Order at 4 (citing Fed. Practice & Proc. Jurisdiction § 3930). Certification over threshold issues such as "an initial question of jurisdiction . . . may be

---

[1] See also GTE New Media Services Inc. v. BellSouth Corp., 199 F.3d 1343, 1345 (D.C. Cir. 2000) (certification of jurisdictional decision permitted given "unusual circumstances" of case involving foreign defendant with no physical presence in the forum); Padilla ex rel. Newman v. Rumsfeld, 256 F. Supp. 2d 218, 221 (S.D.N.Y. 2003) (noting that certification of issues may be appropriate "when the issues they raise are difficult and novel").

justified at a relatively low threshold of doubt." Fed. Practice & Proc. Jurisdiction § 3930. Because this case remains in its initial stages, and because it presents unusual circumstances that do not fit squarely within applicable precedent, certification is warranted.

*An Immediate Decision Will Advance The Litigation.* An immediate ruling on this issue will materially advance the litigation as it would streamline and speed the issues to be tried and conserve the resources of the Court and the parties (if the Court's decision were reversed). See APCC Services, Inc. v. Sprint Communications Co., L.P., 297 F. Supp. 2d 90, 100 (D.D.C. 2003) (certifying decision for interlocutory review to "conserve judicial resources and spare the parties needless expense if it should turn out that this Court's rulings are reversed."). Review is especially warranted here given "the complexity of the fact-intensive issues that cross international borders, the vastly expensive discovery and litigation phases that may follow." Johnston, 2007 WL 3998804 (certifying decision on personal jurisdiction for interlocutory review); see also Nocando, 2004 WL 2603739 (interlocutory review of decision on personal jurisdiction warranted where "case will involve significant judicial resources if it proceeds").

Review is also appropriate because of the substantial burden placed on Daoud, whose employees are entirely in the Middle East, by defending an action half a world away under an unfamiliar legal system. See Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 114 (1987) (instructing courts to consider the "unique burdens placed upon one who must defend oneself in a foreign legal system"). Plaintiffs will no doubt argue that these jurisdictional issues may be reviewed after trial and final judgment. But "as a practical matter," the December Order is "effectively unreviewable following trial because of the enormous expense and time involved." APCC Services, 297 F. Supp. at 100; see also GTE New Media Servs., 44 F. Supp. 2d at 316-17 (interlocutory review of personal jurisdiction materially advances litigation because it would avoid needless expenditure of resources and expense that "would make the issue effectively unreviewable on appeal from final judgment"); cf. Lemery v. Ford Motor Co., 244 F. Supp. 2d 720, 728 (S.D. Tex. 2002) (certification warranted given the "scarcity of law analogous to this lawsuit" and the potential that the parties might "proceed to judgment after considerable

expense and delay, only to discover that the judgment must be overturned on appeal because the federal judiciary lacks subject matter jurisdiction").

### B. Issue No. 2: Whether Separate Jurisdictional Inquiries Were Required For Each Daoud Entity

Daoud has consistently argued that it is comprised of two distinct corporate entities—one domiciled and operating in Jordan and another domiciled in the British Virgin Islands and operating in Iraq. See Daoud's Motion to Dismiss at 3, dated April 2, 2010 (Dkt. No. 187); Daoud's Motion to Dismiss KBR's Cross-claim at 3-4, dated July 16, 2010 (Dkt. No. 213); see also Declaration of Yazan Banna at ¶ 2-5, 17-19, dated March 31, 2011; Supplemental Declaration of Yazan Banna at ¶ 1-3, dated July 1, 2010; Daoud's Supplemental and Corrected Responses and Objections to Plaintiffs' Interrogatory Requests at 5-8.

As set forth in Daoud's briefing, plaintiffs ignored the distinctions between these entities and failed to identify sufficient evidence to support jurisdiction over Daoud JOR based on its own activities rather than Daoud BVI operations in Iraq. See Daoud's Reply Br. in Support of its Renewed Motion to Dismiss Plaintiffs' First Amended Complaint at 4 n.7 (Dkt. No. 252); Daoud's Objections to the Supplemental Declaration of Maureen McOwen at 2 (Dkt. No. 252-2). In turn, the Court's December Order does not distinguish between Daoud JOR and Daoud BVI. Rather, the Order treats the two entities as a single entity. The bulk of the discussion in the Court's Order turns on Daoud BVI's—not Daoud JOR's—activities. See, e.g., Order at 13 ("Daoud does no business in Jordan, where it is registered as a 'non-operating foreign company' prohibited from carrying out any business or commercial activity. . . . Daoud's services are provided exclusively in Iraq."). Thus the legal effect is to impute Daoud's BVI's activities to Daoud JOR and vice-versa for jurisdictional purposes.[2] Daoud respectfully submits that this ruling is appropriate for certification and review.

---

[2] To the extent that the Court intended its Order to apply only to Daoud BVI and not to Daoud JOR, then Daoud respectfully requests that the Court modify its Order.

***The Issue Is "Controlling."*** How Daoud's separate entities must be jurisdictionally assessed is a "controlling" issue because reversal of the December Order as to Daoud JOR (for which there was little if any evidence of jurisdictional contacts) would likely terminate the action against that entity. See March Order at 3. Moreover, even if the reversal were limited to remand so that distinct jurisdictional inquiries could be undertaken as to each entity, that would certainly have "some impact" on the course of the litigation, either by leading to the subsequent dismissal of Daoud JOR or establishing how these corporate entities shall be treated in the subsequent litigation. See March Order at 3.

***There Is Sufficient Disagreement or Uncertainty.*** There is substantial grounds for disagreement with the December Order's ruling on this issue because it "appears contrary" to numerous decisions. March Order at 3 (citation omitted). Specifically, the Supreme Court, the Fifth Circuit and other Courts of Appeals have consistently held that independent jurisdictional inquiries are ordinarily required for distinct corporate entities and that one entities' activities may not be imputed to another for jurisdictional purposes. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2857 (2011) (conducting distinct jurisdictional inquiries for foreign subsidiaries and declining to "pierce Goodyear corporate veils . . . for jurisdictional purposes"); Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 857 (5th Cir. 2000) ("Courts have long presumed the institutional independence of related corporations . . . when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts") (quoting Dickson Marine, Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir.1999)).[3]

***An Immediate Decision Will Advance The Litigation.*** As discussed in greater detail above in connection with the Court's broader holding on general jurisdiction, an immediate ruling on this jurisdictional issue will materially advance the litigation as it would conserve the resources of the Court and the parties (if the Court's decision were to be reversed after trial as to

---

[3] See also Nova Vaults, Inc. v. Inductotherm Indus., Inc., 39 F.3d 1192 (10th Cir. 1994) (unpublished Mem. Dispo.) (affirming trial court's decision holding that "the contacts of [a]

Daoud JOR) or clarify and speed the jurisdictional issues to be determined at summary judgment or trial with regard to Daoud JOR and Daoud BVI.

C.  **Issue No. 3:  Whether The Daoud-KBR Indemnification Clause Establishes Specific Jurisdiction In Texas Because It Is Performed Where KBR Is Sued**

In its December Order, the Court held that there was specific jurisdiction over Daoud regarding KBR's indemnification claim.  Adopting the argument KBR advanced, the Court held that "[u]nder Texas law, the place of performance of a contractual obligation to defend and indemnify is the place where the party is sued, regardless of the place of performance of other contractual provisions."  December Order at 22.  Thus, although Daoud's performance under its KBR subcontracts occurred entirely in Iraq, and although the indemnity clause at issue does not contain a forum-selection clause, the Court held that jurisdiction was appropriate where "the suing took place."  December Order at 22 (citation omitted).  Daoud respectfully submits that this ruling is appropriate for certification and review.

***The Issue Is "Controlling."***  Whether there is jurisdiction over KBR's indemnification claim is a "controlling" issue because reversal of the Court's jurisdictional holding would likely result in the dismissal of KBR's claims against Daoud.  See March Order 3.  Moreover, the issue is "controlling" even if interlocutory review did not result in outright dismissal of Daoud, but instead provided necessary guidance on jurisdictional standard eventually to be applied at summary judgment or trial.  See id. at 3.

***There Is Sufficient Disagreement or Uncertainty***.  There is substantial grounds for disagreement with the December Order's ruling on this issue because it is inconsistent with a number of decisions holding that an indemnification clause does not give rise to specific jurisdiction *wherever* the indemnitee is sued.  In particular, Walters v. Dollar Gen. Corp., 2011 WL 759555 (S.D. Ind. 2011), presents a nearly identical situation as here: like the agreement here between Daoud and KBR, a foreign corporation entered into an agreement with a U.S.

---

subsidiary . . . could not be imputed to [a related entity] because the two are separate and distinct corporations").

company containing a general indemnity clause with no jurisdictional provisions. Id. at *5-6. The U.S. corporation was later sued by a plaintiff alleging injuries arising from the relationship, and like KBR here, the U.S. corporation filed a cross-claim seeking indemnification. Id. And, like KBR argued in its briefing (which the Court's December Order adopted), the U.S. corporation argued that personal jurisdiction was appropriate since the foreign corporation knew it was indemnifying a U.S. corporation doing business in the forum and, therefore, it "should reasonably have foreseen being haled into a [forum] court." Id. at *6. The Court rejected this argument, holding that such an "interpretation would render [the foreign indemnitor] amenable to jurisdiction in any court in the world and undermine the rationale behind the personal jurisdiction due process requirements." Id. Other authorities are similarly contrary to the Court's holding. See United Philippine Lines, Inc. v. Metalsrussia Corp. Ltd., 1997 WL 214959, at *5 (S.D.N.Y. 1997) (holding that foreign corporation's contractual indemnity did not support jurisdiction wherever the idemnitee is sued because jurisdiction would then be the result of "the random, fortuitous act of a third party who selects the forum in which to sue the party whom the defendant agreed to indemnify" and that "[s]uch a result mocks the limits on personal jurisdiction imposed by the Due Process Clause"). In the absence of any clear precedent, Daoud submits that there is substantial uncertainty as to whether the Daoud-KBR indemnification clause gives rise to specific jurisdiction in Texas.

*An Immediate Decision Will Advance The Litigation*. As discussed in greater detail above in connection with the Court's broader holding on general jurisdiction as to plaintiffs' claims, an immediate ruling on this jurisdictional issue as to KBR's indemnification claim will materially advance the litigation as it would conserve the resources of the Court and the parties (if the Court's decision were to be reversed after trial) or clarify and speed the jurisdictional issues to be determined at summary judgment or trial.

## II.   THE COURT SHOULD GRANT A STAY PENDING APPELLATE REVIEW

Given the unsettled nature of the issues presented which involve threshold jurisdictional issues, Daoud respectfully requests that the Court concurrently stay all proceedings in this case

pending appellate review.  Granting a stay would further the purposes of § 1292(b) by conserving the resources of the Court and the parties which would otherwise be needlessly expended on complex international litigation if the Fifth Circuit were later to determine that personal jurisdiction does not exist over either of the Daoud entities.  See, e.g., GTE, 44 F. Supp. 2d at 317 (granting certification of personal jurisdiction issues and ordering stay of proceedings "for reasons of judicial economy"); APCC, 297 F. Supp. at 101 ("given the need for certification, the Court will grant defendants' request to stay discovery pending appeal").

## Conclusion

For the reasons set forth above, Daoud respectfully requests that the Court (1) certify its December Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and (2) stay the proceedings in this litigation pending interlocutory review.

DATED: January 6, 2012        QUINN EMANUEL URQUHART & SULLIVAN, LLP


                              By  /s/ Christopher Tayback
                                  Christopher Tayback
                                  Attorneys for Daoud & Partners