UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RAMCHANDRA ADHIKARI, et al., | § |
| | § |
| Plaintiffs, | § |
| | § |
| v. | §   CIVIL ACTION NO. 09-cv-1237 |
| | § |
| DAOUD & PARTNERS, et al., | § |
| | § |
| Defendants. | § |

MEMORANDUM AND ORDER

Pending before the Court is a Motion to Certify filed by Defendant Daoud & Partners ("Daoud"). After considering this motion, all responses thereto, and the applicable law, the Court finds that Daoud's motion must be DENIED.

## I.   BACKGROUND

On December 12, 2011, the Court issued a Memorandum and Order (the "December Order") granting in part and denying in part a Renewed Motion to Dismiss filed by Defendant Daoud & Partners ("Daoud"). (Doc. No. 273.) In that Order, the Court found that it has personal jurisdiction over Daoud both with regard to Plaintiffs' claims, and with regard to the cross-claim filed by Defendants Kellogg Brown & Root, Inc.; Kellogg Brown & Root Services, Inc.; KBR, Inc.; KBR Holdings, LLC; Kellogg Brown & Root, LLC; KBR Technical Services, Inc.; Kellogg Brown & Root International, Inc.; Service Employees International, Inc.; and Overseas Administration Services, Ltd. (collectively, "KBR").

1

On January 6, 2012, Daoud filed a Request to Certify the December Order for Interlocutory Review (Doc. No. 276), to which Plaintiffs and KBR have filed responses (Doc. Nos. 279 and 281, respectively). Daoud urges that three issues in the December Order are appropriate for interlocutory review: (1) whether Daoud's performance of government subcontracts overseas gives rise to general jurisdiction; (2) whether separate jurisdictional inquiries, which the Court did not conduct, were required for two allegedly different Daoud entities; and (3) whether the indemnification clause in Daoud's contract with KBR establishes specific jurisdiction. The Court considers each of these claimed bases for interlocutory review below.

## II.   LEGAL STANDARD

In general, only the final judgments of federal district courts can be appealed. *See, e.g.*, *United States v. Garner*, 749 F.2d 281, 284-85 (5th Cir. 1985). The final judgment rule, codified in 28 U.S.C. § 1291, provides that "a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994); *see also Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 171 (5th Cir. 2009) (noting that "as a general rule, parties must litigate all issues in the trial court before appealing any one issue"). Nonetheless, 28 U.S.C. § 1292(b) allows for interlocutory appeals of trial court decisions when such decisions (1) involve a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). The Fifth Circuit has, at times, reasoned that Section 1292(b) appeals are appropriate only in "exceptional" circumstances or "big" cases. *Clark-Dietz and Assocs. v. Basica Constr. Co.*, 702 F.2d

67, 69 (5th Cir. 1983). However, in other cases, the Fifth Circuit has employed a more flexible approach to Section 1292(b) appeals. *See Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 702-03 (5th Cir. 1961) (finding that Section 1292 gave the appellate machinery "a considerable amount of flexibility" so that "disadvantages of piecemeal and final judgment appeals might both be avoided"). Regardless of which approach is adopted, it is clear that the decision to permit interlocutory appeal is firmly within the district court's discretion. *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 405 n.9 (2004).

As to the first prong of the test, which requires the matter for which appeal is sought to involve a controlling question of law, courts have reasoned that "[a]lthough the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the [order] would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (citations omitted); *see also Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (finding that a question of law can be controlling if it determines the outcome or "even the future course of the litigation"). "On the other hand, an issue is not seen as controlling if its resolution on appeal would have little or no effect on subsequent proceedings." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006). Ultimately, "[w]hether an issue of law is *controlling* generally hinges upon its potential to have some impact on the course of the litigation." *Id.*

As to the second prong, which requires a substantial ground for difference of opinion, courts have varied in their approach. Generally, courts have found that there is a substantial ground for difference of opinion when:

> [A] trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*Id.* at 723-24 (citing 4 Am. Jur. 2d Appellate Review § 128 (2005)). For a sufficient difference of opinion to be found, there must, of course, be an opinion from which another can differ. *Id.* Moreover, distinctions must be drawn between disagreements on questions of law, and questions that turn on the facts. Ultimately, "'fact review questions' are 'inappropriate for § 1292(b) review.'" *Solis v. Univ. Project Mgmt., Inc.*, 2009 WL 2018260, at *3 (S.D. Tex. July 6, 2009) (quoting *Clark-Dietz*, 702 F.2d at 69).

The third prong addresses a key concern underlying Section 1292(b) decisions—namely, whether permitting an interlocutory appeal will speed up the litigation. *Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000). Ultimately, "[u]nless all the statutory criteria are satisfied, 'a district court may not and should not certify its order . . . for an immediate appeal under [§] 1292(b).'" *Solis*, 2009 WL 2018260, at *3 (quoting *Ahrenholz*, 219 F.3d at 676).

### III. ANALYSIS

The Court now considers the three issues on which Daoud seeks certification for interlocutory review.

#### A. General Jurisdiction over Daoud

In the December Order, the Court conducted an in-depth analysis of Daoud's contacts with the United States, ultimately concluding that these contacts give rise to this Court's general personal jurisdiction over Daoud. In so holding, the Court rejected Daoud's argument that jurisdiction was inappropriate because Daoud's work under U.S. government subcontracts was performed entirely overseas and involved only ancillary U.S. contacts. Daoud contends that the Court's ruling is on a controlling issue over which there is substantial ground for difference of opinion, and on which an immediate decision will advance the litigation.

### 1. Presence of a controlling issue of law

Daoud argues that whether its work overseas gives rise to general jurisdiction in the United States is a controlling issue because reversal would likely result in Daoud's dismissal from the case. While Daoud might be correct that this renders the issue controlling, it does not necessarily make it a controlling issue of *law*. A number of courts have explained that the application of settled law to the facts of a case does not present a pure question of law under Section 1292(b). *See, e.g.*, *Clark-Dietz*, 702 F.2d at 69 (the questions presented for review "appear to be merely fact-review question inappropriate for § 1292(b) review"); *Solis*, 2009 WL 2018260, at *5 (interlocutory review inappropriate where the court applied clear law to the facts of the case); *Consub Delaware LLC v. Shahin Engenharia Limitada*, 476 F. Supp. 2d 305 (S.D.N.Y. 2007) ("'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record.").

In determining that it had general personal jurisdiction over Daoud, the Court considered a range of jurisdictional contacts, finding most persuasive the fact that Daoud

obtained 100% of its business from U.S. entities. The Court applied the facts of this case to well-established law on general jurisdiction, relying upon Supreme Court and Fifth Circuit precedent and drawing upon a number of cases from other circuits. (*See* December Order at 10-25.) Indeed, the Court spent no less than 15 pages considering, in detail, the facts of the case, and distinguishing this case from the cases on which Daoud relies. (*Id.*) As a result, Daoud cannot dispute that the Court applied the proper legal standard; rather, Daoud contends only that the Court improperly applied the facts of this case to the established law of general jurisdiction. Daoud's request to certify this issue, therefore, does not present a controlling question of law.

### 2. Existence of a substantial ground for difference of opinion

Daoud also maintains that there is a substantial ground for difference of opinion as to whether this Court has general personal jurisdiction over Daoud. Daoud admits that it derives the majority of its revenue from its work on U.S. government subcontracts, but urges that these forum activities are not the sort on which general personal jurisdiction can be predicated. Daoud contends that the Supreme Court's holding in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (June 27, 2011), which states that general jurisdiction is appropriate only in a form "in which the corporation is fairly regarded as at home," evidences a substantial ground for difference of opinion on this issue. Daoud urges that, though it derived all of its business from the United States, it cannot be considered "at home" here. In the December Order, the Court specifically addressed the jurisdictional requirements described in *Goodyear*, and concluded that the exercise of general jurisdiction over Daoud does not depart from those requirements. *Goodyear* does not reveal any substantial ground for difference of opinion.

6

Daoud also argues that the jurisdictional issues presented in this case are novel or otherwise present unusual circumstances, which, in some cases, has been found sufficient to justify interlocutory review. *See Johnston v. Multidata Sys. Int'l Corp.*, 2007 WL 3998804, at *1 (S.D. Tex. Nov. 17, 2007) (finding certification appropriate given "the complexity of the fact-intensive issues that cross international borders"). Daoud asserts that this situation is unique in that it involves a foreign entity performing work on U.S. government contracts overseas, which inevitably results in the entity generating contacts with this country without performing any work on U.S. soil. The Court agrees that a general jurisdiction analysis has not yet been conducted on facts analogous to those in this case. However, general jurisdiction inquiries are always fact-specific, so the uniqueness of the facts in this case cannot itself justify interlocutory review. Moreover, unusual facts, on their own, do not necessarily justify certifying an interlocutory appeal. *Cf. First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1117 (D.D.C. 1996) ("While it is true that the facts underlying this suit are quite unusual, neither unusual facts nor legal issues of first impression require, or in this instance justify, certification of an interlocutory appeal.").

This Court does not take lightly the Supreme Court's admonition that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. v. Sup. Ct.*, 480 U.S. 102, 117 (1987). In concluding that it has general personal jurisdiction over Daoud, the Court exercised such care, and did so pursuant to the standards provided by the Supreme Court and the Fifth Circuit. For these reasons, the Court concludes that, while there may be some ground for

difference of opinion as to the Court's application of the facts in this case to established law, there is no conflicting authority on the relevant legal standard to be applied.

### 3. Whether an immediate decision will advance the litigation

Plaintiffs contend that the litigation will not be advanced by an immediate decision, as Daoud's conduct will be at issue in this case regardless of the Court's exercise of jurisdiction over it. *Cf. Scuderi v. Cushion Cut, Inc.*, 1992 WL 180129 at *1 (E.D. La. 1992) (certification might not advance proceedings if one defendant were dismissed, because other defendants would inevitably point the finger at the dismissed defendant). Daoud urges that an immediate decision will advance the litigation, as it would streamline the issues and minimize the burden on Daoud of defending itself in an action in the United States. The Court does not necessarily agree that an immediate decision on this issue would streamline the case, as Daoud's conduct would likely still be a central issue in the litigation. And, while the Court does not ignore the expense of litigation that Daoud must endure by continuing to litigate this case, such expense cannot alone justify certification, especially in light of the Court's conclusion that this issue fails to meet the other Section 1292(b) factors.

### B. Whether separate jurisdictional inquiries were required for each alleged Daoud entity

Daoud also asks the Court to certify the question of whether separate jurisdictional inquiries were required for two Daoud entities. The Court is perplexed by this request. After accepting service of process as a single entity and filing two motions to dismiss that neglected to allege that Daoud is really made up of two entities entitled to

8

separate jurisdictional inquiries (Doc. Nos. 236 and 238),[1] Daoud belatedly asserted, in a footnote in its Reply to its own Renewed Motion to Dismiss, that "Daoud & Partners" is comprised of two corporate entities, each of which requires its own jurisdictional inquiry. (Doc. No. 252 at 4 n.7.) Plaintiffs responded that they lacked sufficient evidence to address such a contention, as Daoud objected to Plaintiffs' discovery of its corporate form. Plaintiffs also urged that, to the extent that these two entities exist separately on paper, they are not, in fact, separate companies. It is undisputed that the companies have the same name and owner. Plaintiffs also indicate that the companies share the same business address, telephone number, email address, logo, DUNS number, website, and bank account, and that they have overlapping personnel and projects. In declining to rule on the "separate entities" issue in its December Order, the Court agreed with Plaintiffs that the issue was too premature for the Court's consideration. The Court did not hold, as Daoud implies, that two companies found to be separate corporate entities would not be entitled to separate jurisdictional inquiries.

### 1. Presence of a controlling question of law

Daoud urges that this issue is a controlling question of law, because reversal would likely terminate this action against Daoud JOR, one of the two alleged Daoud entities. While the entitlement to separate jurisdictional inquiries may be a question of law, the issue of the two companies' corporate alignment or lack thereof is a question of fact, and one on which the Court feels sorely under-informed.

---

[1] Daoud contends that it raised the issue of separate entities in earlier motions to dismiss. As the parties know, the Court denied those motions without prejudice when it allowed the parties to conduct jurisdictional discovery. (Doc. No. 231.) Moreover, even in those motions, the merits of which were never considered, Daoud discusses only the existence of two corporate entities, and does not contend that it is entitled to separate jurisdictional inquiries. (*See* Doc. No. 213 at 3-4.)

### 2. Existence of a substantial ground for difference of opinion

Because the Court declined even to consider the separate entities question, Daoud cannot cite to an opinion by the Court as to which any difference of opinion could exist. The only question on which there might be disagreement—the Court's decision not to consider this issue in light of the dearth of information provided to the Court—is not an "opinion," and cannot satisfy this prong of the analysis.

### 3. Whether an immediate decision will advance the litigation

As to the third factor, it is not at all clear how a dismissal of the purportedly separate Daoud entity would advance this litigation; indeed, it could slow things down. Further discovery may indicate, as Plaintiffs contend, that the two entities, if they are truly separate, are alter egos, and therefore are both subject to the Court's jurisdiction. Thus, the Court is not convinced that an immediate decision, even if one could be made, would advance the litigation.

## C. Whether the Indemnification Clause in Daoud's Contract with KBR Establishes Specific Jurisdiction

Finally, Daoud seeks certification on the Court's conclusion that an indemnification clause in Daoud's contract with KBR gives rise to specific personal jurisdiction over Daoud in Houston, where KBR is being sued.

### 1. Presence of a controlling question of law

Daoud contends that this is a controlling question of law, because reversal would result in the dismissal of KBR's cross-claim. Unlike the general jurisdiction inquiry, above, this issue does involve a question of law, as Daoud contends that the Court's decision conflicts with cases holding that an indemnification clause does not give rise to

10

specific jurisdiction anywhere the indemnitee is sued. Though this is an issue of law, whether the issue is controlling is less clear. Plaintiffs contend that it is not, as the Court has found alternative grounds for jurisdiction over Daoud, discussed above. On the other hand, because Daoud seeks to appeal *both* of this Court's jurisdictional findings, the two, in conjunction, may be seen as controlling (a reversal on both findings would result in the dismissal of Daoud from the case). Whether a controlling question of law exists here is a close call; however, because the Court ultimately concludes that there exists no substantial ground for a difference of opinion, it does not need to determine whether this issue presents a controlling question of law.

### 2. Existence of a substantial ground for difference of opinion

In urging that there exists a substantial ground for difference of opinion on this issue, Daoud asserts that the Court's holding is inconsistent with the unpublished opinions of two district courts outside of the Fifth Circuit. *See Walters v. Dollar Gen. Corp.*, 2011 WL 759555, at *6 (S.D. Ind. Feb. 24, 2011) (it would "undermine the rationale behind the personal jurisdiction due process requirements" if a contractual indemnification clause would subject a foreign indemnitor to jurisdiction in any court in the world); *United Philippine Lines, Inc. v. Metalrussia Corp. Ltd.*, 1997 WL 214959, at *5 (S.D.N.Y. Apr. 24, 1997) (foreign corporation's contractual indemnity did not support jurisdiction wherever the indemnitee is sued, because jurisdiction would then be the result of "the random, fortuitous act of a third party who selects the forum in which to sue" the indemnitee). If Fifth Circuit and Texas case law did not provide further clarity on the legal standard governing this situation, Daoud might be correct that a substantial ground for difference of opinion exists.

However, as KBR notes, the Fifth Circuit "has consistently looked to the place of contractual performance to determine whether the making of a contract with a Texas resident is sufficiently purposeful to satisfy minimum contacts." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992) (citing *Barnstone v. Congregation Am Echad*, 574 F.2d 286, 288 (5th Cir. 1978)). And, under Texas law, the place of performance of a contractual obligation to defend and indemnify is the place where the party is sued, regardless of the place of performance of other contractual provision. *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 171 (Tex. App.—Houston [14th Dist.] 2002, no pet.). In the December Order, the Court read this clear Fifth Circuit and Texas case law to mean that the place of contractual performance—here, Houston, Texas—satisfies the minimum contacts test. Daoud has failed to demonstrate any difference of opinion within the Fifth Circuit or Texas as to the law that the Court applied in the December Order.

### 3. Whether an immediate decision will advance the litigation

Lastly, it is not clear that an immediate decision on specific jurisdiction would advance the litigation. Plaintiffs contend that it would not, because the Court also concluded that it has general jurisdiction, as discussed above. KBR contends that an immediate decision would not advance the litigation because the dismissal of KBR's cross-claims would force KBR to litigate those claims *after* litigating Plaintiffs' claims, resulting in a waste of judicial resources. The Court agrees that either of these outcomes would slow litigation, rather than advance it. However, because there is not a substantial ground for difference of opinion on this issue, the Court does not need to determine

whether an immediate decision will advance the litigation, as certification is unwarranted in any event.

## IV.     CONCLUSION

For the reasons discussed above, the Court concludes that Daoud's Request to Certify the December 12, 2011 Order must be **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 5th day of March, 2012.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE