# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| RAMCHANDRA ADHIKARI, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. H-09-1237 |
| | ) | |
| v. | ) | Judge Keith P. Ellison |
| | ) | |
| DAOUD & PARTNERS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' OPPOSITION TO KBR'S MOTION FOR PROTECTIVE ORDER AND CROSS MOTION TO COMPEL DISCOVERY

### PUBLIC COPY

Agnieszka M. Fryszman,
Attorney-In-Charge, admitted *pro hac vice*
Maureen E. McOwen, admitted *pro hac vice*
Matiangai V.S. Sirleaf, admitted *pro hac vice*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W., Suite 500W
Washington, D.C.  20005-3964
Telephone: 202-408-4600
Facsimile:  202-408-4699

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    STANDARD OF REVIEW .................................................................................... 3

III.    BACKGROUND FACTS ...................................................................................... 3

IV.    ARGUMENT ...................................................................................................... 5

     A.    KBR's decision to limit its ESI search to, as a practical matter, six cherry-picked custodians does not satisfy its discovery obligations ................................. 7

     B.    KBR must use a reasonable list of search terms to identify responsive documents ............................................................................................. 14

     C.    There is no basis for limiting discovery here. ....................................... 17

V.    CONCLUSION .................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Camesi v. Univ. of Pittsburgh,*
   269 F.R.D. 493 (W.D. Pa. 2010) ...................................................................9, 14,18

*Canon U.S.A., Inc. v. S.A.M., Inc.,*
   No. 07-01201, 2008 U.S. Dist. LEXIS 47712 (E.D. La., June 20, 2008)...................................3

*Chen v. LW Rest., Inc.,*
   No. 10 CV 200, 2011 U.S. Dist. LEXIS 85403 (E.D.N.Y. Aug. 3, 2011) .............................13

*Columbia Pictures Indus. v. Bunnell,*
   No. 06-1093, 2007 U.S. Dist. LEXIS 46364 (C.D. Cal. May 29, 2007) ...................................9

*Crosby v. La. Health Serv. and Indem. Co.,*
   647 F.3d 258 (5th Cir. 2011) ....................................................................................5

*Easter v. Aventis Pasteur, Inc.,*
   No. 5:03-CV-141, 2004 U.S. Dist. LEXIS 30701 (E.D. Tex. Dec. 22, 2004)........................17

*United States ex rel. McBride v. Halliburton Co.,*
   272 F.R.D. 235 (D.D.C. 2011)..............................................................................8, 12, 19

*Merrill v. Waffle House, Inc.,*
   227 F.R.D. 467 (N.D. Tex. 2005) ...............................................................................1

*Mikron Indus. v. Hurd Windows & Doors, Inc.,*
   No. C07-532, 2008 U.S. Dist. LEXIS 35166 (W.D. Wash. Apr. 21, 2008).............................9

*Oppenheimer Fund, Inc. v. Sanders,*
   437 U.S. 340 (1978)..................................................................................................6

*Osborne v. C.H. Robinson Co.,*
   No. 08 C 50165, 2011 U.S. Dist. LEXIS 123168 (N.D. Ill. Oct. 25, 2011) ...........................16

*Paul Morrell, Inc. v. Kellogg Brown & Root Servs., Inc.,*
   No. 08-cv-72 (E.D. Va. Nov. 10, 2008).......................................................................10

*Pension Comm. v. Banc of America Sec., LLC,*
   685 F. Supp. 2d 456 (S.D.N.Y. 2010)...................................................................10, 14, 18

*Peskoff v. Faber,*
   240 F.R.D. 26 (D.D.C. 2007)......................................................................................6

*Pippins v. KPMG LLP,*
    No. 11 Civ. 0377, 2011 U.S. Dist. LEXIS 116427 (S.D.N.Y. Oct. 7, 2011) ..........................10

*Planned Prop. Devs., Inc. v. M/V Rodon Amarandon,*
    No. 05-1397, 2006 U.S. Dist. LEXIS 28976 (E.D. La. May 12, 2006).....................................5

*Playboy Enters., Inc. v. Welles,*
    60 F. Supp. 2d 1050 (S.D. Cal. 1999)..............................................................................17, 18

*Rimkus Consulting Grp., Inc. v. Cammarata,*
    688 F. Supp. 2d 598 (S.D. Tex. 2010) ...................................................................................3

*In re Seroquel Prods. Liab. Litig.,*
    244 F.R.D. 650 (M.D. Fla. 2007).....................................................................................10, 15

*Seven Seas Cruises S. De R.L. v. V. Ships Leisure SAM,*
    No. 09-23411, 2011 U.S. Dist. LEXIS 19465 (S.D. Fla. Feb. 19, 2011) ...............................10

*The Proctor & Gamble Co. v. S.C. Johnson & Son, Inc.,*
    No. 9:08-cv-143, 2009 U.S. Dist. LEXIS 13190 (E.D. Tex. Feb. 19, 2009).........................6, 9

*United States v. Garrett,*
    571 F.2d 1323 (5th Cir. 1978) ...............................................................................................3

*United States v. Procter & Gamble Co.,*
    356 U.S. 677 (1958)..............................................................................................................10

*W.E. Aubuchon v. Benefirst LLC,*
    245 F.R.D. 38 (D. Mass. 2007).............................................................................................19

*William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.,*
    256 F.R.D. 134 (S.D.N.Y. 2009) ..........................................................................................15

*Zubulake v. UBS Warburg LLC*
    (*"Zubulake I"*), 217 F.R.D. 309 (S.D.N.Y. 2003)........................................................... *passim*

*Zubulake v. UBS Warburg LLC*
    (*"Zubulake II"*), 216 F.R.D. 280 (S.D.N.Y. 2003) ......................................................... *passim*

*Zubulake v. UBS Warburg LLC*
    (*"Zubulake III"*), 229 F.R.D. 422 (S.D.N.Y. 2004) ..........................................................10, 12

STATUTES

18 U.S.C. § 1962...........................................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1)................................................................................................1

Fed. R. Civ. P. 26(b)(2)(B)..........................................................................................3

Fed. R. Civ. P. 26(b)(2)(C)........................................................................................17

I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

Under the Federal Rules of Civil Procedure, a party may obtain discovery of information "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  The material need not be admissible, but only "reasonably calculated to lead to the discovery of admissible evidence." *Id.* "Unless it is clear that the information sought can have *no possible bearing* on the claim or defense of a party, the request for discovery should be allowed." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (emphasis added).  The issue before the Court is whether Plaintiffs are entitled to discovery sufficient to prove their claims that, inter alia, (a) KBR knowingly obtained labor and services in violation of the human trafficking and forced labor laws and (b) KBR formed an "enterprise" and engaged in a "pattern" of human trafficking violations as required for a civil claim under RICO, 18 U.S.C. § 1962.

KBR does not challenge the scope of Plaintiffs' document requests, as refined by the meet and confer process. *See* Defs.' Mot. for Protective Order and for Status Conference, ECF No. 288 at 1 ("KBR Mot.") ("this motion refers only to electronic discovery").  Rather, KBR first contends that it should not be required to search the electronic files of any additional custodians – regardless of whether that individual's files are already loaded and available on KBR's Introspect Database.  KBR has searched the electronic files of only ten self-selected custodians.  Of these ten, one had no (zero) responsive documents at all and three others produced, respectively, one, two and 14 documents.  Moreover, the self-selected custodians do not span the relevant time period; do not include any executive level officers or U.S. based managers of any defendants; and do **not** include, among other omissions, the following: the person tasked with collecting information and responding to media inquiries regarding human trafficking allegations; the person designated to receive complaints from other employees about human trafficking; the person contacted by the U.S. military regarding suspect recruiting

practices; the person who attended a meeting at the U.S. embassy regarding human trafficking; the person who investigated and responded to allegations made about abuses of third country nationals or the individuals who reported abuses of third country national workers.

Second, KBR has also refused to run key word searches on the existing custodians, even though KBR does not contend that the existing custodians' data is inaccessible. The data for the current ten custodians is, of course, plainly accessible. After Plaintiffs and KBR agreed to a list of electronic search terms well over a year ago, KBR recanted and now insists on using only a truncated list of terms intended to serve as an interim first-step for evaluating search terms and refining future searches. This interim list was never intended to and in fact does not cover the scope of the agreed to document requests in this case -- requests KBR agreed to respond to and does not challenge. The terms that KBR refuses to search for include (1) variations on the terms "labor broker" and "labor recruiter"; (2) Boolean searches designed to capture documents related to coercion, document fraud, and forced labor; and (3) common slang terms for workers from Southeast Asia. Plaintiffs' list of proposed additional terms is, moreover, still narrower than KBR's *own* original list

KBR's document production remains incomplete and its search methodology is fundamentally inadequate. For instance, KBR produced 19,131 pages of laundry logs that appear to list every time someone at Al Asad Airbase dropped off their dirty laundry. *See, e.g.*, Ex. 1 (KBR0012457-71). Yet, KBR filed this motion for a protective order because it believes additional searches as described above would be unduly burdensome.

KBR's motion for a protective order should be denied. Plaintiffs cross-move to compel production on two issues. First, Plaintiffs seek an order directing KBR to search the electronic files of a reasonable number of relevant additional custodians, as well as KBR's existing main

database[1] of electronically-stored information ("ESI").  *See* Ex. 2 (Pls.' Proposed ESI Custodians).  Second, Plaintiffs seek an order directing KBR to use Plaintiffs' proposed list of additional search terms.  *See* Ex. 3 (Pls.' Proposed Additional Search Terms).  Plaintiffs conferred with counsel for the KBR Defendants who oppose the relief requested.

## II.   STANDARD OF REVIEW

Whether on a motion for a protective order or a motion to compel, the party resisting discovery bears the burden to "show that the information [sought] is not reasonably accessible because of undue burden or cost."  Fed. R. Civ. P. 26(b)(2)(B); *see also Canon U.S.A., Inc. v. S.A.M., Inc.,* 2008 U.S. Dist. LEXIS 47712, at *8 (E.D. La., June 20, 2008).  Even if such a showing is made, "the court may nonetheless order discovery from such sources if the requesting party shows good cause."  *Id.*; *see also Rimkus Consulting Grp., Inc. v. Cammarata,* 688 F. Supp. 2d 598, 632 n.30 (S.D. Tex. 2010).  When a party seeks a protective order, the "burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of facts as distinguished from stereotyped and conclusory statements." *United States v. Garrett,* 571 F.2d 1323, 1326 n.3 (5th Cir. 1978).

## III.   BACKGROUND FACTS

On January 21, 2010, Plaintiffs served Document Requests on KBR.  On June 29, 2010, KBR produced its first set of responsive documents.  This initial production contained documents maintained in paper copy or PDF files only; it did not contain any ESI.

On July 28, 2010, KBR informed Plaintiffs that it had selected ten ESI "custodians" whose files would be searched for responsive documents.  *See* Ex. 4 (Letter from KBR to Pls., July 28, 2010).  Plaintiffs responded that the proposed list of custodians was inadequate.  *See* Ex.

---

[1]      Many of the additional proposed custodians may in fact already be included in KBR's main database, and are therefore plainly accessible.

5 (Letter from Pls. to KBR, Aug. 19, 2010).  KBR's counsel initially indicated that, in addition to

the ten selected custodians, the company would search its main database, which includes the ESI

for all of KBR's current litigation matters.  *See, e.g.*, Ex. 6 (Email from Pls. to KBR, Mar. 21,

2011).  KBR later retracted that commitment without explanation.

While discussing the selection of custodians, the parties were simultaneously discussing

the key words and Boolean queries that KBR would use to search its ESI.  On June 21, 2010,

KBR submitted a proposed list of search terms.  Plaintiffs reviewed and approved the terms and

responded one week later with a small number of variants and additional terms.  *See* Ex. 7

(Letter from Pls. to KBR and attached KBR's Search Terms with Pls.' Proposed Variants, June

28, 2010).  On July 28, 2010, KBR's counsel informed the Plaintiffs that it agreed to the full list

of terms developed cooperatively by the parties.  Ex. 4.

Despite having reached agreement on the search terms and despite KBR's insistence on

beginning with a search of only ten individuals, KBR's electronic production still was not

forthcoming.  Three more months passed and KBR had not yet produced a single electronically-

stored document.  After conferring with KBR several times about the delay, Plaintiffs suggested

running an interim search using an abbreviated list of key words.  *See* Ex. 8 (Letter from Pls. to

KBR, Oct. 21, 2010).  Plaintiffs asked that KBR "review and produce responsive documents

returned by the highlighted terms within the next two weeks while we negotiate how to refine

and narrow the remaining search terms."  *Id.*  Plaintiffs noted that such an initial "production

should also assist in determining how to further refine the remaining search terms."  *Id.*

KBR did not produce any responsive documents within two weeks, as requested.  On

January 12, 2011, almost one year after Plaintiffs served their Document Requests, KBR

produced its first batch of ESI.  That production contained just 617 documents.  They were

ostensibly collected from five individuals, but of those five, Craig Truskey produced zero documents, Thomas Lynch produced only one, and Robert Hill produced two. Thus, as a practical matter, KBR's first production consisted of a limited search from two custodians.

Five days after receiving that initial production, Plaintiffs wrote to KBR regarding the need to expand the search to include other custodians and a broader list of search terms. *See* Ex. 9 (Letter from Pls. to KBR, Jan. 18, 2011). In response, KBR promised to search the remaining five of the original ten custodians and produce any responsive documents "as soon as possible." Ex. 10 (Letter from KBR to Pls., Feb. 17, 2011). KBR, however, refused to search additional custodians or run any searches using the list of key words and queries it had agreed to months before. *Id.; see also* Ex. 4 (adopting mutually-agreed list). KBR's second ESI production on March 17, 2011, contained documents collected from just three more individuals. Nine months later, KBR made its third and final ESI production, which completed KBR's review of the initial custodians. On several occasions over the past two years KBR stated that once its initial production was complete, it would be willing to discuss searching additional custodians and using a more comprehensive list of terms. Plaintiffs have made every effort to cooperate with KBR, offering, for example, to refine and narrow KBR's own proposed search terms. *See, e.g.,* Ex. 11 (Letter from Pls. to KBR, July 26, 2011); Ex. 12 (Email from Pls. to KBR, Feb. 1, 2012). Unfortunately, these efforts have not been successful.

## IV.   ARGUMENT

"The discovery rules are accorded a broad and liberal treatment to affect their purpose of adequately informing litigants in civil trials." *Planned Prop. Devs., Inc. v. M/V Rodon Amarandon*, 2006 U.S. Dist. LEXIS 28976, at *7 (E.D. La. May 12, 2006) (citing *Herbert v. Lando*, 441 U.S. 153, 176 (1979)); *see also Crosby v. La. Health Serv. and Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). Electronic documents are no less subject to disclosure than paper

records. *Zubulake v. UBS Warburg LLC* ("*Zubulake I*"), 217 F.R.D. 309, 317 (S.D.N.Y. 2003) (citing cases). Indeed, electronic evidence is often cheaper and easier to produce than paper evidence because it can be searched automatically and mass photocopying is unnecessary. *Id.* at 318. KBR has not raised objections to Plaintiffs' requested discovery of its paper records.

*Zubulake I*, the leading case on electronic discovery, explicitly asked "whether cost-shifting must be considered in every case involving the discovery of electronic data which – in today's world – includes virtually all cases" and held that "the answer is, 'No.'" *Id.* at 317. *Zubulake I* holds that only inaccessible data – not accessible data – is subject to a cost-shifting analysis. *Id.* at 320; *see also, e.g.*, *The Proctor & Gamble Co. v. S.C. Johnson & Son, Inc.*, 2009 U.S. Dist. LEXIS 13190, at *1 (E.D. Tex. Feb. 19, 2009); *Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007); *Zubulake v. UBS Warburg LLC* ("*Zubulake II*"), 216 F.R.D. 280, 284 (S.D.N.Y. 2003). That rule is consistent with the longstanding rule that the responding party bears the expense of complying with discovery requests. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).

Thus, to conduct the *Zubulake I* analysis for cost-shifting, it must first be determined whether the data is accessible or inaccessible. 217 F.R.D. at 320. Data is deemed "accessible" if it is in a machine readable, readily usable format. *Id.* at 318-20. Data is "inaccessible" if it is not readily usable in its existing form. Hard drives, disks, and magnetic tapes are all "accessible" forms of data, whether they are active, on-line data or archives. *Id.* at 318-19. This initial determination controls the remainder of the analysis, since under *Zubulake I* and its progeny, the producing party bears the costs of producing all accessible data. *Id.* at 320; *Zubulake II*, 216 F.R.D. at 284.

Even if the data in question were deemed inaccessible, cost shifting would still be

inappropriate under the factors set forth in *Zubulake I*. 217 F.R.D. at 322.  These factors include:

> (1) the extent to which the request was specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) the total cost of production, when compared to the amount in controversy; (4) the total cost of production, when compared to the resources available to each party; (5) the relative ability of each party to control costs and the incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information.

*Proctor & Gamble*, 2009 U.S. Dist. LEXIS 13190, at *4-5 (citing *Zubulake I*, 217 F.R.D. at 322).

Application of these factors does not favor cost-shifting here.  Plaintiffs' requests are specifically tailored and non-duplicative; the costs associated with the requested searches are inconsequential compared with the amount in controversy and the resources available to the KBR Defendants; and the case involves complex and vitally important issues that warrant a full airing of the facts.

### A.   KBR's decision to limit its ESI search to, as a practical matter, six cherry-picked custodians does not satisfy its discovery obligations.

Plaintiffs do not seek inaccessible ESI.  To the contrary, KBR confirmed that the relevant ESI is now located in Houston (KBR Mot. at  9; Declaration of Dean Graves, Ex. K to KBR Mot., ¶ 7) and is stored on hard drives, company servers, network locations and tapes (Graves Decl. ¶ 5), all of which are accessible under *Zubulake I*. 217 F.R.D. at 318-19.  Moreover, much of the data may already be on KBR's Introspect database, a plainly accessible ESI source.

KBR is engaged in multiple litigations[2] and maintains a sophisticated system, Introspect, for storing, searching, and producing documents in discovery.  KBR Mot. at 7. The website for Introspect touts its cost efficiency and convenience.[3]  Files loaded into the system can be

---

[2]     *See* KBR, Inc., Annual Report (Form 10-K) at 51-57 (Feb. 23, 2011) (listing over 60 ongoing litigations, arbitrations, and investigations against KBR).

[3]     *See* Introspect Benefits, Autonomy, http://protect.autonomy.com/products/ediscovery

7

searched using Introspect's highly-sophisticated search engine designed for precisely this purpose.[4]  KBR's motion does not identify any cost to search the ESI of individuals whose data is already loaded into that system.

It appears that 230 custodians have already been loaded onto Introspect. *See e.g. United States ex rel. McBride v. Halliburton Co.*, 272 F.R.D. 235, 239-240 (D.D.C. 2011).  It cannot be disputed that this ESI is plainly accessible.  KBR has not confirmed whether Plaintiffs' requested custodians have already been loaded onto the Introspect database. *See* Ex. 13 (Email from Pls. to KBR, Oct. 26, 2011) (KBR did not respond); KBR Mot. at 10 n.10 (conceding KBR has some of the requested data already loaded).

Even for a "Person of Interest" whose data has not already been loaded into Introspect, KBR does not claim the ESI is inaccessible.  For example, KBR's "ghost images" appear to fall squarely within *Zubulake I*'s category three, which is classified as accessible. *Zubulake I*, 217 F.R.D. at 318-19.[5]  Rather, KBR claims that it will cost $1,870 per new custodian to collect,

---

/introspect/index.htm (last visited Mar. 8, 2012) (listing "Lower Costs" and "Time Management" among Introspect's Product Benefits, and noting that Introspect "Reduce[s] data sets and costs associated with slow collection, over-collection, review of non-relevant documents, and manual coding.").

[4]      *Id.* (describing Introspect as "the first truly advanced, global eDiscovery platform with . . . integrated keyword and conceptual search").

[5]      KBR explains that KBR has a "standard procedure" whereby each employee's ESI is imaged and copied via a process called "ghost imaging."  Graves Decl. ¶ 5.  Ghost images are done when an employee travels, in case "a laptop is lost, stolen, or becomes irrecoverably damaged," and when an employee is demobilized or identified as relevant to a litigation matter. Id. ¶¶ 5 -6.  This is consistent with *Zubulake I* category three: magnetic tape media "traditionally used for making disaster copies of records and also for records considered 'archival.'" *Zubulake I*, 217 F.RD. at 319.  KBR asserts that because the tapes must be sent to an outside vendor, that is an indicator the ESI is inaccessible, KBR Mot. at 10 n.6, but KBR has not claimed that the tapes are compressed, fragmented, erased, or in need of reconstruction as required to qualify as inaccessible. *Zubulake I*, 217 F.R.D. at 319.  KBR concedes, KBR Mot. at 10 n.6, that the ghost images are stored by custodian, not sequentially.  It is sequential storage, storage not organized for retrieval of individual documents or files, that *Zubulake I* places in category four and which may be considered inaccessible if it is not readily usable. *Zubulake I*, 217 F.R.D. at 319.  KBR

load, and perform quality control on the data. KBR Mot. at 7.  That ESI may then be searched in this case and any of the other litigations pending against KBR.  The cost of loading a handful of additional "Persons of Interest" at $1,870 per individual does not render their ESI inaccessible. *See, e.g., Mikron Indus. v. Hurd Windows & Doors, Inc.*, 2008 U.S. Dist. LEXIS 35166, at *6 (W.D. Wash. Apr. 21, 2008) (finding that defendants had not met their burden because "defendants offer[ed] little evidence beyond a cost estimate and conclusory characterizations of their ESI as 'inaccessible'" and "ha[d] not demonstrated an unusual hardship beyond that which ordinarily accompanies the discovery process.").  In 2010, KBR reported more than $10 billion in total revenue, of which $327 million was profit.[6]  Those figures place KBR among the largest and most profitable companies in the United States.[7]

KBR also asserts a hosting cost of $.001239 per document per month, and provides an average hosting cost per custodian.[8]  But for the 5,186 documents produced in this case, the hosting cost amounts to $77.40 per year.  Those documents could also be loaded onto fifteen CD-ROMs for a cost of approximately $3.30, or onto three DVDs for a cost of approximately $2.75.

---

has not made that showing here.  To the contrary, the Graves declaration establishes that Ghost image ESI is readily usable and accessible. Moreover, it is possible that the proposed custodians do not have their ESI "ghost imaged", but instead their data may fall into *Zubulake I* category one "Active, online data" or two "Near-line data", which would also plainly be accessible.

[6]    *See* Annual Report, *supra* note 2, at 60.

[7]    *See* CNN Money, *Fortune 500 2011 Annual Ranking of America's Largest Corporations,* http://money.cnn.com/magazines/fortune/fortune500/2011/full_list/201_300.html (last visited Mar. 8, 2012).

[8]    KBR cannot choose to store its electronic data on an expensive document hosting platform and then use that cost to justify unreasonable limitations on its search for responsive documents. *See Proctor & Gamble*, 2009 U.S. Dist. LEXIS 13190, at *3 n.2 (a $200 off-the-shelf software program could accomplish most of what defendant estimated would exceed $200,000); *Columbia Pictures Indus. v. Bunnell*, 2007 U.S. Dist. LEXIS 46364, at *34-35 n. 20 (C.D. Cal. May 29, 2007); *Camesi v. Univ. of Pittsburgh*, 269 F.R.D. 493, 495 (W.D. Pa. 2010). As the cases illustrate, there are many less expensive alternatives.

Modern discovery rules aim to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). To that end, "the failure to collect records—either paper or electronic—from key players constitutes gross negligence or willfulness" in violation of the Federal Rules. *Pension Comm. v. Banc of America Sec., LLC*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010). These "key players" are the "individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses," *Pippins v. KPMG LLP*, 2011 U.S. Dist. LEXIS 116427, at *15 (S.D.N.Y. Oct. 7, 2011) (internal citations omitted), including "the people identified in a party's initial disclosure and any subsequent supplementation thereto." *Zubulake v. UBS Warburg LLC* ("*Zubulake III*"), 229 F.R.D. 422, 433 (S.D.N.Y. 2004). It is not unusual for many individuals' files to be searched in the course of electronic discovery. *See, e.g.*, *In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 652 (M.D. Fla. 2007) (80 custodians); Order, *Paul Morrell, Inc. v. Kellogg Brown & Root Servs., Inc.*, No. 08-cv-72 (E.D. Va. Nov. 10, 2008) (46 custodians).

KBR's decision to search only ten custodians—four who had little or no responsive material whatsoever—fails to meet its obligations under the Federal Rules. *See Seroquel*, 244 F.R.D. at 652; *Seven Seas Cruises S. De R.L. v. V. Ships Leisure SAM*, 2011 U.S. Dist. LEXIS 19465, at *12 (S.D. Fla. Feb. 19, 2011) (defendant's search of nine employees was "wholly inadequate"). This action implicates KBR's activities in three countries—Jordan, Iraq, and the United States. KBR is a huge company that employs 35,000 people.[9] As of 2007, KBR had approximately 14,000 employees in Iraq alone.[10] This action relates to KBR's work for the U.S.

---

[9]    *See* Annual Report, *supra* note 2, at 10.
[10]   T. Christian Miller, *Contractors outnumber troops in Iraq*, L.A. Times, (July 4, 2007), *available at* http://articles.latimes.com/2007/jul/04/nation/na-private4.

Government in Iraq under the umbrella services contract, "LOGCAP III," which alone accounted for $2.8 billion in revenue in 2010, and substantially more in prior years, and therefore likely involved many of its employees.[11] Ten employees is a tiny fraction of KBR's workforce.

Moreover, the self-selected custodians are unrepresentative. The selected custodians are limited to individuals who served as administrators, managers or coordinators in Iraq or Kuwait. The list does not include any executive level officers or U.S. based managers of any defendants, which could limit Plaintiffs' ability to respond to KBR's defenses. The list also does not include lower level employees who were eyewitnesses to abuses or who reported suspected trafficking. Most significantly, the list does not include individuals tasked with investigating and responding to trafficking allegations; who attended meetings with the United States military regarding trafficking or document abuse; who reported trafficking; who were designated to receive reports of trafficking or other abuses; or other relevant categories. For example, the list does not include

to enable KBR to answer media inquires regarding trafficking allegations; or individuals Megan Mason contacted in Iraq in order to ascertain the facts.

Eight of the custodians were employed by a single division, KBR Technical Services. Two others also worked for Overseas Administration Services (OAS) and Service Employees International, Inc. KBR selected no custodians who worked for the other six KBR defendants—Kellogg Brown & Root, Inc.; Kellogg Brown & Root Services, Inc.; KBR, Inc.; KBR Holdings, LLC; Kellogg Brown & Root LLC; and Kellogg Brown & Root International, Inc. Finally, the

---

[11]     *Annual Report, supra* note 2, at 25.

11

list does not span the relevant time period.  While KBR agreed to produce documents from 2001 and 2002 relevant to KBR's selection of Daoud as a subcontractor and any due diligence or investigation KBR performed on any alternatives to Daoud, KBR failed to select *any* individuals employed by KBR in 2001 or 2002.  This likely means contemporaneous electronic documents related to that inquiry will not be produced.

Plaintiffs propose to remedy these deficiencies as follows:

(1) Plaintiffs seek an order requiring KBR to search the custodians already loaded into its Introspect database, as KBR has in other litigation. *See, e.g., McBride,* 272 F.R.D. at 239-240 (noting that the defendants searched the database of 230 custodians "for all of the custodians loaded into databases for any of defendants' current litigation matters (including those wholly unrelated to the instant case).")  This database is plainly accessible.

(2)  Plaintiffs seek an order requiring KBR to search a reasonable number of additional custodians.  The individuals can be drawn from among the persons of interest that Plaintiffs have identified in section A of Exhibit 2.  Because KBR has refused to identify the individuals already on the Introspect database, it is impossible for Plaintiffs to ascertain which, if any, of the possible additional custodians are "new."  The proposed additional custodians are discussed below and in the attached chart.

(3) Plaintiffs also request that KBR search the individuals identified by KBR itself, pursuant to Rule 26, as an individual likely to have discoverable information.  Those individuals are identified in section B of Exhibit 3.  *See Zubulake III,* 229 F.R.D. at 433 (people identified in a party's initial disclosures are "key players" whose files must be preserved and searched); *see also Chen v. LW Rest., Inc.,* 2011 U.S. Dist. LEXIS 85403, at *36 (E.D.N.Y. Aug. 3, 2011) (same, noting that "the failure to collect and preserve records from key players 'constitutes gross

negligence'" (quoting *Pension Comm.*, 685 F. Supp. 2d at 465, 477)).  These individuals are also likely to be included in the Introspect database already.

The additional proposed custodians were selected on the basis of their position at KBR, the time period they held that position, and documents in KBR's production or in other sources that indicate that they were involved in relevant matters and are likely to have responsive documents in their files.  In addition to the individuals mentioned above, these KBR employees include:

These individuals cover a range of job activities in a range of locations. Importantly, they include people at many levels of the KBR hierarchy, from low-level supervisors to vice presidents.[12] These and the other individuals listed in section A of Exhibit 2 are a more representative sample of KBR's employees than the existing custodians. KBR has never asserted that any of Plaintiffs' proposed custodians lack relevant documents or are unlikely to possess discoverable information. Likewise, KBR has never asserted that the files of the proposed custodians are duplicative of the files already searched, nor has it identified a more convenient source for that information. Finally, KBR has not asserted that the individuals' electronic data have been deleted, are stored on remote back-up tapes, or are otherwise presumptively inaccessible. Instead, KBR simply refuses to search additional individuals on grounds that it would prefer not to incur further discovery-related costs. That is not a valid objection to discovery. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 269 F.R.D. 493, 494-95 (W.D. Pa. 2010); *Zubulake II*, 216 F.R.D. at 284. Because the relevance of these individuals is uncontested and the information sought is not available from other sources, KBR is under an obligation to search these files. *Pension Comm.*, 685 F. Supp. 2d at 465.

**B.**   **KBR must use a reasonable list of search terms to identify responsive documents.**

KBR provides no justification for its refusal to use a reasonable list of search terms on the existing and accessible custodians. After proposing search terms and agreeing to a mutually-acceptable list in July 2010, KBR reneged on its agreement and now insists on restricting its search to a truncated list of terms that Plaintiffs had suggested as an interim step to test the system and assist in refining a final list of inquiries. The truncated list does not cover the scope of Plaintiffs' claims nor the agreed-upon document requests. For instance, the interim list did

---

[12]     Plaintiffs do not suggest that these are the only necessary custodians. Further discovery may show that searches of other individuals are necessary.

**not** include searches related to Daoud & Partners' role or relationship to KBR; searches designed to return documents related to KBR and Daoud's alleged document abuses, including terms such as "passport" or "visa"; or searches designed to return documents related to coercion, abuse or deception in relation to third country national laborers. Ex. 7 at 3-4 (KBR's Search Terms with Plaintiffs' Proposed Variants). The truncated list included the exact phrase "human trafficking," but did not include variations such as "trafficking in persons." *Id.*

In July 2011, Plaintiffs crafted a second list that is still narrower than the original mutually-acceptable list and repeatedly sought KBR's input on refining the search terms. *See Osborne v. C.H. Robinson Co.*, 2011 U.S. Dist. LEXIS 123168, at *16 (N.D. Ill. Oct. 25, 2011) ("Defendant had pertinent information, knew what Plaintiff was looking for, knew how to retrieve it, and knowingly prolonged the process by not engaging in reasonable communications with Plaintiff."); *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 135-36 (S.D.N.Y. 2009) (cooperation among counsel essential on search terms since the producing party is "in the best position to explain to the parties and the Court what nomenclature its employees used in emails"); *see also Seroquel*, 244 F.R.D. at 662 (use of key word searching "must be a cooperative and informed process").

Plaintiffs' proposed list of additional search terms contains just a few categories of terms that are all indisputably central to the case, including: (1) variations on the term "trafficking" including misspellings; (2) variations on the terms "labor broker" and "labor recruiter"; (3) Boolean searches designed to capture documents related to coercion, document fraud, and forced labor; and (4) common slang terms for workers from labor source countries in Southeast Asia. *See* Ex. 1. In addition, Plaintiffs have left a placeholder for the names of Daoud & Partners' managers and supervisors located at Al Asad during the relevant time period, to be identified by

15

KBR or Daoud.  Such queries go to the heart of this case, they are crafted to reduce false hits, and they are very reasonable in number.  Plaintiffs repeatedly asked for guidance from KBR on questions such as whether KBR had the ability to refine the searches (for example, to exclude documents that mention cars, trucks or highways in connection with "trafficking" with a "but not" boolean) but KBR refused to respond.

In contrast, the search terms KBR itself proposed were far broader and less carefully selected to target responsive documents.  For instance, KBR itself proposed the search term "subcontractor," without any restriction whatsoever.  It also proposed "laundry" and "dining facility," without restriction.  Not surprisingly, these general terms produced tens of thousands of hits: 76,719 for "subcontractor" and 65,932 for "laundry."  Plaintiffs are **not** asking KBR to run its **own**, overbroad, search terms.  Moreover, KBR has failed to voice any specific objections to Plaintiffs' suggested terms or propose any alternatives.[13]

The ESI of any custodian already in the Introspect database (such as the ten current custodians) is indisputably available and accessible.  Indeed, KBR has not identified the cost associated with running additional searches on existing custodians in the Introspect database as a barrier to additional discovery.  KBR claims that significant attorney time has been spent,[14] but the cost of paying defendants' attorneys to review the documents is not a basis for cost-shifting or denying discovery.  *Zubulake II*, 216 F.R.D. at 290 ("the responding party should *always* bear

---

[13]   As with the custodians, Plaintiffs note that additional search terms may be necessary if the instant searches prove ineffective or if additional discovery reveals other crucial terms. "Electronic discovery is often an iterative process and the parties should allow for refinement of search terms as their understanding of the issues develops."  *Osborne*, 2011 U.S. Dist. LEXIS 123168, at *20.

[14]   KBR explains, KBR Mot. at 10 n.7, that the total attorney fees recited reflect the review and production costs for both electronic and non-electronic documents.  Whether the total reflects the amount spent reviewing the documents produced in this case for both merits and personal jurisdiction discovery, or also includes the costs associated with loading and reviewing the documents in the database in general is not clear.

the cost of reviewing and producing electronic data once it has been converted to an accessible form"); *see also Easter v. Aventis Pasteur, Inc.*, 2004 U.S. Dist. LEXIS 30701, at *10-11 (E.D. Tex. Dec. 22, 2004).

### C.    There is no basis for limiting discovery here.

In deciding whether any limitation on discovery is justified, Rule 26 directs the Court to consider whether "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source[s]"; whether "the party seeking discovery has had ample opportunity to obtain the information sought by discovery in the action"; and whether "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).  These factors weigh strongly in favor of Plaintiffs' request for discovery of additional custodians and search terms.

The discovery sought is not duplicative or available from a more convenient source. KBR has never asserted that Plaintiffs' proposed search terms and custodians would produce duplicative information, nor has KBR identified a more convenient source for that information. By KBR's own account, it has structured its electronic data in such a way that it is only possible to search by individual custodians.[15]  KBR cannot structure its data by custodian and then unreasonably limit the custodians it is willing to search. *See Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1054 (S.D. Cal. 1999) (ordering a retrieval process for ESI where "this process has become necessary due to Defendant's own conduct" in managing its files); *see also Pension Comm.*, 685 F. Supp. 2d at 471 (litigants have a duty to "identify all of the key players and to

---

[15]     Plaintiffs asked KBR whether it has the ability to search across multiple custodians (Ex. 13), but KBR did not respond.

ensure that their electronic and paper records are preserved"). Plaintiffs have had no opportunity to obtain the information sought. At no point in this litigation have Plaintiffs had access to the information sought from the selected document custodians. KBR has never proposed an alternative means of producing the information Plaintiffs seek.

This case concerns a transnational human trafficking scheme where the harms occurred over a broad time period and in several different countries. The amount in controversy far exceeds the cost of searching a reasonable number of document custodians. Additionally, as noted above, KBR has access to the best discovery tools available. A company of KBR's size and sophistication is exceptionally well-situated to respond to reasonable document requests like those at issue in this case. *E.g.*, *Camesi*, 269 F.R.D. at 495 ("Defendants' cost objections are overruled based on the size of the [Defendants'] system, its assets, and its potential liability in this case.").

KBR's authority does not support the relief it seeks. The primary authority KBR relies on is *McBride*, 272 F.R.D. 235. There, the court denied the relator's request for further discovery, but only after KBR had already

- searched the entire Introspect database of 230 custodians. *Id.* at 239-40.
- searched 20 custodians likely to possess relevant information. *Id.* at 239.
- produced 2 million documents and 500,000 e-mails. *Id.* at 241.

Here, effectively six custodians have been searched, far fewer than the over 200 searched in *McBride*. Those six custodians produced 5,168 documents, also far fewer than the 2,500,000 produced in *McBride*. KBR's own authority supports Plaintiffs' requested relief. Similarly, KBR cites *W.E. Aubuchon v. Benefirst LLC*, 245 F.R.D. 38, 43 & 45 (D. Mass. 2007), but in that case the court found that although an out-of-business company's method of storage and lack of

indexing made its ESI inaccessible, there was nonetheless good cause for ordering production at defendant's own expense because the discovery sought was reasonable, relevant and important to the litigation.

The requested discovery here, too, is vital to this action.  Because KBR asserts that it can only search its electronically stored information by individual, the adequacy of KBR's discovery responses hinges on the selection of appropriate custodians and the use of appropriate search terms.

## V.    CONCLUSION

For the above reasons, Plaintiffs respectfully request that KBR's motion for a protective order be denied and Plaintiffs' cross-motion to compel be granted.

Dated:  March 9, 2011                           Respectfully submitted,


                                                /s/ Agnieszka M. Fryszman
                                                Agnieszka M. Fryszman
                                                Maureen E. McOwen
                                                Matiangai V.S. Sirleaf
                                                COHEN MILSTEIN SELLERS & TOLL PLLC
                                                1100 New York Ave. NW, Suite 500West
                                                Washington, D.C.  20005
                                                Tel: (202) 408-4600
                                                Fax: (202) 408-4699


                                                Paul L. Hoffman
                                                SCHONBRUN, DESIMONE, SEPLOW,
                                                 HARRIS & HOFFMAN LLP
                                                723 Ocean Front Walk
                                                Venice, CA  90291
                                                Telephone: 310-396-0731
                                                Facsimile:  310-399-7040

                                                *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Agnieszka M. Fryszman, hereby certify that on March 9, 2012, I caused a true and correct copy of Plaintiffs' Motion to Compel Discovery from the KBR Defendants (Redacted Public Copy – Material Under Seal Deleted), to be served on the Court and all parties of record via the Court's CM/ECF electronic filing system.

I further caused a true and correct copy of Plaintiffs' Motion to Compel Discovery from the KBR Defendants (Filed Under Seal Pursuant to Confidentiality Order), to be filed under seal via the Court's CM/ECF electronic filing system and to be served by commercial carrier upon the following persons entitled to receive the material under seal:

> Michael W. Mengis
> BAKER & HOSTETLER LLP
> 1000 Louisiana, Suite 2000
> Houston, Texas 77002-5018
> *Counsel for KBR Defendants*

> Christopher Tayback
> QUINN EMANUEL URQUHART & SULLIVAN LLP
> 865 S. Figueroa St., 10th Floor
> Los Angeles, California 90017
> *Counsel for Daoud & Partners*

Dated:  March 9, 2012

> Respectfully submitted,


> /s/ Agnieszka M. Fryszman
> Agnieszka M. Fryszman
> COHEN MILSTEIN SELLERS & TOLL PLLC
> 1100 New York Ave. NW, Suite 500West
> Washington, D.C.  20005
> Tel: (202) 408-4600
> Fax: (202) 408-4699

> *Counsel for Plaintiffs*

## <u>CERTIFICATE OF CONFERENCE</u>

On March 2, 2012, Counsel for Plaintiffs conferred with counsel for Defendants, who oppose this Motion.

<u>/s/ Agnieszka M. Fryszman</u>
Agnieszka M. Fryszman
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500West
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

*Counsel for Plaintiffs*