IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAMCHANDRA ADHIKARI, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 09-cv-1237 |
| v. | § | |
| | § | |
| DAOUD & PARTNERS, *et. al.*, | § | JUDGE KEITH P. ELLISON |
| | § | |
| Defendants. | § | |
| | § | |

---

**KBR DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL THE
PRODUCTION OF KBR ETHICS HOTLINE REPORTS**

**REDACTED PUBLIC COPY**

*MATERIAL UNDER SEAL DELETED PURSUANT TO
CONFIDENTIALITY ORDER AND AGREEMENT*

---

Michael W. Mengis
State Bar No. 13941040
Billy M. Donley
State Bar No. 05977805
BAKER & HOSTETLER LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002-5018
Telephone:  713.751.1600
Facsimile:  713.751.1717

OF COUNSEL:
Mark Lowes
State Bar No. 12636300
Vice President for Litigation
Kellogg Brown & Root, LLC
601 Jefferson Street, Suite 3720
Houston, Texas  77020
Telephone:  713.753.8635
Facsimile:  713.753.3443

David B. Rivkin, Jr. (pro hac vice)
D.C. Bar No. 394446
Lee A. Casey (pro hac vice)
D.C. Bar No. 447443
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W. Suite 1100
Washington, D.C.  20036
Telephone:  202.861.1500
Facsimile:  202.861.1783

ATTORNEYS FOR KBR DEFENDANTS

Page

## <u>TABLE OF AUTHORITIES</u>

I.     NATURE OF PROCEEDING & SUMMARY OF ARGUMENT ................................. 1

II.    KBR'S CODE OF BUSINESS CONDUCT PROGRAM ................................................ 2

    A.    Ethics and Compliance Hotline.................................................................. 3

    B.    Ethics and Compliance Investigation......................................................... 3

    C.    The COBC Program is Administered and Supervised Through KBR's Law Department............................................................................................... 4

III.   THE ETHICS AND COMPLIANCE DOCUMENTS  SPECIFICALLY REQUESTED BY PLAINTIFFS .................................................................... 5

    A.    Ethics and Compliance Hotline Reports .................................................... 5

    B.    Ethics and Compliance Investigation Report............................................. 5

    C.    Internal Law Department Communications ................................................ 6

    D.    The Documents are not Relevant to Plaintiffs' Claims in this Case ..................... 6

IV.   ISSUES PRESENTED ......................................................................................... 7

V.    ARGUMENT & AUTHORITIES ......................................................................... 8

    A.    Plaintiffs are not Entitled to Continue with Their Impermissible and Expensive Fishing Expedition ................................................................ 8

    B.    KBR's Ethics and Compliance Documents are Protected from Disclosure by KBR's Attorney Client Privilege ........................................................ 9

    C.    KBR's Ethics and Compliance Documents are Protected from Disclosure under KBR's Work-Product Privilege .................................................... 12

    D.    Other Courts Have Found Similar Investigation Files Protected by the Attorney Client and Work-Product Privileges ....................................... 13

    E.    The Cases Cited by Plaintiffs do not Support Production of KBR's Privileged Documents ......................................................................... 14

    F.    KBR's Ethics and Compliance Documents are Irrelevant to Plaintiffs' Claims ............................................................................................... 16

    G.    All Responsive Ethics and Compliance Reports are Identified in KBR's Privilege Log....................................................................................... 17

    H.    Public Policy is Advanced by Maintaining the Confidentiality of KBR's Ethics and Compliance Documents ..................................................... 18

    I.    KBR Will Tender the Documents at Issue for an In Camera Review by the Court.................................................................................................. 18

VI.   CONCLUSION AND PRAYER ........................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. F.B.I.*,
 192 F.R.D. 12 (D.D.C.2000) ................................................................................ 14

*EEOC v. ABM Industries Inc.*,
 No. 1:07-CV-01428 LJO JL, 2010 WL 481395 (E.D.Ca. Feb. 5, 2010) ............................... 15

*Elec. Data Sys. Corp. v. Steingraber*,
 No. 4:02 CV 225, 2003 WL 21653414 (E.D. Tex. July 9, 2003) .......................................... 10

*Enron Corp. Savings Plan v. Hewitt Assocs., L.L.C.*,
 258 F.R.D. 149 (S.D.Tex. 2009) ..................................................................................... 16, 17

*F.T.C. v. TRW, Inc.*,
 479 F.Supp. 160 (D.D.C. 1979) ..................................................................................... 11, 19

*Hayden v. Acadian Gas Pipeline Sys.*,
 173 F.R.D. 429 (E.D. La. 1997) .......................................................................................... 12

*In re Allen*,
 106 F.3d 582 (4th Cir. 1997) ............................................................................................... 10

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
 658 F.2d 1355 (9th Cir. 1981) ............................................................................................. 11

*In re Grand Jury Investigation*,
 599 F.2d 1224 (3rd Cir. 1979) ............................................................................................. 12

*In re Kaiser Aluminum & Chem. Co.*,
 214 F.3d 586 (5th Cir. 2000) ............................................................................................... 12

*In re Linerboard Antitrust Litig.*,
 237 F.R.D. 373 (E.D. Pa. 2006) .......................................................................................... 12

*In re Subpoena of Curran, Mariner Health Care, Inc. v. Cornerstone Health Mgmt. Co*,
 No. 3:04-MC-039-M, 2004 WL 2099870 (N.D. Tex. Sept. 20, 2004) .................................. 10

*Jessel, M.R. in Anderson v. Bank*, 2 Ch.D. 644, 649 (1876) ......................................................... 11

*Johnson v. Standex Int'l Corp.*,
 153 F.R.D. 80 (E.D.Va. 1994) ............................................................................................ 16

*Leamon v. KBR, Inc.*,
 No. H-10-253, p. 1 (S.D.Tex. June 28, 2012) ...................................................................... 13

*McDougal-Wilson v. Goodyear Tire & Ribber Co.,*
  232 F.R.D. 246 (E.D.N.C. 2005) ........................................ 15

*Pinstripe, Inc. v. Manpower, Inc.,*
  No. 07-CV-620-GKF-PJC, 2009 WL 2252137 (N.D.Okla. July 28, 2009) ......................... 14

*S.E.C. v. Brady,*
  238 F.R.D. 429 (N.D.Tex. 2006) ........................................ 17

*Sanchez,* 229 F.R.D. at 654-55 ............................................ 14

*Sandra TE. v. S. Berwyn Sch. Dist. 100,*
  600 F.3d 612 (7th Cir. 2010) ............................................ 9

*Scott v. Leavenworth Unified Sch. Dist. No. 453,*
  190 F.R.D. 583 (D. Kan. 1999) ......................................... 17

*Smith v. Texaco, Inc.,*
  186 F.R.D. 354 (E.D. Tex. 1999) ....................................... 10

*U.S. v. Kovel,*
  296 F.2d 918 (2nd Cir. 1961) ....................................... 11, 19

*U.S. v. Pipkins,*
  528 F.2d 559 (5th Cir. 1976) ....................................... 11, 19

*United States v. Davis,*
  636 F.2d 1028 (5th Cir. 1981) ......................................... 12

*United States v. Nobles,*
  422 U.S. 225 (1975) ............................................... 10, 14

*Upjohn v. United States,*
  449 U.S. 383 (1981) ...................................... 7, 9, 10, 11, 12

STATUTES

12 O.S. § 2502(B) ........................................................ 14

OTHER AUTHORITIES

FED.R.CIV.P. 26(b)(1) ..................................................... 16

FED.R.CIV.P. 26(b)(3) .................................................. 12, 14

FED.R.CIV.P. 30(b)(1) ..................................................... 16

Linda Warren, *available at* http://dpc.senate.gov/hearings/hearing42/warren.pdf ...................... 17

Policy No. 3-0011 ................................................................................................................. 3

Rule 26 ................................................................................................................................. 16

Rule of Evidence 401 .......................................................................................................... 16

Senate Democratic Policy Committee Hearing, <u>Contracting Abuses in Iraq: Is the Bush</u>
<u>Administration Safeguarding American Taxpayer Dollars?</u>................................................. 17

Defendants KELLOGG BROWN & ROOT, INC.; KELLOGG BROWN & ROOT SERVICES, INC.; KBR, INC.; KBR HOLDINGS, LLC; KELLOGG BROWN & ROOT LLC; KBR TECHNICAL SERVICES, INC.; KELLOGG BROWN & ROOT INTERNATIONAL, INC.; SERVICE EMPLOYEES INTERNATIONAL, INC.; and OVERSEAS ADMINISTRATION SERVICES, LTD (hereinafter "KBR Defendants" or "KBR"), hereby file this Response to Plaintiffs' Motion to Compel the Production of KBR's Ethics Hotline Reports. In support, KBR would show the Court as follows:

## I.  NATURE OF PROCEEDING & SUMMARY OF ARGUMENT

Despite this case being on file for almost four years, Plaintiffs have not produced a scintilla of evidence to connect KBR to Plaintiffs' allegations.  In a desperate and never-ending quest to find anything resembling evidence to support their Complaint, because they have no evidence of their own, Plaintiffs now seek the production of four privileged (and irrelevant) documents from KBR's privilege log.  The four documents at issue include two Hotline Reports, and an investigation and email transmittal between attorneys related to one of the Hotline Reports.  All four of these documents are Ethics and Compliance ("E&C") records generated under the direction and supervision of the KBR Law Department pursuant to KBR's Code of Business Conduct ("COBC"), and the KBR Law Department is the custodian for the records. (Ex. J, ¶ 10) (Decl. of Dean Graves).  None of the documents relate in any way to the Plaintiffs here.

Desperate for evidence that does not exist, Plaintiffs also request that KBR Defendants be required to "conduct a thorough search for additional relevant and responsive reports" and "to promptly produce any additional reports uncovered in that search."[1]  As set forth more fully

---

[1] In support of Plaintiffs' argument that KBR has not searched for COBC documents, Plaintiffs argue that KBR's production has come from only 10 custodians, called "Persons of Interest" ("POI").  This is not true.  While

1

below, KBR Defendants have already performed such a search and no additional responsive documents have been identified.   If additional responsive documents are located, KBR Defendants will supplement their privilege log as required by the Federal Rules.  No order of this Court is necessary in this regard.[2]

The Court should deny Plaintiffs' motion to compel the E&C documents because the motion is nothing more than a continuation of Plaintiffs' fishing for evidence that does not exist, the documents are protected by KBR's attorney-client and work product privileges, and the documents are completely irrelevant to any claims or defenses asserted in this case.   In the alternative, KBR respectfully requests that the Court conduct an *in camera* inspection of the documents subject to Plaintiffs' motion to compel to determine whether the documents at issue are privileged or relevant to a claim or defense in this matter.

## II.      KBR'S CODE OF BUSINESS CONDUCT PROGRAM

The Code of Business Conduct of KBR, Inc. and subsidiary companies contains the corporate policies adopted by the Board of Directors that relate to the legal and ethical standards for the conduct of directors, employees, and agents of KBR.   (Ex. A, ¶ 2) (Decl. of Chris Heinrich); (Ex. G, p. 7) (Code of Business Conduct of KBR, Inc.).   The purpose of the COBC is to provide KBR's expectations as to the legal and ethical nature of conduct of KBR's directors, employees, and agents while acting on KBR's behalf and to provide for the administration of KBR's COBC.   (Ex. A, ¶ 2); (Ex. G, p. 7).   This corporate policy is intended to enhance the

---

electronic discovery has been limited to 10 POIs, non-electronic discovery has come from a variety of sources within KBR.  Each of the four documents at issue here are part of KBR's non-electronic document production, which bears the bates-label of "KBR", as opposed to electronic documents, which are bates labeled "KBRE".

[2] Plaintiffs' complaint about the timing of KBR's privilege log is gratuitous and not relevant to the issues before the Court.  Plaintiffs' discovery requests in this case have been overbroad, burdensome and extraordinarily costly, to say the least—all for a case in which Plaintiffs have nothing to support their allegations.  The KBR Defendants have worked diligently to provide a privilege log to Plaintiffs and have worked with Plaintiffs to provide additional information when requested.   Raising this issue, in this context, is nothing more than an attempt to prejudice the Court with misrepresentations concerning an irrelevant issue.

qualifications of the COBC as a program that is designed, implemented, and enforced so as to be effective in preventing and detecting criminal conduct, and promote an organizational culture that encourages ethical conduct and a commitment to compliance with the law.  (Ex. A, ¶ 2); (Ex. G, p. 7).  The COBC was designed to "provide for obtaining advice of legal counsel."  (Ex. G, p. 9); *see also* (Ex. J, ¶ 2).

### A.    Ethics and Compliance Hotline

KBR takes allegations seriously and thoroughly investigates all credible allegations—large and small.  (Ex. A, ¶ 3).  Accordingly, directors, employees, and, to the extent appropriate, agents, are encouraged and, in fact, obligated to promptly report any violations of the COBC.  (*Id*.); (Ex. G, p. 10); (Ex. E) (Corporate Policy No. 3-0011, Reporting Obligations and Investigations).  The existence and nature of the reporting system is communicated to all directors and employees and, to the extent appropriate, to agents of KBR.  (Ex. A, ¶ 3); (Ex. G, p. 10).

The reporting system includes an E&C Hotline.  (Ex. A, ¶ 4); (Ex. G, p. 10).  Calls made to the E&C Hotline are confidential and a caller's identity need not be disclosed.  (*Id*.); (Ex. E) (Confidential Reporting of Alleged Code Violations).  Complaints made to the E&C Hotline are generated into an E&C Hotline Report.  (Ex. A, ¶ 4).  These confidential reports are then directly communicated to the Law Department for the purpose of providing legal advice to KBR and the supervision of an internal investigation.  (*Id*.).  When the Law Department receives information regarding an alleged violation of the COBC, this information is transmitted to the person or persons authorized by the Policy Committee to investigate alleged violations of the COBC.  (*Id*.).

### B.    Ethics and Compliance Investigation

KBR's COBC program is vigorous, and KBR shows no tolerance for employees found to have engaged in misconduct.  (*Id*., ¶ 5).  KBR employs full-time investigators (several of whom

3

are former law enforcement officers) to conduct investigations and prepare memoranda, reports, email communications, and other similar documents in the course of investigating allegations of employee misconduct.  (*Id.*, ¶ 7).  When KBR receives information regarding an alleged violation of the COBC, the Law Department will direct and supervise an investigator(s) to: (1) evaluate the information as to gravity and credibility; (2) initiate an informal inquiry or a formal investigation with respect thereto; (3) prepare a report of the results of such inquiry or investigation, including recommendations as to the disposition of such matter; (4) make the results of such inquiry or investigation available to the Law Department and the Board of Directors or the Policy Committee for action (including disciplinary action); and (5) recommend changes in the COBC necessary or desirable to prevent further violations.  (*Id.*, ¶ 5); (Ex. G, p. 10).  These investigations often begin by raw and unsubstantiated statements obtained through the E&C Hotline.  (Ex. A, ¶ 5).

Investigations conducted by KBR are kept confidential to the extent permitted by law and KBR's need to fully investigate the matter.   (Ex. A, ¶ 6); (Ex. F, p. 2).  The E&C Investigation Reports are provided to in-house counsel for the purpose of providing legal advice to KBR and are kept strictly confidential.  (Ex. A, ¶ 6); (Ex. F, p. 2).

### C.     The COBC Program is Administered and Supervised Through KBR's Law Department

KBR's COBC program is administered and supervised by KBR's Law Department.  (Ex. A, ¶ 7).  During the relevant time period, the Director of Business Conduct was Richard Mize, Esq., Assistant General Counsel in the Halliburton Law Department.  (*Id.*).  Investigations regarding allegations of misconduct were undertaken at the direction and under the supervision of Richard Mize or Chris Heinrich, Esq., Vice President – Legal for KBR's Infrastructure, Government, and Power business group.  (*Id.*).  The E&C Investigation Reports are intended to

provide the Director of Business Conduct and KBR's lawyers with candid advice regarding the results of the internal investigation, thereby allowing KBR's Law Department to provide fully informed legal advice to KBR.  (*Id*.).

### III.     THE ETHICS AND COMPLIANCE DOCUMENTS SPECIFICALLY REQUESTED BY PLAINTIFFS[3]

#### A.     Ethics and Compliance Hotline Reports

Document Number One (KBR0011761-72) is an E&C Hotline Report relating to issues concerning an Indian subcontract worker.  (Ex. A, ¶ 8).  The report does not involve Al Asad or any of the Plaintiffs, any of the Daoud entities, or any of the other alleged "co-conspirators." (*Id*.).  This report was provided to the Law Department for the purpose of administering and supervising an internal investigation and providing legal advice to the Company.  (*Id*.).  This document is intended to be confidential, is kept confidential, and has not been disseminated outside the Law Department.  (Ex. J, ¶ 4).

Document Number Two (KBR0011778-79) is another E&C Hotline Report from an anonymous caller purportedly in Iraq.  (Ex. A, ¶ 9).  This report, similarly, does not involve Al Asad, or any of the other parties or alleged "co-conspirators."  (*Id*.).  This report was also provided to the Law Department for the purpose of administering and supervising an internal investigation and providing legal advice to the Company.  (*Id*.).  This document is intended to be confidential, is kept confidential, and has not been disseminated outside the Law Department. (Ex. J, ¶ 5).

---

[3] Plaintiffs argue that the subject documents are responsive to several of Plaintiffs' Requests for Production of Documents.  KBR objected to many of Plaintiffs' Requests as vague, overbroad and burdensome, and it is not clear that these documents are, in fact, responsive.  However, even if they are, they are certainly not relevant to the issues presented in this case.  *See*, infra.

### B.     Ethics and Compliance Investigation Report

Document Number Three (KBR001786-800) is an E&C Investigation Report performed at the direction and under the supervision of the KBR Law Department for the purpose of providing legal advice to KBR in response to the report detailed in Document Number One.  (Ex. A, ¶ 10).  As described above, the investigation report does not involve Al Asad or any of the plaintiffs, Daoud entities, or alleged "co-conspirators."  (*Id.*).  This document is intended to be confidential, is kept confidential, and has not been disseminated outside the Law Department. (Ex. J, ¶ 6).

### C.     Internal Law Department Communications

Document Number Four (KBR0011811-12) includes an email transmitting Document Number One to the Law Department for the purpose of providing legal advice to KBR regarding the complaint and subsequent internal Law Department communications regarding the investigation and resolution of the complaint.  (Ex. A, ¶ 11).  This document is intended to be confidential, is kept confidential, and has not been disseminated outside the Law Department. (Ex. J, ¶ 7).

### D.     The Documents are not Relevant to Plaintiffs' Claims in this Case

Plaintiffs seek E&C Documents that do not relate to Plaintiffs or the deceased individuals.  Because the deceased individuals and their family members never worked at Al Asad, Buddi Gurung is the only Plaintiff with standing to complain about the living or working conditions at Al Asad. REDACTED

REDACTED

Plaintiffs' motion claims they seek these documents to "prove knowledge and a pattern of conduct," but not one of the Plaintiffs has a complaint about the living and working conditions at Al Asad.  Complaints about living and working by other workers simply have no relevance to whether *these* Plaintiffs were victim of human trafficking.

For all the reasons discussed by the Supreme Court in *Upjohn*, KBR's Ethics and Compliance Documents are entitled to protection from disclosure under KBR's attorney-client and work-product protection.  *See Upjohn v. United States*, 449 U.S. 383, 394, 95 (1981).  KBR should, therefore, be shielded from intrusive discovery by Plaintiffs into its internal investigations conducted by KBR's in-house counsel, which are core attorney-client and work-product material.

## IV.   ISSUES PRESENTED

1.    Whether KBR's Ethics and Compliance Hotline Reports, Ethics and Compliance Investigation and internal Legal Department communications are privileged attorney-client communications and attorney work product.

2.    Whether KBR's Ethics and Compliance Hotline Reports, Ethics and Compliance Investigation and internal Legal Department communications are relevant to Plaintiffs' claims.

3.    Whether public policy supports the production of KBR's Ethics and Compliance Hotline Reports, Ethics and Compliance Investigation and internal Legal Department communications.

## V.   ARGUMENT & AUTHORITIES

### A.   Plaintiffs are not Entitled to Continue with Their Impermissible and Expensive Fishing Expedition

Plaintiffs had no evidence to support their case when it was filed nearly four years ago, and today, after years of discovery, they still have no evidence to support their claims. With no support for any of their allegations, Plaintiffs' discovery requests are nothing more than an impermissible, very expensive and time consuming fishing expedition, because Plaintiffs had no evidence of wrongdoing when they filed this case in violation of the Federal Rules of Civil Procedure. Indeed, Plaintiffs have yet to provide any factual basis for their claims against the KBR Defendants.

During the hearing this month on KBR's Motion to Compel discovery responses from Plaintiffs, when asked to identify the link that ties Daoud or KBR to any culpable conduct, Plaintiffs' counsel represented that Mr. Gurung testified that when he "landed in Amman, Jordan, his passport was taken by a gentleman named Khalid and that it was withheld from him, although he asked for it back repeatedly and he wouldn't give it back and that he didn't get it back until he left Al Asad at the end of his contract 15 months later." (Ex. I, p. 45) (Transcript of Aug. 10, 2012 Proceeding). There is no support for counsel's statements.



REDACTED

Instead, Mr. Gurung chose to go to Iraq.

Mr. Gurung's testimony makes clear that KBR has no culpability for any of the claims made against the KBR Defendants. Because Plaintiffs have nothing to support their claims, KBR should not be required to produce any additional documents, especially those that are completely irrelevant to Plaintiffs' claims and are protected by the attorney client and work product privileges.

**B.    KBR's Ethics and Compliance Documents are Protected from Disclosure by KBR's Attorney Client Privilege**

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn,* 449 U.S. at 389. As the Supreme Court explained, "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390. Accordingly, communications made by company employees to company legal counsel (and documents reflecting or memorializing such communications) in an internal investigation conducted by legal counsel for the purpose of providing legal advice are privileged and protected from disclosure. *Id.* at 394-95; *Sandra TE. v.*

9

*S. Berwyn Sch. Dist. 100,* 600 F.3d 612, 620 (7th Cir. 2010) ("Following *Upjohn,* other circuits have concluded that when an attorney conducts a factual investigation in connection with the provision of legal services, any notes or memoranda documenting client interviews or other client communications in the course of the investigation are fully protected by the attorney-client privilege.").

Under this principle, information a client assembles to provide to an attorney to assist the attorney in rendering legal services enjoys the same protection as the advice the attorney ultimately provides. *Upjohn,* 449 U.S. at 391. This includes information obtained, created, or generated by a non-attorney to assist an attorney in providing legal advice, including information obtained, created, or generated by a non-attorney conducting an internal investigation for the purposes of rendering legal advice. *Smith v. Texaco, Inc.*, 186 F.R.D. 354, 357 (E.D. Tex. 1999) (reports generated by employees at request of counsel conducting an internal audit were privileged); *see also United States v. Nobles*, 422 U.S. 225, 239 (1975) ("It is therefore necessary that the doctrine [attorney client privilege] protect material prepared by agents for the attorney as well as those prepared by the attorney himself."); *In re Subpoena of Curran, Mariner Health Care, Inc. v. Cornerstone Health Mgmt. Co*, No. 3:04-MC-039-M, 2004 WL 2099870, at * 4 (N.D. Tex. Sept. 20, 2004) (information an attorney acquires during the course of a factual investigation to provide legal advice is privileged); *Elec. Data Sys. Corp. v. Steingraber,* No. 4:02 CV 225, 2003 WL 21653414, at *2-7 (E.D. Tex. July 9, 2003) (information shared between employees and outside counsel conducting a factual investigation into possible employee fraud constituted legal services and was privileged).

This privilege applies to communications with former employees. *See, e.g., In re Allen,* 106 F.3d 582, 605-06 (4th Cir. 1997) (holding that *Upjohn* protection applies to communications

with former employees); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F.2d 1355, 1361 n.7 (9th Cir. 1981) (holding *Upjohn* privilege applies to former employees because "[f]ormer employees, as well as current employees, may possess the relevant information needed by corporate counsel to advise the client with respect to actual or potential difficulties").

Importantly, the privilege also applies to communications through an agent of the attorney assisting in the performance of legal services, such as investigators or interpreters:

> by reason of the complexity and difficulty of our law, litigation can only be properly conducted by professional men, it is absolutely necessary that a man . . . should have recourse to the assistance of professional lawyers, and . . . it is equally necessary . . . **that he should be able to place unrestricted and unbounded confidence in the professional agent, and that the communications he so makes to him should be kept secret** . . .,' *Jessel, M.R. in Anderson v. Bank*, 2 Ch.D. 644, 649 (1876). Nothing in the policy of the privilege suggests that attorneys, simply by placing accountants, scientists or investigators on their payrolls and maintaining them in their offices, should be able to invest all communications by clients to such persons with a privilege the law has not seen fit to extend when the latter are operating under their own steam.

*U.S. v. Kovel*, 296 F.2d 918 (2nd Cir. 1961) (emphasis added); *F.T.C. v. TRW, Inc.*, 479 F.Supp. 160 (D.D.C. 1979) (alterations from original); *accord U.S. v. Pipkins*, 528 F.2d 559 (5th Cir. 1976) (holding the attorney-client privilege bars disclosures made to nonlawyers acting as agents of an attorney).

As noted, KBR's E&C Documents are confidential communications made to KBR's Law Department for the purpose of providing legal advice the Company. (Ex. A, ¶ 13). KBR's COBC program is administered and supervised by KBR's Law Department. (Ex. A, ¶ 12). E&C Hotline Reports are communications, through an agent, to KBR Law Department for the purpose of providing legal advice, which does not destroy any privilege, as alleged by Plaintiffs. (*Id.*). Further, calls to the Ethics Hotline are confidential. (*Id.*); (Ex. E).

The E&C Investigation Reports are, in turn, investigations undertaken at the direction and under the supervision of KBR's Law Department for the purpose of providing legal advice to the company.  (Ex., A, ¶ 12).  The investigations, as well as the investigation reports, are kept confidential.  (*Id.*); (Ex. F).

Because the Hotline and Investigation Reports are communications to KBR's Law Department for the purpose of obtaining legal counsel, the documents fall squarely within the attorney-client privilege articulated in *Upjohn* and are protected from discovery.

### C.   KBR's Ethics and Compliance Documents are Protected from Disclosure under KBR's Work-Product Privilege

The work product doctrine protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial" unless the party seeking disclosure "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  FED.R.CIV.P. 26(b)(3).  "Generally, documents created as part of an internal investigation . . . are considered to be made in anticipation of litigation for the purposes of the work product doctrine."  *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (citing *Upjohn*, 449 U.S. at 398).

"[L]itigation need not necessarily be imminent, as some courts have suggested, as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation."  *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981) (internal citations omitted); *see also In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000).  Where an employee has filed an internal complaint alleging potentially unlawful conduct, an employer may reasonably anticipate litigation and work product protection is triggered.  *See In re Grand Jury Investigation*, 599 F.2d 1224, 1229 (3rd Cir. 1979) (investigation after reasonable suspicion of illicit payments surfaced was conducted in anticipation of litigation); *Hayden v.*

*Acadian Gas Pipeline Sys.*, 173 F.R.D. 429, 430 (E.D. La. 1997) (notes from a witness interview obtained during an initial investigation into the claims ultimately asserted were acquired in anticipation of litigation).

COBC investigations are conducted *primarily* for litigation preparation.  (Ex. J, ¶ 9). They are not conducted in "the ordinary course of business."  (*Id*.).  Indeed, COBC Policy 3-0001 states that investigations will be conducted "as appropriate"—in other words, investigations are not "ordinary course of business;" they occur *only when KBR Defendants' legal department initiates them* pursuant to the COBC procedures.  (Ex. J, ¶ 9); (Ex. G, p. 10).  KBR's E&C Investigation Reports also reflect the investigator's thoughts and impressions.  (Ex. J, ¶ 9); (Ex. G, p. 10).  These reports, therefore, contain protected attorney work-product and are protected from discovery.

### D. Other Courts Have Found Similar Investigation Files Protected by the Attorney Client and Work-Product Privileges

Other courts have found similar investigation files protected under the attorney-client communication and work-product privileges.  In *Leamon*, in an opinion issued by Judge David Hittner this June, for example, the plaintiff sought to compel the production of KBR's internal investigation files conducted pursuant to KBR's COBC program relating to her allegations, as well as another KBR investigation file relating to other violations.  *Leamon v. KBR, Inc.*, No. H-10-253, p. 1 (S.D.Tex. June 28, 2012); (Ex. H).  Judge Hittner performed an *in camera* inspection of the COBC investigation files and found that all but one subset of documents—photographs—were "communications made by corporate employees to their legal counsel in the pursuit of legal advice, notes and memoranda made by counsel regarding interviews, and other documents prepared in anticipation of possible litigation."  (*Id*., p. 4).  The decision in *Leamon* clearly supports the privileged nature of the investigation conducted by KBR.

13

In addition, the court in *Pinstripe*, relying on Oklahoma law, found hotline communications, such as communications made through an ombudsman, like KBR's Hotline Report here, protected by the attorney-client and work-product privileges:

> AK has argued that attorney-client privilege and work-product protection are not applicable to the Ombudsman documents because Haft and Belcher are not attorneys. However, under proper circumstances, the Oklahoma privilege statute extends protection to confidential communications with a 'representative of the attorney.' 12 O.S. § 2502(B). By the same token, Haft's and Belcher's non-lawyer status does not, without more, preclude their work from qualifying as attorney work product**. The work-product doctrine has been extended to material prepared by an agent for an attorney.** *U.S. v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *Alexander v. F.B.I.*, 192 F.R.D. 12, 18 (D.D.C.2000); *Sanchez*, 229 F.R.D. at 654-55. Under the current version of FED.R.CIV.P. 26(b)(3), 'whether a document is protected as work product depends on the motivation behind its preparation, rather than on the person who prepared it.' Epstein at 916.

*Pinstripe, Inc. v. Manpower, Inc.*, No. 07-CV-620-GKF-PJC, 2009 WL 2252137, *5 (N.D.Okla. July 28, 2009) (emphasis added).

There is nothing about this case that would compel a different conclusion. The E&C Documents at issue include communications by corporate employees to their legal counsel in the pursuit of legal advice, an investigation report prepared at the request of counsel in the pursuit of providing legal advice to the company and in anticipation of possible litigation, and internal Law Department communications, between attorneys, regarding the investigation. Plaintiffs' motion to compel these privileged documents should be denied.

### E.     The Cases Cited by Plaintiffs do not Support Production of KBR's Privileged Documents

Plaintiffs would have this Court believe that courts "regularly order the production of complaints and reports made to corporate hotlines." [Doc. No. 328, p. 7]. The authority Plaintiffs cite, however, does not stand for the proposition that documents generated at the

direction and supervision of KBR's Law Department for reporting and investigating ethics violations are not entitled to attorney-client communication and work-product protection.

In *ABM Industries*, the defendant objected to a request from the EEOC for "all DOCUMENTS that reflect, describe or relate to any complaints made to YOUR 1-800 Harassment Hotline . . . on the basis that they were overbroad, not reasonably calculated to lead to admissible evidence, invaded the privacy of third parties, invaded the attorney-client and attorney work product privilege and . . . harassing.". *EEOC v. ABM Industries Inc.*, No. 1:07-CV-01428 LJO JL, 2010 WL 481395, *3 (E.D.Ca. Feb. 5, 2010).  Importantly, the defendant did "not refuse[] to respond to these requests," but instead sought to limit its response to complaints related to supervisory conduct and for locations within the district.  *Id*.  The court found the request for "all" reports overbroad to the extent it was not limited to the "location of the job site where the alleged harassment occurred."  *Id*. at *4 (noting that discovery is limited to matters relevant to any party's claim or defense).  Thus, Plaintiffs cannot attempt to use *ABM Industries* to support production of KBR's privileged documents in that the *ABM Industries* court did not address the issue of whether reports and investigations conducted at the direction of the corporate counsel were protected by the attorney-client or work-product privileges.  Indeed, in support of KBR's position here, the *ABM Industries* court ordered the defendant to "produce a privilege log as to the documents that are subject to the attorney-client privilege or the attorney work product privilege."  *Id*. at *8.

Similarly, Plaintiffs' reliance on *McDougal-Wilson* is misplaced because the opinion does not involve the assertion of attorney-client and work-product privileges.  *See McDougal-Wilson v. Goodyear Tire & Ribber Co.*, 232 F.R.D. 246 (E.D.N.C. 2005) (analyzing a "self-critical analysis" privilege).

*Johnson* is also distinguishable. *Johnson v. Standex Int'l Corp.*, 153 F.R.D. 80, 81-82 (E.D.Va. 1994) (analyzing what information from a confidential Department of Defense hotline was confidential). The plaintiff in *Johnson* brought a products liability action for injuries suffered when a component part of a dump trailer failed. In discovery, the manufacturer issued a subpoena to a non-party contractor to produce the transcript of a telephone call from the non-party contractor's employee to the Department of Defense's "fraud, waste, and abuse" hotline, and sought production of investigatory notes and reports prepared in regard to the employee's workers' compensation claim. The court found the identity of the informant was confidential, but the information conveyed was not. *Id.* The court's analysis, however, was limited to a *non-party's ability to assert the work-product doctrine*. *Id.* at 83. *Johnson* is, therefore, distinguishable because KBR is a party and KBR's COBC and the Ethics and Compliance Hotline records are its own and are confidential.

**F.     KBR's Ethics and Compliance Documents are Irrelevant to Plaintiffs' Claims**

In 2000, Rule 26 was amended to control sweeping discovery by removing matters merely relevant to "subject matter" from ordinary discovery. FED.R.CIV.P. 26(b)(1), advisory committee's note (2000). The intent of this amendment was to focus the attention of the parties—and the court—on the *actual claims and defenses* involved in the case. *Id.* Exigent circumstances notwithstanding, the scope of discovery is, therefore, limited to non-privileged matters relevant to any party's claims or defense. FED.R.CIV.P. 30(b)(1).

While "relevant" is not defined in the Federal Rules of Procedure, courts generally rely on the definition in Rule of Evidence 401: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is *of consequence to the determination of the action* more probable or less probable than it would be without the evidence." *Enron Corp. Savings Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159 (S.D.Tex. 2009). Even if the

discovery *appears* relevant, discovery that is of "marginal relevance" generally outweighs the ordinary presumption in favor of broad disclosure.  *See id.*; *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D.Tex. 2006) (citing *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

Here, the E&C Documents do not concern Plaintiffs or the deceased individuals, and relate to issues not supported by the testimony of the sole surviving Plaintiff, Buddi Gurung, the only person to encounter the conditions at Al Asad.  KBR's Ethics and Compliance Reports, therefore, have *nothing* to do with supporting Plaintiffs' existing claims and have *everything* to do with finding new claims.  Discovery into KBR's internal investigations concerning other matters is fishing.

### G.     All Responsive Ethics and Compliance Reports are Identified in KBR's Privilege Log

Plaintiffs refer this Court—again—to the testimony of Linda Warren as evidence that "additional such reports were made to KBR" but not produced or identified in KBR's privilege log.  *See* [Doc. No. 328, p. 1].  But Ms. Warren testified that "the *Iraqi* supervisor informed [her] that the *Iraqi* workers were quitting en masse, so [she] intervened on their behalf and reported all the wrongdoing to the camp manager."   Senate Democratic Policy Committee Hearing, Contracting Abuses in Iraq: Is the Bush Administration Safeguarding American Taxpayer Dollars?, Linda Warren, *available at*  http://dpc.senate.gov/hearings/hearing42/warren.pdf (emphasis added).  If Ms. Warren made an E&C Hotline Report, as she alleges, it would not have been identified on KBR's privilege log because the complaint is not responsive to Plaintiffs' Requests for Production.  Ms. Warren's complaints relate to Home Country Nationals, otherwise known as "HCNs", or persons residing in Iraq, as opposed to Third-Country Nationals, known as "TCNs", and related to whom KBR has agreed to produce documents.

17

Whatever the case, Ms. Warren's statement makes clear that the morning after she made her alleged report on the Hotline, she was contacted by KBR security to file a report, an investigation was done relating to her allegations, and then Ms. Warren was subsequently assigned to work at other bases in Iraq.

Plaintiffs' claim that KBR "refuses to search for additional reports" is absurd. KBR diligently searched for all E&C Documents relating to third-country nationals, subcontract workers, passports, visas, recruiting, trafficking, kidnapping, wages, Nepal, Daoud, living conditions, working conditions, and Buddi Gurung. (Ex. J, ¶ 8). KBR reviewed these E&C Documents, and, based on KBR's review, the responsive documents were identified on KBR's privilege log. (*Id.*).

### H.   Public Policy is Advanced by Maintaining the Confidentiality of KBR's Ethics and Compliance Documents

A holding here that removes the veil of confidentiality and privilege from internal reports and investigations of misconduct will have a chilling effect contrary to the clear public policy favoring the exposure, investigation, and remediation of any misconduct. KBR's E&C Documents must be kept confidential and protected from disclosure to encourage whistleblowers to report misconduct. Similarly, KBR's E&C Investigation Reports must be kept confidential and protected from disclosure to promote open and honest communication with KBR's Law Department.

Further, should KBR be compelled to produce E&C Hotline Reports, KBR would be put in the position of having to produce additional attorney client communication or work product privileged information to demonstrate what it did to investigate and remedy the reported misconduct. Thus, not only would KBR be compelled to produce the privileged information Plaintiffs seek here, but KBR might be forced to produce other privileged information as a result.

I.     **KBR Will Tender the Documents at Issue for an *In Camera* Review by the Court**

Should the Court wish to review the documents at issue in Plaintiffs' Motion to Compel, KBR will produce them to the Court for an *in camera* review.

## VI.     <u>CONCLUSION AND PRAYER</u>

The attorney-client and work-product privileges protect the disclosure of the KBR Law Department's investigations of alleged misconduct.  Plaintiffs' desire to review these documents is also overshadowed by the fact that they have no relevance to any of their specific claims for relief, and public policy favors protecting the Reports.

KBR should not be compelled to produce the two E&C Hotline Reports, Document Number One (KBR0011761-72) and Document Number Two (KBR0011778-79).  Even though the Hotline Reports are generated from the statements of persons who are not employees of KBR, they are communications transmitted to an attorney through an agent whose assistance is essential to the attorney's performance of legal services and who facilitates transmission of the communication to the attorney.  *Kovel*, 296 F.2d 918; *F.T.C.*, 479 F.Supp. 160; *Pipkins*, 528 F.2d 559.  Thus, the Reports are privileged attorney-client communications made for the purpose of providing legal advice to KBR, work product generated at the direction and under the supervision of the KBR Law Department for the purpose of providing legal advice to KBR, and the Reports are not relevant to any claim asserted in this matter.  Furthermore, a consequence of ordering KBR to produce the Hotline Reports would be to put KBR in the untenable position of having to decide whether to voluntarily waive any subsequent, privileged investigation into the Report to demonstrate how the allegation, if substantiated, was remedied.

Even if the Court determines that the actual Hotline Reports are not privileged and are relevant (which it should not), however, such a finding does not compel the Court to require

KBR to produce the E&C Investigation Report, Document Number Three (KBR001786-800). The Investigation Report, as determined recently by Judge Hittner in another case relating to KBR's Code of Business Conduct Program, is a archetypal attorney-client communication made for the purpose of providing legal advice to KBR, work product generated at the direction and under the supervision of the KBR Law Department for the purpose of providing legal advice to KBR, and the report is not relevant to any claim asserted in this matter.

Similarly, KBR's internal Law Department communications sent entirely between in-house counsel stand on their own, and KBR should not be compelled to produce a characteristically privileged document, even if the Court compels the Hotline Report about which the attorneys communicate in the subject document. The E&C Email, Document Number Four (KBR0011811-12), is an internal Law Department communication made wholly between attorneys for the purpose of providing legal advice to KBR, and the communication is not relevant to any claim asserted in this matter.

The KBR Defendants, therefore, respectfully request that the Court enter an order denying Plaintiffs' motion to compel and protecting KBR from any further discovery into matters relating to the Law Department's investigations.

Submitted:   August 23, 2012                    Respectfully submitted,


   /s/ *Michael W. Mengis*
Michael W. Mengis
State Bar No. 13941040
Billy M. Donley
State Bar No. 05977805
BAKER & HOSTETLER LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002-5018
Telephone:  713.751.1600
Facsimile:  713.751.1717
Email:  mmengis@bakerlaw.com

OF COUNSEL:                              David B. Rivkin, Jr. (pro hac vice)
Mark Lowes                              D.C. Bar No. 394446
State Bar No. 12636300                  Lee A. Casey (pro hac vice)
Vice President for Litigation           D.C. Bar No. 447443
Kellogg Brown & Root, LLC               BAKER & HOSTETLER LLP
601 Jefferson Street, Suite 3720        1050 Connecticut Avenue, N.W. Suite 1100
Houston, Texas  77020                   Washington, D.C.  20036
Telephone:  713.753.8635                Telephone:  202.861.1500
Facsimile:  713.753.3443                Facsimile:  202.861.1783

                                        ATTORNEYS FOR KBR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 23rd day of August 2012, a true and accurate copy of the following document was electronically filed with the Court and served on counsel of record for all parties pursuant to the Court's ECF filing system.

 /s/ Michael W. Mengis                                              
Michael W. Mengis
BAKER & HOSTETLER LLP
Attorneys for KBR Defendants
Email:  mmengis@bakerlaw.com