```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                         HOUSTON DIVISION

 3
      RAMCHANDRA ADHIKARI,        .   Civil Action
 4    ET AL.,                     .   No. H-09-1237
                                  .
 5                                .
                                  .
 6                                .
      VS.                         .
 7                                .
                                  .   September 25, 2012
 8    DAOUD & PARTNERS, ET AL.    .   1:40 P.M.
                                  .   HOUSTON, TEXAS
 9                                .

10                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE KEITH P. ELLISON
11                 UNITED STATES DISTRICT JUDGE

12    APPEARANCES:

13    FOR PLAINTIFFS:            MS. AGNIESZKA M. FRYSZMAN
                                 MS. MAUREEN E. McOWEN
14                               Cohen Milstein, et al.
                                 1100 New York Avenue NW
15                               Suite 500 West
                                 Washington, DC 20005
16

17    FOR DEFENDANT
      DAOUD & PARTNERS:          MR. JOSEPH CALDWELL SARLES
18                               Quinn Emanuel Urquhart & Sullivan
                                 865 South Figueroa Street
19                               10th Floor
                                 Los Angeles, CA 90017
20

21

22

23

24
      Proceedings recorded by mechanical stenography, transcript
25    produced by computer-aided transcription.
```

```
 1   APPEARANCES (Continued):

 2

 3   FOR DEFENDANT KBR:        MR. BILLY M. DONLEY
                               MR. MICHAEL MENGIS
 4                             MR. FARRELL HOCHMUTH
                               Baker & Hostetler LLP
 5                             1000 Louisiana
                               Suite 2000
 6                             Houston, Texas 77002

 7

 8

 9   OFFICIAL COURT REPORTER: MS. STEPHANIE KAY CARLISLE
                               U.S. District Court
10                             515 Rusk, Suite 8016
                               Houston, Texas 77002
11                             713.250.5157

12

13

14

15

16

17                                 *  *  *

18

19

20

21

22

23

24

25
```

1                    **P R O C E E D I N G S**

2                      (September 25, 2012)

3              THE COURT:  Good afternoon and welcome.  We will

4    take appearances of counsel beginning with plaintiffs.

01:40:42PM  5              MS. FRYSZMAN:  Agnieszka Fryszman for the plaintiff,

6    Your Honor.

7              MS. McOWEN:  Maureen McOwen for the plaintiffs.

8              THE COURT:  Thank you.

9              MR. FALLS:  Justin Falls for defendant, Daoud &

10   Partners.

11             THE COURT:  Thank you.

12             MR. DONLEY:  I'm Billy Donley for the KBR

13   defendants.  With me today, I have Mike Mengis, also with

14   Baker and Hostetler.

15             MR. HOCHMUTH:  Farrell Hochmuth with Baker and

16   Hostetler.  And Mr. Dean Graves, in-house with KBR.

17             THE COURT:  Thank you.

18                  All right.  We have got quite a lot of paper on

19   all this.  And one of the more recent filings where plaintiff

01:41:21PM 20  indicated they were dropping counts four and five, I gather

21   that would change the terrain quite a lot, wouldn't it?

22             MS. FRYSZMAN:  We decided to do that to try to

23   vindicate this trial in the country that we have.  We have

24   narrow discovery --

01:41:36PM 25             THE COURT:  Now --

```
            1          THE COURT REPORTER:  I'm sorry.  I'm not getting
            2 anything you're saying.
            3          THE COURT:  Yeah, no.  That's just a problem.  Why
            4 don't you come to the mike.
01:41:44PM  5          MS. FRYSZMAN:  Yes, it would narrow the issues that
            6 we would attempt to seek discovery on in trial so we could
            7 have a case that we could try --
            8          THE COURT:  Well, wouldn't it affect a lot of these
            9 pending motions in terms of how much electronic discovery you
01:41:56PM 10 need or how long depositions need to be or --
           11          MS. FRYSZMAN:  I think so, yes.
           12          THE COURT:  Have you discussed, between and among
           13 yourselves, how it might effect any of these pending motions?
           14          MS. FRYSZMAN:  No, I guess we haven't.  I mean, we
01:42:11PM 15 have discussed some of the pending discovery with Farrell, but
           16 I think --
           17          MR. DONLEY:  May I, Your Honor?
           18          THE COURT:  Yes, sir.
           19          MR. DONLEY:  If I may.  Your Honor, we have sent
01:42:19PM 20 correspondence to plaintiffs' counsel -- Billy Donley, for the
           21 KBR defendants.  We have sent correspondence to plaintiffs'
           22 counsel asking, now that you have dropped these claims -- and
           23 at the time they were only going to drop them, so they hadn't
           24 been dropped yet -- we asked would you now tell us what
01:42:33PM 25 discovery requests of us you are withdrawing, and we haven't
```

1    received a response yet.

2            MR. SARLES:  May I, Your Honor?

3            THE COURT:  Yes, sir.

4            MR. SARLES:  Just to clarify, as I understand it,

01:42:43PM  5    the plaintiffs are not dropping any of their RICO claims as

6    against Daoud & Partners entities.  So from our perspective

7    the case remains identically as broad.

8            MS. FRYSZMAN:  We haven't been ignoring Mr. Donley's

9    e-mail.  We just got it.  We're working on it.  We flew down

01:43:00PM 10    here and we are working on it.

11            THE COURT:  Have you thought how you wish to

12    proceed?  You have -- we've got procedural motions, KBR's

13    motion for leave regarding depositions of persons with

14    knowledge, the plaintiffs' motion for a continuance as to the

01:43:32PM 15    summary judgment, then we have six discovery motions.

16            I am sorry we are having this right on the

17    heels of the change in plaintiffs' pleadings, but I guess -- I

18    don't have a better solution than to just go through one by

19    one.  So -- just generally, thematically, I do think this is a

01:44:15PM 20    case in which the normal limits on depositions will have to be

21    exceeded both in terms of the number of people to be deposed

22    and, at least with respect to many of the deponents, a longer

23    -- a longer timeframe than seven hours.

24            The issues that are brought up in terms of

01:44:50PM 25    where depositions take place and whether depositions could be

1    taken by video link, I really would have thought you could

2    have agreed on those without needing my involvement; but I

3    guess you haven't.  Okay.  If nobody has a better order of

4    worship, I will just start with the two procedural motions and

01:45:17PM  5    we will proceed from there.

6                    KBR, defendant's motion for leave regarding

7    depositions, of course, we acknowledge.  Do you want to speak

8    to that?  I mean, I think I understand your papers; I think I

9    understand what you are saying.

01:45:33PM  10                MR. DONLEY:  Yep.  Thank you, Your Honor.  The

11    motion is very simple.  Two points we made in the motion,

12    really on two issues we are asking for.  One is, Your Honor,

13    we understand presently that the discovery of deadline just

14    ran on September 15th.

01:45:47PM  15                THE COURT:  That will be extended.

16                MR. DONLEY:  Thank you, Your Honor.  With that being

17    extended then, the other point in our motion is, and I think

18    you may have just resolved it, we are asking for more than ten

19    depositions.

01:45:58PM  20                THE COURT:  You are entitled to that.

21                MR. DONLEY:  Okay.  Thank Your Honor.

22                THE COURT:  Do you know how many more?

23                MR DONLEY:  Well, right now, they have -- plaintiffs

24    have listed 13 persons that they would call as witnesses.  We

01:46:09PM  25    understand it.  So we need those plus the plaintiffs'

1    depositions.  So that's about another 26, I believe.  So

2    that's 39 in total.  In addition to that, Your Honor, they

3    have 238 persons, or groups, listed with knowledge or relevant

4    facts.  I'm not sure yet how to narrow that down.  We are

01:46:30PM  5    going to have to narrow that down somehow, but my point being

6    that there may be additional depositions beyond those which I

7    can currently imagine as a result of that.

8             THE COURT:  Do the defendants want to speak to that?

9             MS. FRYSZMAN:  Your Honor, we have no objection to

01:46:53PM 10    exceeding the ten.  Our position -- the position that we had

11    arrived at is that they said that discovery had run.  We

12    hadn't noticed any, so we are entitled to zero and they were

13    entitled to --

14             THE COURT:  No.  Hopefully you are to entitled to

01:47:05PM 15    more.

16             MS. FRYSZMAN:  Okay.  We were just trying to reach

17    an equitable result so that we would both be entitled to

18    more --

19             THE COURT:  You are both entitled to more and I

01:47:13PM 20    think, at least when those witnesses who need translation are

21    testifying, you are entitled to more than seven hours.  I

22    don't know if it makes sense for me to try to derive a number

23    as to either right now.  I really don't know how many

24    depositions will be needed.  And I don't know the hours that

01:47:40PM 25    will be needed for each.  I mean, y'all haven't done very well

1  about agreeing.  I would, in most cases, just say take the

2  depositions you need; and if you reach loggerheads, come back

3  to me.  I know that hasn't worked very well in this case.  But

4  without knowing more about the people you have designated as

01:48:05PM 5  persons with knowledge, I don't know how I can pretermit

6  defendants' --

7          MS. FRYSZMAN:  I just --

8          THE COURT:  -- rights to talk to them.

9          MS. FRYSZMAN:  Speak to that.  Defendants asked us

01:48:12PM 10  an interrogatory for the names of all persons with knowledge

11  of the kidnapping of the deceased victims and the posting on

12  the Internet.  So...

13          THE COURT:  So, okay.  I'd have to --

14          MS. FRYSZMAN:  So we answered that interrogatory in

01:48:24PM 15  full with everyone that we believe had knowledge about it.  I

16  think it is actually not relevant to the claims in the case,

17  but we answered it in full.  I don't see a real need for any

18  of us -- 238 people who need to be deposed, and many of them

19  are people who work at KBR, in fact.

01:48:41PM 20          THE COURT:  How about those -- I mean, in addition

21  to the plaintiffs, and how about -- and their family

22  members -- the additional 13 individuals that Mr. Donley

23  referred to?

24          MS. FRYSZMAN:  (No audible response.)

01:48:54PM 25          THE COURT:  I understood him to say 13 plus, plus

1    with the plaintiffs --

2            MR. DONLEY:  That's correct, Your Honor.

3            MS. FRYSZMAN:  And KBR has designated 26 under --

4    those are our Rule 26 designated so far.  KBR has designated

5    26 people under Rule 26 and an additional 40 something --

6            THE COURT REPORTER:  She is talking too fast.

7            THE COURT:  Okay, yeah.

8            MS. FRYSZMAN:  I'm sorry.

9            KBR has designated 26 people under Rule 26.  An

10   additional 47 have been identified by KBR as persons with

11   knowledge of incidents in the complaint.  So we just want

12   proportionality.  If there --

13           THE COURT:  I'm going to give each of you 30 for

14   now.  You can come back and talk to me if you want more.  I am

01:49:32PM 15   hoping that it is the kind of case where, after you have

16   deposed a few people, you will see a pattern and won't need to

17   depose everyone.  But you are a lot closer to the facts than I

18   am.

19           MS. FRYSZMAN:  Thank you, Your Honor.

01:49:47PM 20           THE COURT:  In terms of how much longer, why don't

21   we use the rule of thumb that, instead of 7 hours when

22   translation is involved, it will be 10 hours.  And it will be

23   the deponent's choice, deponent and counsel's choice as to

24   whether that's all on one day or should be spread over

01:50:20PM 25   two days.

1        MS. FRYSZMAN:  Will that 10 hours, Your Honor, apply

2   to Mr. Gurung?  He has been deposed for nine and a half

3   already.

4        THE COURT:  No.  I was going to take him up

01:50:29PM 5   separately, but we can turn to that now.  What reasonable

6   limit would you place on his testimony?

7        MS. FRYSZMAN:  Ms. McOwen was going to -- do that.

8        THE COURT:  What, what -- yeah.

9        MS. McOWEN:  Your Honor, the reasonable limit that

01:50:49PM 10   we would propose is the nine and a half hours that have

11   already been taken.  Mr. Tayback, counsel for Daoud, conducted

12   a very effective and efficient deposition over two days in Los

13   Angeles where Daoud's counsel are based.  He covered all the

14   important subject matter of the lawsuit.  And our position is

01:51:10PM 15   that they've had a full and fair opportunity to depose

16   Mr. Gurung.

17        Approximately 3 hours of that time was spent on

18   translation.  We believe that that is a fair length of time

19   for Mr. Gurung.  It would really work a hardship on him to

01:51:29PM 20   have to be deposed again, particularly if it is across the

21   country.  He's a low wage worker at a gas station in New

22   Jersey.

23        THE COURT:  Yeah, why was he deposed?  Was it just

24   an accommodation to defendant's counsel?  I mean, Los Angeles,

01:51:44PM 25   I would have thought was a very unlikely place.  I mean, the

1    case is pending here.  He lives in New York.

2             MS. McOWEN:  Both plaintiffs and counsel for Daoud

3    have lawyers located in Los Angeles, and so it was a

4    compromise.  Paul Hoffman, who is counsel for the plaintiffs,

01:52:02PM 5    is located in LA, as well as the Quinn Emanuel, attorneys for

6    Daoud & Partners.

7             THE COURT:  Anything you want to say about that?

8             MR. SARLES:  A couple of things, Your Honor.  First,

9    prior to the deposition, we weren't even told that Mr. Gurung

01:52:21PM 10    was in New York.  We believed he was coming from Nepal and so

11    Los Angeles seemed like a logical location.  I agreed to that.

12    In terms of continuation, we are willing to travel to New York

13    if that's necessary, but we don't think nine and a half hours

14    is a reasonable limit.  Your Honor suggested ten and Mrs. -- I

01:52:39PM 15    think the person that everybody would agree is the most

16    important --

17             THE COURT:  Yeah, I agree.  I think special rules

18    probably apply to him.  How long --

19             MR. SARLES:  We've requested three additional hours,

01:52:47PM 20    I believe.  KBR has requested an additional seven, so I will

21    let them speak to that.

22             THE COURT:  Is that concurrent or consecutive?

23             MR. SARLES:  Consecutive.

24             THE COURT:  Ten more hours?

01:52:57PM 25             MR. SARLES:  An additional ten.  But, speaking for

1    Daoud, we have requested three on our own behalf.  That would

2    be -- the other items requested in our motion are, of course,

3    the document production issues that we have raised.

4                    One of them is the asylum documents, which I

01:53:15PM    5    think we have set forth in our papers the reasons those should

6    be produced before his deposition continues.  And, also, the

7    speech he gave at the U.N.  There was testimony in his

8    deposition that he handwrote a copy of that speech and we

9    still don't have that, a copy -- and it's a speech purely

01:53:33PM    10    about the facts of this case.  And that is a document we

11    believe we're entitled to before we depose him any further.

12                    THE COURT:  Do you want to speak further to that?

13                    MS. McOWEN:  Yes.  Your Honor, this is one of the

14    reasons why we don't believe that further deposition of

01:53:48PM    15    Mr. Gurung is necessary, that the subject that both KBR and

16    Daoud would have identified as subjects for further deposition

17    are not proper subjects of discovery.  The issue that

18    Mr. Sarles raised with respect to the U.N. documents, they

19    framed as of the spoliation issue; but it is clearly not a

01:54:14PM    20    spoliation question.  Mr. Gurung produced the final uttered

21    version of his speech, which he delivered before the United

22    Nations in October 2009.  There's a video of that speech which

23    has been produced to the defendants.  He's also now produced

24    the final Nepali script that he read out loud that day.  In

01:54:39PM    25    the deposition, Mr. Gurung indicated that he had taken some

1    handwritten notes on the speech that were then typed up into

2    the final version that he read out loud.  There is plenty of

3    authority, Your Honor, that when notes like that are then

4    transcribed or typed into a final version, it is not

01:55:02PM  5    spoliation if the original notes get lost, which, in this

6    case, we simply don't have the original handwritten notes --

7             THE COURT:  Well, that's a different issue.  So you

8    say they just don't exist.  So it's not a whole lot of use

9    arguing about what to do with them.  They don't exist at all.

10            MS. McOWEN:  That's right, Your Honor.

11            THE COURT:  Okay.

12            MS. McOWEN:  Except for the final version which has

13   been provided.

14            THE COURT:  What was the other topic you wanted to

01:55:25PM  15   go into?

16            MS. McOWEN:  The asylum question, which we believe

17   is simply beyond the bounds of discovery, it is an important

18   public policy that this Circuit has recognized, that every

19   circuit I know of has recognized.  It is an issue that goes

01:55:37PM  20   far beyond just Mr. Gurung.  It has a potential of having a

21   devastating, chilling effect and the last thing is with

22   meritorious claims.

23            THE COURT:  Mr. Sarles, just one second, please.

24   Okay.

01:56:06PM  25            MR. SARLES:  The first thing I would like to say is

1   those are not the only two topics that we have requested

2   additional examination on.  The deposition concluded sort of

3   just at the beginning of discussing with Mr. Gurung his actual

4   work and life at the al-Assad Base, so I based -- and that

01:56:23PM   5   includes issues such as his time sheets which he signed and

6   filled out on a daily basis.  None of those were able -- able

7   to be put before him in the time that we had.

8           THE COURT:  What did y'all talk about so long?

9   When -- what kept y'all busy?

01:56:36PM   10          MR. SARLES:  We talked about his journey from Nepal

11  to Iraq and his work there and his travel back and his current

12  life in New York, which was, you know, a surprise to us.  You

13  know, we submitted the entire transcript to the Court.  I

14  think we just heard plaintiff counsel say that Mr. Tayback

01:56:55PM   15  took an efficient examination.  I don't think there's any

16  dispute about that, but there was not time wasted.  There's a

17  lot of ground to cover with this witness.

18              And plaintiffs in their papers say there was

19  time wasted on little details like access to restrooms and

01:57:09PM   20  where food was eaten.  But those are the kind of details that

21  matter when Mr. Gurung is claiming he was held against his

22  will and held in horrid conditions.  The little things that he

23  did every day mattered, the trip to Subway with KBR witnesses.

24  Those are the kind of little things that matter --

25          THE COURT:  Slow down, slow down.

1           MR. SARLES:  I apologize.

2                 In any event though, what are the additional

3     issues related to his time at the al-Assad Base including

4     medical care, including the other individuals that he arrived

01:57:37PM 5  with?  Some of them left before him.  Some of them stayed long

6     after him.  And we haven't gotten to examine Mr. Gurung about

7     those individuals and why he believes they were being held

8     against their will.

9                 Some left earlier, some left later, some signed

01:57:54PM 10 additional extensions with Daoud.  Those are important topics

11    of examination.  In addition on the asylum issue, none of the

12    cases that plaintiffs cited deal with the situation where the

13    facts underlying the asylum petition overlap with the facts of

14    this case.  They are asserting emotional distress damages to

01:58:18PM 15 the present day; and in that proceeding, Mr. Gurung blamed

16    third parties, a terrorist group in Nepal, for pressures

17    against his life and safety in Nepal during the same time

18    period that he is claiming that those harms are the cause --

19    or were caused by our client.  So he put it in issue in a way

01:58:38PM 20 that none of the plaintiffs in the cases -- or that plaintiff

21    cite have put it at issue.  Moreover, we have got a protective

22    order in this case.  They are free to designate any of that

23    information to keep it confidential.  And it simply would not

24    be fair to -- it is a classic sword and shield situation for

01:58:56PM 25 Mr. Gurung to claim damages for issues that he had blamed

1  other parties for in another proceeding and then shield that

2  discovery where he blames the other parties.

3          THE COURT:  Okay.  I will allow an additional

4  seven hours of his deposition.  The defendants can divide it

01:59:17PM 5  up between themselves however they wish.  It is seven total.

6  I do not want any discussion of asylum.  I do not want any

7  discussion about notes that may have been spoliated.  We will

8  deal with both those issues later when we understand the case

9  better.

01:59:37PM 10          I do think -- he is clearly the most important

11  person in the case.  And I think the rules need to be

12  stretched to accommodate that fact.

13          It will be his choice and his counsels where

14  to -- where to hold the deposition.  And I will even -- if it

02:00:02PM 15  will help them, I will even authorize the deposition to be

16  held on a weekend or a holiday so he misses the minimum

17  possible amount of time from his job.

18          Now in terms of -- well, okay.  Let's turn next

19  to plaintiffs' motion for a continuance under 56(d).  I do

02:00:42PM 20  think it is appropriate to give the plaintiff some additional

21  time.  But we haven't got a response from KBR about what they

22  think would be a reasonable amount of time other than I

23  suspect they oppose the continuance.  How long do the

24  plaintiffs think this will require?

02:01:13PM 25          MS. FRYSZMAN:  I think, Your Honor, it depends on if

1    we can get a 502(d) stipulation ordered so that we could

2    obtain the documents from KBR-Halliburton in electronic form

3    and review them in our offices.    And I think that would speed

4    things along considerably and make this go quicker.    Without

02:01:44PM  5    that, I don't know how we are going get past the roadblock

6    that we are on on discovery where --

7            THE COURT:    KBR, you know, takes strong exception to

8    the suggestion they have dragged their feet on this.    They

9    think they've made the searches asked of them and used the...

02:02:01PM  10   in terms that were asked.

11           MS. FRYSZMAN:    I guess I wanted to make super clear,

12   because we don't actually have those documents.    They have run

13   the searches and told us the numbers of documents.    So they

14   have run the search and said there are 874 documents that

02:02:13PM  15   combine the words trafficking, enslavement...    We don't

16   actually have that document and we have never seen it, and

17   that's where we are stuck.    They have run the searches, told

18   us the numbers, but we've never seen the actual document at

19   all.    We have had no more documents from KBR than at the last

02:02:30PM  20   hearing that we had when we were here and we started talking

21   about electronic discovery.    They haven't searched and

22   produced the documents.    They have just told us the numbers of

23   documents that have been responsive to our searches --

24           THE COURT:    And what's their response to your

02:02:42PM  25   inquiry about when you can see them?

```
  1              MS. FRYSZMAN:  They said we could come to their
  2    offices, review the notes, secure terminals, not take any
  3    notes, be observed by an observer and that they may would
  4    consider producing them but there was no guarantee that we
02:02:56PM 5    would get them.  And there's no time period at which, you
  6    know, we would be definitively done.  As at the terminals, we
  7    would have to review them one by one.  And that's -- we're
  8    trying to think of a better way than that.  It is really old
  9    school.  Like, the modern way to do it, and the way it has
 10    been described in the Federal Rules of Evidence and the
 11    Federal Rules of Civil Procedure, is through a 502(d)
 12    stipulation.  The 50 --
 13              THE COURT:  All right.  All right.  Let me hear from
 14    KBR.
02:03:25PM 15             MR. DONLEY:  Your Honor, there have been some
 16    serious misrepresentations made to this Court in the documents
 17    that have been filed regarding this issue.  What I brought
 18    with me today, Your Honor, and it is in the file, but it's
 19    worth me going through these again.  May I approach, Your
02:03:47PM 20    Honor?
 21              THE COURT:  If you have something to give to me,
 22    give it to Ms. Loewe if you would -- or will.
 23              MR. DONLEY:  Thank you.  Your Honor, the plaintiffs'
 24    counsel in the motion for continuance, as well as the 56(d)
02:04:03PM 25    declaration, has stated that KBR has not been running various
```

1    search terms -- that we haven't run search terms, such as

2    Daoud.  Nothing could be farther from the truth, Your Honor.

3              When I saw their documents and I saw it sworn

4    to this Court that we had not run --

02:04:19PM 5         THE COURT:  I will give you equal time.  I will give

6    you equal time.

7              MR. DONLEY:  -- that we had not run these search

8    terms, I was beside myself.  What I have just handed the

9    Court, Your Honor, it is in the documents that have been

02:04:29PM 10   filed, is an October 21, 2010 letter from Mr. Matt Handley

11   with Cohen Milstein to Mr. Mike Mengis.

12             THE COURT:  Okay.  Yes.

13             MR. DONLEY:  If you turn over to the second page,

14   Your Honor, that second page begins the search terms that were

02:04:43PM 15   searched that are relevant to this letter from Mr. Handley.

16   Those search terms you will see at the top.  The first search

17   terms under KBR search terms is Daoud.  Next is Daoud &

18   Partners.  And then the variations that were run, DNP, DP,

19   D & P.  All the way down, Your Honor, there's 30-40, 50,000

02:05:06PM 20   hits.  You will see the hits on the right-hand column.  These

21   search terms were run.  They were provided to Cohen Milstein

22   by October 21, 2010.

23             THE COURT:  With the underlying documents?

24             MR. DONLEY:  Not with the underlying documents.

02:05:20PM 25   Here's where we were at the time, Your Honor.  The parties had

1  agreed upon these search terms.  These search terms had been

2  run.  We then provided -- and I thought I heard Ms. Fryszman

3  just say we had not provided them with the number of hits

4  either.  This document shows we --

02:05:31PM  5          THE COURT:  I think she said you did, you did

6  provide that.

7          MR. DONLEY:  All right.  Thank you, Your Honor.  So

8  at this point -- with this document, we had run these search

9  terms.  We had gotten this number of hits in the right-hand

02:05:44PM 10  column of this document; for instance, Daoud, the number of

11  hits, 7,214 and then on down the list.

12          Cohen Milstein then took this entire list of

13  search terms, which is five or six pages long, and as

14  Mr. Handley's letter shows us, Cohen Milstein then highlighted

02:06:08PM 15  those search terms which they wanted KBR to review the

16  documentation and determine what was to be produced with

17  regard to those search terms.

18          What's most relevant here, Your Honor, is that

19  all the search terms for Daoud, Daoud & Partner, and

02:06:24PM 20  plaintiffs' proposed variance of those, were not highlighted.

21  The terms were run as of October of 2010, Your Honor.  The

22  results were provided to Cohen Milstein and they decided at

23  that time they did not want us to review the documents, us

24  being KBR.

02:06:42PM 25          What they filed with you, Your Honor, in the

1  motion for continuance, and they say it over and over and over

2  again, KBR hasn't done all these things with regard to

3  electronic discovery.  We, indeed, have, Your Honor.

4              And then you will recall, Your Honor, earlier

02:06:57PM  5  this year we came in on a motion for protection.  That was

6  filed by KBR.  We said at that time, we said we think we have

7  done enough.  Your Honor told us to get with plaintiffs'

8  counsel and work through search terms.  Work on this a little

9  bit more.

02:07:10PM  10             At one point, Mr. Lowes was here.  Mr. Lowes

11  said, I will talk to plaintiffs' counsel and see if I can

12  help.  Over the course of the summer, Your Honor, plaintiffs'

13  counsel provided us with search terms.  KBR ran those.  We

14  have provided those hits, the number of documents returned for

02:07:28PM  15  any given search terms, back to plaintiffs' counsel.

16             Some additional searches that were run, Your

17  Honor -- if I may, I have another document, please.

18             I'm going to continue on here, Your Honor, with

19  the Daoud and Daoud-related search terms.  The document I just

02:07:54PM  20  handed you is -- most of it, it is already part of the record.

21  I'll clean this one up a little bit so you can see the actual

22  terms and hits.  The top box shows us those search terms that

23  were run on October 21 that we just discussed that Daoud

24  said -- plaintiff said they did not want us to review and

02:08:11PM  25  consider producing any documents.

1          The next set is March 23, 2010, that's why the

2 date is there.  We ran all of these Daoud-related search

3 terms.  Again, you can see the hits in the right-hand column.

4 They go on for pages, Your Honor, with all the various and

02:08:27PM 5 number of hits that are returned for Daoud.

6          When you get over to page 6, May 25th, we ran

7 another set of search terms for plaintiffs with regard to

8 Daoud and things related to Daoud.  Ultimately, Your Honor,

9 when you get to the back of this, all of these hits for Daoud

02:08:45PM 10 that plaintiffs' counsel has sworn in a declaration, has

11 stated in a motion for continuance KBR did not run, returned a

12 total of 546,282 hits.  It is the number on page 8 at the

13 bottom.

14          Your Honor, they have come in here and told you

02:09:02PM 15 a story about why they need a continuance.  Most of that story

16 is, well, KBR hasn't done what it should have done with regard

17 to electronic discovery and search terms and we haven't run

18 things.  We did, Your Honor.  And we have done it, and we have

19 done it, and we have provided it over and over again to

02:09:18PM 20 plaintiffs' counsel.

21          I have got two more documents, Your Honor, I

22 would like to hand you on other search terms that the

23 declaration and the motion said we haven't ran.

24          These search terms, Your Honor, that plaintiffs

02:09:43PM 25 say we haven't run up to this point relate to human

1   trafficking, coercion, deception, passport confiscation and

2   labor abuse.

3           Let's start with the one that is human

4   trafficking, Your Honor.  You can see on October 21 that we

02:09:59PM 5   provided to Mr. Handley the letter we saw a few moments ago.

6           THE COURT:  Slowly now.

7           MR. DONLEY:  Thank you, Your Honor.  We ran human

8   trafficking in all kinds of ways and things related to human

9   trafficking.

02:10:11PM 10          March 23, 2012, we did again.  March 25, 2012,

11  on page 3, plaintiffs' counsel had given us additional search

12  terms.  We ran those.  If you turn to page 4, Your Honor,

13  there is a total again.  These hits on things related to human

14  trafficking returned 538,445 hits, which means documents, not

02:10:30PM 15  pages, Your Honor, documents.  And as you might have recalled,

16  KBR has stated before that we think our best guess is that

17  each document is going to be roughly 7 pages.

18          THE COURT:  7 pages, yeah.

19          MR. DONLEY:  The next document I have handed the

02:10:46PM 20  Court for terms that the declaration and the motion for

21  continuance says KBR hasn't run is for coercion, deception,

22  passport confiscation and labor abuse.

23          October 21, we ran terms.  March 23, again,

24  after receiving them from plaintiffs' counsel, we ran terms.

02:11:03PM 25          Those go on for a number of pages, all the way

1    over to page 6 where we begin with May 25, 2012.  We, again,

2    ran terms related to those issues.  And then on page 8, again,

3    we have the total for all the hits we have run.  We have

4    provided all of these to plaintiffs' counsel.  Most of these

02:11:21PM  5    terms were terms they gave us, 756,687 hits or documents, Your

6    Honor.

7                   Now I'm not sure how to take it with

8    plaintiffs' counsel coming into this Court providing a motion

9    for continuance and declaration saying KBR has not done any

02:11:36PM 10    searches of any of these terms when most of the terms I just

11    went through came from plaintiffs' counsel and they certainly

12    participated in preparing these.  They have used these things,

13    Your Honor, to try to convince you to give them an extension.

14                   THE COURT:  How about the underlying documents?

02:11:50PM 15                   MR. DONLEY:  The underlying documents, here's how we

16    handle those, Your Honor.  We ran all of these searches.  We

17    kept getting letters from plaintiffs' counsel.  These are

18    tests, these are test searches, these are test searches.  We

19    don't know where to go any longer.  We finally said, here's

02:12:02PM 20    what we will do.  So far all of these test searches we have

21    run for you returned 2.2 million pages, about 250,000

22    documents, if you get through all of these.

23                   We told them what we were willing to do was to

24    put those on a platform available for their review at Baker

02:12:23PM 25    Hostetler's Offices in Washington, D.C. so that then they

1  could review them, decide what they thought was relevant --

2  most of these documents, Your Honor, are not going to be

3  relevant; they can't be.  2.2 million pieces of paper I don't

4  think are going to be relevant.  They could decide what they

02:12:36PM  5  think is relevant.  We could then -- we'd review those with

6  plaintiffs' counsel.  If we agreed, they would be produced.

7  If we had a dispute over what we thought was relevant, we

8  would provide that to the Court in a motion and let the Court

9  decide whether or not the documents should be produced.

02:12:49PM  10              We thought that was a very appropriate way to

11  try to tackle this problem considering the vast number of

12  search terms we were asked to review and the enormous number

13  of hits that were being produced as a result of those search

14  terms.  Now one thing Your Honor had asked KBR to do was to

02:13:11PM  15  help plaintiffs' counsel with trying to narrow search terms.

16  Without plaintiffs' counsel being able to tell us they had any

17  case, that was difficult for us to do, but we tried.  We have

18  sent a letter and expressed to them, here are things you might

19  consider in trying to narrow your search terms so that you can

02:13:30PM  20  come up with a more competent number of documents for review,

21  something smaller.  That didn't seem to phase plaintiffs'

22  counsel.

23              As you will recall, Mr. Lowes was here for a

24  hearing.  He said he would talk to plaintiffs' counsel.  We

02:13:44PM  25  all got on the phone with plaintiffs' counsel.  In fact, it

1    was myself, Mr. Mengis, Mr. Graves was there, Mr. Lowes, IT

2    personnel from KBR were all on the phone at our end.  On the

3    phone at the other end, I believe, was Ms. Fryszman and they

4    had a lawyer who was a specialist in electronic discovery on

02:14:00PM  5    their side.  We talked maybe 45 minutes, hour and a half, I

6    don't recall.  It was long enough to make sure we covered all

7    the plaintiffs' counsel's issues, concerns and questions.

8              So we have done everything we now can and that

9    we know to do from KBR's perspective to work with them.

02:14:18PM  10    Regardless, they still come into this Court and try to

11    claim -- in fact, they don't try to claim, they did claim.

12    They claimed that KBR has not done any of these things with

13    regard to electronic discovery.

14              Your question though was, Judge, what then did

02:14:31PM  15    KBR decide to do with all these documents.  We told

16    plaintiffs' counsel, we will just give them to you.  We are

17    glad to let you review them.  One of the first questions that

18    came back was, well, what we would like to have available to

19    us is software that would allow us to do word searches and

02:14:45PM  20    things through these documents.

21              I believe Mr. Mengis and I might have been on

22    that call.  I know I was on that call.  And our response was,

23    well, that sounds reasonable.  We will see if we can come up

24    with something so that you can accomplish that task.  Do you

02:14:58PM  25    have a software or something you would like for us to consider

1    to see if we can get that set and established on this portal?

2              We have never heard back, Your Honor, on that

3    issue.  Instead, what we ultimately were told from plaintiffs'

4    counsel, it would be funny if it wasn't for the amount of

02:15:17PM  5    money KBR has spent in this case.  Well, what we were told is,

6    reviewing all these documents would be too expensive.  Those

7    two words are a quote.  Ms. Fryszman told us to review all

8    these documents would be too expensive.  Despite that, she

9    still would like to come to this Court and claim KBR has done

02:15:32PM 10    nothing and make KBR do a lot more yet, Your Honor.  That

11    seems unfair and it's certainly, right now, the information

12    before this Court is on the record that it is inaccurate and

13    it is misleading by plaintiffs.

14              Where it has been left, Your Honor, is here:

02:15:46PM 15    The last communication was from us to plaintiffs' counsel:

16    What do you want to do with these documents?  We haven't heard

17    back from them.  My understanding was is that they were going

18    to get a plan back to us with regard to these electronic

19    documents, and we have not received one to this day despite

02:16:01PM 20    the fact that we have now filed a motion for summary judgment.

21              THE COURT:  All right.  Okay.  Thank you very much.

22              Is it McGowen or McOwen?  I'm sorry.

23              MS. McOWEN:  McOwen.

24              THE COURT:  McOwen.  I apologize.

02:16:17PM 25              MS. McOWEN:  No problem, Your Honor.

1          MS. FRYSZMAN:  Your Honor, with regard to the

2     Matthew Handley letter, we proposed certain terms from the

3     initial run as an initial production that we asked KBR to

4     produce within two weeks because they had said some of the

02:16:31PM  5     terms generated too many hits.  And I quote, Mr. Handley said:

6     Although we agree that certain search terms --

7          THE COURT:  Well, although we agree certain search

8     terms --

9          MS. FRYSZMAN:  -- that certain search terms will now

02:16:43PM 10     need to be revised to reduce the number of hits, many of the

11     search terms used -- and then he goes on to say, a group of

12     them are now -- produced right away.  We selected some that

13     had low numbers of hits, like 100 hits or 3 or 64, and perhaps

14     that wasn't the best way to proceed, but that's what we did.

02:17:01PM 15     And then those were the hits that were produced.  We weren't

16     actually thinking at the time that those are probably the

17     words that weren't used in very many documents and, therefore,

18     were not very useful as search terms.

19               That's part of the reason for the low hits, but

02:17:14PM 20     that was never intended to be the entirety of the document

21     production because, for example, we didn't select the term

22     Daoud; and if we had thought that that would be the end of the

23     documents that we would ever get from KBR, we would have

24     selected terms that included the other defendant in the case.

02:17:26PM 25          THE COURT:  Well, he says he is waiting on you.  He

1  says he's waiting on you.

2          MS. FRYSZMAN:  On July 24th, and I have -- I can

3  print this out -- I have on my Blackberry a copy of the

4  message I sent to KBR attaching a proposed 502(d) stipulation

02:17:39PM 5  to Mr. Mengis, and I have never heard back from them on this,

6  my proposal to the 502(d) stipulation.  I -- I mean, I could

7  e-mail it to Ms. Loewe or you could print it out and look at

8  it, but I --

9          THE COURT:  How am I supposed to resolve these

02:17:50PM 10  issues when the two sides disagree so radically about what the

11  facts are?  I just --

12          MR. MENGIS:  Let me correct the record.  I responded

13  to Ms. Fryszman.  It may have been orally, but I told her we

14  were not going to do a 502(d) and we were going to go back to

02:18:03PM 15  the proposal that we had made before.  That is just simply not

16  accurate.

17          THE COURT:  I don't know what to do.

18          MS. FRYSZMAN:  I think the bottom line is that I

19  think Mr. Donley's presentation confirms what I have been

02:18:15PM 20  saying, which is that they have given us the numbers of hits

21  but we don't have the underlying documents.  We have been

22  trying all summer to come up with iterations of key words

23  working on our own that would be targeted and effective

24  working by ourselves, not with, you know --

02:18:29PM 25          THE COURT:  Why did that take all summer?  I've

```
       1  never seen anything take all summer.
       2          MS. FRYSZMAN:  It's harder than it seems.  It's
       3  difficult because -- because, for example, we did tests of
       4  things that were like near 20 or near 30 and then all we get
02:18:43PM 5  is the numbers.  We don't have the documents to compare to see
       6  what is effective and what's not.  We get a response back
       7  that, you know, where we tested Sanjay and that made the
       8  numbers go way up, so we realized that Sanjay --
       9          THE COURT:  No, no, no, too fast.
      10          MS. FRYSZMAN:  Sorry.
      11          THE COURT:  Start that sentence over again.
      12          MS. FRYSZMAN:  We would test terms to see what
      13  terms, like the slang terms for third country nationals.  Some
      14  of them it turned out were also names, so they drove the
02:19:04PM 15  numbers up.  So we would run it again without that to try to
      16  determine.  But without seeing the documents, it is very hard
      17  to go through this process because essentially you are doing
      18  it completely in the dark.
      19          THE COURT:  And are you saying you are waiting on
02:19:15PM 20  KBR while KBR says it is waiting on you?  Is that where we
      21  are?
      22          MS. FRYSZMAN:  I guess we are at an impasse over
      23  whether the documents should be produced pursuant to a 502(d)
      24  stipulation of the federal rules of evidence provided or
02:19:26PM 25  whether we will need to go there and review them one by one on
```

```
 1  a secure terminal and not be permitted to take --
 2              THE COURT REPORTER:  Slow down, please.
 3              MS. FRYSZMAN:  I'm so sorry.
 4                  Or whether we will have to go to Baker
 5  Hostetler's office and review the documents one by one on a
 6  screen without being able to take notes.  Those seem to be the
 7  two choices on the table.  But I think their iteration of the
 8  hits confirm that there are a lot of documents that are
 9  responsive to our requests.  And, also, I think Mr. Donley
10  certainly confirms those documents haven't been produced.  We
11  have the number of hits, but not the underlying documents.
12              THE COURT:  Does Daoud wish to be heard on this at
13  all?
14              MR. SARLES:  No, Your Honor.
15              THE COURT:  I'm really -- I'm really at a loss to
16  understand what to do when somebody -- factual predicates are
17  the subject of such sharp debate.  And it is -- it does have
18  real world consequence right now because I can't otherwise
19  decide what's fair in terms of the summary judgment deadline
20  continuance.  I know I haven't gotten anything in writing from
21  KBR yet.  Is there a period of time KBR could live with as a
22  continuance?
23              MR. DONLEY:  Your Honor, may I?
24              THE COURT:  Yes, sir.
25              MR. DONLEY:  Here is why KBR is struggling, Your
```

02:19:37PM   5
02:19:55PM  10
02:20:16PM  15
02:20:49PM  20
02:21:04PM  25

1   Honor.  Now, on at least two, if not three, occasions,

2   including the last time we were here, even the Court has asked

3   plaintiffs, please tell us what is the link between the

4   allegations --

5          THE COURT:  Yeah, I agree with you.

6          MR. DONLEY:  They have had nothing, your Honor.  It

7   goes a little bit further.  This is the other reason why I am

8   so bothered by their motion for a continuance.  The first

9   hearing that we attended this year on KBR's motion for

02:21:34PM 10   protection, when you asked, what is the connection,

11   Ms. Fryszman said, I am going to have a strong case and she

12   said this.  She said it is not going to come from my client's

13   documents; it is going to come from my plaintiffs and

14   eyewitnesses who we believe.

02:21:49PM 15          If it is going to come from plaintiffs and

16   eyewitnesses, why does KBR have to be put through all this

17   burden?  Why can't they tell the Court now, especially in a

18   56(d) declaration, what is it they think they have, because I

19   think that's what the rule requires, and what is it they think

02:22:06PM 20   these additional documents are going to prove?  They don't say

21   that in any of the papers that they have filed.  Instead, all

22   they did is sling mud at KBR claiming we have done nothing

23   with regard to any of this electronic discovery trying to get

24   the Court focused on, well, KBR must not be playing fair, when

02:22:22PM 25   we have been trying to play fair all along.  Your Honor, may I

1  grab one document real quick?

2          THE COURT:  Yes, sir.

3          MR. DONLEY:  Instead of going back to their motion

4  for continuance --

5          THE COURT:  Slowly, slowly.

6          MR. DONLEY:  -- in the 56(d) declaration, while I

7  was sitting there, Judge, I grabbed plaintiffs' discovery

8  status report, which was filed yesterday.  First paragraph,

9  third to the last line -- fourth to the last line.  For

02:22:49PM 10  example, although KBR's relationship with Daoud is key -- is a

11  key issue in this case, none of the search terms have included

12  Daoud or the names of any Daoud employees.

13          Judge, something else must be going on here.  I

14  have shown to the Court in the papers we have filed and again

02:23:09PM 15  this afternoon that we did run Daoud.  We have provided the

16  results to that.  The first go around --

17          THE COURT:  I will give you time.  I will give you

18  time.

19          MR. DONLEY:  The first go around, they could have

02:23:19PM 20  highlighted those Daoud returns, those hits, and we would have

21  reviewed those documents and produced those which were

22  relevant.  Well, now they are trying to use all of this to

23  say, well, it is all KBR's fault, Your Honor, when it is not.

24  We have done all we know to do and there's -- you can always

02:23:33PM 25  do more.  I understand.  But we know all -- we've done all we

 1  reasonably know to do to try to work through this process.

 2  That's where we ended up finally just saying, look, if you

 3  really want these documents we'll put them on a portal, reach

 4  a reasonable agreement with you, and let you review them that

02:23:50PM  5  way.  But none of these, from our perspective, is a reason to

 6  continue plaintiffs' response to the motion for summary

 7  judgment.  They have told the Court, our evidence is coming

 8  from plaintiffs and eyewitnesses.  Where are they, Judge?  We

 9  are still looking for them.  I can quote Ms. Fryszman.  I've

02:24:09PM 10  got the transcript over -- that's exactly what she has told

11  this Court.  She also told the Court -- you asked.  You said

12  KBR keeps saying you don't have anything to support your case,

13  Ms. Fryszman, what does KBR do to protect itself?  Her

14  response was, file a motion for summary judgement.

02:24:26PM 15              We have Your Honor.  And we filed it not only

16  based upon the written discovery responses we have gotten from

17  plaintiffs today, but also the testimony of Buddi Gurung.  He

18  has now been deposed.  It is not complete.  But he's told us

19  two significant things with regard to KBR.  He was asked, what

02:24:44PM 20  are your complaints about the conditions once you got to the

21  base?  With regard to KBR, he had two.  He said, I told

22  Donovan, a KBR worker, I want to go back to Nepal.  What did

23  Donovan tell you?  He said Donovan told me, I'm just a

24  warehouse worker like you, Buddi; you have to go speak with

02:25:03PM 25  someone else.

1          Now in the papers they filed with the Court in

2    the past, they said KBR told Mr. Gurung that you can't leave.

3    That's not what Mr. Gurung testified to.  He said KBR said,

4    Bill or Donovan, because they both said the same thing, Buddi,

02:25:20PM  5    we are just workers like you.  You will have to go speak with

6    someone else.  That is a far cry from anyone at KBR telling

7    Mr. Gurung, you can't leave this base.  And, in fact, he has

8    got no evidence that anyone ever told him, "You can't leave

9    this base."

02:25:35PM  10          He was, also, asked about the trip getting into

11    the base.  He was asked, "Did anyone threaten you or coerce

12    you?"  He was asked about Mike.  He was asked about Kaleek.

13    He was asked about Pushka.  These are the people who allegedly

14    got him into Iraq.  He said, no, no one ever threatened me.

02:25:53PM  15    No one ever told me I was going to be harmed physically.

16          Where is the case here, Your Honor?  Plaintiffs

17    at some point have got to put up or shut up.  They can't keep

18    saying, KBR you have got to produce more, you've got to

19    produce more, you have to produce more.  They haven't even

02:26:05PM  20    made a showing in the motion they filed or the 56(d)

21    declaration that they have filed that they had anything,

22    anything at all to support a case against KBR when they filed

23    it.  They are required to do that, Judge.  When they have put

24    their name on that pleading, they have got to have some

02:26:23PM  25    evidence we have done something wrong, and they don't even

1    make that threshold showing in the motion for a continuance

2    that they file.  I say all this to say this, Your Honor.

3    Because of those things, it is very difficult for KBR to come

4    up and say, there's some period of time over which we are

02:26:38PM   5    willing to allow plaintiffs a continuance to file a response

6    to our motion for summary judgment.  I understand, Your Honor,

7    and I appreciate you would like for us to be able to come up

8    with something on that, but I would also ask the Court to

9    please appreciate the position we are in -- and we are looking

02:26:53PM   10   at the totality of the circumstances.  With what we know, we

11   now have deposed the live plaintiff who made it into al-Assad.

12             THE COURT:  I understand what your position is.

13             MR. DONLEY:  And so that's why we are having a

14   difficult time.  If they needed a few weeks to respond to the

02:27:09PM   15   motion for summary judgment, we can work through that, Judge.

16   I think in a document we have filed we have already offered

17   10 days to respond to it.  But we need a substantive response

18   to the summary judgment.  We need to know what these

19   plaintiffs think they have against KBR because, so far, with

02:27:22PM   20   everything they've filed with this Court all the way up to

21   this moment, they haven't even made a threshold showing that

22   they had anything to support their claims when they filed this

23   case.

24             THE COURT:  Okay.  I understand.  Ms. Fryszman.

02:27:41PM   25             MS. FRYSZMAN:  Just to stay on the issue that is

1   before us, I just want to reiterate again when we said they

2   hadn't searched for the documents that include the term Daoud,

3   we meant with search and produce.  We still don't have any of

4   those documents that include that term.

02:27:55PM   5          THE COURT:  Now, are they waiting on you for

6   something?

7          MS. FRYSZMAN:  No.  We can give them a final litany.

8   We are prepared to narrow down those searches we did over the

9   summer and try to prepare a final list of terms that we think

02:28:05PM  10   would work if we could get those pursuant to a 502(d)

11   stipulation.  And I think that is the solution that is in the

12   federal rules of evidence.  The case law that we cited in our

13   status conference report -- and others, have utilized that

14   procedure.  I think that's the way that courts are going now

02:28:26PM  15   with electronic discovery to protect the defendants with a

16   502(d) stipulation to protect against waiver and to provide

17   the documents in bulk to the plaintiffs.  It would be easy to

18   do.  It is cheap.  We have already run the searches.  We would

19   just move them over to a disk and produce it and they would be

02:28:42PM  20   protected pursuant to a provision that Congress enacted

21   specifically for this type of situation.

22          THE COURT:  Have you made that very statement to

23   KBR?

24          MS. FRYSZMAN:  I sent them a proposed 502(d)

02:28:55PM  25   stipulation, yes, on July 24th.  They have rejected it, it

1    appears.

2              THE COURT:  And is the sticking point the venue of

3    production or the nature of whether you are allowed copies as

4    opposed to review of a screen copy?  What, what -- tell me

02:29:09PM  5    what you think divides the parties.

6              MS. FRYSZMAN:  Their proposal would require us to go

7    to their office, look at the document on a screen, not be

8    permitted to take any notes, not be permitted to take the

9    document away with us and tag it for future review by KBR, and

02:29:27PM 10    to do it one by one for all 2 million pages.  I don't know how

11    long that will take us, but it will not get us to summary

12    judgment in 10 days.  That's for sure.  If we got the

13    documents electronically on a -- pursuant to 502(d), we could

14    then put them on our computer database, run keyword searches,

02:29:48PM 15    review them, have them, take notes and be able to use them.

16    Under their --

17              THE COURT:  What do you understand -- what do you

18    understand defendant's response to be?

19              MS. FRYSZMAN:  I think they just don't want to give

02:29:58PM 20    them to us under 502(d).  They just said no.  They didn't

21    really provide a reason.  At one point, Mr. Lowe said he

22    didn't want to do it because we were plaintiffs' lawyers and

23    that was the end of the conversation.

24              THE COURT:  Do you have -- do you have a

02:30:12PM 25    confidentiality agreement in place?

1          MS. FRYSZMAN:  Yes.  You -- the Court entered it at

2     the beginning of the case.

3          THE COURT:  I thought so, yeah.  And that's not

4     enough comfort for anybody?

02:30:21PM 5          MS. FRYSZMAN:  Just comfort for us.

6          THE COURT:  Well, you are not producing some things,

7     too.  I mean, you are not producing provision asylum-related

8     materials.  You are not producing -- well, Ms. McOwen says it

9     doesn't exist, but drafts of the speech in question --

02:30:39PM 10         MS. FRYSZMAN:  It doesn't exist.  Mr. Gurung took

11    his notes to the -- to get typed up and then did not retain

12    the notes.  The speech also falls outside the end of the

13    discovery period that we agreed on.  I don't think he realized

14    or thought he was under an obligation to retain those notes.

02:30:54PM 15    And the final speech was, in fact, preserved and they have a

16    copy of it.

17         THE COURT:  Well, how about on the asylum issue?

18         MS. FRYSZMAN:  I think that was addressed completely

19    by Ms. McOwen, but I think the case law really is unanimous

02:31:06PM 20    that the asylum documents are just strong public policy

21    that -- reason to protect those.  His asylum application isn't

22    based on trafficking.  And he testified fully as to the -- the

23    acts of the Maoist.  In fact, a lot of the transcript was

24    taken up by Mr. Tayback's questioning of the emotional

02:31:24PM 25    distress caused by the amount of violence and how it

1  continued.

2          So they have the basis for the emotional

3  damages and enough material to challenge the emotional damages

4  on those grounds.  The only reason to get this application

02:31:38PM 5  would further be to test his testimony.  But courts have held

6  that credibility isn't the reason -- I mean, we cited a number

7  of those cases in our papers that credibility isn't a reason,

8  but that it is always an issue.  But that is not a reason to

9  release the asylum application.  And courts have also held

02:31:52PM 10  that it is a chilling effect, not only on the plaintiff, but

11  on their family members and other people that they may have

12  lived with whose status may be in doubt.

13          THE COURT:  But if there is a confidentiality order

14  in place, wouldn't that take care of your concerns?

02:32:05PM 15          MS. FRYSZMAN:  I suppose if we could redact it,

16  maybe it would.  There are other people whose interests are

17  affected by the release of the asylum application, not just

18  Mr. Gurung's.  I could check -- we don't represent him in that

19  action.  I would like to have the opportunity to check with

02:32:28PM 20  his asylum counsel, if I may.

21          THE COURT:  Okay.  So we'll -- in your mind, what

22  remains to be done before you can respond to the summary

23  judgment motion is some kind of agreement on 502(d) or

24  something like it?

02:32:43PM 25          MS. FRYSZMAN:  Yes, that's right, Your Honor.  Some

1    ability to get at the documents.

2            THE COURT:  Was July the last conversation you had

3    about that then?

4            MS. FRYSZMAN:  I don't recall with specificity when

02:32:54PM  5    exactly the last conversation was.

6            THE COURT:  KBR seems to think that was the last.

7    They are nodding.

8            MS. FRYSZMAN:  I don't remember and whatever I say,

9    they will say I was wrong.  I don't have a good memory for

02:33:07PM 10    dates, but I just have to guess.  I don't remember.

11            THE COURT:  If it has been two months, why, why do

12    we have that lag time?

13            MS. FRYSZMAN:  For one, I was in Nepal for awhile

14    interviewing the clients and getting the documents for most of

02:33:16PM 15    September.  I just got back on Tuesday.  And so I was out.

16    And...

17            THE COURT:  You have important colleagues that could

18    do some of this.

19            MS. FRYSZMAN:  Matt was with me in Nepal.  We were

02:33:31PM 20    both there.  I think -- I don't know.  I can't explain why

21    there has been this delay.  There just has.  I guess we were

22    at an impasse.  We got stuck.  This plethora of motions got

23    filed that we were a little bit under water in responding to

24    all these motions and that's kind of where we still are.

02:33:45PM 25            THE COURT:  Okay.

1    MR. DONLEY:  Your Honor, may I very briefly?

2    THE COURT:  Yes, yes.

3    MR. DONLEY:  Your Honor, part of the problem with

4 just a simple callback agreement, as I have shown just with a

02:33:58PM  5 few search terms that I have placed in front of the Court

6 today, the search terms are going to return documents well

7 beyond and that have nothing to do with anything in this case.

8 And so if there's just a simple callback, they would see all

9 kinds of documents that have nothing to do with this case --

10 not that they are just privileged, but just nothing to do with

11 anything relevant to this case.  And that's why we are trying

12 to have a more reasonable approach to align, if you want --

13 you want to ask for all these search terms, you want all these

14 documents, we are glad to give them to you, but we have to

02:34:28PM 15 have some other reasonable mechanism by which we can produce

16 those.  That's why we can't do -- you know, it would be

17 inappropriate just to have some clawback arrangement.

18    MR. SARLES:  May I say one thing?

19    THE COURT:  Yes, sir.

02:34:40PM 20    MR. SARLES:  There was a few comments about the

21 asylum documents and the U.N. speech documents and I believe I

22 heard Ms. Fryszman say that Mr. Gurung didn't preserve the

23 draft of the speech that he wrote and then gave to plaintiffs'

24 counsel who, quote, as Mr. Gurung testified, corrected it,

02:34:58PM 25 that Mr. Gurung didn't preserve that draft because he didn't

1 believe he was under an obligation to preserve due to some

2 agreement about the temporal scope discovery in this case.

3 And I just want to make clear there is no agreement about the

4 temporal scope of discovery.  We have not made any agreement

02:35:17PM 5 that plaintiffs are not obligated to preserve documents dated

6 after any date, certainly not dated after they filed the

7 lawsuit.  The law is the exact opposite.  They are under an

8 obligation to preserve.  And I just wanted to clarify that as

9 far as we are concerned, they were under an obligation to

02:35:34PM 10 preserve that document and all documents.

11            THE COURT:  Okay.  All right.  The plaintiffs'

12 response on the summary judgment would have been due

13 September 19th.  We granted a 10-day extension, and so the

14 response is now due by October 1st.  Right after we did that,

02:35:59PM 15 plaintiffs filed another motion for continuance.  I will give

16 you -- I'll give you until October 22nd, which is a Monday.

17                 Okay.  I wanted to turn next to the plaintiffs'

18 Motion to Compel production of KBR's Ethics Hotline Reports.

19                 And that's your motion.  Do you want to -- do

02:36:32PM 20 you want to make the argument or are you willing to rest on

21 the papers?

22            MS. FRYSZMAN:  We can rest on the papers, Your

23 Honor.

24            THE COURT:  Does anybody from KBR want to speak to

02:36:40PM 25 that?

```
            1              MR. DONLEY:  I do.  Your Honor, if I may.

            2              THE COURT:  Yes, sir.

            3              MR. DONLEY:  Your Honor, our papers, we will rest on

            4    those as well, but I want to add one point.  The Leamon case,

02:36:52PM  5    L-E-A-M-O-N, Judge Hittner's case, he has taken up -- Judge

            6    Hittner took up in that very case the very type and format of

            7    the Ethics Hotline Report that is at issue before you, Your

            8    Honor.  In the Leamon case, Judge Hittner ruled that the very

            9    documents that plaintiff is seeking to obtain, documents one

02:37:15PM 10    and two, I believe they call them the Ethics Hotline Reports,

           11    as they come in from a caller, Judge Hittner has ruled those

           12    privileged.  And that was not in our papers.  I have now been

           13    able to talk to KBR's counsel on that case and confirm the

           14    very documents that are being requested here have already been

02:37:34PM 15    ruled in the Southern District by at least one court to be

           16    privileged.

           17              THE COURT:  Well, and it may be, but the person on

           18    the receiving end was not necessarily a lawyer, was it?

           19              MR. DONLEY:  But they were working for the Legal

02:37:47PM 20    Department, Your Honor, just as if it was a legal assistant, a

           21    paralegal or someone else connected to the Law Department.

           22    That's how it was set up.  That individual, who took the call,

           23    reported directly to the Legal Department and the Legal

           24    Department has been the custodian for that information ever

02:38:04PM 25    since.
```

1        THE COURT:  Okay.  All right.  It says privileged.

2        MR. DONLEY:  And as a result, we believe now -- Your

3   Honor, as Judge Hittner did in the Leamon case, I have these

4   documents available for you for in camera inspection.

02:38:14PM 5        THE COURT:  I think I'd better, if we can, I think I

6   better look at them.

7        MR. DONLEY:  Okay.  Your honor, may I provide these?

8        THE COURT:  Yes.

9        MR. DONLEY:  Thank you.

02:38:25PM 10        THE COURT:  I would like to take a short break.

11      (Recess)

12        THE COURT:  Now we have this huge issue of making

13   plaintiffs available for depositions in Houston.  I don't know

14   what to do about expediting visas.  I just -- I think that's

02:55:24PM 15   beyond my control.  I would think that, for depositions,

16   videoconferencing would be sufficient, but I am willing to be

17   educated on any particular hardships associated with

18   videoconferencing from Nepal.  But that just postpones the

19   main issue.  I mean, if the case does survive summary judgment

02:55:51PM 20   and we do have a trial, I think defendants absolutely have the

21   right to have plaintiff here in person.  I don't know what to

22   do about that.  I really don't.  If a letter from the Court as

23   to our interest in having the case litigated fully would do

24   any good, then I can do that.  But if the Court is being asked

02:56:13PM 25   to assure that the plaintiffs will return to Nepal afterwards,

1    I can't do that.  I can't say anything at all about what their

2    conduct will be once they come here.  Is it your concern the

3    government of Nepal is not fully behind this lawsuit?  I mean,

4    not behind it economically, but are they not supportive of the

02:56:38PM 5    plaintiffs; is that the problem?

6              MS. FRYSZMAN:  Oh, no.  No.  I don't have that

7    concern at all.  I'm sorry.  I guess I don't understand the

8    question exactly.

9              THE COURT:  Well, I thought there was, in the

02:56:50PM 10   papers, a suggestion that these visas are far from being

11   assured, that they might not be granted at all.

12             MS. FRYSZMAN:  It's the American government that

13   would have to grant the visas, not the Nepal government.

14             THE COURT:  Okay.  Well, then, is the American

02:57:07PM 15   government, is the American government less than enthusia -- I

16   would think that -- all the more, so the American government

17   would want to have -- want to have these allegations resolved.

18             MS. FRYSZMAN:  I would hope so, and I think a letter

19   from the Court would make a positive impact.

02:57:28PM 20             MS. McOWEN:  Your Honor, our understanding is that

21   the Embassy is very supportive of the lawsuit.  They routinely

22   make their facilities available for litigants to conduct

23   depositions at the Embassy in Kathmandu, which can also be

24   done by video link.  And so that is their preference, at least

02:57:50PM 25   for the deposition stage, but they expressed that they were

1  perfectly willing to cooperate to the extent they can.  Our

2  understanding is that they have not denied the visas yet,

3  pending our getting back to them with the defendants' position

4  on hosting the depositions at the Embassy in Nepal.

02:58:15PM 5           THE COURT:  And then that would be live or video

6  conference?

7           MS. McOWEN:  It could be either, Your Honor.  It

8  would be more cost effective, perhaps, for the defendants to

9  appear by video conference if they don't want to go to Nepal.

02:58:29PM 10           THE COURT:  I'm not sure you really have the right

11  to expect defendants to go to Nepal since the lawsuit was

12  brought here.

13           MS. McOWEN:  With respect to the choice of forum,

14  Your Honor, plaintiffs really didn't have a choice of forum.

02:58:45PM 15  Nepal was not an available forum.  Jordan was not an available

16  forum, and so they have come here to defendant --

17           THE COURT:  No, I understand the problem, but -- but

18  I don't -- I mean, maybe there's law I'm unaware of, but

19  normally, the opposing party does have the right to have the

02:59:05PM 20  plaintiffs presented in the district where the suit was filed.

21           MS. McOWEN:  It's been our experience in

22  transnational cases that it is not unusual to conduct the

23  depositions at least in another forum, whether its where the

24  plaintiffs live or some in-between location.  And it is also

02:59:27PM 25  not unusual to conduct them by video link.  The trial and the

1   need for live testimony at trial does tend to be, you know, an

2   additional consideration that the Embassy will take into

3   account and may lean toward granting them ultimately for trial

4   if we make it to that stage.

02:59:45PM 5        THE COURT:  Okay.  Do you want to be heard on that?

6        MR. DONLEY:  Please.  Your Honor, it is terribly

7   unsettling for the plaintiffs to sue KBR here in this district

8   and then say, sorry, can't get there for deposition.  But we

9   have now heard the lawyers over and over again, but they'll --

03:00:01PM 10  we probably can get here for trial.  That deposition is at

11  least as critical as trial for a trial lawyer, Your Honor.

12  I'm sure you are well aware of that.  We are entitled --

13       THE COURT:  I'm very concerned about this.

14       MR. DONLEY:  Sure.

03:00:13PM 15      THE COURT:  That's why I raised it.

16       MR. DONLEY:  We are entitled to look those

17  plaintiffs eye to eye and ask our questions.  That's why the

18  rules are as they are and that the rules require the

19  depositions take place here in Houston.  When you look at --

03:00:28PM 20  and we've asked for the documents on all the visa process.  I

21  don't believe they have been produced yet, because we have

22  been told various stories that are inconsistent about why

23  there are not visas for these plaintiffs to come here to the

24  United States, the latest being is that apparently they can't

03:00:44PM 25  convince the U.S. Embassy that they have a reason to return to

1  Nepal, that they have family there, that they work there, that

2  they have a home there, that they have possessions there.

3  That just strikes me as utterly strange, Your Honor.

4              I think the plaintiffs either have to come here

03:01:00PM  5  or the plaintiffs need to pay for KBR's counsel to travel to

6  Nepal to take those depos.  That's not our choice.  We don't

7  want to go there to take them.  I have no desire, frankly, to

8  travel to Nepal.  But we are entitled to sit across the table

9  from them and ask our questions; and if we have to go to

03:01:17PM 10  Nepal, because I think they won't get visas to come here, they

11  need to pay our expenses.  Video link, Your Honor,

12  unfortunately, doesn't work very well.  These plaintiffs have

13  made some very serious allegations against KBR, including

14  criminal conduct.  It is a 60-plus page pleading that has been

03:01:36PM 15  filed against KBR and we need to be able and sit and look at

16  these people, look them in the eye, think about whether or not

17  we think they are telling us the truth, determine what type of

18  answer we just received.  It has got to be done through an

19  interpreter, so trying to do it by video link just doesn't

20  work.  We need to be able to sit across the table from these

21  plaintiffs, take their depos.  We think we ought to be able to

22  do it here in Houston.  We don't think they have made

23  reasonable efforts so far to get the visas, but if they are

24  going to continue to say they can't get them, Your Honor, it's

03:02:05PM 25  KBR's position they need to pay the expenses for KBR's counsel

1   to go to Nepal and take the depositions there.

2          MS. McOWEN:  Your Honor, may I respond?

3          THE COURT:  Yes, you may.

4          MS. McOWEN:  The documentation of our -- the visa

03:02:24PM  5   application process has been produced to KBR.  And I think

6   that it -- I mean, strongly disagree with our characterization

7   that we have not made reasonable efforts to obtain these

8   visas.  The United States State Department indicates that some

9   60 percent of all visa applications by Nepalis are rejected

03:02:46PM  10  and it is not, Your Honor, because they can't prove that they

11  have lived in Nepal.  KBR appears to have a very naive view of

12  how visas are obtained for very low income villagers from...

13  Nepal.  It is a difficult threshold to meet.

14         THE COURT:  I don't deny that at all.  I know that.

03:03:04PM  15         MS. McOWEN:  I can honestly tell you that all of the

16  applicants are ready and willing to come here and yet the

17  visas have not been granted yet.  I strongly disagree with the

18  characterization that we have not been diligent.

19         THE COURT:  Do you think they are also ready to

03:03:22PM  20  return when their business here is over?

21         MS. McOWEN:  I do, Your Honor.  Unfortunately, they

22  fall into a category of people that the Embassy is

23  concerned --

24         THE COURT:  Well, I know that.

03:03:32PM  25         MS. McOWEN:  -- that they see the United States as an

1  opportunity.

2         THE COURT:  And the Nepalese consular officials can

3  be of no help on that

4         MS. McOWEN:  In obtaining the visas?

03:03:45PM  5         THE COURT:  Well, in communicating with the U.S.

6  Embassy as to the likelihood of return or anything like that?

7         MS. McOWEN:  I'm not sure I understand the question.

8         THE COURT:  I just -- I mean, I think it would be

9  very hard for U.S. officials to determine things like family

03:03:59PM  10  ties and plausible job opportunities and economic resources,

11  the kinds of things the U.S. authorities would want to hear

12  about whether someone would return to Nepal; and I would just

13  wonder if there's not any government-to-government

14  communication that could be had.

03:04:18PM  15         MS. McOWEN:  Well, Your Honor, this is what they do.

16  They adjudicate visa applications constantly.  So they view

17  these visa applications as only a little bit different from

18  any Nepali on the street applying.  And the difference is that

19  they come with a letter from counsel, from me, Your Honor,

03:04:38PM  20  saying that this is a legitimate lawsuit that is going forward

21  in Houston and that it is in all the parties interests and

22  desires to obtain visas.  And I think that's the only reason

23  why the visas haven't yet been denied, Your Honor, is that we

24  have made this effort.

25         THE COURT:  Uh-huh.

1              MR. McOWEN:  That said, we are trying to come up

2    with a reasonable alternative that is not costly and not

3    burdensome to anyone.  I believe the fact that the case is

4    proceeding here in Houston has been by in large very

03:05:12PM 5    convenient for the KBR defendants.  This is their hometown.

6    This is really the one issue where there's a geographic issue

7    that, you know, is going to make it very difficult for the

8    plaintiffs to appear for this.

9              THE COURT:  I know that.  And I fully understand how

03:05:29PM 10   expensive this case has gotten to be already.  But, I mean,

11   what do we have do about the defendants' right of

12   confrontation and all?  I mean, how do I --

13             MS. McOWEN:  I think there's plenty of case law

14   supporting the use of video depositions.  That was the case,

03:05:49PM 15   Your Honor, with telephone depositions before we had the more

16   sophisticated technology.  And there are plenty of cases that

17   proceed with telephone depositions.  Now we have video, which

18   does enable the questioner to effectively look the witness in

19   the eye when asking the question.

03:06:08PM 20             I would also propose, Your Honor, and we have

21   cited some case law to this effect, that if the case does

22   survive summary judgment and if we are able to obtain visas

23   for at least some of the witnesses to appear here in Houston

24   at trial, that there could also be an opportunity for the

03:06:31PM 25   defendants to confront the witnesses then prior to trial,

1  immediately before trial, which has been done particularly in

2  cases where the questions focus on damages.  And for a number

3  of the plaintiffs, it appears that the bulk of the questioning

4  would go to damages.

03:06:58PM  5          THE COURT:  Okay.

6          MS. McOWEN:  Thank you, Your Honor.

7          MR. DONLEY:  Your Honor, may I?

8          THE COURT:  Yes, sir.

9          MR. DONLEY:  Your Honor, the other thing -- the

03:07:04PM 10  other thing that I forgot to mention is that there's about an

11  11-hour time difference between Nepal and here.  Somebody is

12  going to be up very early in the morning and somebody is going

13  to be up very late in the evening trying to do these by some

14  type of video conference.  Your Honor, it certainly wouldn't

03:07:23PM 15  be appropriate -- here's what I'm -- I keep struggling with

16  and I'm not sure if everyone else is hearing this the way I

17  am, but I'm hearing, we sure think we can get them here for

18  trial.  We don't think we can get them here for depositions.

19  And if we can get them here for trial, we'll give KBR a few

03:07:40PM 20  days before trial a chance to depose these people.  Your

21  Honor, that obviously doesn't set well with KBR or its

22  counsel.

23          We are on the record all over the place about

24  what we think about this case and the lack of evidence.  This

03:07:52PM 25  case is, you know, with where we are now, we need these

1    depositions and we need to be able to look these people in the
2    eye and get their answers.   I heard Ms. McOwen say, it sure
3    has been convenient -- notice the word she used -- it's sure
4    been convenient for this case to be here in Houston filed
03:08:07PM 5    against KBR.   Not a 60-plus page complaint accusing KBR of
6    criminal conduct.   It's never convenient anywhere, Judge.   And
7    the amount of money that KBR has spent is just astronomical.
8              Well, let me read you what Ms. Fryszman said to
9    the Court on March 13, 2012, when the Court asked, what do you
03:08:27PM 10   have to connect KBR to this case, because it goes to why we
11   need to be able to look these plaintiffs in the eyes.
12   Ms. Fryszman responded, I think the evidence from our
13   plaintiffs will come largely from their testimony, not from
14   documents.   They are villagers in Indonesia.   They don't have
03:08:46PM 15   a lot of documents.   And we will present a strong case.   I
16   believe with eyewitness testimony from both our plaintiffs and
17   other witnesses, the people who we have contacted, who have
18   contacted us who we believe.
19             She says her case.   Plaintiffs' counsel says
03:09:01PM 20   their case is going to come from these plaintiffs.   These
21   depositions from our perspective, Your Honor, are critical.
22   Having to conduct them across some video link 11 hours or so
23   between these parties -- or between the attorney and the
24   witness being deposed through a translator, Your Honor, on
03:09:18PM 25   this type of case with this type of statement with these types

1  of allegations made from KBR's perspective just isn't fair.

2  Your Honor certainly has the ability to make this fair to

3  either help find a way or to force plaintiffs' counsel to find

4  a way to get these parties here for their depositions or to

03:09:36PM 5  pay KBR's counsels way to go to Nepal and take the depositions

6  there and take them live.

7          THE COURT:  Well, I do think there's probably a lot

8  of latitude.  I am sensitive to the relative disadvantages of

9  each potential approach.  I think videoconferencing is always

03:10:00PM 10  second best, and videoconferencing with an interpreter is a

11  further complication.

12                  I will take that under advisement.

13                  We have got plaintiffs' Motion to Compel Three

14  Limited Categories of Nonelectronic Documents.  Do you want to

03:10:32PM 15  speak to that, Ms. McOwen?

16          MS. McOWEN:  Actually, could I make one comment

17  before --

18          THE COURT:  Yeah, you may.

19          MS. McOWEN:  Just on the subject of diligence and

03:10:46PM 20  plaintiffs' diligence over the past couple of months, Your

21  Honor.  I want to clarify the volume of discovery that we have

22  been responding to, which includes no fewer than 5,561

23  requests for admission served by KBR and over 1600

24  interrogatories, all of which we are -- have been busy

03:11:10PM 25  answering and verifying with our clients who include more than

1  20 individuals located in Baran, Nepal.  The amount of time

2  that that has taken, in addition to responding to some 500

3  document requests and six pending discovery motions --

4            THE COURT:  If that's excessive, why didn't you come

03:11:32PM  5  to court to ask for some protection?

6            MS. McOWEN:  Your Honor, we are doing -- making our

7  best effort to respond in full to the defendants' requests.

8  We had been before you earlier this year about the interrog --

9  the first set of interrogatories that the KBR defendants

03:11:56PM 10  served.  We are responding to those on Friday.  So it is

11  approximately 500 interrogatories.

12            In the interim, KBR served an additional set of

13  approximately 500 interrogatories, which we answered and

14  served yesterday.  We are making every effort to respond in

03:12:18PM 15  full and to work as diligently as we possibly can on every

16  aspect of this case and it has simply left us in a position

17  where we have not had as much time as we would have liked to

18  be pursuing our affirmative efforts to receive discovery from

19  Kellogg Brown & Root.  And I just wanted to correct that, that

03:12:44PM 20  point that was raised earlier.

21            THE COURT:  Does anybody on your side want to speak

22  to the issue of these three discrete areas of document

23  discovery -- reports, records, disciplinary actions, documents

24  related to investigations, documents from press and foreign

03:13:14PM 25  affairs?  You not -- you not willing to --

1          MS. FRYSZMAN:  I think we are willing to rest on

2  our --

3          THE COURT:  Okay.

4          MS. FRYSZMAN:  -- papers.  We just filed the reply,

03:13:25PM 5  I think, yesterday evening.

6          THE COURT:  Okay.  Yes, sir.  You want to speak to

7  that, Mr. Mengis?

8          MR. MENGIS:  Yes, Your honor.  Just a couple of

9  quick points on this Motion to Compel with Three Discreet

03:13:46PM 10 Categories of Documents.  Number one, I won't spend long on

11 this at all.  I do believe there was a complete failure of

12 plaintiffs' counsel to comply with the meet and confer rules

13 and a misrepresentation to this Court, especially with regard

14 to the Halliburton documents as to the nature of the

03:14:03PM 15 conversations between counsel.  Ms. Fryszman asked me if I

16 would -- if I represented Halliburton and if I would accept a

17 subpoena on Halliburton's behalf or if there was any way I

18 could facilitate the production of Halliburton documents.  I

19 have responded back to her quite simply, you are going to have

03:14:24PM 20 to issue a subpoena.  I have talked to the people at KBR --

21 well, first of all, I don't represent Halliburton.

22          THE COURT:  I know.

23          MR. MENGIS:  And then, for the first time in the

24 motion, she raises the issue of whether we have an obligation

03:14:36PM 25 or not.  That was news to me that such an agreement existed

1    and that we would --

2              THE COURT:  Let me slow you down again.

3                   We've got --

4              MR. MENGIS:  I'm sorry, Your Honor.

03:14:42PM 5              THE COURT:  -- this young woman has got to keep up

6    with every syllable, okay?  Start the sentence again.

7              MR. MENGIS:  Since she had -- I did not know that

8    there was such an agreement between Halliburton and KBR that

9    would have made the docu -- that would have given Halliburton

03:14:57PM 10   any type of an obligation to respond to our request.  Since

11   she raised that issue, we have requested Halliburton to search

12   their files and to make available to us for review the

13   documents she now seeks.  As far as I am concerned, those

14   two -- two of the three categories now have been mooted, and

03:15:17PM 15   it could have been mooted before she filed her motion if she

16   had simply raised that issue with me prior to filing.  She did

17   not.  We have not heard back from Halliburton yet.  When we

18   do, I will report to her as to whether they have found any

19   documents or not.  We have produced all the documents subject

03:15:35PM 20   to those two classes that we have found in KBR's possession.

21   So there's nothing for the Court to consider as far as I am

22   concerned regarding those two categories.

23                   The more difficult issue is the one about the

24   employee records where she asked us to review every single

03:15:54PM 25   employee disciplinary file record to determine if anyone has

 1   ever been disciplined or potentially disciplined for raising a
 2   complaint about the treatment of third country nationals,
 3   taking of passports and those types of issues.  As we have set
 4   forth in our papers, Your Honor, KBR employed over 75,000
03:16:15PM  5   individuals.  The average employment record is 100 to 200
 6   pages.  Our conservative estimate, it would take us about
 7   nine years for one person to review those 75,000 records in
 8   detail enough for us to know whether anybody was disciplined
 9   or potentially disciplined because of those types of
03:16:35PM 10   allegations.  The burden associated with that far outweighs
11   the benefit of anything we might find.  What we have done --
12   and the reason Ms. Fryszman knows about the two instances that
13   she cites in her motion is because they were referenced in
14   e-mails that come from the nine POI's that she is complaining
03:16:58PM 15   about that we got to handpick and they are not the people that
16   should have been chosen.  The very people that she knows about
17   come from that electronic discovery.  We believe, that if
18   there were any others, they would have been shown in that very
19   same electronic discovery.
03:17:16PM 20           The employment records are not fully
21   electronically searchable.  In fact an electronic search would
22   be highly unreliable because a lot of the employment records,
23   as you might understand, are handwritten.  Those aren't
24   searchable in an electronic format as reliably as typewritten
03:17:34PM 25   employment records.  And also, to determine whether or not

1    something is responsive, we believe would require an even more

2    in-depth review of those documents.  Given the fact that she

3    has now dismissed her RICO actions against KBR, the relevancy

4    of these documents is also very limited.  So given the fact

03:17:52PM 5    that we think she's already found the two -- and actually,

6    there's only one that exists -- and the work that would be

7    required in searching the remaining documents and the burden

8    that that would entail just far outweigh any relevancy that

9    the remaining documents may have.

03:18:11PM 10         Your Honor, one other point I would like to

11   raise, because Your Honor noted at one point why we hadn't

12   found it, in one of our prior hearings, Ms. Fryszman came up

13   with a disciplinary record of Mr. Land.  And in response to

14   your question, I didn't know why we hadn't found it.  We since

03:18:33PM 15   went to go check Mr. Land's personnel file.  The document is

16   not there.  So even if we had searched Mr. Land's record, we

17   would not have found that document.  I don't even know whether

18   the one she has is authentic or not.  I'm not saying it is

19   not.  I just -- we don't have a copy of it.

03:18:47PM 20         THE COURT:  Okay.  Thank you.

21         MS. FRYSZMAN:  Your Honor, you asked earlier why

22   things take so long.  I guess one reason is that we had

23   started asking about these documents in June and we wrote to

24   the defendants and we got no response.  We wrote again two

03:19:10PM 25   weeks later; we got no response.  I think the chronology is

1   here on pages -- the early pages of our -- of our filing where

2   we detail the number of times that we wrote them and the

3   number of times that we called them and we were completely

4   ignored.  We got no response whatsoever.  And we detailed

03:19:28PM   5   it -- not even the full thing, but it is in our papers the

6   number of letters that we sent and the number of calls that we

7   made and got absolutely no response over almost a six-week

8   period.  It wasn't until we called and said, we are going to

9   file a motion, that we finally got them to respond to us.

03:19:41PM   10              When they sent their response, Mr. Mengis'

11   letter said the documents are in the custody and control of

12   Halliburton and that they wouldn't be produced.  We accepted

13   that, except that Ms. McOwen found on the Internet the

14   separation agreement between Halliburton and KBR.  I think it

03:20:03PM   15   is not our job to know about that.  It is their job to know

16   about that.  And they should have known about it.  Those

17   documents are plainly under their custody and control, and we

18   would like a clear evaluation of whether -- all of our

19   documents -- it appears that many more categories of documents

03:20:18PM   20   may be housed at Halliburton.  And it is additionally

21   frustrating, because months ago we served interrogatories

22   asking about the custodians, because I don't know if you

23   recall, there was a question about the e-mail suffixes and I

24   had a question about what the e-mail suffixes meant and they

03:20:33PM   25   said it was because employees are second.  And then we served

1    interrogatories about the --

2              THE COURT:  No, too fast.

3              MS. FRYSZMAN:  -- about the custodians and where

4    they worked.  And our responses didn't reveal that the

03:20:42PM  5    custodians worked at Halliburton.  I don't really have a good

6    idea of what has been searched, what hasn't been searched,

7    what categories of documents have been looked for, what

8    personnel files --

9              THE COURT:  Well, have you had that conversation

03:20:57PM 10    with the other side?

11             MS. FRYSZMAN:  We have tried.  And on the issue of

12    additional acts, the Supreme Court has repeatedly held that

13    additional acts of either subsequent or prior go to knowledge

14    and go to intent.  And we cited those cases, I think, on page

03:21:14PM 15    4 of -- I think maybe it was our Hotline Brief.  But it is

16    Keyes versus School District, 413 U.S. 189 where the Supreme

17    Court held that evidence of similar and related acts tend to

18    show consistent pattern of --

19             THE COURT:  No, we're going too fast.

03:21:36PM 20             MS. FRYSZMAN:  -- consistent pattern of conduct

21    highly irrelevant to the issue of intent.  We cited a couple

22    other Supreme Court cases, a Fifth Circuit case and a Fourth

23    Circuit case, United States versus Hattaway, 681 F.2d 214.

24             THE COURT:  Repeat the cite, please.

03:21:52PM 25             MS. FRYSZMAN:  681 F.2d 214, Fourth Circuit, 1982.

1    And what the Fourth Circuit found that the -- that the

2    subsequent acts were relevant in that they made it

3    significantly more probable that the defendant in that case

4    knowingly -- knowing committing the acts and was not merely an

03:22:14PM 5    unwitting goal of the association.

6            It is clear that subsequent conduct and prior

7    conduct and related acts are very relevant to the question of

8    intent and knowledge, which is one of the key issues that

9    remain in the case.  That is why we believe that these

03:22:26PM 10   documents are still relevant.  And, um...

11           THE COURT:  Well, the -- so I mean on the issue of

12   the documents that are in Halliburton's possession, are you

13   saying you just don't agree with defendants if they are in

14   Halliburton's possession or you're saying you are asking about

03:22:57PM 15   different documents or what, what...

16           MS. FRYSZMAN:  What I am trying to say, hopefully,

17   clearly, is we believe that that Master Separation Agreement

18   provides that the documents that were left at Halliburton at

19   the split in 2007 are still under the custody and control of

03:23:12PM 20   KBR.  So, for example, we got a set of the Hotline Reports.

21   But they start in 2006.  So I think if there are documents,

22   other documents other than the ones that we have just

23   discussed -- we have just stumbled on -- if there are other

24   documents that we have requested that state that Halliburton

03:23:31PM 25   left the Press Office documents or the Government documents,

1    that all of those documents are, in fact, under the Master

2    Separation Agreement in the custody and control of KBR and

3    should be produced even if --

4              THE COURT:   Okay.

03:23:44PM  5              MS. FRYSZMAN:  -- they are among the few that we have

6    identified.

7              THE COURT:   The production of personnel records or

8    disciplinary records, that does sound like an awful lot for --

9    for dubious relevance.   Can you narrow that request at all?

03:24:01PM 10              MS. FRYSZMAN:   It can be narrowed significantly.  I

11    think the numbers they provided was for every person that went

12    to Iraq and that isn't what we are seeking.   We could

13    certainly narrow it by time periods.   We can narrow it

14    by location --

03:24:11PM 15              THE COURT:   Why hasn't that been done?   I mean,

16    let's do that.

17              MS. FRYSZMAN:   I would be happy to talk with them if

18    they are willing to talk to us cooperatively to the end result

19    of actually getting to an answer as opposed to just saying no

20    and having -- just saying no.   But I would be happy to work

21    with them on getting to a narrower category.

22              THE COURT:   Mr. Mengis.

23              MR. MENGIS:   Your Honor, I raised this issue when

24    she first filed her motion.   I sent an e-mail to Ms. Loewe

03:24:37PM 25    saying that they had not met and conferred and asking them to

1    withdraw their motion until we could confer.  She refused.

2    She went forward with her motion.  These are exactly the types

3    of issues that we should have talked about before we came down

4    here, Your Honor.

03:24:52PM  5         MS. FRYSZMAN:  We have been writing them for

6    six weeks and then we were facing the discovery cutoff and we

7    had not gotten a response until we threatened to move to

8    compel.  And we were worried that under the cutoff we would be

9    cutoff if we didn't go forward.  I don't think they dispute

03:25:11PM 10    that they ignored all of our letters and phone calls.

11         MR. MENGIS:  I do most certainly dispute.  I told

12    her we were working on a response.  It was not the threat of a

13    Motion to Compel.  She wrote a six- or seven-page letter that

14    took some time to respond to and to get the factual statements

03:25:25PM 15    in my correspondence correct while working on other things.

16    Of the ten categories of documents that we responded to, she

17    only came down here on three.  So, obviously, we made some

18    points in the letter.  We were -- we stood ready to work on

19    the remaining three and she didn't come back to talk to me

03:25:45PM 20    about it.

21         THE COURT:  Alright.

22              Well, before I rule on it, I would like to see

23    the disciplinary records that are being requested and narrowed

24    significantly.

03:26:03PM 25              The documents related to investigations

1  conducted by KBR as to human trafficking, that strikes me as a

2  difficult search.  Are there documents that can be accessed

3  that deal with internal investigations?

4          MR. MENGIS:  Your Honor, as far as the KBR documents

03:26:37PM  5  are concerned, we have searched the KBR records as requested

6  by Ms. Fryszman in the various places that she asked us to

7  look, in The Press Office and the Government Affairs Office

8  and so forth, to try and find those types of documents, as

9  well as searching our files for investigations.  We've done

03:26:55PM  10  that.  We've produced what KBR has found.  It is either

11  produced or it is in a privileged log.  My understanding of

12  her request here today was for the Halliburton documents.  We

13  have made a request of Halliburton to do that same search.  I

14  have no idea whether they will or won't.  We have made the

03:27:11PM  15  request.  If Ms. Fryszman doesn't like that response, she can

16  subpoena Halliburton.

17          THE COURT:  I'm not going to grant the Motion to

18  Compel.  I do think we can make some more progress

19  consensually before I need to rule on that.

03:27:29PM  20          I haven't set a discovery cutoff.  I don't know

21  if there's any point in doing so when I have authorized so

22  many depositions.  I'm inclined to let the parties make their

23  own way on discovery; and if one party believes it has become

24  excessive or unnecessarily consumptive of time, you can come

03:27:54PM  25  back to me and ask me to set a deadline, which I will do.

1              Well, the two really hard ones are KBR's motion

2    as to compel the depositions in Houston and plaintiffs' cross

3    motion for protective order on video link.

4              Should we end the hearing before you die?

03:28:36PM 5         MS. McOWEN:  I apologize, Your Honor.

6         THE COURT:  That's okay.  I'm kidding.

7         MR. SARLES:  Your Honor, could I just tell you one

8    thing about the Houston depo issue.  We are not taking a

9    position on the location; but whatever the resolution, Daoud

03:28:50PM 10   does want the right to sit at the table and confront the

11   witnesses in person without taking a position on where that

12   location will be.

13        THE COURT:  Has anybody suggested you don't have

14   that right?

03:28:59PM 15        MR. SARLES:  No, I just wanted to clarify.

16        THE COURT:  All right.

17             Well, I'm going to go take another hard look at

18   the cases on those two motions, and I will have something out

19   in writing.  Does anybody -- is there anything else we can do

03:29:15PM 20   today?

21             Okay.  Thank you all very much.

22        (Concluded)

23                        * * *

24

25

1   I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled cause, to the best
2   of my ability.

3

4   //s_____        10/10/2012
    Stephanie Kay Carlisle            CSR, RPR         Date
5   Official Court Reporter

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

**//s** [1] - 68:4

## 1

**10** [4] - 9:22, 10:1, 36:17, 38:12
**10-day** [1] - 43:13
**10/10/2012** [1] - 68:4
**100** [2] - 28:13, 59:5
**1000** [1] - 2:5
**10th** [1] - 1:19
**11** [1] - 54:22
**11-hour** [1] - 53:11
**1100** [1] - 1:14
**13** [4] - 6:24, 8:22, 8:25, 54:9
**15th** [1] - 6:14
**1600** [1] - 55:23
**189** [1] - 62:16
**1982** [1] - 62:25
**19th** [1] - 43:13
**1:40** [1] - 1:8
**1st** [1] - 43:14

## 2

**2** [1] - 38:10
**2.2** [2] - 24:21, 25:3
**20** [2] - 30:4, 56:1
**200** [1] - 59:5
**2000** [1] - 2:5
**20005** [1] - 1:15
**2006** [1] - 63:21
**2007** [1] - 63:19
**2009** [1] - 12:22
**2010** [4] - 19:10, 19:22, 20:21, 22:1
**2012** [6] - 1:7, 3:2, 23:10, 24:1, 54:9
**21** [5] - 19:10, 19:22, 21:23, 23:4, 23:23
**214** [2] - 62:23, 62:25
**22nd** [1] - 43:16
**23** [3] - 22:1, 23:10, 23:23
**238** [2] - 7:3, 8:18
**24th** [2] - 29:2, 37:25
**25** [4] - 1:7, 3:2, 23:10, 24:1
**250,000** [1] - 24:21
**25th** [1] - 22:6
**26** [7] - 7:1, 9:3, 9:4, 9:5, 9:9

## 3

**3** [3] - 10:17, 23:11, 28:13
**30** [2] - 9:13, 30:4
**30-40** [1] - 19:19
**39** [1] - 7:2

## 4

**4** [2] - 23:12, 62:15
**40** [1] - 9:5
**413** [1] - 62:16
**45** [1] - 26:5
**47** [1] - 9:10

## 5

**5,561** [1] - 55:22
**50** [1] - 18:12
**50,000** [1] - 19:19
**500** [4] - 1:15, 56:2, 56:11, 56:13
**502(d** [11] - 17:1, 18:11, 29:4, 29:6, 29:14, 30:23, 37:10, 37:16, 37:24, 38:13, 40:23
**502(d)** [1] - 38:20
**515** [1] - 2:10
**538,445** [1] - 23:14
**546,282** [1] - 22:12
**56(d** [4] - 18:24, 32:18, 33:6, 35:20
**56(d)** [1] - 16:19

## 6

**6** [2] - 22:6, 24:1
**60** [1] - 50:9
**60-plus** [2] - 49:14, 54:5
**64** [1] - 28:13
**681** [2] - 62:23, 62:25

## 7

**7** [3] - 9:21, 23:17, 23:18
**7,214** [1] - 20:11
**713.250.5157** [1] - 2:11
**75,000** [2] - 59:4, 59:7
**756,687** [1] - 24:5
**77002** [2] - 2:6, 2:10

## 8

**8** [2] - 22:12, 24:2
**8016** [1] - 2:10
**865** [1] - 1:18
**874** [1] - 17:14

## 9

**90017** [1] - 1:19

## A

**ability** [3] - 41:1, 55:2, 68:2
**able** [13] - 14:6, 25:16, 31:6, 36:7, 38:15, 44:13, 49:15, 49:20, 49:21, 52:22, 54:1, 54:11
**above-entitled** [1] - 68:1
**absolutely** [2] - 45:20, 61:7
**abuse** [2] - 23:2, 23:22
**accept** [1] - 57:16
**accepted** [1] - 61:12
**access** [1] - 14:19
**accessed** [1] - 66:2
**accommodate** [1] - 16:12
**accommodation** [1] - 10:24
**accomplish** [1] - 26:24
**account** [1] - 48:3
**accurate** [1] - 29:16
**accusing** [1] - 54:5
**acknowledge** [1] - 6:7
**Action** [1] - 1:3
**action** [1] - 40:19
**actions** [2] - 56:23, 60:3
**acts** [7] - 39:23, 62:12, 62:13, 62:17, 63:2, 63:4, 63:7
**actual** [3] - 14:3, 17:18, 21:21
**add** [1] - 44:4
**addition** [4] - 7:2, 8:20, 15:11, 56:2
**additional** [19] - 7:6, 8:22, 9:5, 9:10, 11:19, 11:20, 11:25, 14:2, 15:2, 15:10, 16:3, 16:20, 21:16,

23:11, 32:20, 48:2, 56:12, 62:12, 62:13
**additionally** [1] - 61:20
**addressed** [1] - 39:18
**ADHIKARI** [1] - 1:3
**adjudicate** [1] - 51:16
**admission** [1] - 55:23
**advisement** [1] - 55:12
**Affairs** [1] - 66:7
**affairs** [1] - 56:25
**affect** [1] - 4:8
**affected** [1] - 40:17
**afternoon** [2] - 3:3, 33:15
**afterwards** [1] - 45:25
**AGNIESZKA** [1] - 1:13
**Agnieszka** [1] - 3:5
**ago** [2] - 23:5, 61:21
**agree** [6] - 11:15, 11:17, 28:6, 28:7, 32:5, 63:13
**agreed** [5] - 6:2, 11:11, 20:1, 25:6, 39:13
**agreeing** [1] - 8:1
**agreement** [10] - 34:4, 38:25, 40:23, 42:4, 43:2, 43:3, 43:4, 57:25, 58:8, 61:14
**Agreement** [2] - 63:17, 64:2
**aided** [1] - 1:25
**AL** [2] - 1:4, 1:8
**al** [4] - 1:14, 14:4, 15:3, 36:11
**al-Assad** [3] - 14:4, 15:3, 36:11
**align** [1] - 42:12
**allegations** [5] - 32:4, 46:17, 49:13, 55:1, 59:10
**allegedly** [1] - 35:13
**allow** [3] - 16:3, 26:19, 36:5
**allowed** [1] - 61:7
**almost** [1] - 61:7
**Alright** [1] - 65:21
**alternative** [1] - 52:2
**American** [4] - 46:12, 46:14, 46:15, 46:16
**amount** [6] - 16:17, 16:22, 27:4, 39:25,

54:7, 56:1
**And..** [1] - 41:16
**Angeles** [5] - 1:19, 10:13, 10:24, 11:3, 11:11
**answer** [2] - 49:18, 64:19
**answered** [3] - 8:14, 8:17, 56:13
**answering** [1] - 55:25
**answers** [1] - 54:2
**apologize** [3] - 15:1, 27:24, 67:5
**appear** [3] - 47:9, 52:8, 52:23
**appearances** [1] - 3:4
**APPEARANCES** [2] - 1:12, 2:1
**applicants** [1] - 50:16
**application** [5] - 39:21, 40:4, 40:9, 40:17, 50:5
**applications** [3] - 50:9, 51:16, 51:17
**apply** [2] - 10:1, 11:18
**applying** [1] - 51:18
**appreciate** [2] - 36:7, 36:9
**approach** [3] - 18:19, 42:12, 55:9
**appropriate** [3] - 16:20, 25:10, 53:15
**areas** [1] - 56:22
**arguing** [1] - 43:20
**argument** [1] - 42:17
**arrangement** [1] - 42:17
**arrived** [2] - 7:11, 15:4
**aspect** [1] - 56:16
**Assad** [3] - 14:4, 15:3, 36:11
**asserting** [1] - 15:14
**assistant** [1] - 44:20
**associated** [2] - 45:17, 59:10
**association** [1] - 63:5
**assure** [1] - 45:25
**assured** [1] - 46:11
**astronomical** [1] - 54:7
**asylum** [13] - 12:4, 13:16, 15:11, 15:13, 16:6, 39:7, 39:17, 39:20, 39:21, 40:9,

40:17, 40:20, 42:21
**asylum-related** [1] - 39:7
**attaching** [1] - 29:4
**attempt** [1] - 4:6
**attended** [1] - 32:9
**attorney** [1] - 54:23
**attorneys** [1] - 11:5
**audible** [1] - 8:24
**authentic** [1] - 60:18
**authorities** [1] - 51:11
**authority** [1] - 13:3
**authorize** [1] - 16:15
**authorized** [1] - 66:21
**available** [8] - 24:24, 26:18, 45:4, 45:13, 46:22, 47:15, 58:12
**Avenue** [1] - 1:14
**average** [1] - 59:5
**aware** [1] - 48:12
**awful** [1] - 64:8
**awhile** [1] - 41:13

## B

**Baker** [5] - 2:4, 3:14, 3:15, 24:24, 31:4
**Baran** [1] - 56:1
**Base** [2] - 14:4, 15:3
**base** [4] - 34:21, 35:7, 35:9, 35:11
**based** [4] - 10:13, 14:4, 34:16, 39:22
**basis** [2] - 14:6, 40:2
**become** [1] - 66:23
**BEFORE** [1] - 1:10
**begin** [1] - 24:1
**beginning** [3] - 3:4, 14:3, 39:2
**begins** [1] - 19:14
**behalf** [2] - 12:1, 57:17
**behind** [2] - 46:3, 46:4
**believes** [2] - 15:7, 66:23
**benefit** [1] - 59:11
**beside** [1] - 19:8
**best** [5] - 23:16, 28:14, 55:10, 56:7, 68:1
**better** [6] - 5:18, 6:3, 16:9, 18:8, 45:5, 45:6
**between** [10] - 4:12, 16:5, 32:3, 47:24, 53:11, 54:23, 57:15,

58:8, 61:14
**beyond** [5] - 7:6, 13:17, 13:20, 42:7, 45:15
**Bill** [1] - 35:4
**Billy** [2] - 3:12, 4:20
**BILLY** [1] - 2:3
**bit** [5] - 21:9, 21:21, 32:7, 41:23, 51:17
**Blackberry** [1] - 29:3
**blamed** [2] - 15:15, 15:25
**blames** [1] - 16:2
**bothered** [1] - 32:8
**bottom** [2] - 22:13, 29:18
**bounds** [1] - 13:17
**box** [1] - 21:22
**break** [1] - 45:10
**Brief** [1] - 62:15
**briefly** [1] - 42:1
**broad** [1] - 5:7
**brought** [3] - 5:24, 18:17, 47:12
**Brown** [1] - 56:19
**Buddi** [3] - 34:17, 34:24, 35:4
**bulk** [2] - 37:17, 53:3
**burden** [3] - 32:17, 59:10, 60:7
**burdensome** [1] - 52:3
**business** [1] - 50:20
**busy** [2] - 14:9, 55:24

## C

**CA** [1] - 1:19
**CALDWELL** [1] - 1:17
**callback** [2] - 42:4, 42:8
**caller** [1] - 44:11
**camera** [1] - 45:4
**care** [2] - 15:4, 40:14
**Carlisle** [1] - 68:4
**CARLISLE** [1] - 2:9
**case** [56] - 4:7, 5:7, 5:20, 8:3, 8:16, 9:15, 11:1, 12:10, 13:6, 15:14, 15:22, 16:8, 16:11, 25:17, 27:5, 28:24, 32:11, 33:11, 34:12, 35:16, 35:22, 36:23, 37:12, 39:2, 39:19, 42:7, 42:9, 42:11, 43:2, 44:4, 44:5, 44:6, 44:8,

44:13, 45:3, 45:19, 45:23, 52:3, 52:10, 52:13, 52:14, 52:21, 53:24, 53:25, 54:4, 54:10, 54:15, 54:19, 54:20, 54:25, 56:16, 62:22, 62:23, 63:3, 63:9
**cases** [10] - 8:1, 15:12, 15:20, 40:7, 47:22, 52:16, 53:2, 62:14, 62:22, 67:18
**Categories** [2] - 55:14, 57:10
**categories** [5] - 58:14, 58:22, 61:19, 62:7, 65:16
**category** [2] - 50:22, 64:21
**caused** [2] - 15:19, 39:25
**certain** [4] - 28:2, 28:6, 28:7, 28:9
**certainly** [8] - 24:11, 27:11, 31:10, 43:6, 53:14, 55:2, 64:13, 65:11
**certify** [1] - 68:1
**challenge** [1] - 40:3
**chance** [1] - 53:20
**change** [2] - 3:21, 5:17
**characterization** [2] - 50:6, 50:18
**cheap** [1] - 37:18
**check** [3] - 40:18, 40:19, 60:15
**chilling** [1] - 13:21, 40:10
**choice** [6] - 9:23, 16:13, 47:13, 47:14, 49:6
**choices** [1] - 31:7
**chosen** [1] - 59:16
**chronology** [1] - 60:25
**Circuit** [5] - 13:18, 62:22, 62:23, 62:25, 63:1
**circuit** [1] - 13:19
**circumstances** [1] - 36:10
**cite** [2] - 15:21, 62:24
**cited** [6] - 15:12, 37:12, 40:6, 52:21, 62:14, 62:21
**cites** [1] - 59:13
**Civil** [2] - 1:3, 18:11
**claim** [5] - 15:25, 26:11, 27:9

**claimed** [1] - 26:12
**claiming** [3] - 14:21, 15:18, 32:22
**claims** [5] - 4:22, 5:5, 8:16, 13:22, 36:22
**clarify** [4] - 5:4, 43:8, 55:21, 67:15
**classes** [1] - 58:20
**classic** [1] - 15:24
**clawback** [1] - 42:17
**clean** [1] - 21:21
**clear** [4] - 17:11, 43:3, 61:18, 63:6
**clearly** [3] - 12:19, 16:10, 63:17
**client** [1] - 15:19
**client's** [1] - 32:12
**clients** [2] - 41:14, 55:25
**closer** [1] - 9:17
**coerce** [1] - 35:11
**coercion** [2] - 23:1, 23:21
**Cohen** [6] - 1:14, 19:11, 19:21, 20:12, 20:14, 20:22
**colleagues** [1] - 41:17
**column** [3] - 19:20, 20:10, 22:3
**combine** [1] - 17:15
**comfort** [2] - 39:4, 39:5
**coming** [3] - 11:10, 24:8, 34:7
**comment** [1] - 55:16
**comments** [1] - 42:20
**committing** [1] - 63:4
**communicating** [1] - 51:5
**communication** [2] - 27:15, 51:14
**compare** [1] - 30:5
**compel** [2] - 65:8, 67:2
**Compel** [5] - 43:18, 55:13, 57:9, 65:13, 66:18
**competent** [1] - 25:20
**complaining** [1] - 59:14
**complaint** [3] - 9:11, 54:5, 59:2
**complaints** [1] - 34:20
**complete** [2] - 34:18, 57:11

**completely** [3] - 30:18, 39:18, 61:3
**complication** [1] - 55:11
**comply** [1] - 57:12
**compromise** [1] - 11:4
**computer** [2] - 1:25, 38:14
**computer-aided** [1] - 1:25
**concern** [2] - 46:2, 46:7
**concerned** [6] - 43:9, 48:13, 50:23, 58:13, 58:22, 66:5
**concerns** [2] - 26:7, 40:14
**concluded** [1] - 14:2
**Concluded** [1] - 67:22
**concurrent** [1] - 11:22
**conditions** [2] - 14:22, 34:20
**conduct** [10] - 46:2, 46:22, 47:22, 47:25, 49:14, 54:6, 54:22, 62:20, 63:6, 63:7
**conducted** [2] - 10:11, 66:1
**confer** [2] - 57:12, 65:1
**conference** [4] - 37:13, 47:6, 47:9, 53:14
**conferred** [1] - 64:25
**confidential** [1] - 15:23
**confidentiality** [2] - 38:25, 40:13
**confirm** [2] - 31:8, 44:13
**confirms** [2] - 29:19, 31:10
**confiscation** [2] - 23:1, 23:22
**confront** [2] - 52:25, 67:10
**confrontation** [1] - 52:12
**Congress** [1] - 37:20
**connect** [1] - 54:10
**connected** [1] - 44:21
**connection** [1] - 32:10
**consecutive** [1] - 11:22
**Consecutive** [1] -

11:23
**consensually** [1] - 66:19
**consequence** [1] - 31:18
**conservative** [1] - 59:6
**consider** [5] - 18:4, 21:25, 25:19, 26:25, 58:21
**considerably** [1] - 17:4
**consideration** [1] - 48:2
**considering** [1] - 25:11
**consistent** [2] - 62:18, 62:20
**constantly** [1] - 51:16
**consular** [1] - 51:2
**consumptive** [1] - 66:24
**contacted** [2] - 54:17, 54:18
**continuance** [16] - 5:14, 16:19, 16:23, 18:24, 21:1, 22:11, 22:15, 23:21, 24:9, 31:20, 31:22, 32:8, 33:4, 36:1, 36:5, 43:15
**continuation** [1] - 11:12
**continue** [3] - 21:18, 34:6, 49:24
**continued** [1] - 40:1
**Continued** [1] - 2:1
**continues** [1] - 12:6
**control** [5] - 45:15, 61:11, 61:17, 63:19, 64:2
**convenient** [4] - 52:5, 54:3, 54:4, 54:6
**conversation** [4] - 38:23, 41:2, 41:5, 62:9
**conversations** [1] - 57:15
**convince** [2] - 24:13, 48:25
**cooperate** [1] - 47:1
**cooperatively** [1] - 64:18
**copies** [1] - 38:3
**copy** [6] - 12:8, 12:9, 29:3, 38:4, 39:16, 60:19
**correct** [5] - 9:2,

29:12, 56:19, 65:15, 68:1
**corrected** [1] - 42:24
**correspondence** [3] - 4:20, 4:21, 65:15
**cost** [1] - 47:8
**costly** [1] - 52:2
**counsel** [42] - 3:4, 4:20, 4:22, 10:11, 10:13, 10:24, 11:2, 11:4, 14:14, 18:24, 21:8, 21:11, 21:13, 21:15, 22:10, 22:20, 23:11, 23:24, 24:4, 24:8, 24:11, 24:17, 25:6, 25:15, 25:16, 25:22, 25:24, 25:25, 26:16, 27:4, 27:15, 40:20, 42:24, 44:13, 49:5, 49:25, 51:19, 53:22, 54:19, 55:3, 57:12, 57:15
**counsel's** [2] - 9:23, 26:7
**counsels** [2] - 16:13, 55:5
**country** [4] - 3:23, 10:21, 30:13, 59:2
**counts** [1] - 3:20
**couple** [4] - 11:8, 55:20, 57:8, 62:21
**course** [3] - 6:7, 12:2, 21:12
**court** [2] - 44:15, 56:5
**COURT** [143] - 1:1, 2:9, 3:3, 3:8, 3:11, 3:17, 3:25, 4:1, 4:3, 4:8, 4:12, 4:18, 5:3, 5:11, 6:15, 6:20, 6:22, 7:8, 7:14, 7:19, 8:8, 8:13, 8:20, 8:25, 9:6, 9:7, 9:13, 9:20, 10:4, 10:8, 10:23, 11:7, 11:17, 11:22, 11:24, 12:12, 13:7, 13:11, 13:14, 13:23, 14:8, 14:25, 16:3, 17:7, 17:24, 18:13, 18:21, 19:5, 19:12, 19:23, 20:5, 23:6, 23:18, 24:14, 27:21, 27:24, 28:7, 28:25, 29:9, 29:17, 29:25, 30:9, 30:11, 30:19, 31:2, 31:12, 31:15, 31:24, 32:5, 33:2, 33:5, 33:17, 36:12, 36:24, 37:5, 37:22, 38:2, 38:17, 38:24,

39:3, 39:6, 39:17, 40:13, 40:21, 41:2, 41:6, 41:11, 41:17, 41:25, 42:2, 42:19, 43:11, 43:24, 44:2, 44:17, 45:1, 45:5, 45:8, 45:10, 45:12, 46:9, 46:14, 47:5, 47:10, 47:17, 48:5, 48:13, 48:15, 50:3, 50:14, 50:19, 50:24, 51:2, 51:5, 51:8, 51:25, 52:9, 53:5, 53:8, 55:7, 55:18, 56:4, 56:21, 57:3, 57:6, 57:22, 58:2, 58:5, 60:20, 62:2, 62:9, 62:19, 62:24, 63:11, 64:4, 64:7, 64:15, 64:22, 65:21, 66:17, 67:6, 67:13, 67:16
**Court** [35] - 2:9, 14:13, 18:16, 19:4, 19:9, 23:20, 24:8, 25:8, 26:10, 27:9, 27:12, 32:2, 32:17, 32:24, 33:14, 34:7, 34:11, 35:1, 36:8, 36:20, 39:1, 42:5, 45:22, 45:24, 46:19, 54:9, 57:13, 58:21, 62:12, 62:17, 62:22, 68:5
**courts** [3] - 37:14, 40:5, 40:9
**cover** [1] - 14:17
**covered** [2] - 10:13, 26:6
**credibility** [2] - 40:6, 40:7
**criminal** [2] - 49:14, 54:6
**critical** [2] - 48:11, 54:21
**cross** [1] - 67:2
**cry** [1] - 35:6
**CSR** [1] - 68:4
**current** [1] - 14:11
**custodian** [1] - 44:24
**custodians** [3] - 61:22, 62:3, 62:5
**custody** [4] - 61:11, 61:17, 63:19, 64:2
**cutoff** [2] - 65:6, 65:8, 65:9, 66:20

## D

**D.C** [1] - 24:25

**daily** [1] - 14:6
**damages** [6] - 15:14, 15:25, 40:3, 53:2, 53:4
**Daoud** [31] - 3:9, 5:6, 10:11, 11:2, 11:6, 12:1, 12:16, 15:10, 19:2, 19:17, 20:10, 20:19, 21:19, 21:23, 22:2, 22:5, 22:8, 22:9, 28:22, 31:12, 33:10, 33:12, 33:15, 33:20, 37:2, 67:9
**DAOUD** [2] - 1:8, 1:17
**Daoud's** [1] - 10:13
**Daoud-related** [2] - 21:19, 22:2
**dark** [1] - 30:18
**database** [1] - 38:14
**Date** [1] - 68:4
**date** [2] - 22:2, 43:6
**dated** [2] - 43:5, 43:6
**dates** [1] - 41:10
**days** [5] - 9:25, 10:12, 36:17, 38:12, 53:20
**DC** [1] - 1:15
**deadline** [3] - 6:13, 31:19, 66:25
**deal** [3] - 15:12, 16:8, 66:3
**Dean** [1] - 3:16
**debate** [1] - 31:17
**deceased** [1] - 8:11
**deception** [2] - 23:1, 23:21
**decide** [5] - 25:1, 25:4, 25:9, 26:15, 31:19
**decided** [2] - 3:22, 20:22
**declaration** [8] - 18:25, 22:10, 22:23, 23:20, 24:9, 32:18, 33:6, 35:21
**DEFENDANT** [2] - 1:17, 2:3
**defendant** [4] - 3:9, 28:24, 47:16, 63:3
**defendant's** [3] - 6:6, 10:24, 38:18
**Defendants** [1] - 8:9
**defendants** [14] - 3:13, 4:21, 7:8, 12:23, 16:4, 37:15, 45:20, 47:8, 47:11, 52:5, 52:25, 56:9, 60:24, 63:13
**defendants'** [4] - 8:6,

47:3, 52:11, 56:7
**definitively** [1] - 18:6
**delay** [1] - 41:21
**delivered** [1] - 12:21
**denied** [2] - 47:2, 51:23
**deny** [1] - 50:14
**Department** [5] - 44:20, 44:21, 44:23, 44:24, 50:8
**depo** [1] - 67:8
**deponent** [1] - 9:23
**deponent's** [1] - 9:23
**deponents** [1] - 5:22
**depos** [2] - 49:6, 49:21
**depose** [4] - 9:17, 10:15, 12:11, 53:20
**deposed** [9] - 5:21, 8:18, 9:16, 10:2, 10:20, 10:23, 34:18, 36:11, 54:24
**deposition** [14] - 10:12, 11:9, 12:6, 12:8, 12:14, 12:16, 12:25, 14:2, 16:4, 16:14, 16:15, 46:25, 48:8, 48:10
**depositions** [28] - 4:10, 5:13, 5:20, 5:25, 6:7, 6:19, 7:1, 7:6, 7:24, 8:2, 45:13, 45:15, 46:23, 47:4, 47:23, 48:19, 50:1, 52:14, 52:15, 52:17, 53:18, 54:1, 54:21, 55:4, 55:5, 66:22, 67:2
**depth** [1] - 60:2
**derive** [1] - 7:22
**described** [1] - 18:10
**designate** [1] - 15:22
**designated** [5] - 8:4, 9:3, 9:4, 9:9
**desire** [1] - 49:7
**desires** [1] - 51:22
**Despite** [1] - 27:8
**despite** [1] - 27:19
**detail** [2] - 59:8, 61:2
**detailed** [1] - 61:4
**details** [2] - 14:19, 14:20
**determine** [6] - 20:16, 30:16, 49:17, 51:9, 58:25, 59:25
**devastating** [1] - 13:21
**die** [1] - 67:4
**difference** [2] - 51:18, 53:11

**different** [3] - 13:7, 51:17, 63:15
**difficult** [8] - 25:17, 30:3, 36:3, 36:14, 50:13, 52:7, 58:23, 66:2
**diligence** [2] - 55:19, 55:20
**diligent** [1] - 50:18
**diligently** [1] - 56:15
**directly** [1] - 44:23
**disadvantages** [1] - 55:8
**disagree** [3] - 29:10, 50:6, 50:17
**disciplinary** [5] - 56:23, 58:25, 60:13, 64:8, 65:23
**disciplined** [4] - 59:1, 59:8, 59:9
**discovery** [33] - 3:24, 4:6, 4:9, 4:15, 4:25, 5:15, 6:13, 7:11, 12:17, 13:17, 16:2, 17:6, 17:21, 21:3, 22:17, 26:4, 26:13, 32:23, 33:7, 34:16, 37:15, 39:13, 43:2, 43:4, 55:21, 56:3, 56:18, 56:23, 59:17, 59:19, 65:6, 66:20, 66:23
**Discreet** [1] - 57:9
**discrete** [1] - 56:22
**discussed** [4] - 4:12, 4:15, 21:23, 63:23
**discussing** [1] - 14:3
**discussion** [2] - 16:6, 16:7
**disk** [1] - 37:19
**dismissed** [1] - 60:3
**dispute** [4] - 14:16, 25:7, 65:9, 65:11
**distress** [2] - 15:14, 39:25
**district** [2] - 47:20, 48:7
**District** [3] - 2:9, 44:15, 62:16
**DISTRICT** [3] - 1:1, 1:1, 1:11
**divide** [1] - 16:4
**divides** [1] - 38:5
**DIVISION** [1] - 1:2
**DNP** [1] - 19:18
**docu** [1] - 58:9
**document** [21] - 12:3, 12:10, 17:16, 17:18, 20:4, 20:8, 20:10, 21:17, 21:19,

23:17, 23:19, 28:20, 33:1, 36:16, 38:7, 38:9, 43:10, 56:3, 56:22, 60:15, 60:17
**documentation** [2] - 20:16, 50:4
**Documents** [2] - 55:14, 57:10
**documents** [101] - 12:4, 12:18, 17:2, 17:12, 17:13, 17:14, 17:19, 17:22, 17:23, 18:16, 19:3, 19:9, 19:23, 19:24, 20:23, 21:14, 21:25, 22:21, 23:14, 23:15, 24:5, 24:14, 24:15, 24:22, 25:2, 25:9, 25:20, 26:15, 26:20, 27:6, 27:8, 27:16, 27:19, 28:17, 28:23, 29:21, 30:5, 30:16, 30:23, 31:5, 31:8, 31:10, 31:11, 32:13, 32:20, 33:21, 34:3, 37:2, 37:4, 37:17, 38:13, 39:20, 41:1, 41:14, 42:6, 42:9, 42:14, 42:21, 43:5, 43:10, 44:9, 44:14, 45:4, 48:20, 54:14, 54:15, 56:23, 56:24, 57:14, 57:18, 58:13, 58:19, 60:2, 60:4, 60:7, 60:9, 60:23, 61:11, 61:17, 61:19, 62:7, 63:10, 63:12, 63:15, 63:18, 63:21, 63:22, 63:24, 63:25, 64:1, 65:16, 65:25, 66:2, 66:4, 66:8, 66:12
**done** [23] - 7:25, 18:6, 21:2, 21:7, 22:16, 22:18, 22:19, 24:9, 26:8, 26:12, 27:9, 32:22, 33:24, 33:25, 35:25, 40:22, 46:24, 49:18, 53:1, 59:11, 64:15, 66:9
**Donley** [4] - 3:12, 4:20, 8:22, 31:9
**DONLEY** [38] - 2:3, 3:12, 4:17, 4:19, 6:10, 6:16, 6:21, 6:23, 9:2, 18:15, 18:23, 19:7, 19:13, 19:24, 20:7, 23:7, 23:19, 24:15, 31:23, 31:25, 32:6, 33:3, 33:6, 33:19, 36:13,

42:1, 42:3, 44:1, 44:3, 44:19, 45:2, 45:7, 45:9, 48:6, 48:14, 48:16, 53:7, 53:9
**Donley's** [2] - 5:8, 29:19
**Donovan** [4] - 34:22, 34:23, 35:4
**doubt** [1] - 40:12
**down** [12] - 5:9, 7:4, 7:5, 14:25, 19:19, 20:11, 31:2, 37:8, 58:2, 65:3, 65:17
**DP** [1] - 19:18
**draft** [2] - 42:23, 42:25
**drafts** [1] - 39:9
**dragged** [1] - 17:8
**drop** [1] - 4:23
**dropped** [2] - 4:22, 4:24
**dropping** [2] - 3:20, 5:5
**drove** [1] - 30:14
**dubious** [1] - 64:9
**due** [3] - 43:1, 43:12, 43:14
**during** [1] - 15:17

### E

**e-mail** [5] - 5:9, 29:7, 61:23, 61:24, 64:24
**e-mails** [1] - 59:14
**early** [2] - 53:12, 61:1
**easy** [1] - 37:17
**eaten** [1] - 14:20
**economic** [1] - 51:10
**economically** [1] - 46:4
**educated** [1] - 45:17
**effect** [4] - 4:13, 13:21, 40:10, 52:21
**effective** [4] - 10:12, 29:23, 30:6, 47:8
**effectively** [1] - 52:18
**efficient** [2] - 10:12, 14:15
**effort** [3] - 51:24, 56:7, 56:14
**efforts** [3] - 49:23, 50:7, 56:18
**either** [7] - 7:23, 20:4, 47:7, 49:4, 55:3, 62:13, 66:10
**electronic** [14] - 4:9, 17:2, 17:21, 21:3,

22:17, 26:4, 26:13, 27:18, 32:23, 37:15, 59:17, 59:19, 59:21, 59:24
**electronically** [2] - 38:13, 59:21
**ELLISON** [1] - 1:10
**Emanuel** [2] - 1:18, 11:5
**Embassy** [7] - 46:21, 46:23, 47:4, 48:2, 48:25, 50:22, 51:6
**emotional** [4] - 15:14, 39:24, 40:2, 40:3
**employed** [1] - 59:4
**employee** [2] - 58:24, 58:25
**employees** [2] - 33:12, 61:25
**employment** [4] - 59:5, 59:20, 59:22, 59:25
**enable** [1] - 52:18
**enacted** [1] - 37:20
**end** [8] - 26:2, 26:3, 28:22, 38:23, 39:12, 44:18, 64:18, 67:4
**ended** [1] - 34:2
**enormous** [1] - 25:12
**enslavement..** [1] - 17:15
**entail** [1] - 60:8
**entered** [1] - 39:1
**enthusia** [1] - 46:15
**entire** [2] - 14:13, 20:12
**entirety** [1] - 28:20
**entities** [1] - 5:6
**entitled** [6] - 6:20, 7:12, 7:13, 7:14, 7:17, 7:19, 7:21, 12:11, 48:12, 48:16, 49:8, 68:1
**equal** [2] - 19:5, 19:6
**equitable** [1] - 7:17
**especially** [2] - 32:17, 57:13
**essentially** [1] - 30:17
**established** [1] - 27:1
**estimate** [1] - 59:6
**ET** [2] - 1:4, 1:8
**et** [1] - 1:14
**Ethics** [3] - 43:18, 44:7, 44:10
**evaluation** [1] - 61:18

22:17, 26:4, 26:13, 27:18, 32:23, 37:15, 59:17, 59:19, 59:21, 59:24

**evening** [2] - 53:13, 57:5
**event** [1] - 15:2
**evidence** [8] - 30:24, 34:7, 35:8, 35:25, 37:12, 53:24, 54:12, 62:17
**Evidence** [1] - 18:10
**exact** [1] - 43:7
**exactly** [4] - 34:10, 41:5, 46:8, 65:2
**examination** [3] - 14:2, 14:15, 15:11
**examine** [1] - 15:6
**example** [4] - 28:21, 30:3, 33:10, 63:20
**exceeded** [1] - 5:21
**exceeding** [1] - 7:10
**except** [1] - 61:13
**Except** [1] - 13:12
**exception** [1] - 17:7
**excessive** [2] - 56:4, 66:24
**exist** [4] - 13:8, 13:9, 39:9, 39:10
**existed** [1] - 57:25
**exists** [1] - 60:6
**expect** [1] - 47:11
**expediting** [1] - 45:14
**expenses** [2] - 49:11, 49:25
**expensive** [2] - 27:6, 27:8, 52:10
**experience** [1] - 47:21
**explain** [1] - 41:20
**expressed** [2] - 25:18, 46:25
**extended** [2] - 6:15, 6:17
**extension** [2] - 24:13, 43:13
**extensions** [1] - 15:10
**extent** [1] - 47:1
**eye** [5] - 48:17, 49:16, 52:19, 54:2
**eyes** [1] - 54:11
**eyewitness** [1] - 54:16
**eyewitnesses** [3] - 32:14, 32:16, 34:8

### F

**F.2d** [2] - 62:23, 62:25
**facilitate** [1] - 57:18

**facilities** [1] - 46:22
**facing** [1] - 65:6
**fact** [13] - 8:19, 16:12, 25:25, 26:11, 27:20, 35:7, 39:15, 39:23, 52:3, 59:21, 60:2, 60:4, 64:1
**facts** [6] - 7:4, 9:17, 12:10, 15:13, 29:11
**factual** [2] - 31:16, 65:14
**failure** [1] - 57:11
**fair** [8] - 10:15, 10:18, 15:24, 31:19, 32:24, 32:25, 55:1, 55:2
**fall** [1] - 50:22
**FALLS** [1] - 3:9
**falls** [1] - 39:12
**Falls** [1] - 3:9
**family** [4] - 8:21, 40:11, 49:1, 51:9
**far** [13] - 9:4, 13:20, 24:20, 35:6, 36:19, 43:9, 46:10, 49:23, 58:13, 58:21, 59:10, 60:8, 66:4
**Farrell** [2] - 3:15, 4:15
**FARRELL** [1] - 2:4
**fast** [4] - 9:6, 30:9, 62:2, 62:19
**fault** [1] - 33:23
**Federal** [2] - 18:10, 18:11
**federal** [2] - 30:24, 37:12
**feet** [1] - 17:8
**few** [7] - 9:16, 23:5, 36:14, 42:5, 42:20, 53:19, 64:5
**fewer** [1] - 55:22
**Fifth** [1] - 62:22
**Figueroa** [1] - 1:18
**file** [7] - 18:18, 34:14, 36:2, 36:5, 58:25, 60:15, 61:9
**filed** [25] - 18:17, 19:10, 20:25, 21:6, 27:20, 32:21, 33:8, 33:14, 34:15, 35:1, 35:20, 35:21, 35:22, 36:16, 36:20, 36:22, 41:23, 43:6, 43:15, 47:20, 49:15, 54:4, 57:4, 58:15, 64:24
**files** [3] - 58:12, 62:8, 66:9
**filing** [2] - 58:16, 61:1

**filings** [1] - 3:19
**filled** [1] - 14:6
**final** [8] - 12:20, 12:24, 13:2, 13:4, 13:12, 37:7, 37:9, 39:15
**finally** [3] - 24:19, 34:2, 61:9
**First** [2] - 11:8, 33:8
**first** [10] - 13:25, 19:16, 26:17, 32:8, 33:16, 33:19, 56:9, 57:21, 57:23, 64:24
**five** [2] - 3:20, 20:13
**flew** [1] - 5:9
**Floor** [1] - 1:19
**focus** [1] - 53:2
**focused** [1] - 32:24
**food** [1] - 14:20
**FOR** [3] - 1:13, 1:17, 2:3
**force** [1] - 55:3
**foregoing** [1] - 68:1
**foreign** [1] - 56:24
**forgot** [1] - 53:10
**form** [1] - 17:2
**format** [2] - 44:6, 59:24
**forth** [3] - 12:5, 59:4, 66:8
**forum** [5] - 47:13, 47:14, 47:15, 47:16, 47:23
**forward** [3] - 51:20, 65:2, 65:9
**four** [1] - 3:20
**fourth** [1] - 33:9
**Fourth** [3] - 62:22, 62:25, 63:1
**framed** [1] - 12:19
**frankly** [1] - 49:7
**free** [1] - 15:22
**Friday** [1] - 56:10
**from..** [1] - 50:12
**front** [1] - 42:5
**frustrating** [1] - 61:21
**Fryszman** [17] - 3:5, 20:2, 26:3, 27:7, 29:13, 32:11, 34:9, 34:13, 36:24, 42:22, 54:8, 54:12, 57:15, 59:12, 60:12, 66:6, 66:15
**FRYSZMAN** [61] - 1:13, 3:5, 3:22, 4:5, 4:11, 4:14, 5:8, 7:9, 7:16, 8:7, 8:9, 8:14, 8:24, 9:3, 9:8, 9:19, 10:1, 10:7, 16:25,

17:11, 18:1, 28:1, 28:9, 29:2, 29:18, 30:2, 30:10, 30:12, 30:22, 31:3, 36:25, 37:7, 37:24, 38:6, 38:19, 39:1, 39:5, 39:10, 39:18, 40:15, 40:25, 41:4, 41:8, 41:13, 41:19, 43:22, 46:6, 46:12, 46:18, 57:1, 57:4, 60:21, 62:3, 62:11, 62:20, 62:25, 63:16, 64:5, 64:10, 64:17, 65:5
**full** [6] - 8:15, 8:17, 10:15, 56:7, 56:15, 61:5
**fully** [5] - 39:22, 45:23, 46:3, 52:9, 59:20
**funny** [1] - 27:4
**future** [1] - 38:9

**G**

**gas** [1] - 10:21
**gather** [1] - 3:20
**generally** [1] - 5:19
**generated** [1] - 28:5
**geographic** [1] - 52:6
**given** [5] - 21:15, 23:11, 29:20, 58:9, 60:4
**Given** [1] - 60:2
**glad** [2] - 26:17, 42:14
**goal** [1] - 63:5
**government** [8] - 46:3, 46:12, 46:13, 46:15, 46:16, 51:13
**Government** [2] - 63:25, 66:7
**government-to-government** [1] - 51:13
**grab** [1] - 33:1
**grabbed** [1] - 33:7
**grant** [2] - 46:13, 66:17
**granted** [3] - 43:13, 46:11, 50:17
**granting** [1] - 48:3
**Graves** [2] - 3:16, 26:1
**ground** [1] - 14:17
**grounds** [1] - 40:4
**group** [2] - 15:16, 28:11

**groups** [1] - 7:3
**guarantee** [1] - 18:4
**guess** [10] - 4:14, 5:17, 6:3, 17:11, 23:16, 30:22, 41:10, 41:21, 46:7, 60:22
**Gurung** [21] - 10:2, 10:16, 10:19, 11:9, 12:15, 12:20, 12:25, 13:20, 14:3, 14:21, 15:6, 15:15, 15:25, 34:17, 35:2, 35:3, 35:7, 39:10, 42:22, 42:24, 42:25
**Gurung's** [1] - 40:18

**H**

**H-09-1237** [1] - 1:4
**half** [4] - 10:2, 10:10, 11:13, 26:5
**Halliburton** [18] - 17:2, 57:14, 57:16, 57:18, 57:21, 58:8, 58:9, 58:11, 58:17, 61:12, 61:14, 61:20, 62:5, 63:18, 63:24, 66:12, 66:13, 66:16
**Halliburton's** [3] - 57:17, 63:12, 63:14
**hand** [4] - 19:20, 20:9, 22:3, 22:22
**handed** [1] - 19:8, 21:20, 23:19
**handle** [1] - 24:16
**Handley** [5] - 19:10, 19:15, 23:5, 28:2, 28:5
**Handley's** [1] - 20:14
**handpick** [1] - 59:15
**handwritten** [3] - 13:1, 13:6, 59:23
**handwrote** [1] - 12:8
**happy** [2] - 64:17, 64:20
**hard** [4] - 30:16, 51:9, 67:1, 67:17
**harder** [1] - 30:2
**hardship** [1] - 10:19
**hardships** [1] - 45:17
**harmed** [1] - 35:15
**harms** [1] - 15:18
**Hattaway** [1] - 62:23
**hear** [2] - 18:13, 51:11
**heard** [11] - 14:14, 20:2, 27:2, 27:16, 29:5, 31:12, 42:22, 48:5, 48:9, 54:2,

58:17
**hearing** [6] - 17:20, 25:24, 32:9, 53:16, 53:17, 67:4
**hearings** [1] - 60:12
**heels** [1] - 5:17
**held** [8] - 14:21, 14:22, 15:7, 16:16, 40:5, 40:9, 62:12, 62:17
**help** [5] - 16:15, 21:12, 25:15, 51:3, 55:3
**highlighted** [3] - 20:14, 20:20, 33:20
**highly** [2] - 59:22, 62:21
**hits** [26] - 19:20, 20:3, 20:9, 20:11, 21:14, 21:22, 22:3, 22:5, 22:9, 22:12, 23:13, 23:14, 24:3, 24:5, 25:13, 28:5, 28:10, 28:13, 28:15, 28:19, 29:20, 31:8, 31:11, 33:20
**Hittner** [4] - 44:6, 44:8, 44:11, 45:3
**Hittner's** [1] - 44:5
**HOCHMUTH** [2] - 2:4, 3:15
**Hochmuth** [1] - 3:15
**Hoffman** [1] - 11:4
**hold** [1] - 16:14
**holiday** [1] - 16:16
**home** [1] - 49:2
**hometown** [1] - 52:5
**honestly** [1] - 50:15
**honor** [2] - 45:7, 57:8
**Honor** [114] - 3:6, 4:17, 4:19, 5:2, 6:10, 6:12, 6:16, 6:21, 7:2, 7:9, 9:2, 9:19, 10:1, 10:9, 11:8, 11:14, 12:13, 13:3, 13:10, 16:25, 18:15, 18:18, 18:20, 18:23, 19:2, 19:9, 19:14, 19:19, 19:25, 20:7, 20:18, 20:21, 20:25, 21:3, 21:4, 21:7, 21:12, 21:17, 21:18, 22:4, 22:8, 22:14, 22:18, 22:21, 22:24, 23:4, 23:7, 23:12, 23:15, 24:6, 24:13, 24:16, 25:2, 25:14, 27:2, 27:10, 27:14, 27:25, 28:1, 31:14, 31:23, 32:1, 32:6, 32:25,

33:23, 34:15, 35:16,
36:2, 36:6, 40:25,
42:1, 42:3, 43:23,
44:1, 44:3, 44:8,
44:20, 45:3, 46:20,
47:7, 47:14, 48:6,
48:11, 49:3, 49:11,
49:24, 50:2, 50:10,
50:21, 51:15, 51:19,
51:23, 52:15, 52:20,
53:6, 53:7, 53:9,
53:14, 53:21, 54:21,
54:24, 55:2, 55:21,
56:6, 58:4, 59:4,
60:10, 60:11, 60:21,
64:23, 65:4, 66:4,
67:5, 67:7
**HONORABLE** [1] -
1:10
**hope** [1] - 46:18
**Hopefully** [1] - 7:14
**hopefully** [1] - 63:16
**hoping** [1] - 9:15
**horrid** [1] - 14:22
**Hostetler** [3] - 2:4,
3:14, 3:16
**Hostetler's** [2] -
24:25, 31:5
**hosting** [1] - 47:4
**Hotline** [5] - 43:18,
44:7, 44:10, 62:15,
63:20
**hour** [1] - 26:5
**hours** [13] - 5:23,
7:21, 7:24, 9:21,
9:22, 10:1, 10:10,
10:17, 11:13, 11:19,
11:24, 16:4, 54:22
**house** [1] - 3:16
**housed** [1] - 61:20
**Houston** [11] - 2:6,
2:10, 45:13, 48:19,
49:22, 51:21, 52:4,
52:23, 54:4, 67:2,
67:8
**HOUSTON** [2] - 1:2,
1:8
**huge** [1] - 45:12
**human** [6] - 22:25,
23:3, 23:7, 23:8,
23:13, 66:1

## I

**idea** [2] - 62:6, 66:14
**identically** [1] - 5:7
**identified** [3] - 9:10,
12:16, 64:6
**ignored** [2] - 61:4,

65:10
**ignoring** [1] - 5:8
**imagine** [1] - 7:7
**immediately** [1] -
53:1
**impact** [1] - 46:19
**impasse** [2] - 30:22,
41:22
**important** [6] -
10:14, 11:16, 13:17,
15:10, 16:10, 41:17
**in-between** [1] -
47:24
**in-depth** [1] - 60:2
**in-house** [1] - 3:16
**inaccurate** [1] -
27:12
**inappropriate** [1] -
42:17
**incidents** [1] - 9:11
**inclined** [1] - 66:22
**include** [3] - 37:2,
37:4, 55:25
**included** [2] - 28:24,
33:11
**includes** [2] - 14:5,
55:22
**including** [4] - 15:3,
15:4, 32:2, 49:13
**income** [1] - 50:12
**inconsistent** [1] -
48:22
**indeed** [1] - 21:3
**indicated** [2] - 3:20,
12:25
**indicates** [1] - 50:8
**individual** [1] - 44:22
**individuals** [5] -
8:22, 15:4, 15:7,
56:1, 59:5
**Indonesia** [1] - 54:14
**information** [3] -
15:23, 27:11, 44:24
**initial** [1] - 28:3
**inquiry** [1] - 17:25
**inspection** [1] - 45:4
**instance** [1] - 20:10
**instances** [1] - 59:12
**instead** [1] - 9:21
**Instead** [3] - 27:3,
32:21, 33:3
**intended** [1] - 28:20
**intent** [3] - 62:14,
62:21, 63:8
**interest** [1] - 45:23
**interests** [2] - 40:16,
51:21
**interim** [1] - 56:12
**internal** [1] - 66:3
**Internet** [2] - 8:12,

61:13
**interpreter** [2] -
49:19, 55:10
**interrog** [1] - 56:8
**interrogatories** [6] -
55:24, 56:9, 56:11,
56:13, 61:21, 62:1
**interrogatory** [2] -
8:10, 8:14
**interviewing** [1] -
41:14
**investigations** [4] -
56:24, 65:25, 66:3,
66:9
**involved** [1] - 9:22
**involvement** [1] - 6:2
**Iraq** [3] - 14:11,
35:14, 64:12
**irrelevant** [1] - 62:21
**issue** [29] - 12:17,
12:19, 13:7, 13:19,
15:11, 15:19, 15:21,
18:17, 27:3, 33:11,
36:25, 39:17, 40:8,
44:7, 45:12, 45:19,
52:6, 56:22, 57:20,
57:24, 58:11, 58:16,
58:23, 62:11, 62:21,
63:11, 64:23, 67:8
**issues** [14] - 4:5,
5:24, 6:12, 12:3,
14:5, 15:3, 15:25,
16:8, 24:2, 26:7,
29:10, 59:3, 63:8,
65:3
**IT** [1] - 26:1
**items** [1] - 12:2
**iteration** [1] - 31:7
**iterations** [1] - 29:22
**itself** [1] - 34:13

## J

**Jersey** [1] - 10:22
**job** [4] - 16:17,
51:10, 61:15
**Jordan** [1] - 47:15
**JOSEPH** [1] - 1:17
**journey** [1] - 14:10
**Judge** [12] - 26:14,
33:7, 33:13, 34:8,
35:23, 36:15, 44:5,
44:8, 44:11, 45:3,
54:6
**JUDGE** [1] - 1:11
**judgement** [1] -
34:14
**judgment** [12] - 5:15,
27:20, 31:19, 34:7,

36:6, 36:15, 36:18,
38:12, 40:23, 43:12,
45:19, 52:22
**July** [3] - 29:2, 37:25,
41:2
**June** [1] - 60:23
**Justin** [1] - 3:9

## K

**Kaleek** [1] - 35:12
**Kathmandu** [1] -
46:23
**KAY** [1] - 2:9
**Kay** [1] - 68:4
**KBR** [90] - 2:3, 3:12,
3:16, 4:21, 6:6, 8:19,
9:3, 9:4, 9:9, 9:10,
11:20, 12:15, 14:23,
16:21, 17:2, 17:7,
17:19, 18:14, 18:25,
19:17, 20:15, 20:24,
21:2, 21:6, 21:13,
22:11, 22:16, 23:16,
23:21, 24:9, 25:14,
26:2, 26:12, 26:15,
27:5, 27:9, 27:10,
28:3, 28:23, 29:4,
30:20, 31:21, 31:25,
32:16, 32:22, 32:24,
34:12, 34:13, 34:19,
34:21, 34:22, 35:2,
35:3, 35:6, 35:18,
35:22, 36:3, 36:19,
37:23, 38:9, 41:6,
43:24, 48:7, 49:13,
49:15, 50:5, 50:11,
52:5, 53:19, 53:21,
54:5, 54:7, 54:10,
55:23, 56:9, 56:12,
57:20, 58:8, 59:4,
60:3, 61:14, 63:20,
64:2, 66:1, 66:4,
66:5, 66:10
**KBR's** [14] - 5:12,
26:9, 32:9, 33:10,
33:23, 43:18, 44:13,
49:5, 49:25, 55:1,
55:5, 58:20, 67:1
**KBR-Halliburton** [1]
- 17:2
**keep** [4] - 15:23,
35:17, 53:15, 58:5
**keeps** [1] - 34:12
**KEITH** [1] - 1:10
**Kellogg** [1] - 56:19
**kept** [2] - 14:9, 24:17
**key** [4] - 29:22,
33:10, 33:11, 63:8

**Keyes** [1] - 62:16
**keyword** [1] - 38:14
**kidding** [1] - 67:6
**kidnapping** [1] - 8:11
**kind** [5] - 9:15,
14:20, 14:24, 40:23,
41:24
**kinds** [3] - 23:8,
42:9, 51:11
**knowing** [2] - 8:4,
63:4
**knowingly** [1] - 63:4
**knowledge** [8] -
5:14, 7:3, 8:5, 8:10,
8:15, 9:11, 62:13,
63:8
**known** [1] - 61:16
**knows** [2] - 59:12,
59:16

## L

**LA** [1] - 11:5
**labor** [2] - 23:2,
23:22
**lack** [1] - 53:24
**lag** [1] - 41:12
**Land** [1] - 60:13
**Land's** [2] - 60:15,
60:16
**large** [1] - 52:4
**largely** [1] - 54:13
**last** [9] - 13:21,
17:19, 27:15, 32:2,
33:9, 41:2, 41:5,
41:6
**late** [1] - 53:13
**latest** [1] - 48:24
**latitude** [1] - 55:8
**Law** [1] - 44:21
**law** [6] - 37:12,
39:19, 43:7, 47:18,
52:13, 52:21
**lawsuit** [6] - 10:14,
43:7, 46:3, 46:21,
47:11, 51:20
**lawyer** [3] - 26:4,
44:18, 48:11
**lawyers** [3] - 11:3,
38:22, 48:9
**Leamon** [3] - 44:4,
44:8, 45:3
**LEAMON** [1] - 44:5
**lean** [1] - 48:3
**least** [8] - 5:22, 7:20,
32:1, 44:15, 46:24,
47:23, 48:11, 52:23
**leave** [5] - 5:13, 6:6,
35:2, 35:7, 35:8

left [7] - 15:5, 15:9, 27:14, 56:16, 63:18, 63:25
Legal [3] - 44:19, 44:23
legal [1] - 44:20
legitimate [1] - 51:20
length [1] - 10:18
less [1] - 46:15
letter [12] - 19:10, 19:15, 20:14, 23:5, 25:18, 28:2, 45:22, 46:18, 51:19, 61:11, 65:13, 65:18
letters [3] - 24:17, 61:6, 65:10
life [3] - 14:4, 14:12, 15:17
likelihood [1] - 51:6
limit [3] - 10:6, 10:9, 11:14
Limited [1] - 55:14
limited [1] - 60:4
limits [1] - 5:20
line [3] - 29:18, 33:9
link [8] - 6:1, 32:3, 46:24, 47:25, 49:11, 49:19, 54:22, 67:3
list [3] - 20:11, 20:12, 37:9
listed [2] - 6:24, 7:3
litany [1] - 37:7
litigants [1] - 46:22
litigated [1] - 45:23
live [6] - 31:21, 36:11, 47:5, 47:24, 48:1, 55:6
lived [2] - 40:12, 50:11
lives [1] - 11:1
LLP [1] - 2:4
located [1] - 11:3, 11:5, 56:1
location [5] - 11:11, 47:24, 64:14, 67:9, 67:12
Loewe [3] - 18:22, 29:7, 64:24
log [1] - 66:11
loggerheads [1] - 8:2
logical [1] - 11:11
look [13] - 29:7, 34:2, 38:7, 45:6, 48:16, 48:19, 49:15, 49:16, 52:18, 54:1, 54:11, 66:7, 67:17
looked [1] - 62:7
looking [2] - 34:9, 36:9

Los [5] - 1:19, 10:12, 10:24, 11:3, 11:11
loss [1] - 31:15
lost [1] - 13:5
loud [2] - 12:24, 13:2
Louisiana [1] - 2:5
low [4] - 10:21, 28:13, 28:19, 50:12
Lowe [1] - 38:21
Lowes [4] - 21:10, 25:23, 26:1

**M**

mail [5] - 5:9, 29:7, 61:23, 61:24, 64:24
mails [1] - 59:14
main [1] - 45:19
Maoist [1] - 39:23
March [5] - 22:1, 23:10, 23:23, 54:9
Master [2] - 63:17, 64:1
material [1] - 40:3
materials [1] - 39:8
Matt [2] - 19:10, 41:19
matter [1] - 10:14, 14:21, 14:24
mattered [1] - 14:23
Matthew [1] - 28:2
MAUREEN [1] - 1:13
Maureen [1] - 3:7
McGowen [1] - 27:22
McOwen [39] - 1:13, 3:7, 10:7, 10:9, 11:2, 12:13, 13:10, 13:12, 13:16, 27:22, 27:23, 27:24, 27:25, 39:8, 39:19, 46:20, 47:7, 47:13, 47:21, 50:2, 50:4, 50:15, 50:21, 50:25, 51:4, 51:7, 51:15, 52:13, 53:6, 54:2, 55:15, 55:16, 55:19, 56:6, 61:13, 67:5
mean [18] - 4:14, 6:8, 7:25, 8:20, 10:24, 10:25, 29:6, 39:7, 40:6, 45:19, 46:3, 47:18, 50:6, 51:8, 52:10, 52:12, 63:11, 64:15
means [1] - 23:14
meant [2] - 37:3, 61:24
mechanical [1] - 1:24

mechanism [1] - 42:15
medical [1] - 15:4
meet [2] - 50:13, 57:12
members [2] - 8:22, 40:11
memory [1] - 41:9
Mengis [7] - 3:13, 19:11, 26:1, 26:21, 29:5, 57:7, 64:22
MENGIS [9] - 2:3, 29:12, 57:8, 57:23, 58:4, 58:7, 64:23, 65:11, 66:4
Mengis' [1] - 61:10
mention [1] - 53:10
merely [1] - 63:4
meritorious [1] - 13:22
message [1] - 29:4
met [1] - 64:25
MICHAEL [1] - 2:3
might [7] - 4:13, 23:15, 25:18, 26:21, 46:11, 59:11, 59:23
Mike [3] - 3:13, 19:11, 35:12
mike [1] - 4:4
million [3] - 24:21, 25:3, 38:10
Milstein [6] - 1:14, 19:11, 19:21, 20:12, 20:14, 20:22
mind [1] - 40:21
minimum [1] - 16:16
minutes [1] - 26:5
misleading [1] - 27:13
misrepresentation [1] - 57:13
misrepresentations [1] - 18:16
misses [1] - 16:16
modern [1] - 18:9
moment [1] - 36:21
moments [1] - 23:5
Monday [1] - 43:16
money [2] - 27:5, 54:7
months [3] - 41:11, 55:20, 61:21
mooted [2] - 58:14, 58:15
Moreover [1] - 15:21
morning [1] - 53:12
most [9] - 8:1, 11:15, 16:10, 20:18, 21:20, 24:10, 25:2, 41:14, 65:11

Most [2] - 22:15, 24:4
Motion [5] - 43:18, 55:13, 57:9, 65:13, 66:17
motion [38] - 5:13, 5:14, 6:6, 6:11, 6:17, 12:2, 16:19, 18:24, 21:1, 21:5, 22:11, 22:23, 23:20, 24:8, 25:8, 27:20, 32:8, 32:9, 33:3, 34:6, 34:14, 35:20, 36:1, 36:6, 36:15, 40:23, 43:15, 43:19, 57:24, 58:15, 59:13, 61:9, 64:24, 65:1, 65:2, 67:1, 67:3
motions [9] - 4:9, 4:13, 5:12, 5:15, 6:4, 41:22, 41:24, 56:3, 67:18
move [2] - 37:19, 65:7
MR [66] - 1:17, 2:3, 2:3, 2:4, 3:9, 3:12, 3:15, 4:17, 4:19, 5:2, 5:4, 6:10, 6:16, 6:21, 6:23, 9:2, 11:8, 11:19, 11:23, 11:25, 13:25, 14:10, 15:1, 18:15, 18:23, 19:7, 19:13, 19:24, 20:7, 23:7, 23:19, 24:15, 29:12, 31:14, 31:23, 31:25, 32:6, 33:3, 33:6, 33:19, 36:13, 42:1, 42:3, 42:18, 42:20, 44:1, 44:3, 44:19, 45:2, 45:7, 45:9, 48:6, 48:14, 48:16, 52:1, 53:7, 53:9, 57:8, 57:23, 58:4, 58:7, 64:23, 65:11, 66:4, 67:7, 67:15
MS [90] - 1:13, 1:13, 2:9, 3:5, 3:7, 3:22, 4:5, 4:11, 4:14, 5:8, 7:9, 7:16, 8:7, 8:9, 8:14, 8:24, 9:3, 9:8, 9:19, 10:1, 10:7, 10:9, 11:2, 12:13, 13:10, 13:12, 13:16, 16:25, 17:11, 18:1, 27:23, 27:25, 28:1, 28:9, 29:2, 29:18, 30:2, 30:10, 30:12, 30:22, 31:3, 36:25, 37:7, 37:24, 38:6,

38:19, 39:1, 39:5, 39:10, 39:18, 40:15, 40:25, 41:4, 41:8, 41:13, 41:19, 43:22, 46:6, 46:12, 46:18, 46:20, 47:7, 47:13, 47:21, 50:2, 50:4, 50:15, 50:21, 50:25, 51:4, 51:7, 51:15, 52:13, 53:6, 55:16, 55:19, 56:6, 57:1, 57:4, 60:21, 62:3, 62:11, 62:20, 62:25, 63:16, 64:5, 64:10, 64:17, 65:5, 67:5
mud [1] - 32:22
must [2] - 32:24, 33:13

**N**

naive [1] - 50:11
name [1] - 35:24
names [3] - 8:10, 30:14, 33:12
narrow [10] - 3:24, 4:5, 7:4, 7:5, 25:15, 25:19, 37:8, 64:9, 64:13
narrowed [2] - 64:10, 65:23
narrower [1] - 64:21
nationals [2] - 30:13, 59:2
Nations [1] - 12:22
nature [2] - 38:3, 57:14
near [2] - 30:4
necessarily [1] - 44:18
necessary [2] - 11:13, 12:15
need [24] - 4:10, 6:25, 7:20, 8:2, 8:17, 8:18, 9:16, 16:11, 22:15, 28:10, 30:25, 36:17, 36:18, 48:1, 49:5, 49:11, 49:15, 49:20, 49:25, 53:25, 54:1, 54:11, 66:19
needed [3] - 7:24, 7:25, 36:14
needing [1] - 6:2
Nepal [26] - 11:10, 14:10, 15:16, 15:17, 34:22, 41:13, 41:19, 45:18, 45:25, 46:3, 46:13, 47:4, 47:9, 47:11, 47:15, 49:1,

49:6, 49:8, 49:10, 50:1, 50:11, 50:13, 51:12, 53:11, 55:5, 56:1

**Nepalese** [1] - 51:2

**Nepali** [2] - 12:24, 51:18

**Nepalis** [1] - 50:9

**never** [7] - 17:16, 17:18, 27:2, 28:20, 29:5, 30:1, 54:6

**New** [6] - 1:14, 10:21, 11:1, 11:10, 11:12, 14:12

**news** [1] - 57:25

**next** [4] - 16:18, 22:1, 23:19, 43:17

**Next** [1] - 19:17

**nine** [5] - 10:2, 10:10, 11:13, 59:7, 59:14

**nobody** [1] - 6:3

**None** [1] - 14:6

**none** [4] - 15:11, 15:20, 33:11, 34:5

**Nonelectronic** [1] - 55:14

**normal** [1] - 5:20

**normally** [1] - 47:19

**noted** [1] - 60:11

**notes** [13] - 13:1, 13:3, 13:5, 13:6, 16:7, 18:2, 18:3, 31:6, 38:8, 38:15, 39:11, 39:12, 39:14

**nothing** [7] - 27:10, 32:6, 32:22, 42:7, 42:9, 42:10, 58:21

**Nothing** [1] - 19:2

**notice** [1] - 54:3

**noticed** [1] - 7:12

**Number** [1] - 57:10

**number** [20] - 5:21, 7:22, 20:3, 20:9, 20:10, 21:14, 22:5, 22:12, 23:25, 25:11, 25:12, 25:20, 28:10, 31:11, 40:6, 53:2, 61:2, 61:3, 61:6

**numbers** [9] - 17:13, 17:18, 17:22, 28:13, 29:20, 30:5, 30:8, 30:15, 64:11

**NW** [1] - 1:14

---

**O**

**objection** [1] - 7:9

**obligated** [1] - 43:5

**obligation** [6] - 39:14, 43:1, 43:8, 43:9, 57:24, 58:10

**observed** [1] - 18:3

**observer** [1] - 18:3

**obtain** [5] - 17:2, 44:9, 50:7, 51:22, 52:22

**obtained** [1] - 50:12

**obtaining** [1] - 51:4

**obviously** [2] - 53:21, 65:17

**occasions** [1] - 32:1

**October** [9] - 12:22, 19:10, 19:22, 20:21, 21:23, 23:4, 23:23, 43:14, 43:16

**OF** [2] - 1:1, 1:10

**offered** [1] - 36:16

**Office** [3] - 63:25, 66:7

**office** [2] - 31:5, 38:7

**Offices** [1] - 24:25

**offices** [2] - 17:3, 18:2

**OFFICIAL** [1] - 2:9

**Official** [1] - 68:5

**officials** [2] - 51:2, 51:9

**old** [1] - 18:8

**once** [2] - 34:20, 46:2

**one** [42] - 3:19, 5:18, 5:19, 9:24, 12:13, 13:23, 18:7, 21:10, 21:21, 23:3, 25:14, 27:19, 30:25, 31:5, 33:1, 35:14, 35:15, 38:10, 38:21, 41:13, 42:18, 44:4, 44:9, 44:15, 52:6, 55:16, 57:10, 58:23, 59:7, 60:6, 60:10, 60:11, 60:12, 60:18, 60:22, 63:8, 66:23, 67:7

**One** [3] - 6:12, 12:4, 26:17

**ones** [2] - 63:22, 67:1

**opportunities** [1] - 51:10

**opportunity** [4] - 10:15, 40:19, 51:1, 52:24

**oppose** [1] - 16:23

**opposed** [2] - 38:4, 64:19

**opposing** [1] - 47:19

**opposite** [1] - 43:7

**orally** [1] - 29:13

**order** [4] - 6:3, 15:22, 40:13, 67:3

**ordered** [1] - 17:1

**original** [2] - 13:5, 13:6

**otherwise** [1] - 31:18

**ought** [1] - 49:21

**ourselves** [1] - 29:24

**outside** [1] - 39:12

**outweigh** [1] - 60:8

**outweighs** [1] - 59:10

**overlap** [1] - 15:13

**own** [3] - 12:1, 29:23, 66:23

---

**P**

**P.M** [1] - 1:8

**page** [12] - 19:13, 19:14, 22:6, 22:12, 23:11, 23:12, 24:1, 24:2, 49:14, 54:5, 62:14, 65:13

**pages** [11] - 20:13, 22:4, 23:15, 23:17, 23:18, 23:25, 24:21, 38:10, 59:6, 61:1

**paper** [2] - 3:18, 25:3

**papers** [15] - 6:8, 12:5, 14:18, 32:21, 33:14, 35:1, 40:7, 43:21, 43:22, 44:3, 44:12, 46:10, 57:4, 59:4, 61:5

**paragraph** [1] - 33:8

**paralegal** [1] - 44:21

**part** [3] - 21:20, 28:19, 42:3

**participated** [1] - 24:12

**particular** [1] - 45:17

**particularly** [2] - 10:20, 53:1

**parties** [9] - 15:16, 16:1, 16:2, 19:25, 38:5, 51:21, 54:23, 55:4, 66:22

**Partner** [1] - 20:19

**Partners** [4] - 3:10, 5:6, 11:6, 19:18

**PARTNERS** [2] - 1:8, 1:17

**party** [2] - 47:19, 66:23

**passport** [2] - 23:1, 23:22

**passports** [1] - 59:3

**past** [3] - 17:5, 35:2,

55:20

**pattern** [3] - 9:16, 62:18, 62:20

**Paul** [1] - 11:4

**pay** [4] - 49:5, 49:11, 49:25, 55:5

**pending** [6] - 4:9, 4:13, 4:15, 11:1, 47:3, 56:3

**people** [18] - 5:21, 8:4, 8:18, 8:19, 9:5, 9:9, 9:16, 35:13, 40:11, 40:16, 49:16, 50:22, 53:20, 54:1, 54:17, 57:20, 59:15, 59:16

**percent** [1] - 50:9

**perfectly** [1] - 47:1

**perhaps** [2] - 28:13, 47:8

**period** [6] - 15:18, 18:5, 31:21, 36:4, 39:13, 61:8

**periods** [1] - 64:13

**permitted** [3] - 31:1, 38:8

**person** [7] - 11:15, 16:11, 44:17, 45:21, 59:7, 64:11, 67:11

**personnel** [4] - 26:2, 60:15, 62:8, 64:7

**persons** [6] - 5:13, 6:24, 7:3, 8:5, 8:10, 9:10

**perspective** [5] - 5:6, 26:9, 34:5, 54:21, 55:1

**petition** [1] - 15:13

**phase** [1] - 25:21

**phone** [4] - 25:25, 26:2, 26:3, 65:10

**physically** [1] - 35:15

**pieces** [1] - 25:3

**place** [7] - 5:25, 10:6, 10:25, 38:25, 40:14, 48:19, 53:23

**placed** [1] - 42:5

**places** [1] - 66:6

**plainly** [1] - 61:17

**plaintiff** [10] - 3:5, 3:19, 14:14, 15:20, 16:20, 21:24, 36:11, 40:10, 44:9, 45:21

**PLAINTIFFS** [1] - 1:13

**Plaintiffs** [1] - 35:16

**plaintiffs** [44] - 3:4, 3:7, 5:5, 6:23, 8:21, 9:1, 11:2, 11:4, 14:18, 15:12, 15:20,

16:24, 22:7, 22:24, 27:13, 32:3, 32:13, 32:15, 34:8, 34:17, 36:5, 36:19, 37:17, 43:5, 43:15, 45:13, 45:25, 46:5, 47:14, 47:20, 47:24, 48:7, 48:17, 48:23, 49:4, 49:5, 49:12, 49:21, 52:8, 53:3, 54:11, 54:13, 54:16, 54:20

**plaintiffs'** [41] - 4:20, 4:21, 5:14, 5:17, 6:25, 16:19, 18:23, 20:20, 21:7, 21:11, 21:12, 21:15, 22:10, 22:20, 23:11, 23:24, 24:4, 24:8, 24:11, 24:17, 25:6, 25:15, 25:16, 25:21, 25:24, 25:25, 26:7, 26:16, 27:3, 27:15, 33:7, 34:6, 38:22, 42:23, 43:11, 43:17, 55:3, 55:13, 55:20, 57:12, 67:2

**Plaintiffs'** [1] - 54:19

**plan** [1] - 27:18

**platform** [1] - 24:24

**plausible** [1] - 51:10

**play** [1] - 32:25

**playing** [1] - 32:24

**pleading** [2] - 35:24, 49:14

**pleadings** [1] - 5:17

**plenty** [3] - 13:2, 52:13, 52:16

**plethora** [1] - 41:22

**plus** [3] - 6:25, 8:25

**POI's** [1] - 59:14

**point** [6] - 6:17, 7:5, 20:8, 21:10, 22:25, 35:17, 38:2, 38:21, 44:4, 56:20, 60:10, 60:11, 66:21

**points** [2] - 6:11, 57:9, 65:18

**policy** [2] - 13:18, 39:20

**portal** [2] - 27:1, 34:3

**position** [10] - 7:10, 10:14, 36:9, 36:12, 47:3, 49:25, 56:16, 67:9, 67:11

**positive** [1] - 46:19

**possession** [3] - 58:20, 63:12, 63:14

**possessions** [1] - 49:2

**possible** [1] - 16:17

**possibly** [1] - 56:15
**posting** [1] - 8:11
**postpones** [1] - 45:18
**potential** [2] - 13:20, 55:9
**potentially** [2] - 59:1, 59:9
**predicates** [1] - 31:16
**preference** [1] - 46:24
**prepare** [1] - 37:9
**prepared** [1] - 37:8
**preparing** [1] - 24:12
**present** [2] - 15:15, 54:15
**presentation** [1] - 29:19
**presented** [1] - 47:20
**presently** [1] - 6:13
**preserve** [6] - 42:22, 42:25, 43:1, 43:5, 43:8, 43:10
**preserved** [1] - 39:15
**press** [1] - 56:24
**Press** [2] - 63:25, 66:7
**pressures** [1] - 15:16
**pretermit** [1] - 8:5
**print** [2] - 29:3, 29:7
**privileged** [5] - 42:10, 44:12, 44:16, 45:1, 66:11
**probable** [1] - 63:3
**problem** [6] - 4:3, 25:11, 27:25, 42:3, 46:5, 47:17
**procedural** [2] - 5:12, 6:4
**procedure** [1] - 37:14
**Procedure** [1] - 18:11
**proceed** [4] - 5:12, 6:5, 28:14, 52:17
**proceeding** [3] - 15:15, 16:1, 52:4
**PROCEEDINGS** [1] - 1:10
**Proceedings** [1] - 1:24
**proceedings** [1] - 68:1
**process** [4] - 30:17, 34:1, 48:20, 50:5
**produce** [7] - 28:4, 35:18, 35:19, 37:3, 37:19, 42:15
**produced** [22] - 1:25,

12:6, 12:20, 12:23, 17:22, 20:16, 25:6, 25:9, 25:13, 28:12, 28:15, 30:23, 31:10, 33:21, 48:21, 50:5, 58:19, 61:12, 64:3, 66:10, 66:11
**producing** [5] - 18:4, 21:25, 39:6, 39:7, 39:8
**production** [7] - 12:3, 28:3, 28:21, 38:3, 43:18, 57:18, 64:7
**progress** [1] - 66:18
**proper** [1] - 12:17
**proportionality** [1] - 9:12
**proposal** [3] - 29:6, 29:15, 38:6
**propose** [2] - 10:10, 52:20
**proposed** [4] - 20:20, 28:2, 29:4, 37:24
**protect** [4] - 34:13, 37:15, 37:16, 39:21
**protected** [1] - 37:20
**protection** [3] - 21:5, 32:10, 56:5
**protective** [2] - 15:21, 67:3
**prove** [2] - 32:20, 50:10
**provide** [5] - 20:6, 25:8, 37:16, 38:21, 45:7
**provided** [13] - 13:13, 19:21, 20:2, 20:3, 20:22, 21:13, 21:14, 22:19, 23:5, 24:4, 30:24, 33:15, 64:11
**provides** [1] - 63:18
**providing** [1] - 24:8
**provision** [2] - 37:20, 39:7
**public** [2] - 13:18, 39:20
**purely** [1] - 12:9
**pursuant** [4] - 30:23, 37:10, 37:20, 38:13
**pursuing** [1] - 56:18
**Pushka** [1] - 35:13
**put** [9] - 14:7, 15:19, 15:21, 24:24, 32:16, 34:3, 35:17, 35:23, 38:14

## Q

**questioner** [1] - 52:18
**questioning** [2] - 39:24, 53:3
**questions** [5] - 26:7, 26:17, 48:17, 49:9, 53:2
**quick** [2] - 33:1, 57:9
**quicker** [1] - 17:4
**Quinn** [2] - 1:18, 11:5
**quite** [3] - 3:18, 3:21, 57:19
**quote** [4] - 27:7, 28:5, 34:9, 42:24

## R

**radically** [1] - 29:10
**raise** [1] - 60:11
**raised** [7] - 12:3, 12:18, 48:15, 56:20, 58:11, 58:16, 64:23
**raises** [1] - 57:24
**raising** [1] - 59:1
**RAMCHANDRA** [1] - 1:3
**ran** [11] - 6:14, 21:13, 22:2, 22:6, 22:23, 23:7, 23:12, 23:23, 23:24, 24:2, 24:16
**reach** [3] - 7:16, 8:2, 34:3
**read** [3] - 12:24, 13:2, 54:8
**ready** [3] - 50:16, 50:19, 65:18
**real** [3] - 8:17, 31:18, 33:1
**realized** [1] - 30:8, 39:13
**really** [16] - 6:1, 6:12, 7:23, 10:19, 18:8, 31:15, 34:3, 38:21, 39:19, 45:22, 47:10, 47:14, 52:6, 62:5, 67:1
**reason** [13] - 28:19, 32:7, 34:5, 38:21, 39:21, 40:4, 40:6, 40:7, 40:8, 48:25, 51:22, 59:12, 60:22
**reasonable** [11] - 10:5, 10:9, 11:14, 16:22, 26:23, 34:4, 42:12, 42:15, 49:23,

50:7, 52:2
**reasonably** [1] - 34:1
**reasons** [2] - 12:5, 12:14
**recalled** [1] - 23:15
**receive** [1] - 56:18
**received** [3] - 5:1, 27:19, 49:18
**receiving** [2] - 23:24, 44:18
**recent** [1] - 3:19
**Recess** [1] - 45:11
**recognized** [2] - 13:18, 13:19
**record** [9] - 21:20, 27:12, 29:12, 53:23, 58:25, 59:5, 60:13, 60:16, 68:1
**recorded** [1] - 1:24
**records** [10] - 56:23, 58:24, 59:7, 59:20, 59:22, 59:25, 64:7, 64:8, 65:23, 66:5
**redact** [1] - 40:15
**reduce** [1] - 28:10
**referenced** [1] - 59:13
**referred** [1] - 8:23
**refused** [1] - 65:1
**regard** [11] - 20:17, 21:2, 22:7, 22:16, 26:13, 27:18, 28:1, 32:23, 34:19, 34:21, 57:13
**regarding** [4] - 5:13, 6:6, 18:17, 59:13
**Regardless** [1] - 26:10
**reiterate** [1] - 37:1
**rejected** [2] - 37:25, 50:9
**relate** [1] - 22:25
**related** [12] - 15:3, 21:19, 22:2, 22:8, 23:8, 23:13, 24:2, 39:7, 56:24, 62:17, 63:7, 65:25
**relationship** [1] - 33:10
**relative** [1] - 55:8
**release** [2] - 40:9, 40:17
**relevance** [1] - 64:9
**relevancy** [2] - 60:3, 60:8
**relevant** [14] - 7:3, 8:16, 19:15, 20:18, 25:1, 25:3, 25:4, 25:5, 25:7, 33:22, 42:11, 63:2, 63:7,

63:10
**reliably** [1] - 59:24
**remain** [1] - 63:9
**remaining** [3] - 60:7, 60:9, 65:19
**remains** [2] - 5:7, 40:22
**remember** [2] - 41:8, 41:10
**Repeat** [1] - 62:24
**repeatedly** [1] - 62:12
**reply** [1] - 57:4
**report** [3] - 33:8, 37:13, 58:18
**Report** [1] - 44:7
**reported** [1] - 44:23
**Reporter** [1] - 68:5
**REPORTER** [4] - 2:9, 4:1, 9:6, 31:2
**reports** [1] - 56:23
**Reports** [3] - 43:18, 44:10, 63:20
**represent** [2] - 40:18, 57:21
**represented** [1] - 57:16
**request** [5] - 58:10, 64:9, 66:12, 66:13, 66:15
**requested** [10] - 11:19, 11:20, 12:1, 12:2, 14:1, 44:14, 58:11, 63:24, 65:23, 66:5
**requests** [5] - 4:25, 31:9, 55:23, 56:3, 56:7
**require** [4] - 16:24, 38:6, 48:18, 60:1
**required** [2] - 35:23, 60:7
**requires** [1] - 32:19
**resolution** [1] - 67:9
**resolve** [1] - 29:9
**resolved** [2] - 6:18, 46:17
**resources** [1] - 51:10
**respect** [3] - 5:22, 12:18, 47:13
**respond** [9] - 36:14, 36:17, 40:22, 50:2, 56:7, 56:14, 58:10, 61:9, 65:14
**responded** [4] - 29:12, 54:12, 57:19, 65:16
**responding** [4] - 41:23, 55:22, 56:2, 56:10

**response** [22] - 5:1, 8:24, 16:21, 17:24, 26:22, 30:6, 34:6, 34:14, 36:5, 36:17, 38:18, 43:12, 43:14, 60:13, 60:24, 60:25, 61:4, 61:7, 61:10, 65:7, 65:12, 66:15
**responses** [2] - 34:16, 62:4
**responsive** [3] - 17:23, 31:9, 60:1
**rest** [4] - 43:20, 43:22, 44:3, 57:1
**restrooms** [1] - 14:19
**result** [5] - 7:7, 7:17, 25:13, 45:2, 64:18
**results** [2] - 20:22, 33:16
**retain** [2] - 39:11, 39:14
**return** [6] - 42:6, 45:25, 48:25, 50:20, 51:6, 51:12
**returned** [5] - 21:14, 22:5, 22:11, 23:14, 24:21
**returns** [1] - 33:20
**reveal** [1] - 62:4
**review** [23] - 17:3, 18:2, 18:7, 20:15, 20:23, 21:24, 24:24, 25:1, 25:5, 25:12, 25:20, 26:17, 27:7, 30:25, 31:5, 34:4, 38:4, 38:9, 38:15, 58:12, 58:24, 59:7, 60:2
**reviewed** [1] - 33:21
**reviewing** [1] - 27:6
**revised** [1] - 28:10
**RICO** [2] - 5:5, 60:3
**right-hand** [3] - 19:20, 20:9, 22:3
**rights** [1] - 8:8
**roadblock** [1] - 17:5
**Root** [1] - 56:19
**roughly** [1] - 23:17
**routinely** [1] - 46:21
**RPR** [1] - 68:4
**Rule** [3] - 9:4, 9:5, 9:9
**rule** [4] - 9:21, 32:19, 65:22, 66:19
**ruled** [3] - 44:8, 44:11, 44:15
**Rules** [2] - 18:10, 18:11
**rules** [7] - 11:17,

16:11, 30:24, 37:12, 48:18, 57:12
**run** [25] - 7:11, 17:12, 17:14, 17:17, 19:1, 19:4, 19:7, 19:18, 19:21, 20:2, 20:8, 20:21, 21:16, 21:23, 22:11, 22:17, 22:25, 23:21, 24:3, 24:21, 28:3, 30:15, 33:15, 37:18, 38:14
**running** [1] - 18:25
**Rusk** [1] - 2:10

## S

**safety** [1] - 15:17
**Sanjay** [2] - 30:7, 30:8
**SARLES** [15] - 1:17, 5:2, 5:4, 11:8, 11:19, 11:23, 11:25, 13:25, 14:10, 15:1, 31:14, 42:18, 42:20, 67:7, 67:15
**Sarles** [2] - 12:18, 13:23
**saw** [3] - 19:3, 23:5
**School** [1] - 62:16
**school** [1] - 18:9
**scope** [2] - 43:2, 43:4
**screen** [3] - 31:6, 38:4, 38:7
**script** [1] - 12:24
**search** [45] - 17:14, 19:1, 19:7, 19:14, 19:16, 19:17, 19:21, 20:1, 20:8, 20:13, 20:15, 20:17, 20:19, 21:8, 21:13, 21:15, 21:19, 21:22, 22:2, 22:7, 22:17, 22:22, 22:24, 23:11, 25:12, 25:13, 25:15, 25:19, 28:6, 28:7, 28:9, 28:11, 28:18, 33:11, 37:3, 42:5, 42:6, 42:13, 58:11, 59:21, 66:2, 66:13
**searchable** [2] - 59:21, 59:24
**searched** [7] - 17:21, 19:15, 37:2, 60:16, 62:6, 66:5
**searches** [14] - 17:9, 17:13, 17:17, 17:23, 21:16, 24:10, 24:16, 24:18, 24:20, 26:19,

37:8, 37:18, 38:14
**searching** [2] - 60:7, 66:9
**second** [5] - 13:23, 19:13, 19:14, 55:10, 61:25
**secure** [2] - 18:2, 31:1
**see** [16] - 8:17, 9:16, 17:25, 19:16, 19:20, 21:11, 21:21, 22:3, 23:4, 26:23, 27:1, 30:5, 30:12, 42:8, 50:25, 65:22
**seeing** [1] - 30:16
**seek** [1] - 4:6
**seeking** [2] - 44:9, 64:12
**seeks** [1] - 58:13
**seem** [2] - 25:21, 31:6
**select** [1] - 28:21
**selected** [2] - 28:12, 28:24
**sense** [1] - 7:22
**sensitive** [1] - 55:8
**sent** [8] - 4:19, 4:21, 25:18, 29:4, 37:24, 61:6, 61:10, 64:24
**sentence** [2] - 30:11, 58:6
**separately** [1] - 10:5
**Separation** [2] - 63:17, 64:2
**separation** [1] - 61:14
**September** [5] - 1:7, 3:2, 6:14, 41:15, 43:13
**serious** [2] - 18:16, 49:13
**served** [6] - 55:23, 56:10, 56:12, 56:14, 61:21, 61:25
**set** [12] - 12:5, 22:1, 22:7, 27:1, 44:22, 53:21, 56:9, 56:12, 59:3, 63:20, 66:20, 66:25
**seven** [6] - 5:23, 7:21, 11:20, 16:4, 16:5, 65:13
**seven-page** [1] - 65:13
**sharp** [1] - 31:17
**sheets** [1] - 14:5
**shield** [2] - 15:24, 16:1
**short** [1] - 45:10
**show** [1] - 62:18

**showing** [3] - 35:20, 36:1, 36:21
**shown** [3] - 33:14, 42:4, 59:18
**shows** [3] - 20:4, 20:14, 21:22
**shut** [1] - 35:17
**side** [3] - 26:5, 56:21, 62:10
**sides** [1] - 29:10
**signed** [2] - 14:5, 15:9
**significant** [1] - 34:19
**significantly** [3] - 63:3, 64:10, 65:24
**similar** [1] - 62:17
**simple** [3] - 6:11, 42:4, 42:8
**simply** [7] - 13:6, 13:17, 15:23, 29:15, 56:16, 57:19, 58:16
**single** [1] - 58:24
**sit** [4] - 49:8, 49:15, 49:20, 67:10
**sitting** [1] - 33:7
**situation** [3] - 15:12, 15:24, 37:21
**six** [6] - 5:15, 20:13, 56:3, 61:7, 65:6, 65:13
**six-week** [1] - 61:7
**slang** [1] - 30:13
**sling** [1] - 32:22
**Slow** [2] - 14:25, 31:2
**slow** [1] - 14:25, 58:2
**slowly** [1] - 33:5
**Slowly** [2] - 23:6, 33:5
**smaller** [1] - 25:21
**So..** [1] - 8:12
**software** [2] - 26:19, 26:25
**solution** [2] - 5:18, 37:11
**someone** [4] - 34:25, 35:6, 44:21, 51:12
**sophisticated** [1] - 52:16
**sorry** [8] - 4:1, 5:16, 9:8, 27:22, 31:3, 46:7, 48:8, 58:4
**Sorry** [1] - 30:10
**sort** [1] - 14:2
**sound** [1] - 64:8
**sounds** [1] - 26:23
**South** [1] - 1:18
**Southern** [1] - 44:15
**SOUTHERN** [1] - 1:1

**speaking** [1] - 11:25
**special** [1] - 11:17
**specialist** [1] - 26:4
**specifically** [1] - 37:21
**specificity** [1] - 41:4
**speech** [11] - 12:7, 12:8, 12:9, 12:21, 12:22, 13:1, 39:9, 39:12, 39:15, 42:21, 42:23
**speed** [1] - 17:3
**spend** [1] - 57:10
**spent** [3] - 10:17, 27:5, 54:7
**split** [1] - 63:19
**spoliated** [1] - 16:7
**spoliation** [3] - 12:19, 12:20, 13:5
**spread** [1] - 9:24
**stage** [2] - 46:25, 48:4
**start** [3] - 6:4, 23:3, 63:21
**Start** [2] - 30:11, 58:6
**started** [2] - 17:20, 60:23
**State** [1] - 50:8
**state** [1] - 63:24
**statement** [2] - 37:22, 54:25
**statements** [1] - 65:14
**STATES** [2] - 1:1, 1:11
**States** [4] - 48:24, 50:8, 50:25, 62:23
**station** [1] - 10:21
**status** [3] - 33:8, 37:13, 40:12
**stay** [1] - 36:25
**stayed** [1] - 15:5
**stenography** [1] - 1:24
**Stephanie** [1] - 68:4
**STEPHANIE** [1] - 2:9
**sticking** [1] - 38:2
**still** [8] - 12:9, 26:10, 27:9, 34:9, 37:3, 41:24, 63:10, 63:19
**stipulation** [8] - 17:1, 18:12, 29:4, 29:6, 30:24, 37:11, 37:16, 37:25
**stood** [1] - 65:18
**stories** [1] - 48:22
**story** [2] - 22:15
**strange** [1] - 49:3
**street** [1] - 51:18
**Street** [1] - 1:18

stretched [1] - 16:12
strikes [2] - 49:3, 66:1
strong [4] - 17:7, 32:11, 39:20, 54:15
strongly [2] - 50:6, 50:17
struggling [1] - 31:25, 53:15
stuck [2] - 17:17, 41:22
stumbled [1] - 63:23
subject [5] - 10:14, 12:15, 31:17, 55:19, 58:19
subjects [2] - 12:16, 12:17
submitted [1] - 14:13
subpoena [3] - 57:17, 57:20, 66:16
subsequent [3] - 62:13, 63:2, 63:6
substantive [1] - 36:17
Subway [1] - 14:23
sue [1] - 48:7
sufficient [1] - 45:16
suffixes [2] - 61:23, 61:24
suggested [2] - 11:14, 67:13
suggestion [2] - 17:8, 46:10
suit [1] - 47:20
Suite [3] - 1:15, 2:5, 2:10
Sullivan [1] - 1:18
summary [13] - 5:15, 27:20, 31:19, 34:6, 34:14, 36:6, 36:15, 36:18, 38:11, 40:22, 43:12, 45:19, 52:22
summer [5] - 21:12, 29:22, 29:25, 30:1, 37:9
super [1] - 17:11
support [3] - 34:12, 35:22, 36:22
supporting [1] - 52:14
supportive [2] - 46:4, 46:21
suppose [1] - 40:15
supposed [1] - 29:9
Supreme [3] - 62:12, 62:16, 62:22
surprise [1] - 14:12
survive [2] - 45:19, 52:22
suspect [1] - 16:23

sword [1] - 15:24
sworn [2] - 19:3, 22:10
syllable [1] - 58:6

## T

table [4] - 31:7, 49:8, 49:20, 67:10
tackle [1] - 25:11
tag [1] - 38:9
targeted [1] - 29:23
task [1] - 26:24
Tayback [2] - 10:11, 14:14
Tayback's [1] - 39:24
technology [1] - 52:16
telephone [2] - 52:15, 52:17
temporal [2] - 43:2, 43:4
ten [5] - 6:18, 7:10, 11:14, 11:25, 65:16
Ten [1] - 11:24
tend [2] - 48:1, 62:17
term [3] - 28:21, 37:2, 37:4
terminal [1] - 31:1
terminals [2] - 18:2, 18:6
terms [64] - 4:9, 5:21, 5:24, 9:20, 11:12, 16:18, 17:10, 19:1, 19:8, 19:14, 19:16, 19:17, 19:21, 20:1, 20:9, 20:13, 20:15, 20:17, 20:19, 20:21, 21:8, 21:13, 21:15, 21:19, 21:22, 22:3, 22:7, 22:17, 22:22, 22:24, 23:12, 23:20, 23:23, 23:24, 24:2, 24:5, 24:10, 25:12, 25:14, 25:15, 25:19, 28:2, 28:5, 28:6, 28:8, 28:9, 28:11, 28:18, 28:24, 30:12, 30:13, 31:19, 33:11, 37:9, 42:5, 42:6, 42:13
terrain [1] - 3:21
terribly [1] - 48:6
terrorist [1] - 15:16
test [2] - 24:18, 24:20, 30:12, 40:5
tested [1] - 30:7
testified [3] - 35:3, 39:22, 42:24

testifying [1] - 7:21
testimony [7] - 10:6, 12:7, 34:17, 40:5, 48:1, 54:13, 54:16
tests [2] - 24:18, 30:3
Texas [2] - 2:6, 2:10
TEXAS [2] - 1:1, 1:8
THE [142] - 1:10, 3:3, 3:8, 3:11, 3:17, 3:25, 4:1, 4:3, 4:8, 4:12, 4:18, 5:3, 5:11, 6:15, 6:20, 6:22, 7:8, 7:14, 7:19, 8:8, 8:13, 8:20, 8:25, 9:6, 9:7, 9:13, 9:20, 10:4, 10:8, 10:23, 11:7, 11:17, 11:22, 11:24, 12:12, 13:7, 13:11, 13:14, 13:23, 14:8, 14:25, 16:3, 17:7, 17:24, 18:13, 18:21, 19:5, 19:12, 19:23, 20:5, 23:6, 23:18, 24:14, 27:21, 27:24, 28:7, 28:25, 29:9, 29:17, 29:25, 30:9, 30:11, 30:19, 31:2, 31:12, 31:15, 31:24, 32:5, 33:2, 33:5, 33:17, 36:12, 36:24, 37:5, 37:22, 38:2, 38:17, 38:24, 39:3, 39:6, 39:17, 40:13, 40:21, 41:2, 41:6, 41:11, 41:17, 41:25, 42:2, 42:19, 43:11, 43:24, 44:2, 44:17, 45:1, 45:5, 45:8, 45:10, 45:12, 46:9, 46:14, 47:5, 47:10, 47:17, 48:5, 48:13, 48:15, 50:3, 50:14, 50:19, 50:24, 51:2, 51:5, 51:8, 51:25, 52:9, 53:5, 53:8, 55:7, 55:18, 56:4, 56:21, 57:3, 57:6, 57:22, 58:2, 58:5, 60:20, 62:2, 62:9, 62:19, 62:24, 63:11, 64:4, 64:7, 64:15, 64:22, 65:21, 66:17, 67:6, 67:13, 67:16
the.. [1] - 17:9
thematically [1] - 5:19
themselves [1] - 16:5
therefore [1] - 28:17

they've [3] - 10:15, 17:9, 36:20
thinking [1] - 28:16
third [4] - 15:16, 30:13, 33:9, 59:2
threat [1] - 65:12
threaten [1] - 35:11
threatened [2] - 35:14, 65:7
three [7] - 11:19, 12:1, 32:1, 56:22, 58:14, 65:17, 65:19
Three [2] - 55:13, 57:9
threshold [3] - 36:1, 36:21, 50:13
thumb [1] - 9:21
ties [1] - 51:10
timeframe [1] - 5:23
today [6] - 3:13, 18:18, 34:17, 42:6, 66:12, 67:20
took [6] - 14:15, 20:12, 39:10, 44:6, 44:22, 65:14
top [2] - 19:16, 21:22
topic [1] - 13:14
topics [2] - 14:1, 15:10
total [5] - 7:2, 16:5, 22:12, 23:13, 24:3
totality [1] - 36:10
toward [1] - 48:3
trafficking [8] - 17:15, 23:1, 23:4, 23:8, 23:9, 23:14, 39:22, 66:1
transcribed [1] - 13:4
transcript [5] - 1:24, 14:13, 34:10, 39:23, 68:1
TRANSCRIPT [1] - 1:10
transcription [1] - 1:25
translation [3] - 7:20, 9:22, 10:18
translator [1] - 54:24
transnational [1] - 47:22
travel [4] - 11:12, 14:11, 49:5, 49:8
treatment [1] - 59:2
trial [15] - 3:23, 4:6, 45:20, 47:25, 48:1, 48:3, 48:10, 48:11, 52:24, 52:25, 53:1, 53:18, 53:19, 53:20
tried [2] - 25:17,

62:11
trip [2] - 14:23, 35:10
truth [2] - 19:2, 49:17
try [11] - 3:22, 4:7, 7:22, 24:13, 25:11, 26:10, 26:11, 30:15, 34:1, 37:9, 66:8
trying [13] - 7:16, 18:8, 25:15, 25:19, 29:22, 32:23, 32:25, 33:22, 42:11, 49:19, 52:1, 53:13, 63:16
Tuesday [1] - 14:15
turn [5] - 10:5, 16:18, 19:13, 23:12, 43:17
turned [1] - 30:14
Two [1] - 6:11
two [24] - 6:4, 6:12, 9:25, 10:12, 14:1, 22:21, 27:7, 28:4, 29:10, 31:7, 32:1, 34:19, 34:21, 41:11, 44:10, 58:14, 58:20, 58:22, 59:12, 60:5, 60:24, 67:1, 67:18
type [7] - 37:21, 44:6, 49:17, 53:14, 54:25, 58:10
typed [2] - 13:1, 13:4, 39:11
types [5] - 54:25, 59:3, 59:9, 65:2, 66:8
typewritten [1] - 59:24

## U

U.N [3] - 12:7, 12:18, 42:21
U.S [6] - 2:9, 48:25, 51:5, 51:9, 51:11, 62:16
Ultimately [1] - 22:8
ultimately [2] - 27:3, 48:3
um.. [1] - 63:10
unanimous [1] - 39:19
unaware [1] - 47:18
under [16] - 9:3, 9:5, 9:9, 16:19, 19:17, 38:20, 39:14, 41:23, 43:1, 43:7, 43:9, 55:12, 61:17, 63:19, 64:1, 65:8
Under [1] - 38:16
underlying [7] - 15:13, 19:23, 19:24,

24:14, 24:15, 29:21, 31:11
**understood** [1] - 8:25
**unfair** [1] - 27:11
**unfortunately** [1] - 49:12
**Unfortunately** [1] - 50:21
**UNITED** [2] - 1:1, 1:11
**United** [5] - 12:21, 48:24, 50:8, 50:25, 62:23
**unlikely** [1] - 10:25
**unnecessarily** [1] - 66:24
**unreliable** [1] - 59:22
**unsettling** [1] - 48:7
**unusual** [2] - 47:22, 47:25
**unwitting** [1] - 63:5
**up** [27] - 5:24, 10:4, 13:1, 16:5, 21:21, 22:25, 25:20, 26:23, 29:22, 30:8, 30:15, 34:2, 35:17, 36:4, 36:7, 36:20, 39:11, 39:24, 44:5, 44:6, 44:22, 52:1, 53:12, 53:13, 58:5, 60:12
**Urquhart** [1] - 1:18
**useful** [1] - 28:18
**utilized** [1] - 37:13
**uttered** [1] - 12:20
**utterly** [1] - 49:3

**V**

**variance** [1] - 20:20
**variations** [1] - 19:18
**various** [4] - 18:25, 22:4, 48:22, 66:6
**vast** [1] - 25:11
**venue** [1] - 38:2
**verifying** [1] - 55:25
**version** [4] - 12:21, 13:2, 13:4, 13:12
**versus** [2] - 62:16, 62:23
**victims** [1] - 8:11
**video** [12] - 6:1, 12:22, 46:24, 47:5, 47:9, 47:25, 49:19, 52:14, 52:17, 53:14, 54:22, 67:3
**Video** [1] - 49:11
**videoconferencing** [4] - 45:16, 45:18,

55:9, 55:10
**view** [2] - 50:11, 51:16
**villagers** [2] - 50:12, 54:14
**vindicate** [1] - 3:23
**violence** [1] - 39:25
**visa** [5] - 48:20, 50:4, 50:9, 51:16, 51:17
**visas** [14] - 45:14, 46:10, 46:13, 47:2, 48:23, 49:10, 49:23, 50:8, 50:12, 50:17, 51:4, 51:22, 51:23, 52:22
**volume** [1] - 55:21
**VS** [1] - 1:6

**W**

**wage** [1] - 10:21
**waiting** [5] - 28:25, 29:1, 30:19, 30:20, 37:5
**waiver** [1] - 37:16
**warehouse** [1] - 34:24
**Washington** [2] - 1:15, 24:25
**wasted** [2] - 14:16, 14:19
**water** [1] - 41:23
**ways** [1] - 23:8
**week** [1] - 61:7
**weekend** [1] - 16:16
**weeks** [4] - 28:4, 36:14, 60:25, 65:6
**welcome** [1] - 3:3
**West** [1] - 1:15
**what..** [1] - 63:15
**whatsoever** [1] - 61:4
**whole** [1] - 13:8
**willing** [10] - 11:12, 24:23, 36:5, 43:20, 45:16, 47:1, 50:16, 56:25, 57:1, 64:18
**wish** [3] - 5:11, 16:5, 31:12
**withdraw** [1] - 65:1
**withdrawing** [1] - 4:25
**witness** [3] - 14:17, 52:18, 54:24
**witnesses** [7] - 6:24, 7:20, 14:23, 52:23, 52:25, 54:17, 67:11
**woman** [1] - 58:5
**wonder** [1] - 51:13

**word** [2] - 26:19, 54:3
**words** [4] - 17:15, 27:7, 28:17, 29:22
**worker** [3] - 10:21, 34:22, 34:24
**workers** [1] - 35:5
**world** [1] - 31:18
**worried** [1] - 65:8
**worship** [1] - 6:4
**worth** [1] - 18:19
**writing** [3] - 31:20, 65:5, 67:19
**written** [1] - 34:16
**wrote** [5] - 42:23, 60:23, 60:24, 61:2, 65:13

**Y**

**y'all** [3] - 7:25, 14:8, 14:9
**year** [3] - 21:5, 32:9, 56:8
**years** [1] - 59:7
**yesterday** [3] - 33:8, 56:14, 57:5
**York** [5] - 1:14, 11:1, 11:10, 11:12, 14:12
**young** [1] - 58:5
**yourselves** [1] - 4:13

**Z**

**zero** [1] - 7:12