IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAMCHANDRA ADHIKARI, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. H-09-1237 |
| v. | § | |
| | § | JUDGE KEITH P. ELLISON |
| DAOUD & PARTNERS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**KBR'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT ON EXTRATERRITORIALITY IN LIGHT OF *KIOBEL V. DUTCH PETROLEUM CO.* AND *MORRISON V. NATIONAL AUSTRALIA BANK, LTD.***

MICHAEL W. MENGIS
State Bar No. 13941040
BILLY M. DONLEY
State Bar No. 05977085
BAKER & HOSTETLER LLP
1000 Louisiana St., Suite 2000
Houston, Texas 77002
Telephone: 713.751.1600
Facsimile: 713.751.1717

DAVID B. RIVKIN, JR. (pro hac vice)
District of Columbia Bar No. 394446
LEE A. CASEY (pro hac vice)
District of Columbia Bar No. 447443
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, DC 20036
Telephone: 202.861.1500
Facsimile: 202.861.1783

*Attorneys for KBR*

OF COUNSEL:

MARK LOWES
State Bar No. 12636300
Vice President for Litigation
Kellogg Brown & Root, LLC
601 Jefferson Street, Suite 3720
Houston, Texas 77002
Telephone: 713.753.8635
Facsimile: 713.753.3443

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND AND STATEMENT OF THE CASE ........ 3

ISSUES PRESENTED ........ 4

STANDARD OF REVIEW ........ 5

SUMMARY OF ARGUMENT ........ 5

ARGUMENT ........ 7

I. Plaintiffs' Claims Fail Under Kiobel ........ 7

A. Kiobel and the Presumption Against Extraterritoriality ........ 7

B. The Presumption Against Extraterritoriality Is Not Overcome by Contacts with U.S. Territory that Do Not Concern a Statute's "Focus." ........ 8

II. KBR is Entitled to Summary Judgment on Plaintiffs' TVPRA Claims Because the TVPRA Has No Relevant Extraterritorial Application ........ 11

A. The TVPRA Has No Relevant Extraterritorial Application and Morrison Forbids Speculation About What Congress May Have Wanted ........ 11

B. Morrison Precludes Application of 18 U.S.C. § 1596 to This Case ........ 13

III. KBR is Entitled to Summary Judgment on Plaintiffs' RICO Claims Because RICO Has No Extraterritorial Application ........ 14

A. RICO Has No Extraterritorial Application ........ 15

B. MEJA Cannot Support RICO's Extraterritorial Application in this Case ........ 17

CONCLUSION ........ 21

CERTIFICATE OF SERVICE ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012)....................10

*Adhikari v. Daoud & Partners*,
697 F. Supp. 2d 674 (S.D. Tex. 2009).................... passim

*Baoanan v. Baja*,
627 F. Supp. 2d 155 (S.D.N.Y. 2009)....................11

*Beck v. Prupis*,
529 U.S. 494 (2000)....................18

*Cedeño v. Castillo*,
457 Fed. App'x 35 (2d Cir. 2012)....................17, 19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................5

*CGC Holding Co., LLC v. Hutchens*,
824 F. Supp. 2d 1193 (D. Colo. 2011)....................17

*Chevron Corp. v. Donziger*,
871 F. Supp. 2d 229 (S.D.N.Y. 2012)....................16

*Cornwell v. Credit Suisse Grp.*,
729 F. Supp. 2d 620 (S.D.N.Y. 2010)....................15

*David v. Signal Int'l, LLC*,
257 F.R.D. 114 (E.D. La. 2009)....................11

*Ditullio v. Boehm*,
662 F.3d 1091 (9th Cir. 2011)....................11

*Doe v. Siddig*,
810 F. Supp. 2d 127 (D.D.C. 2011)....................11

*EEOC v. Arabian American Oil Co.*,
499 U.S. 244 (1991)....................9

*Gurung v. Malhotra*,
851 F. Supp. 2d 583 (S.D.N.Y. 2012)....................11

*Headley v. Church of Scientology Int'l*,
687 F.3d 1173 (9th Cir. 2012)....................11

*Hourani v. Mirtchev*,
2013 WL 1901013 (D.D.C. May 8, 2013) ....................10, 16, 17

*In re BP P.L.C. Servs. Litig.*,
843 F. Supp. 2d 712 (S.D. Tex. 2012) ....................15

*In re Van Dusen*,
654 F.3d 838 (9th Cir. 2011) ....................11

*John Roe I v. Bridgestone Corp.*,
492 F. Supp. 2d 988 (S.D. Ind. 2007) ....................12

*Kiobel v. Royal Dutch Petroleum Co.*,
___ U.S. ___, 133 S. Ct. 1659 (2013) .................... passim

*Kiobel v. Royal Dutch Petroleum Co.*,
621 F.3d 111 (2d Cir. 2010) ....................7

*Kiwanuka v. Bakilana*,
844 F. Supp. 2d 107 (D.D.C. 2012) ....................11

*Landgraf v. USI Film Prod.*,
511 U.S. 244 (1994) ....................14

*Magnifico v. Villanueva*,
783 F. Supp. 2d 1217 (S.D. Fla. 2011) ....................11

*Martinez v. Calimlim*,
651 F. Supp. 2d 852 (E.D. Wis. 2009) ....................11

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
871 F. Supp. 2d 933 (N.D. Cal. 2012) ....................16

*Morrison v. Nat'l Australia Bank, Ltd.*,
___ U.S. ___, 130 S. Ct. 2869 (2010) .................... passim

*N.S. Fin. Corp. v. Al-Turki*,
100 F.3d 1046 (2d Cir. 1996) ....................15

*Nattah v. Bush*,
541 F. Supp. 2d 223 (D.D.C. 2008), *reversed in part on other grounds*, 605 F.3d 1052 (D.C. Cir. 2010) ....................12

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
631 F.3d 29 (2d Cir. 2010) ....................15, 16, 17, 19

*Plumbers' Union Local No. 12 Pension Fund v. Swiss Reins. Co.*,
753 F. Supp. 2d 166 (S.D.N.Y. 2010) ....................10

*Ramos-Madrigal v. Mendiola Forestry Serv., LLC*,
799 F. Supp. 2d 958 (W.D. Ark. 2011)....................11

*Republic of Austria v. Altmann*,
541 U.S. 677 (2004)....................14

*Republic of Iraq v. ABB AG*,
2013 WL 441959 (S.D.N.Y. Feb. 6, 2013)....................17

*Samirah v. Sabhnani*,
772 F. Supp. 2d 437 (E.D.N.Y. 2011)....................11

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004)....................7

*Tanedo v. E. Baton Rouge Parish Sch. Bd.*,
2012 WL 5378742 (C.D. Cal. Aug. 27, 2012)....................12

*Tymoshenko v. Firtash*,
2013 WL 1234821 (S.D.N.Y. Mar. 26, 2013)....................10

*United States v. Alstatt*,
858 F. Supp. 2d 1032 (D. Neb. 2012)....................11

*United States v. Bradley*,
390 F.3d 145 (1st Cir. 2004), *vacated on sentencing grounds*, 545 U.S. 1101 (2005)....................11

*United States v. Buck*,
661 F.3d 364 (8th Cir. 2011)....................11

*United States v. Calimlim*,
538 F.3d 706 (7th Cir. 2008)....................11

*United States v. Dann*,
652 F.3d 1160 (9th Cir. 2011)....................11

*United States v. Jungers*,
702 F.3d 1066 (8th Cir. 2013)....................11

*United States v. Kaufman*,
546 F.3d 1242 (10th Cir. 2008)....................11

*United States v. Lee*,
472 F.3d 638 (9th Cir. 2006)....................11

*United States v. Marcus*,
628 F.3d 36 (2d Cir. 2010)....................11

*United States v. Peterson*,
627 F. Supp. 2d 1359 (M.D. Ga. 2008) ....................12

*United States v. Phan*,
628 F. Supp. 2d 562 (M.D. Pa. 2009) ....................11

*United States v. Philip Morris USA, Inc.*,
783 F. Supp. 2d 23 (D.D.C. 2011) ....................19

*United States v. Sabhnani*,
599 F.3d 215 (2d Cir. 2010) ....................11

**STATUTES**

15 U.S.C. § 78dd(b) ....................19

15 U.S.C. § 78j(b) .................... passim

18 U.S.C. § 1581 ....................20

18 U.S.C. § 1584 ....................20

18 U.S.C. § 1589 ....................11, 12, 13

18 U.S.C. § 1590 ....................11, 12, 13

18 U.S.C. § 1592 ....................20

18 U.S.C. § 1595 ....................12

18 U.S.C. § 1596 ....................2, 6, 13, 14

18 U.S.C. § 1951 ....................20

18 U.S.C. § 1961(1) ....................18

18 U.S.C. § 1962(c) ....................14

18 U.S.C. § 3261 .................... passim

18 U.S.C. § 3261(a) ....................18

18 U.S.C. § 3261(a)(1) ....................18

28 U.S.C. § 1350 ....................7

Pub. L. No. 91-452, 84 Stat. 922 (1970, *reprinted in* 1970 U.S. Code Cong. & Admin.
News 1073 ....................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ....................................................................................................1, 2, 5

H.R. Rep. No. 106-778, pt. 1 (2000)....................................................................................18

H.R. Rep. No. 106-939 (2000)............................................................................................12

*Military Extraterritorial Jurisdiction Act of 2000*, H.R. Rep. No. 106-778,pt.1 (2000)..............18

Uniform Code of Military Justice .........................................................................................18

Pursuant to Fed. R. Civ. P. 56(a), Defendants Kellogg Brown & Root, Inc.; Kellogg Brown & Root Services, Inc.; KBR, Inc.; KBR Holdings, LLC; Kellogg Brown & Root LLC; KBR Technical Services, Inc.; Kellogg Brown & Root International, Inc.; Service Employees International, Inc.; and Overseas Administration Services, Ltd (collectively, "KBR"), hereby move for summary judgment on Plaintiffs' Trafficking Victims Protection Act ("TVPRA") and Racketeer Influenced Corrupt Organization Act ("RICO") claims because there are no relevant material facts in dispute, these statutes have no extraterritorial application, and the events at issue took place outside of the United States. In support, KBR states as follows:

**INTRODUCTION**

The Supreme Court's ruling in *Kiobel v. Royal Dutch Petroleum Co.*, ___ U.S. ___, 133 S. Ct. 1659 (2013) transformed the law governing this case. As the Plaintiffs themselves concede: "No matter what the Supreme Court decides, its [*Kiobel*] ruling will control these issues in this case, including the [ATS] extraterritoriality issue KBR raises here." *See* Plaintiffs' Response in Opposition to KBR's Motion for Summary Judgment, Doc. No. 401 at 52.

*Kiobel* is a watershed. It makes clear that the presumption against extraterritorial application applies with full force and effect to *every* federal statute, regardless of any international or transnational concerns to which the law may be related. Before *Kiobel*, it was widely assumed by courts, commentators, and litigants alike that the ATS had extraterritorial application—indeed, that if *any* statute had such application, it was the ATS. Not only was the ATS born of the Early Republic's foreign policy troubles, but its substantive content depends upon the Law of Nations. *Kiobel*, 133 S. Ct. at 1666-68. Nevertheless, the Supreme Court applied the rule that unless a statute has a "'clear indication of an extraterritorial application, it has none,'" and found no such clear indication in the ATS. *Id.* at 1664 (quoting *Morrison v. Nat'l Australia Bank, Ltd.*, ___ U.S. ___, 130 S. Ct. 2869, 2878 (2010)).

None of the other statutes on which Plaintiffs' claims are based——the TVPRA and RICO——have such a "clear indication" either. As a result, none have an extraterritorial application relevant to this case. In its motion for summary judgment, KBR observed that the conduct complained of by Plaintiffs with respect to their ATS claims took place outside the United States, and in response Plaintiffs adduced absolutely no evidence giving rise to any "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), regarding the question of extraterritoriality. That failure is equally dispositive of their other claims, which concern the same alleged conduct.

KBR notes that the Court denied in relevant part Defendant Daoud & Partner's ("Daoud") Renewed Motion to Dismiss Plaintiffs' First Amended Complaint, *see* Memorandum and Order, Dec. 12, 2011 (Doc. No. 273), after *Morrison* was decided. At that time, the Court concluded that RICO has extraterritorial application in this case because the predicate acts at issue are themselves extraterritorially indictable. *Id*. at 33. However, in light of *Kiobel*''s clear affirmation that the presumption against extraterritoriality applies even to statutes addressing international concerns, and the fact that the Court's Memorandum and Order did not consider *Morrison*'s implications for its initial conclusion that the predicate acts here are extraterritorial, KBR asks the Court to reconsider its analysis and conclusion on these points in light of *Morrison* and *Kiobel*.

Those cases require independent application of the presumption against extraterritoriality to each statute, so that RICO's extraterritorial reach cannot depend upon its predicate acts. Furthermore, under *Kiobel and Morrison*, the RICO predicate TVPRA offenses here are also fully subject to the presumption against extraterritoriality, and have no such reach. Section 1596's jurisdictional expansion cannot cure this defect, as this Court originally concluded, given

*Morrison*'s holding that jurisdiction "presents an issue quite separate from" extraterritorial application, which concerns liability *vel non*. *See infra* Section II B. Additionally, the Military Extraterritorial Jurisdiction Act, 18 U.S.C. § 3261 ("MEJA"), on which the Court also relied, was not a jurisdiction-expanding statute, but filled a gap in existing federal criminal jurisdiction by creating an entirely new offense—an offense that is not a RICO predicate.

KBR has already moved for summary judgment based on the ATS' lack of extraterritorial application, *see* KBR's Motion for Summary Judgment, at 35-38. In light of *Kiobel* and *Morrison*, KBR now moves for summary judgment on Plaintiffs' TVPRA and RICO claims because those statutes also have no extraterritorial application relevant to this case.

## BACKGROUND AND STATEMENT OF THE CASE

Plaintiffs brought suit against KBR and Daoud in 2008, alleging that they and other entities had "willfully and purposefully formed an enterprise with the goal of procuring cheap labor and increasing profits" by "traffic[king] in laborers" "from third world countries." Plaintiffs' First Amended Complaint ("FAC") (Doc. No. 58) ¶54. The conduct of this supposed scheme was allegedly in the hands of various entities acting outside of the United States, including "Moonlight Consultant Pvt, Ltd.," "Morning Star for Recruitment and Manpower," and Daoud. FAC ¶¶33, 58, 63-73, 75, 81-87, 92-96. These allegations form the basis of the Plaintiffs' claims that KBR violated RICO, [1] the TVPRA, and customary international law norms actionable under the ATS.

---

[1]On September 24, 2012, Plaintiffs' moved to dismiss with prejudice their direct RICO claims against KBR, Counts IV and V of the FAC, and continue to pursue only claims based upon its alleged vicarious liability for the actions of others. *See* Order Granting Unopposed Motion for Voluntary Dismissal With Prejudice of: 1) Counts IV and V of the Amended Complaint As To All Plaintiffs And 2) All Remaining Counts of the Amended Complaint as to Plaintiff's Renuka

*(cont'd on next page)*

The alleged trafficking scheme took place in Nepal, Jordan, and Iraq. *See* FAC ¶¶54-102 (describing alleged conduct in Nepal, Jordan, and Iraq). The only domestic activity Plaintiffs have alleged—let alone adduced evidence to support—involves government contract administration, monies supposedly flowing through the U.S. banking system, and that at least one KBR entity is headquartered in Houston, Texas. *See* FAC ¶¶4, 22, 23, 120, 138, 156.

The evidence adduced by Plaintiffs goes exclusively to the conduct of KBR and its alleged "agents" outside of the United States. Indeed, Plaintiffs argue that KBR's "trafficking offense" was requesting workers from Daoud, citing requisition forms signed in Iraq. *See* Statement of Material Facts, ¶59; Plaintiffs' Supplemental Response to KBR's Motion for Summary Judgment, at 63. KBR raised this issue with respect to Plaintiffs' ATS claims in its pending Motion for Summary Judgment, and Plaintiffs' responses identified no evidence to show that any aspect of the relevant conduct took place in the United States.

There are no material facts at issue. Accordingly, KBR moves for summary judgment on Plaintiffs' TVPRA and RICO claims on extraterritoriality grounds.

## ISSUES PRESENTED

1.      Whether as a matter of law Plaintiffs' TVPRA claims fail in view of the strong presumption against extraterritoriality governing application of that statute and the extraterritorial nature of the conduct at issue.

---

(*cont'd from previous page*)

Karki Shrestha, Ram Kumar Shrestha, Nirmaya Shrestha and Dhana Rok Magar, Sept. 25, 2012 (Doc. No. 383).

2. Whether as a matter of law Plaintiffs' RICO claims fail in view of the strong presumption against extraterritoriality governing application of that statue and the extraterritorial nature of the conduct at issue.

**STANDARD OF REVIEW**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As relevant here, "Rule 56([a]) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this way, the Court may "isolate and dispose of factually unsupported claims." *Id*. at 323-24. Here, Plaintiffs have failed to allege or prove that the claimed trafficking scheme was domestic to the United States. Their claims are based on forbidden extraterritorial application of the relevant statutes and must fail.

**SUMMARY OF ARGUMENT**

Plaintiffs' claims involve alleged conduct taking place outside of the United States. In *Kiobel*, the Supreme Court held that the presumption against extraterritorial application of federal statutes governs, even where a statute——there the ATS——is closely connected to international concerns. Restating the rule it previously announced in *Morrison v. National Australia Bank, Ltd.*, 130 S. Ct. 2869, 2878 (2010), the Court reaffirmed that every statute must clearly indicate an extraterritorial application to overcome the presumption. Both of these cases were decided after the Court ruled on KBR's Motion to Dismiss, where it concluded that both the TVPRA and RICO had extraterritorial application.

All of the Plaintiffs' claims depend upon extraterritorial application of federal statutes, the ATS, TVPRA, and RICO, which lack any clear statement sufficient to overcome the

presumption against extraterritoriality, as required by *Kiobel* and *Morrison*.  In particular, the TVPRA had no extraterritorial application at the time the conduct at issue took place.  The later statute, 18 U.S.C. § 1596, expanding federal court jurisdiction under the TVPRA cannot be applied retroactively—as this Court initially applied it—based on the Supreme Court's later determination in *Morrison* that the extraterritorial reach of a statute presents a question of substance rather than one of jurisdiction.

In addition, the reaffirmation of the presumption's applicability to each federal statute in *Kiobel* and *Morrison* makes clear that KBR is entitled to summary judgment on Plaintiffs' remaining RICO claims.  RICO is subject to the presumption against extraterritoriality separate and apart from its predicate acts.  Indeed, *Morrison* teaches that even where one section of a particular statute clearly has extraterritorial application, this does not resolve the question for the statute as a whole.  RICO extraterritoriality cannot depend upon a "clear indication" relating to some other statute.

MEJA does not suggest otherwise.  That statute was designed to permit the criminal prosecution of those employed by or accompanying the Armed Forces overseas by creating a new offense (which is not a RICO predicate).  It says nothing regarding the extraterritorial reach of RICO, a statute passed decades earlier and focused on an entirely different issue—the problem of organized racketeering activity *within* the United States.  *See* Pub. L. No. 91-452, 84 Stat. 922 (1970), *reprinted in* 1970 U.S. Code Cong. & Admin. News 1073 ("It is the purpose of this Act to seek the eradication of organized crime in the United States . . . .").  It also does not override the presumption that the political branches, not the courts, must be the first movers in any extraterritorial application of U.S. law.  KBR asks that the Court reconsider its contrary

conclusions, reached before either *Kiobel* or *Morrison* was decided. In light of those cases, KBR is entitled to summary judgment on Plaintiffs' TVPRA and RICO claims as a matter of law.[2]

## ARGUMENT

### I. Plaintiffs' Claims Fail Under *Kiobel*.

*Kiobel* establishes that the presumption against extraterritoriality applies to every federal statute, including those addressing international or foreign policy concerns. In that case, the Court ruled not only that the ATS was subject to this rule, but that, despite the statute's strong international connections, it lacked the clear indication of extraterritorial application necessary to overcome the presumption. The same rule and reasoning applies to the TVPRA and RICO.

#### A. *Kiobel* and the Presumption Against Extraterritoriality.

The ATS gives United States District Courts "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The statute is jurisdictional only, leaving courts to determine whether to recognize ATS cognizable claims under the standard established in *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004). Such claims must be based upon "specific, universal, and obligatory" international norms. *Id.* at 725, 732.

In *Kiobel*, Nigerian nationals brought an ATS action claiming that several corporate defendants had aided and abetted serious human rights violations by the Nigerian Government in Nigeria. The United States Court of Appeals for the Second Circuit dismissed the complaint because international law does not recognize corporate liability. *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 120 (2d Cir. 2010). The Supreme Court, however, framed the

---

[2] As noted above, KBR's initial motion for summary judgment seeks judgment on Plaintiffs' ATS claims on related grounds.

issue as "whether and under what circumstances courts may recognize a cause of action under the Alien Tort Statute, for violations of the law of nations occurring within the territory of a sovereign other than the United States." 133 S. Ct. at 1662.

The Court held that, despite its dependence on the Law of Nations and historical context, "nothing in the statute rebuts [the] presumption" against extraterritoriality. *Id*. at 1669. It explained that the principles underlying the presumption are found in the most basic separation of powers considerations: "The presumption against extraterritorial application helps ensure that the Judiciary does not erroneously adopt an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches." *Id.* at 1664. Those consequences might include, the Court noted, unintended clashes between U.S. law and that of other nations, as well as the very real potential for retaliation against Americans and American interests. *Id.* at 1664, 1669. To avoid those consequences, where U.S. law is to be applied to conduct outside of the United States, the political branches must take the lead, and not the judiciary.

B. The Presumption Against Extraterritoriality Is Not Overcome by Contacts with U.S. Territory that Do Not Concern a Statute's "Focus."

In *Kiobel*, as in the instant case, "all the relevant conduct took place outside the United States." *Id.* at 1669. Nevertheless, the Court also cautioned that "even where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application." *Id.* (citing *Morrison*, 130 S.Ct. at 2883-88). It went on to note that "corporations are often present in many countries, and it would reach too far to say that mere corporate presence suffices." *Id.* In other words, the relevant, statutorily regulated conduct must take place in the United States.

*Morrison* makes clear that, in evaluating territoriality, courts must confine their analysis to that conduct which is a statute's "focus." In that case, the Court considered whether federal

securities law, in particular section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), "provides a cause of action to foreign plaintiffs suing foreign and American defendants for misconduct in connection with securities traded on foreign exchanges." 130 S. Ct. at 2875. There, plaintiffs alleged losses on National Bank of Australia shares (purchased outside of the United States), attributable to various misrepresentations by the bank and its officers regarding the value of a Florida mortgage-servicing firm the bank had acquired. The Supreme Court affirmed dismissal of these claims because section 10(b) did not clearly evince extraterritorial application. *Id.* at 2883, 2888.[3]

Significantly, the *Morrison* Court determined that even substantial domestic activities—including the purchase of an American company, alleged material misrepresentations regarding that company by its U.S. managers, and their manipulation of the company's financial models—were insufficient to establish a permissible, domestic application of the statute, which regulates not misrepresentations *per se*, but the sale and purchase of securities. *Id.* at 2875-76. The Court also noted, citing *EEOC v. Arabian American Oil Co.*, 499 U.S. 244 (1991), that the hiring of an American citizen in the United States, was an insufficient basis to support a "domestic" application of Title VII where the actual employment was overseas. In this connection, the *Morrison* Court noted: "[I]t is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States. But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some*

---

[3]The Court specifically rejected the Second Circuit's approach, which assumed that "because the Exchange Act is silent as to the extraterritorial application of § 10(b), it was left to the court to 'discern' whether Congress would have wanted the statute to apply." 130 S. Ct. at 2878. It also rejected that court's "conduct" and "effects" tests as a wrongheaded effort to guess what Congress would have wanted to do if it had actually considered the issue. *See id.* at 2880-81.

domestic activity is involved in the case." 130 S. Ct. at 2884. Instead, a court's analysis must turn on the conduct that is the "'focus' of congressional concern"—in that case, the securities transaction. *Id*.

Since *Morrison* was decided, a number of courts have concluded that domestic application of a statute does not result from citizenship, communications with the United States, or the use of domestic bank accounts and similar incidental connections. *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 70 (2d Cir. 2012) (marketing activities in United States insufficient to meet *Morrison*'s territoriality requirement in securities context); *Hourani v. Mirtchev*, 2013 WL 1901013, at *5 (D.D.C. May 8, 2013) (citizenship of parties, directions from Washington, D.C., and use of U.S. accounts insufficient to establish domestic RICO violation); *Tymoshenko v. Firtash*, 2013 WL 1234821, at *11 (S.D.N.Y. Mar. 26, 2013) ("Accordingly, peripheral contacts with the United States—up to and including the use of a domestic bank account—do not bring an otherwise foreign scheme within the reach of the RICO statutes." (quoting *Republic of Iraq v. ABB AG*, 2013 WL 441959, at *21 (S.D.N.Y. Feb. 6, 2013))); *Plumbers' Union Local No. 12 Pension Fund v. Swiss Reins. Co.*, 753 F. Supp. 2d 166, 178-79 (S.D.N.Y. 2010) (U.S. residence, domestic decision to invest, harm suffered in U.S., and purchase orders from U.S. insufficient to establish domestic transaction permitting application of securities laws).

Here, the alleged trafficking of which Plaintiffs complain took place entirely outside of the United States, in the territory of Nepal, Jordan, and Iraq. The only domestic activity Plaintiffs have even alleged involves administration of government contracts, monies supposedly flowing through the U.S. banking system, and one KBR entity's headquarters in Houston, Texas. *See* FAC ¶¶4, 22, 23, 120, 138, 156. Such alleged activity is insufficient, under the teaching of

*Kiobel* and *Morrison*, to support TVPRA and RICO claims, due to the focus of those statutes. The conduct at issue was extraterritorial, and the statutes on which Plaintiffs' rely are not.

## II. KBR is Entitled to Summary Judgment on Plaintiffs' TVPRA Claims Because the TVPRA Has No Relevant Extraterritorial Application.

### A. The TVPRA Has No Relevant Extraterritorial Application and *Morrison* Forbids Speculation About What Congress May Have Wanted.

Like the ATS, the TVPRA as originally enacted had no clear indication of any extraterritorial application. Indeed, the reported cases under 18 U.S.C. § 1589 (forced labor) and 18 U.S.C. § 1590 (trafficking)—the sections at issue here—involve either trafficking of persons into or within the United States itself, or other entirely domestic activity.[4] As one court recently

---

[4]*See United States v. Jungers*, 702 F.3d 1066 (8th Cir. 2013) (sex trafficking in South Dakota); *Headley v. Church of Scientology Int'l*, 687 F.3d 1173 (9th Cir. 2012) (forced labor, entirely domestic); *United States v. Buck*, 661 F.3d 364 (8th Cir. 2011) (sex trafficking in Missouri); *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011) (sex trafficking, domestic); *United States v. Dann*, 652 F.3d 1160 (9th Cir. 2011) (forced labor, victim brought into United States); *In re Van Dusen*, 654 F.3d 838 (9th Cir. 2011) (truck drivers' forced labor and FSLA class action, domestic); *United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010) (sex trafficking and forced labor, entirely domestic); *United States v. Sabhnani*, 599 F.3d 215 (2d Cir. 2010) (forced labor, victims brought into United States); *United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008) (forced labor, entirely domestic); *United States v. Calimlim*, 538 F.3d 706 (7th Cir. 2008) (forced labor, victims brought into United States); *United States v. Lee*, 472 F.3d 638 (9th Cir. 2006) (forced labor, victims brought to American Samoa); *United States v. Bradley*, 390 F.3d 145 (1st Cir. 2004), *vacated on sentencing grounds*, 545 U.S. 1101 (2005) (trafficking into United States and mistreatment and coercion here); *Gurung v. Malhotra*, 851 F. Supp. 2d 583 (S.D.N.Y. 2012) (trafficking into United States and forced labor here); *United States v. Alstatt*, 858 F. Supp. 2d 1032 (D. Neb. 2012) (mem.) (trafficking into United States); *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107 (D.D.C. 2012) (mem.) (trafficking into United States and forced labor here); *Doe v. Siddig*, 810 F. Supp. 2d 127 (D.D.C. 2011) (mem.) (same); *Ramos-Madrigal v. Mendiola Forestry Serv., LLC*, 799 F. Supp. 2d 958 (W.D. Ark. 2011) (forced labor, domestic); *Magnifico v. Villanueva*, 783 F. Supp. 2d 1217 (S.D. Fla. 2011) (trafficking into United States and forced labor here); *Samirah v. Sabhnani*, 772 F. Supp. 2d 437 (E.D.N.Y. 2011) (mem.) (same); *Baoanan v. Baja*, 627 F. Supp. 2d 155 (S.D.N.Y. 2009) (same); *David v. Signal Int'l, LLC*, 257 F.R.D. 114 (E.D. La. 2009) (same); *Martinez v. Calimlim*, 651 F. Supp. 2d 852 (E.D. Wis. 2009) (same); *United States v. Phan*, 628 F. Supp. 2d 562 (M.D. Pa. 2009) (trafficking into United

*(cont'd on next page)*

noted, "[t]he focus of the TVP[R]A is the trafficking of people *into the United States*, including for the purpose of compelling forced labor *here*.  The House Conference report. . . observes that . . . '[a]pproximately 50,000 women and children are trafficked *into the United States* each year[.]" *Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 2012 WL 5378742, at *6 (C.D. Cal. Aug. 27, 2012) (emphases added) (quoting H.R. Rep. No. 106-939, at 3 (2000) (Conf. Rep.)).

Thus, although human trafficking may also be a matter of international concern, *Kiobel* makes clear that the presumption against extraterritoriality applies.  Only a clear indication by Congress to the contrary can avoid application of this basic presumption, *Kiobel*, 133 S. Ct. at 1665.  The TVPRA had no such indication when the relevant conduct took place.  Even if "human trafficking is by nature an 'international' crime," *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 683 (S.D. Tex. 2009), that is insufficient to overcome the presumption under *Kiobel*—the ATS, after all, is no less internationally oriented.

Moreover, in the absence of the requisite clear indication, under *Morrison* courts may not attempt to "'discern' whether Congress would have wanted the statute to apply" extraterritorially.  130 S. Ct. at 2878.  This analysis was, in fact, the basis of the discarded

---

(*cont'd from previous page*)

States); *United States v. Peterson*, 627 F. Supp. 2d 1359 (M.D. Ga. 2008) (forced labor, entirely domestic).

Of the two arguable exceptions, one rejected the use of sections 1589 and 1590 as the basis for a private Thirteenth Amendment claim for pre-2008-amendment foreign conduct on the grounds that "extraterritorial application of these statutes is improper."  *Nattah v. Bush*, 541 F. Supp. 2d 223, 234 (D.D.C. 2008), *reversed in part on other grounds*, 605 F.3d 1052 (D.C. Cir. 2010).  The other similarly "conclude[d] that section 1595 does not provide a remedy for alleged [pre-amendment] violations of section 1589's standards that occur outside the United States."  *John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1000 (S.D. Ind. 2007).

"contacts" and "effects" tests, and resulted in "a collection of tests for divining what Congress would have wanted, complex in formulation and unpredictable in application," and entirely divorced from the statutory text. *Id.* at 2878-79. As the *Morrison* Court concluded:

> The results of judicial-speculation-made-law–divining what Congress would have wanted if it had thought of the situation before the court–demonstrate the wisdom of the presumption against extraterritoriality. Rather than guess anew in each case, we apply the presumption in all cases, preserving a stable background against which Congress can legislate with predictable effects.

*Id.* at 2881.

B. *Morrison* Precludes Application of 18 U.S.C. § 1596 to This Case.

Congress gave no clear indication that the TVPRA was to have any extraterritorial application before 2008, when it enacted 18 U.S.C. § 1596, granting "the courts of the United States . . . extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section . . . 1589, 1590." 18 U.S.C. § 1596. This Court relied on section 1596 in denying KBR's Motion to Dismiss Plaintiffs' TVPRA claims on extraterritorial grounds. It reasoned that, since the conduct at issue was already unlawful, section 1596 merely constituted an expansion of jurisdiction not subject to the presumption against retroactivity: "Section 1596, which explicitly recognizes this Court's jurisdiction over extraterritorial TVPRA claims, only enlarges jurisdiction of courts within the United States, but does not change the operative substantive laws. Thus, the concerns surrounding retroactive application of this statue do not apply." *Adhikari*, 697 F. Supp. 2d at 683.

The Court reached this conclusion, however, before the Supreme Court decided *Morrison*, which reaffirmed the vitality and general application of the presumption against extraterritoriality. Significantly, the first issue the *Morrison* Court addressed was the jurisdictional nature of extraterritorial application. It held that extraterritoriality is not a jurisdictional question, but goes to the merits of a claim: "[T]o ask what conduct § 10(b) reaches

is to ask what conduct § 10(b) prohibits, which is a merits question." *Morrison*, 130 S. Ct. at 2877. To conflate the two is "error." *Id*.

As a result, 18 U.S.C. § 1596 did not merely expand this Court's jurisdiction to reach conduct already unlawful under federal law. *See* Adhikari, 697 F. Supp. 2d at 683. Rather, it created new, substantive liability for particular conduct overseas where none had existed before. Congress did not "expressly prescribe the statute's proper reach" regarding retroactive application, so the presumption against retroactivity applies. *Landgraf v. USI Film Prod.*, 511 U.S. 244, 280 (1994) (statutes conferring or ousting jurisdiction retroactively applicable, but where enactment increases liability for past events presumption against retroactivity applies). *See also Republic of Austria v. Altmann*, 541 U.S. 677, 695 (2004) (FSIA retroactively applicable because it merely opened U.S. courts to preexisting claims without increasing liability for past conduct or imposing new duties for already completed transactions). The events at issue took place in 2004, four years before section 1596 was enacted, and it therefore cannot support the TVPRA's extraterritorial application in this case.

Under *Morrison* and *Kiobel*, the presumption against retroactivity is fully applicable here, and the TVPRA can have no extraterritorial reach relevant to this case. Because all of the challenged conduct took place abroad, KBR is entitled to summary judgment on Plaintiffs' TVPRA claims.

III. KBR is Entitled to Summary Judgment on Plaintiffs' RICO Claims Because RICO Has No Extraterritorial Application.

Plaintiffs' only remaining RICO claim against KBR is Count VI (vicarious RICO violation of 18 U.S.C. § 1962(c)). KBR can only be liable under this claim based upon the activities of Daoud, which is a foreign entity whose actions in this case (like any relevant, alleged actions by KBR) were entirely outside of the United States. Under the teaching of

*Kiobel* and *Morrison*, RICO is fully subject to the presumption against extraterritoriality and KBR is also entitled to summary judgment on this claim as a matter of law.

A. RICO Has No Extraterritorial Application.

When this Court considered KBR's challenge to RICO's extraterritorial reach in its Motion to Dismiss, the Supreme Court had decided neither *Kiobel* nor *Morrison*. Those cases make clear, however, that the presumption against extraterritoriality applies equally to every statute. *See Morrison*, 130 S. Ct. at 2881 ("Rather than guess anew in each case, we apply the presumption in all cases, preserving a stable background against which Congress can legislate with predictable effects."). Moreover, as noted above, the *Morrison* Court specifically rejected the conduct/effects test on which this Court (and most others) had previously analyzed such extraterritoriality questions. *Id.* at 2878-82.[5]

*Morrison* addressed the extraterritorial reach of Securities and Exchange Act section 10(b), but its rule and reasoning are fully applicable to other federal enactments, including RICO.[6] This Court concluded as much in its order denying in part Daoud's Renewed Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. No. 273), at 32, as have the other courts to consider the issue since *Morrison* was decided. Indeed, other "courts have uniformly concluded"

---

[5]As this Court noted in a later case, after *Morrison* "'the conduct and effect analysis as applied to § 10(b) extraterritoriality disputes is now a dead letter.'" *In re BP P.L.C. Servs. Litig.*, 843 F. Supp. 2d 712, 796 (S.D. Tex. 2012) (quoting *Cornwell v. Credit Suisse Grp.*, 729 F. Supp. 2d 620, 622 (S.D.N.Y. 2010)).

[6] Indeed, courts operating in this area often look to securities jurisprudence. *See, e.g.*, *N.S. Fin. Corp. v. Al-Turki*, 100 F.3d 1046, 1051 (2d Cir. 1996) ("Although there is little caselaw in this Circuit regarding the extraterritorial application of RICO, guidance is furnished by precedents concerning subject matter jurisdiction for international securities transactions and antitrust matters."), *abrogation on other grounds recognized by Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 33 (2d Cir. 2010) (recognizing after *Morrison* that RICO has no extraterritorial application and *Al-Turki*'s application of a conduct-and-effects test is no longer viable).

that RICO has no extraterritorial application under *Morrison*. *Hourani v. Mirtchev*, 2013 WL 1901013, at *4. *See also Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 871 F. Supp. 2d 933, 937 (N.D. Cal. 2012) (same).

That RICO is not extraterritorial does not, of course, answer the question whether the application proposed in any particular case is an exercise of forbidden extraterritoriality.  In *Morrison*, the Supreme Court looked to section 10(b)'s "focus" in determining whether an application of the statute was impermissibly extraterritorial.  *See* 130 S. Ct. at 2884. Accordingly, in determining whether a RICO claim involves a domestic or extraterritorial application, courts have applied one of two tests, depending on the court's own view of RICO's focus: the enterprise or the pattern of racketeering.  Thus, in *Mitsui*, the court considered the enterprise, RICO's primary focus, and applied a "nerve center" test—drawn from the test utilized in establishing a corporation's geographic location—determining extraterritoriality based on the place from which the RICO enterprise was directed.  871 F. Supp. 2d at 940.

A growing majority of courts, however, have determined RICO's applicability based on where the pattern of racketeering activity takes place.  Most recently, the court in *Hourani* dismissed RICO claims against an American citizen who allegedly orchestrated a conspiracy to obtain control of plaintiffs' Kazakhstan media empire:  "[L]ooking to the pattern of racketeering activity in this case, this Court finds that 'the slim contacts with the United States alleged by [Plaintiffs] are insufficient to support extraterritorial application of the RICO statute.'"  2013 WL 1901013, at *5 (quoting *Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 33 (2d Cir. 2010)). *Compare Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229 (S.D.N.Y. 2012) (refusing to dismiss RICO claim because the pattern of racketeering activity, involving an alleged scheme by American lawyers and their Ecuadoran clients to "shake down" Chevron Corporation, took place

in the United States). In *Hourani*, the alleged U.S. activity included an American plaintiff and defendant, the principal place of business of defendant's company was Washington, D.C. (where defendant allegedly gave approval of the extortion scheme), as well as payments into U.S. accounts. None of this was enough to support extraterritorial application. 2013 WL 1901013, at *1, *5.

Regardless of which test is applied, however, Plaintiffs' *vicarious-liability* claims in the instant case clearly involve a prohibited extraterritorial application of RICO. Daoud's alleged actions giving rise to Plaintiffs' claims all took place outside of the United States, in Nepal, Jordan, and Iraq. Plaintiffs have alleged and adduced no evidence of even the level of incidental contacts with the United States referred to by the *Morrison* Court as insufficient for extraterritorial application, let alone sufficient to justify a conclusion that a domestic enterprise or pattern of racketeering activity is involved. As another court noted, "[w]hen foreign actors were the primary operators, victims, and structure of a RICO claim, courts in this Circuit have properly concluded that the claims were extraterritorial." *Republic of Iraq v. ABB AG*, 2013 WL 441959, at *24 (S.D.N.Y. Feb. 6, 2013). *See also CGC Holding Co., LLC v. Hutchens*, 824 F. Supp. 2d 1193, 1210 (D. Colo. 2011) (applying the pattern of racketeering test, while distinguishing cases that applied the nerve center test, court noted: "These facts are a far cry from those of *Norex* and *Cedeño* where the actors, victims and conduct were foreign, and the connection to the United States was essentially incidental.").

B. <u>MEJA Cannot Support RICO's Extraterritorial Application in this Case.</u>

MEJA cannot support a different conclusion. In originally denying KBR's Motion to Dismiss, the Court cited MEJA as an alternative basis for RICO's application in this case, 697 F. Supp. 2d at 688, as it did more recently in its order denying Daoud's Renewed Motion to Dismiss (Doc. No. 273), at 33 & nn. 16, 17. That statute was enacted in 2000 to punish certain

extraterritorial conduct by those "employed by or accompanying the Armed Forces outside the United States." 18 U.S.C. § 3261(a)(1). The Court concluded that the TVPRA was extraterritorially indictable under MEJA and, therefore, RICO was equally applicable in this case. This conclusion, however, is inconsistent with the later teaching of both *Kiobel* and *Morrison,* as well as MEJA's actual effect and purpose.

In fact, "Military Extraterritorial Jurisdiction Act" is a misnomer. MEJA did not purport to create extraterritorial jurisdiction for any existing offense in the U.S. criminal code, including the TVPRA. It was enacted to plug a gap in federal criminal jurisdiction, which often allowed civilians (not subject to the Uniform Code of Military Justice) accompanying the Armed Forces to escape punishment for serious offenses overseas.[7] But Congress chose to close that gap by creating an entirely new, substantive criminal offense, rather than expanding jurisdiction over existing ones. That new offense is clearly extraterritorial in its scope, and it is defined by reference to other federal offenses: "Whoever engages in conduct outside the United States that would constitute an offense punishable by imprisonment for more than 1 year if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States . . . . shall be punished as provided for that offense." 18 U.S.C. § 3261(a). *See* H.R. Rep. No. 106-778, pt. 1, at 5 (2000) ("H.R. 3380 would close this [jurisdictional] gap by establishing a new Federal crime."). This new federal crime *is not a RICO predicate offense*. *See* 18 U.S.C. § 1961(1) (listing RICO predicates). *See also Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000)

[7]*See Military Extraterritorial Jurisdiction Act of 2000*, H.R. Rep. No. 106-778,pt.1, at 5 (2000) ("Because many crimes, such as sexual assault, arson, robbery, larceny, embezzlement, and fraud, currently do not have extraterritorial effect, there is a 'jurisdictional gap' that, in many cases, allows such crimes to go unpunished.").

("Section 1961(1) contains an exhaustive list of acts of 'racketeering,' commonly referred to as 'predicate acts.'"). It cannot, therefore, be the basis of RICO extraterritorial application.

Moreover, as noted above, *Kiobel* firmly established that the presumption against extraterritoriality applies to every federal enactment, regardless of its subject matter. Determining RICO's extraterritorial application based upon the extraterritoriality of its predicate acts would eliminate the independent, statute specific inquiry mandated by the Court in *Kiobel* and *Morrison*, making RICO's application dependent not upon its own language, but on the court's assessment of whether any particular predicate act is extraterritorial. As noted by the court in *United States v. Philip Morris USA, Inc.*, 783 F. Supp. 2d 23, 28 (D.D.C. 2011), rejecting the argument that RICO's extraterritoriality is governed by that of its predicate offenses, "[t]he question under *Morrison*, however, is whether Congress intended *RICO* to criminalize extraterritorial activity."

In addition, as the Second Circuit noted in *Norex Petroleum*,631 F.3d at 33, *Morrison* itself forecloses such an analysis: "*Morrison* . . . forecloses Norex's argument that because a number of RICO's predicate acts possess an extraterritorial reach, RICO itself possesses an extraterritorial reach." *See also Cedeño v. Castillo*, 457 Fed. App'x 35, 38 (2d Cir. 2012) (RICO extraterritoriality cannot be based on extraterritorial application of predicate offenses). The *Morrison* Court considered the implication of Securities and Exchange Act section 30(b), 15 U.S.C. § 78dd(b), which does envision some extraterritorial application. But it concluded that this was insufficient to support extraterritorial application of the entire statute, noting that "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Morrison*, 130 S. Ct. at 2883.

Here, of course, it is not a section of RICO upon which Plaintiffs' claims must depend, but an entirely different statute, enacted years after RICO for entirely different reasons. Indeed, because the TVPRA was not itself extraterritorially applicable at the relevant time, finding RICO extraterritoriality here would involve application of yet another statute, MEJA, also enacted decades after RICO for entirely unrelated reasons. However important their purposes, neither statute can be said to illuminate, let alone provide a "clear indication" of, RICO's extraterritorial reach.[8]

Finally, reliance on MEJA to support civil RICO liability would involve exactly the type of "unwarranted judicial interference in the conduct of foreign policy" identified by the *Kiobel* Court as underlying the presumption against extraterritoriality itself. *See* 133 S. Ct. at 1664.

MEJA created a new offense to resolve a very particular problem, allowing *the Executive Branch* to punish those not otherwise subject to military law, where the local, foreign jurisdiction may be unwilling or unable to do so. This is at the very core of the foreign policy powers of the political branches. The Court should not rely on this offense, an area of the law this Court itself has accurately described as "relatively murky," 697 F. Supp. 2d at 689, to support extraterritorial application for civil RICO claims, brought by private litigants for conduct taking place in the territory of other sovereign states.

The presumption against RICO's extraterritoriality is, therefore, fully applicable to the instant case and KBR is entitled to summary judgment as a matter of law on Plaintiffs' RICO claims.

---

[8] This is, of course, equally true of the other RICO predicates Plaintiffs' originally alleged. *See* FAC ¶ 154(a) (18 U.S.C. § 1951: Extortion; 18 U.S.C. § 1581: Peonage; 18 U.S.C. § 1584: Involuntary Servitude; 18 U.S.C. § 1592: Unlawful Conduct with Respect to Documents in Furtherance of Trafficking).

## CONCLUSION

For all of the reasons stated above, KBR is entitled to summary judgment in its favor on Plaintiffs' TVPRA and RICO claims.

Submitted: May 15, 2013

Respectfully submitted,

/S/ MICHAEL W. MENGIS

MICHAEL W. MENGIS
State Bar No. 13941040
BILLY M. DONLEY
State Bar No. 05977085
BAKER &HOSTETLER LLP
1000 Louisiana St., Suite 2000
Houston, Texas 77002
Telephone: 713.751.1600
Facsimile: 713.751.1717

DAVID B. RIVKIN, JR. (pro hac vice)
District of Columbia Bar No. 394446
LEE A. CASEY (pro hac vice)
District of Columbia Bar No. 447443
BAKER& HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, DC 20036
Telephone: 202.861.1500
Facsimile: 202.861.1783

*Attorneys for KBR*

OF COUNSEL:

MARK LOWES
State Bar No. 12636300
Vice President for Litigation
Kellogg Brown & Root, LLC
601 Jefferson Street, Suite 3720
Houston, Texas 77002
Telephone: 713.753.8635
Facsimile: 713.753.3443

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 15th day of May 2013, a true and accurate copy of KBR's Brief in Support of KBR's Supplemental Motion for Summary Judgment on Extraterritoriality in Light of *Kiobel v. Dutch Petroleum Co. and Morrison v. National Australia Bank*, *Ltd.* was served on counsel of record in accordance with the Federal Rules of Civil Procedure.

Agnieszka M. Fryszman
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005

Christopher Tayback
Scott Watson
Quinn Emanuel Urquhart Oliver & Hedges
865 Figueroa Street, 10th Fl.
Los Angeles, CA 90017

/s/ Michael W. Mengis
Michael W. Mengis