# **<u>Tab 1</u>**

374 Fed.Appx. 539
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007. See
also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4.
(Find CTA5 Rule 28 and Find CTA5 Rule 47)
United States Court of Appeals,
Fifth Circuit.

BANK OF LOUISIANA, Plaintiff–Appellant

v.

SUNGARD AVAILABILITY SERVICES,
L.P., formerly known as Sungard Recovery
Services Inc., Defendant–Appellee.

No. 09–30942
|
Summary Calendar.
|
March 29, 2010.

**Synopsis**
**Background:** Bank brought cause of action to recover for defendant's breach of contract, and the United States District Court for the Eastern District of Louisiana granted defendant's motion for summary judgment. Bank appealed, and the Court of Appeals affirmed. The District Court, Mary Ann Vial Lemmon, J., 2009 WL 2762826, subsequently granted defendant's request for award of attorney fees, and bank appealed.

**Holdings:** The Court of Appeals held that:

[1] district court did not lose jurisdiction to grant defendant's request for attorney fees either by failing to address that request in granting defendant's motion for summary judgment on breach of contract claims against it, or as result of the Court of Appeals' mandate in affirming this grant of summary judgment;

[2] district court could consider defendant's motion for award of prevailing party attorney fees, for successfully defending against plaintiff's breach of contract claims both in district court and on appeal from district court's

grant of summary judgment in its favor, though motion was filed outside the 14-day time window specified in Federal Rule of Civil Procedure;

[3] local court rule providing for submission of attorney fee requests to clerk of court initially was designed for district court's convenience, and was not in nature of procedural straightjacket;

[4] state law governed award of prevailing party attorney fees in breach of contract case that was before district court pursuant to its diversity jurisdiction; and

[5] district court did not abuse its discretion in determining reasonable award of prevailing party attorney fees.

Affirmed.

**Attorneys and Law Firms**

***541** Henry L. Klein, New Orleans, LA, for Plaintiff–Appellant.

Robert Emmett Kerrigan, Jr., Isaac H. Ryan, Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, LA, for Defendant–Appellee.

Appeal from the United States District Court for the Eastern District of Louisiana, USDC No. 2:07–CV–1228.

Before REAVLEY, JOLLY, and OWEN, Circuit Judges.

**Opinion**

PER CURIAM: [*]

**\*\*1** This is an appeal from the district court's order awarding attorneys' fees, litigation costs, and interest to Appellee SunGard Availability Services, L.P. ("SunGard"), pursuant to its contract with Appellant Bank of Louisiana ("Bank"). The district court awarded fees, costs, and interest following the Bank's prior unsuccessful appeal of SunGard's claim on the merits. Finding no error in the court's decision, we AFFIRM.

**[1]** The Bank first argues that the district court lacked jurisdiction to award attorneys' fees, costs, and interest because the court had already issued a final judgment when SunGard filed its motion. However, a district

court does not lose jurisdiction over the attorneys' fees issue when neither the district court nor the appeals court address it. *See United Indus. v. Simon–Hartley, Ltd.,* 91 F.3d 762, 764 (5th Cir.1996) (noting that "at a jurisdictional level, the district court is not precluded from ruling on the attorneys' fees issue by either its final judgment or our mandate"). In the instant case, SunGard pleaded its right to attorneys' fees in its counterclaim and based the claim for fees on specific language in the parties' contract. Later, in its first motion for summary judgment, SunGard "pray[ed] that the Court ... reserve SunGard's claim for costs and attorney's fees [sic]." When the district court granted SunGard's motion for summary judgment, it held that "SunGard is entitled to judgment as a matter of law on the counterclaim for failure to pay for the balance of the 60–month term of the agreement." The district court then entered judgment against the Bank "for the balance owed on the 60–month agreement between the parties." The judgment was silent as to the actual amount owed, including the amount of principal, interest, and attorneys' fees. When the case arrived before us on appeal, **\*542** we did not address attorneys' fees and stated only that "the Bank was correctly required to pay damages." Because the issue of attorneys' fees was pleaded but remained unaddressed either by the district court or on appeal, the district court did not lose jurisdiction over it either by its judgment or by our mandate. *See United Indus.,* 91 F.3d at 764.[1]

**[2]** The Bank next argues that the district court erred in granting attorneys' fees because Appellee filed its motion outside the time window permitted by Federal Rule of Civil Procedure 54. Federal Rule 54 states that "[u]nless a statute or a court order provides otherwise," a party must file a motion for attorneys' fees no later than 14 days after the entry of judgment. *See* FED.R.CIV.P. 54(d)(2)(B). However, a district court may waive the time requirements of Rule 54 if there is proper notice that attorneys' fees remain at issue in the case. *See Romaguera v. Gegenheimer,* 162 F.3d 893, 895 (5th Cir.1998). Both parties stipulate that shortly after we affirmed the district court on appeal but before a mandate was issued, SunGard reiterated its demand to the Bank for attorneys' fees. The Bank responded and disputed the demand. These actions, together with SunGard's pleading and its reservation of the issue in its first motion for summary judgment, put the Bank sufficiently on notice that attorneys' fees and other damages were an unresolved issue in the case. Accordingly, we find the district court did not err in

considering SunGard's motion for costs, interest, and fees after the 14–day window provided in Rule 54.

**\*\*2 [3]** The Bank next argues that the district court erred when it awarded SunGard its requested litigation expenses without first submitting the question to the clerk of the court for a hearing. We find no reversible error here. The local rules that the district court allegedly violated are clearly designed for the court's convenience; they are not a procedural straightjacket. Indeed, the very rules the Bank cited include provisions by which the court may choose to disregard them. *See e.g.,* UNIFORM LOCAL RULES OF THE UNITED STATES DISTRICT COURTS FOR THE EASTERN, MIDDLE, AND WESTERN DISTRICTS OF LOUISIANA ("Local Rule") 54.3 (party seeking costs must file a motion with clerk "unless otherwise ordered by the court"); Local Rule 54.2 (allowing the district judge discretion to relieve counsel from filing contemporaneous time reports in support of fees). The local rules are not jurisdictional, as authority ultimately rests with the district court to determine what costs a party should be awarded. *See* FED.R.CIV.P. 54(d); Local Rule 54.4 (allowing for district court to review any determination of costs by the clerk). Accordingly, the district court did not err in considering litigation expenses without first submitting the issue to the clerk of the court for an initial determination.

**[4]** Finally, the Bank argues that the district court erred in granting SunGard's motion for attorneys' fees without first determining whether those fees were reasonable. Specifically, The Bank argues that the district court erred in failing to apply the standards we set forth in *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319 (5th Cir.1995). However, in *Kellstrom,* the law determining the outcome of the case was federal law, and attorneys' fees were therefore subject to federal standards. *See Kellstrom,* 50 F.3d at 322–23. In the instant case, the parties were before the district court pursuant to its diversity jurisdiction, and the law governing **\*543** the parties' contract was Pennsylvania law. "State law controls both the award and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.,* 302 F.3d 448, 461 (5th Cir.2002). Accordingly, the district court did not err in failing to apply the standards in *Kellstrom* to the attorneys' fees award.

We review an award of attorneys' fees for abuse of discretion. *In re McClatchy,* 492 Pa. 352, 424 A.2d

1227, 1228 (1981); *see also Mathis,* 302 F.3d at 461–62. Pursuant to Pennsylvania law, when a contract provides for attorneys' fees, "the prevailing party is only entitled to recover reasonable fees, even if the contract does not have a provision specifying that the fees must be reasonable." *McMullen v. Kutz,* 925 A.2d 832, 835 (Pa.Super.Ct.2007). When determining whether a fee is reasonable, the trial court takes into consideration the following factors:

> the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; ... the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

**\*\*3** *In re LaRocca's Trust Estate,* 431 Pa. 542, 246 A.2d 337, 339 (1968).

**[5]** In its order awarding fees, the district court noted that SunGard submitted contemporaneous time reports "reflecting the dates, time involved, and the nature of the services performed." The district court also noted that "SunGard's attorneys attest to their education, skills, and

experience and demonstrate the hourly rates charged in similar cases by local attorneys with similar experience." SunGard argued, as it does on appeal, that the case involved voluminous documentary evidence, that there were no unnecessary motions, and that much of the work was in response to the Bank's own failed $900,000 claim for breach of contract and attorneys' fees. The district court stated that "[a]fter reviewing the affidavit's [sic] of counsel and the contemporaneous time reports, the court concludes that the attorney's [sic] fees and litigation expenses are reasonable."

In contrast, the Bank made no specific arguments to the district court as to why SunGard's claims for attorneys' fees were unreasonable, stating only that "[w]e find it unpleasant and distasteful to question the many entries submitted in support of the pending motion." On appeal, the Bank makes some attempt to specify what it finds unreasonable in SunGard's itemized claims, but its arguments are unpersuasive. Given the evidence SunGard provided of its attorneys' fees, given the district court's careful consideration of that evidence, and given the Bank's lackadaisical approach to disputing that evidence, we do not find the district court abused its discretion in awarding SunGard all its attorneys' fees.

AFFIRMED.

**All Citations**

374 Fed.Appx. 539, 2010 WL 1189496

---

Footnotes

\*   Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1   SunGard devotes several pages of its appellate brief arguing in favor of pre-judgment interest. However, The Bank does not appeal the district court's award of pre-judgment interest except to question the court's jurisdiction.

---

  © 2017 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**  © 2017 Thomson Reuters. No claim to original U.S. Government Works.  3

# **<u>Tab 2</u>**

2006 WL 1506711
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Dallas Division.

James Wade BROWNE, et al., Plaintiffs,

v.

NATIONAL ASSOCIATION OF
SECURITIES DEALERS, INC., Defendant.

No. Civ.A. 3:05-CV-2469-.
|
May 31, 2006.

**Attorneys and Law Firms**

Christopher J. Bebel, Law Office of Christopher J. Bebel,
Houston, TX, E. Steve Watson, Law Office of E. Steve
Watson, Allen, TX, Mark A. Alexander, Ekvall & Byrne,
Dallas, TX, for Plaintiffs.

Evan S. Tilton, John F. Guild, Thomas C. McGraw,
Gibson Dunn & Crutcher, Dallas, TX, F. Joseph Warin,
Gibson Dunn & Crutcher, Terri L. Reicher, National
Association of Securities Dealers Inc., Washington, DC,
for Defendant.

*MEMORANDUM OPINION AND ORDER*

FISH, Chief J.

**\*1** Before the court are (1) the motion of the
defendant National Association of Securities Dealers, Inc.
("NASD") to dismiss the complaint against it; (2) the
motion of the plaintiffs James Wade Browne ("Browne")
and Kevin Calandro ("Calandro") requesting that the
court impose sanctions against NASD, its Department
of Enforcement ("DOE"), and NASD's attorneys; and
(3) the motion of NASD to strike the plaintiffs' motion
for sanctions. For the reasons stated below, the plaintiffs'
motion is denied, NASD's motion to strike is denied as
moot, and NASD's motion to dismiss is granted.

## I. *BACKGROUND*

On April 25, 2005, NASD filed a complaint against
the plaintiffs Browne and Calandro arising from sales
of stock of e2 Communications, Inc. ("e2"). Brief in

Support of Motion to Dismiss of National Association
of Securities Dealers, Inc. ("NASD Brief") at 6 (citing
Plaintiffs' Verified First Amended Petition and Request
for Disclosure ("Original Petition") ¶ 13). The DOE
alleged that-without receiving written approval from their
member firms or providing notice to these firms regarding
their participation-Browne and Calandro sought and
received finders' fees from e2 for the sale of e2 stock. *Id.*
If true, this conduct violates NASD Conduct Rules 3040
and 2110. [1]

On December 9, 2005, Browne and Calandro this filed
suit against NASD in the 101st Judicial District Court
of Dallas County. National Association of Securities
Dealers, Inc.'s Notice of Removal ("Notice of Removal")
at 1. Claiming that NASD is relying on an inauthentic
document in its disciplinary proceeding against Browne
and Calandro, the plaintiffs sought damages and an *ex
parte* temporary restraining order ("TRO") to halt the
disciplinary hearing. Original Petition ¶¶ 4, 8, *attached to*
Notice of Removal at tab A. The request for the TRO was
denied by the state court. NASD Brief at 7. On December
16, 2005, NASD removed the case to this court, asserting
that the case fell within the court's exclusive jurisdiction by
virtue of 15 U.S.C. §§ 78aa and 78y. Docket Sheet; Notice
of Removal at 2. The plaintiffs then filed, on December 21,
2005, a motion to remand and request for a TRO. Docket
Sheet.

On December 28, 2005, the court heard arguments on the
plaintiffs' request for a TRO; that same day, the court
entered an order denying the plaintiffs' application for a
TRO and their motion to remand. December 28, 2005,
Order.

On January 3, 2006, NASD filed the instant motion to
dismiss the claims against it. Docket Sheet. On February
13, 2006, the plaintiffs filed a response to this motion, not
addressing the defendant's arguments but requesting that
the court "abate any ruling on the Defendant's Motion
pending the Court's determination of the Plaintiffs [sic]
Motion for Sanctions filed contemporaneously ." *Id.;*
Plaintiffs' Response to Motion to Dismiss ¶ 4. The
following day, the plaintiffs filed their motion for
sanctions against NASD, the DOE, and their attorneys,
Terri Reicher, John Guild, and Thomas McGraw
("McGraw"). Docket Sheet; Motion for Sanctions.
NASD responded on March 6, 2006, with both a
responsive brief and a motion to strike the plaintiffs'

motion for sanctions. Docket Sheet; Defendant's Motion to Strike and Alternative Response to Plaintiffs' Motion for Sanctions, and Request for Attorneys' Fees ("NASD Response").

## II. *ANALYSIS*

### A. *Plaintiffs' Motion for Sanctions*

**\*2** As an initial matter, the court will address whether the defendant should be sanctioned, as argued in the plaintiffs' motion. Browne and Calandro contend that several statements made by NASD's counsel at the December 28 TRO hearing were deliberately misleading and "constitute[d] a fraud on this Court." Motion for Sanctions at 8. NASD vigorously denies these claims and in response has filed a motion to strike the plaintiffs' motion for sanctions. *See generally* NASD Response.

Federal Rule of Civil Procedure 11 provides in relevant part:

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How Initiated.

(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

FED R. CIV. P. 11(b)-(c)(1)(A).

In this case, the plaintiffs did not properly follow the procedures set forth in Rule 11(c)(1)(A). The certificate of service attached to the motion indicates that the motion was not served upon the defendant until the motion itself was filed with the court on February 14, 2006.[2] Thus, the plaintiffs did not wait the required 21 days after serving the motion to allow NASD to withdraw or correct the alleged misrepresentations before filing the motion with the court. Although one of the plaintiffs' attorneys, Christopher Bebel ("Bebel"), telephoned Thomas C. McGraw, counsel for NASD, on January 30, 2006, and informed McGraw of his intention to file a motion for sanctions for allegedly false statements, Bebel did not specifically identify the misleading statements. Declaration of Thomas C. McGraw ("McGraw Declaration") ¶ 4, *attached to* Appendix to NASD Response *at* 6. In a subsequent phone call between McGraw and Mark Alexander ("Alexander"), counsel for the plaintiffs, a motion for sanctions was again discussed, but specific statements were not identified. McGraw Declaration ¶ 6. Such phone calls or exchanges of letters are informal notices suggested by the Advisory Committee's notes,[3] but are insufficient to comply with the procedural requirements of Rule 11. See *Weeks Stevedoring Company, Inc. v. Raymond International Builders, Inc.,* 174 F.R.D. 301, 303, 305 (S.D.N.Y.1997) (finding that letter from movant stating that defendants "would move for sanctions if Plaintiff failed to withdraw the motion" did not meet "the strict procedural requirements of Rule 11"); *Creek Ventures, LLC v. World Parts,* LLC, No. 01-CV-89C, 2004 WL

1166642, at *3 (W.D.N.Y. April 14, 2004) ("[Rule 11] requires service of the motion according to Rule 5, not merely notice of a party's intentions."). The plaintiffs have not complied with Rule 11(c)(1)(A) with respect to service on the nonmovant of their Rule 11 motion prior to filing the motion in court. Therefore, the court finds that the plaintiffs' request for the imposition of sanctions should be denied. See *Regal Row Fina, Inc. v. Washington Mutual Bank, FA,* No. 3:04-CV-1033-G, 2004 WL 2826817, at *11-12 (N.D.Tex. Dec. 9, 2004) (Fish, C.J.) (denying motion for sanctions for failure to comply with procedural requirements); *Owens v. Excel Management Service, Inc.,* No. 3:02-CV-0835-L, 2004 WL 576091, at *1 (N.D.Tex. Mar.16, 2004) (same). Accordingly, the defendant's motion to strike the plaintiffs' motion for sanctions is denied as moot.

**\*3** Also contained within its response, NASD requests that this court award it attorneys fees for successfully defending itself against the plaintiffs' motion for sanctions. NASD Response at 10. Rule 11 authorizes a court to award "to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting *or opposing* the motion." FED. R. CIV. P. 11(c)(1)(A) (emphasis added). Here, NASD has incurred over $24,000 in attorney's fees defending against the plaintiffs' motion for sanctions. *See* Defendant's Surreply to Plaintiffs' Motion for Sanctions ("Surreply") at 6 (citing Supplemental Declaration of Thomas C. McGraw ¶ 3, *attached to* Surreply *as* Attachment 1). As described above, the plaintiffs did not comply with Rule 11 procedures, causing the defendant to expend time, money, and effort in defending a motion that was ultimately denied. Accordingly, the defendant's request for attorney's fees is granted.[4] See *Connecticut General Life Insurance Company v. Thomas,* 910 F.Supp. 297, 304-05 (S.D.Tex.1995) (awarding attorney's fees to nonmovant because motion did not comply with the 21 day notice period and was "baseless and unjustified"). The plaintiffs shall pay to the defendant the sum of $24,495.00 in reasonable attorney's fees.

## B. *Defendant's Motion to Dismiss*

NASD also filed a motion to dismiss this case pursuant to Rules 12(b)(6), (b)(1), and (h)(3). *See generally* National Association of Securities Dealers, Inc.'s Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6), 12(b)

(1) and 12(h)(3) ("NASD Motion"); NASD Brief. NASD contends that (1) NASD is entitled to absolute immunity, (2) the plaintiffs have no private right of action against NASD, and (3) the plaintiffs have failed to exhaust their administrative remedies. NASD Motion at 1-2. As mentioned above, the plaintiffs have not filed a substantive response regarding the merits of this motion.

### 1. *NASD's Absolute Immunity*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). There are two primary principles that guide the court's determination of whether dismissal under Rule 12(b)(6) should be granted. First, a motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the nonmovants could prove no set of facts in support of their claims that would entitle them to relief. *Conley v. Gibson,* 335 U.S. 41, 45-46 (1957); *Leffall v. Dallas Independent School District,* 28 F.3d 521, 524 (5th Cir.1994); see also *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982) (citing WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1357 at 598 (1969), for the proposition that "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted"), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Second, the court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovants. *Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.,* 30 F.3d 627, 629 (5th Cir.1994); *Norman v. Apache Corporation,* 19 F.3d 1017, 1021 (5th Cir.1994); *Chrissy F. by Medley v. Mississippi Department of Public Welfare,* 925 F.2d 844, 846 (5th Cir.1991). However, conclusory allegations and unwarranted factual deductions will not suffice to prevent a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas Inc.,* 336 F.3d 375, 379 (5th Cir.2003).

**\*4** If it appears that a more carefully drafted pleading might state a claim upon which relief could be granted, the court should give the claimants an opportunity to amend their claim rather than dismiss it. *Friedlander v. Nims,* 755 F.2d 810, 813 (11th Cir.1985); *Taylor v. Dallas County Hospital District,* 976 F.Supp. 437, 438 (N.D.Tex.1996). Furthermore, leave to amend a pleading

should be freely given and should be granted unless there is some justification for refusal. *Willard,* 336 F.3d at 386.

The Fifth Circuit has explicitly held that NASD "and its disciplinary officers have absolute immunity from further prosecution for personal liability for claims arising within the scope of their official duties." *Austin Municipal Securities, Inc. v. National Association of Securities Dealers, Inc.,* 757 F.2d 676, 679 (5th Cir.1985). Even if it is assumed that all of the allegations in the plaintiffs' complaint are true, there is no reason to hold otherwise in the instant case; NASD was acting completely within the scope of its disciplinary power. NASD's motion to dismiss should be granted on this ground. [5]

2. *Plaintiffs' Failure to Exhaust Administrative Remedies*

Although unnecessary given the court's ruling on NASD's first ground for dismissal, the court will address the argument that it lacks subject matter jurisdiction over this case.

Federal courts are courts of limited jurisdiction. See *Kokkonen v. Guardian Life Insurance Company of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Owen Equipment and Erection Company v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). A federal court may exercise jurisdiction over cases only as expressly provided by the Constitution and laws of the United States. See U.S. CONST. art. III §§ 1-2; see also *Kokkonen,* 511 U.S. at 377. Federal law gives the federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A party seeking relief in a federal district court bears the burden of establishing the subject matter jurisdiction of that court. *United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995); *McNutt v. General Motors Acceptance Corporation of Indiana, Inc.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Langley v. Jackson State University,* 14 F.3d 1070, 1073 (5th Cir.), *cert. denied,* 513 U.S. 811, 115 S.Ct. 61, 130 L.Ed.2d 19 (1994).

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of jurisdiction over the subject matter. See FED. R. CIV. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court

before any other challenge because "the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudia Arabia,* 27 F.3d 169, 172 (5th Cir.1994) (internal citation omitted); see also *Ruhrgas AG v. Marathon Oil Company,* 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("The requirement that jurisdiction be established as a threshold matter ... is inflexible and without exception") (citation and internal quotation marks omitted).

**\*5** On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case ... [,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." ' *MDPhysicians & Associates, Inc. v. State Board of Insurance,* 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)), *cert. denied,* 506 U.S. 861 (1992). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation,* 896 F.2d 170, 176 (5th Cir.1990) (citing *Williamson,* 645 F.2d at 413).

The court's lack of subject matter jurisdiction may be asserted at any time, either in the answer, or in the form of a suggestion to the court prior to final judgment. 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d. ed.2004). Federal Rule of Civil Procedure 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." FED. R. CIV. P. 12(h)(3).

NASD argues that the court has no subject matter jurisdiction over this case because the plaintiffs have failed to exhaust their administrative remedies before seeking the intervention of this court. NASD Brief at 14-18. The court agrees. Fifth Circuit case law on this issue is instructive. In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. National Association of Securities Dealers,* 616 F.2d 1363 (5th Cir.1980), the Fifth Circuit confronted circumstances similar to those presented here. There, the plaintiff's customer brought to the attention of NASD alleged violations of the securities laws and NASD rules by the plaintiff's employees. *Id.* at 1365. NASD

subsequently brought a disciplinary action against the plaintiff and its employees. *Id.* The customer planned to initiate a civil action against the plaintiff and would also be a complaining witness for NASD in the disciplinary proceeding, so the plaintiff wished to exclude the customer and her attorney from the proceeding on the basis that the hearing would be a "dress rehearsal" for her civil suit. *Id.* at 1365-66. Although the chairman of the deciding committee granted the request in part, the plaintiff was dissatisfied with this result and filed suit in federal district court to obtain a TRO halting the disciplinary proceeding conducted by NASD. *Id.*

Although the TRO was granted by the district court, the Fifth Circuit promptly reversed on the grounds that the district court lacked subject matter jurisdiction over the dispute since the plaintiff failed to exhaust its administrative remedies before seeking judicial intervention. *Merrill Lynch,* 616 F.2d at 1370. Specifically, "the district court's grant of a preliminary injunction constitutes an unwarranted intrusion upon a complex, congressionally mandated scheme of self-regulation." [6] *Id.* at 1366. Rather than seeking intervention from a district court, the plaintiff was required to take advantage of the thorough review process of NASD, the SEC, and appellate court. *Id.* at 1369 ("[A] broad range of administrative remedies was open to [the plaintiff] which would have avoided any possible injury to its interests, let alone 'irreparable injury.' [The plaintiff] had numerous levels of administrative review open to it, culminating in review by the court of appeals. There was ample opportunity to correct any error in the disciplinary hearing.").

**\*6** This case invites a conclusion identical to that reached in *Merrill Lynch.* As of the date of the briefings, NASD has yet to rule on whether the document in dispute will in fact be admitted in the disciplinary proceeding. Even if it is assumed that the plaintiffs' allegations regarding the falsity of Exhibit A are true, an erroneous admission of this document should be corrected in the disciplinary proceeding itself or through the multiple levels of available administrative review, *not* in federal district court. Such intervention would intrude upon a complex system of self-regulation-something the court will not do absent

Footnotes

extraordinary circumstances. *Merrill Lynch,* 616 F.2d at 1370.

Although the plaintiffs have failed to exhaust their administrative remedies, the analysis does not end there. There are two principal exceptions to the exhaustion requirement: (1) when the administrative procedure is clearly shown to be inadequate to prevent irreparable injury; or (2) when there is a clear and unambiguous statutory or constitutional violation. *Merrill Lynch,* 616 F.2d at 1370-71 (citing *First Jersey Securities, Inc. v. Bergen,* 605 F.2d 690, 696 (3d. Cir.1979), *cert. denied,*444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980)). Here, the plaintiffs meet neither exception. They have not pled either a statutory or constitutional violation, and any injury alleged is not sufficient to qualify as irreparable. See *First Jersey,* 605 F.2d at 696-97 (finding that possible consumer panic following an adverse ruling in a disciplinary proceeding was insufficient to qualify as irreparable injury partly because "if this exception were to be applied in this case, it would likewise apply in every case where the NASD has contemplated disciplinary proceedings"); *Alton v. National Association of Securities Dealers, Inc.,* No. C-94-0618, 1994 WL 443460, at \*3 (N.D.Cal. July 26, 1994) ("Almost any individual who is subject to a NASD hearing could then claim that any adverse findings constitutes irreparable harm. Such an undifferentiated injury is not the type of irreparable harm contemplated as an exception to the doctrine of exhaustion of remedies."). Accordingly, the defendant's motion to dismiss is granted on this ground as well. [7]

### III. *CONCLUSION*

For the reasons stated above, the plaintiffs' motion for sanctions is DENIED, NASD's motion to strike is DENIED as moot, and NASD's motion to dismiss is GRANTED.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2006 WL 1506711

1    Rule 3040 states that any person associated with a member firm who participates in a private securities transaction must, prior to participating in the transaction, provide written notice to the member with which he is associated. The required notice must describe the transaction, the associated person's role, and state whether the associated person has received or may receive selling compensation. If the person has received or may receive selling compensation in connection with the private securities transaction, the member firm must respond to the notice in writing indicating whether it approves or disapproves the proposed transaction. Rule 2110 requires member to "observe high standards of commercial honor and just and equitable principles of trade." *See* NASD Brief at 6-7, n.2.

2    The certificate of service states: "On February [sic], 2006, Defense counsel phoned Plaintiffs' counsel office, and faxed Plaintiffs' counsel a letter regarding this Motion. As of this writing Defense counsel has not received any response from Plaintiff's [sic] counsel, in which event this motion will be presume [sic] to be opposed." Motion for Sanctions at 16. The court assumes the plaintiffs' counsel mistakenly transposed the parties when writing this certificate.

3    "[The 1993] revision provides that the 'safe harbor' period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion." FED. R. CIV. P. 11, 1993 advisory committee's note.

4    Other factors support an award of attorney's fees to NASD. Although not required to do so, the court analyzed the motion for sanctions on its merits. Rather than finding the defendant's conduct misleading and fraudulent, the court finds that the plaintiffs' allegations consist of parsing the defendant's language for the purpose of delaying a ruling on NASD's motion to dismiss and perhaps even intimidating NASD to prevent use of Exhibit A in the disciplinary hearing. *See* Surreply at 4 (describing the plaintiffs' "threat of seeking sanctions against Defendants' attorneys if Defendant did not withdraw 'Exhibit A' from consideration in the disciplinary proceeding" rather than requesting that the allegedly offending statements be withdrawn from the record in this case-the usual corrective action under Rule 11). The court remembers the TRO hearing, and upon rereading the proffered excerpts from the transcript, determines that it was not misled by the statements of NASD's counsel-in fact, the use (or exclusion) of Exhibit A in the disciplinary proceeding had little bearing on the court's ruling on the TRO when its jurisdiction over the matter was in serious question. *See* part II.B.2., *infra*. The fact that the plaintiffs filed this motion for sanctions on the day a response to the defendant's motion to dismiss was due-with a request that the court delay ruling on the motion to dismiss until after ruling on the plaintiffs' motion for sanctions-further buttresses the court's conclusion that the plaintiffs' motive was a delay-or worse, intimidation.

5    NASD also contends that this case should be dismissed because Congress has not provided an explicit private right of action under the Exchange Act, nor has any court held that an implied right of action to sue NASD under the Exchange Act exists. NASD Brief at 2; *see also* 15 U.S.C. § 78**o**-3. Because the court concludes that NASD is absolutely immune from suit, it will not address this second ground for dismissal.

6    For a thorough discussion of the self-regulation of NASD, please see the discussion in part II of *Merrill Lynch,* 616 F.2d at 1366-1368 (noting that NASD has been "delegated governmental power" to enforce compliance by its members; NASD's power "is subject to substantial oversight" by the Securities Exchange Commission ("SEC"); "the procedure of NASD disciplinary hearings is subject to close scrutiny by the SEC"; and the party subject to disciplinary proceedings can appeal first to the NASD Board of Governors, then the SEC, and finally to the United States courts of appeal). See also *Austin Municipal Securities,* 757 F.2d at 679-681 (same).

7    The court notes that it denied the plaintiffs' motion to remand in the same order in which it denied the plaintiffs' request for a TRO. *See* December 28, 2005, Order. There is no inconsistency in denying a motion to remand when the court would have exclusive jurisdiction over the case, then dismissing it because the plaintiff neglected to exhaust his administrative remedies. *See* 15 U.S.C. § 78aa (giving federal courts exclusive jurisdiction suits arising from violations of the Exchange Act); *McLaurin v. United States,* 392 F.3d 774, 775-76 (5th Cir.2004) (affirming lower court's denial of remand and subsequent dismissal for failure to exhaust administrative remedies under Federal Tort Claims Act), *cert. denied,* 545 U.S. 1104, 125 S.Ct. 2549, 162 L.Ed.2d 275 (2005). Also, the court denied the motion to remand based on the assertion by the plaintiffs' counsel that this court had jurisdiction over the case pursuant to the Exchange Act-the court interpreted this statement as the plaintiffs' desire to withdraw the motion. NASD Brief at 7.

---

**End of Document**                              © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# **Tab 3**

2014 WL 549380
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas,
Houston Division.

Revena J. CARROLL, Plaintiff,

v.

SANDERSON FARMS, INC.
(Processing Division), Defendant.

Civil Action No. H–10–3108.
|
Feb. 11, 2014.

**Attorneys and Law Firms**

G. Scott Fiddler, Andrew Wilson Reed, Law Office of G.
Scott Fiddler, P.C., Houston, TX, for Plaintiff.

Mark R. Flora, Ashlee Mann Ligarde, Constangy, Brooks
& Smith, LLP, Austin, TX, for Defendant.

**OPINION AND ORDER**

MELINDA HARMON, District Judge.

**\*1** Pending before the Court in the above referenced
cause are (1) Plaintiff Revena J. Carroll's ("Carroll'
s") motion for judgment under Federal Rule of Civil
Procedure 58 (instrument # 62, correction # 64), including
back pay and benefits in the amount of $25,000.00,
prejudgment interest in the amount of $3,241.10 when
the motion was filed, liquidated damages in the amount
of $28,241.10 under 19 U.S.C. § 2617(a)(1)(A)(iii), and
attorney's fees in the amount of $153,418.00, for a total
judgment of $209,900.20, plus post-judgment interest; and
(2) Plaintiff's motion for attorney's fees (# 63) in the
amount of $153,418 for work through the trial of this
action, as well as for conditional appellate attorney's fees.

Because the attorney's fee request is raised summarily in
the first motion and in more depth in the latter, the Court
will address it with the more detailed, second motion.

**I. Plaintiff's FMLA Claim and Judgment**

After three days of trial, on July 18, 2013, the fourth
day, the jury returned a verdict in favor of Carroll on her
claim that Defendant Sanderson Farms, Inc. (Processing
Division) ("Sanderson Farms") discharged her for taking
leave under the Family Medical Leave Act ("FMLA").
The jury awarded Plaintiff compensatory damages in the
amount of $25,000.00. # 74.

**A. Relevant Law**

The FMLA, 29 U.S.C. § 2615(a) provides,

  (a) Interference with rights

    (1) Exercise of rights

    It shall be unlawful for any employer to interfere
    with, restrain, or deny the exercise of or the attempt
    to exercise, any right under this subchapter.

    (2) Discrimination

    It shall be unlawful for any employer to discharge
    or in any other manner discriminate against any
    individual for opposing any practice made unlawful
    by this subchapter.

Regarding § 2615(a), 29 C.F.R. § 825.220 states, "An
employer is prohibited from discriminating against
employees or prospective employees who have taken or
used FMLA leave."

Furthermore, 29 U.S.C. § 2617(a) provides,

  Civil action by employees

    (1) Liability

    Any employer who violates section 2615 of this title
    shall be liable to any employee affected—

    (A) for damages equal to—

    (I) the amount of—

    (I) any wages, salary, employment benefits, or other
    compensation denied or lost to such employee by
    reason of the violation; or

    (II) In a case in which wages, salary, employment
    benefits, or other compensation have not been denied
    or lost to the employee, any actual monetary losses

sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;

(ii) the interest on the amount described in clause (I) calculated at the prevailing rate;

(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (I) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title provides to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this amount, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (I) and (ii), respectively; and

**\*2** (B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

Title 29 U.S.C. § 260 provides,

In any action commenced prior to or after May 14, 1947 to recover any unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair labor Standards Act of 1938, as amended [29 U.S.C. § 201 et seq.], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

Liquidated damages under the FMLA are not designed to be punitive, but compensatory, to compensate employees

for retention of their pay. *Firth v. Don McGill of West Houston, Ltd.,* No. Civ. A. H–04–0659, 2006 WL 846377, at \*1 n. 2 (S.D.Tex. Mar.28, 2006) (liquidated damages provision is not penal in nature but intended to "compensate for the retention of a workman's pay which might result in damages too obscure and difficult for estimate other than by liquidated damages") (*citing Snapp v. Unlimited Concepts, Inc.,* 208 F.3d 928, 934 (11th Cir.2000)), *aff'd,* 233 Fed. Appx. 346 (5th Cir.2007).

The FMLA does not define "good faith" for the purpose of avoiding the imposition of liquidated damages under 29 U.S.C. § 2617(a)(iii). *Nero v. Industrial Molding Corp.,* 167 F.3d 921, 928 (5th Cir.1999). The Fifth Circuit has stated that Congress intended to model the enforcement scheme in the FMLA on that in Fair Labor Standards Act ("FLSA") and made relief under the two statutes parallel, so it has turned to the FLSA to interpret the remedial provisions in the FMLA. *Id. See also Singer v. City of Waco, Tex.,* 324 F.3d 813, 823 (5th Cir.2003) ("We have held that an employer 'faces a 'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA.' "), *citing Bernard v. IBP, Inc. of Neb.,* 154 F.3d 259, 267 (5th Cir.1998), *quoting Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1415 (5th Cir.1990). Thus it determined that in deciding whether to award liquidated damages the trial court must first determine whether the employer has met its burden of proving that it acted in good faith. *Id.* As under the FLSA, if the court finds that the employer proved it acted in good faith and reasonably believed that its action was not a violation of the FMLA, the court may reduce the damages award. *Id.*

To establish good faith, the employer must show his subjective intent was to comply with the statute and that its application of the Act was objectively reasonable. *Castro v. Chicago Housing Authority,* 360 F.3d 721, 730 (7th Cir.2004), *cited for that proposition in Firth,* 2006 WL 846377 at \*2. The employer must show that it took " 'active steps to ascertain the dictates of the FMLA.' " *Firth,* 2006 WL 846377 at \*2, *citing Reich v. S. New England Telecomm. Corp.,* 121 F.3d 58, 71 (2d Cir.1997). *See also Dalhiem v. KDFW–TV,* 712 F.Supp. 533, 536 (N.Tex.1989) (it is the employer's burden, difficult to meet, to prove that "its failure to obey the statute was both in good faith and was predicated upon such reasonable grounds that it would be unfair to impose more than a compensatory verdict") (citations omitted).

**\*3** On appeal, the Fifth Circuit will only reverse the district court's finding of good faith if that finding is clearly erroneous. *Nero,* 167 F.3d at 928. If it finds that the employer satisfied its burden, the appellate court would then decide if the district court abused its discretion in declining to reduce the damages award. *Id.* Even if the district court finds that the employer acted in good faith and reasonably, the district court still has the discretion to award liquidated damages in any sum up to the amount allowed by § 216(b). *Id., citing Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1416 n. 8 (5th Cir.1990). The Fifth Circuit, along with other Courts of Appeals, has emphasized, "Doubling of an award is the norm ... because a plaintiff is awarded liquidated damages in addition to compensation lost. The district court's discretion to reduce the liquidated damages 'must be exercised consistently with the strong presumption under the statute in favor of doubling.' " *Id., quoting Shea v. Galaxie Lumber & Constr. Co ., Ltd.,* 152 F.3d 729, 733 (7th Cir.1998), and *Bernard v. IBP, Inc. of Neb.,* 154 F.3d 259, 267 (5th Cir.1998) ("stating in FLSA case that even if BP acted in good faith, '[g]iven IBP's violation of the FLSA, we conclude that the district court did not err in exercising its discretion to award liquidated damages.' "). *In accord, Firth,* 2006 WL 846377, at \*1 ("A strong presumption exists in favor of liquidated damages, which effectively results in a doubling of any award of lost wages."); *Thom v. American Standard, Inc.,* 666 F.3d 968, 973 (6th Cir.2012) ("There is a strong presumption in favor of awarded liquidated damages that are double the amount of any compensatory damages. Thus, '[a]lthough in the final analysis we review a district court's decision on liquidated damages for abuse of discretion, that discretion must be exercised consistently *with the strong presumption* under the statute in favor of doubling.' ") (emphasis in the original) (citation omitted); *Hite v. Vermeer Mfg. Co.,* 446 F.3d 858, (8th Cir.2006) ("The district court should exercise its discretion 'consistently with the strong presumption under the statute in favor of doubling.' "), *quoting Shea v. Galaxie,* 152 F.3d at 733 (7th Cir.).

The FMLA requires that reasonable attorney's fees be awarded to a prevailing plaintiff. 29 U.S.C. § 2617(a)(3) ("The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.").

## B. Plaintiff's Motion for Judgment (# 62)

Plaintiff argues that the jury awarded her $25,000 in back pay and benefits denied or lost because it found Sanderson Farms liable for violating the FMLA by discharging her in retaliation for having taken FMLA leave and implicitly rejected Sanderson Farms' contention that its decision to discharge her was based on her poor performance. *Firth,* 2006 WL 846377 at \*2 (jury's finding of FMLA retaliation is an implicit rejection of the employer's proffered reason for discharge).

**\*4** Plaintiff seeks liquidated damages equal to the amount of compensatory damages under 29 U.S.C. § 2617(a)(1)(A)(iii), specifically in the amount of $28,241.10 plus pre-judgment interest. Plaintiff maintains that the "mandatory award of liquidated damages should not be reduced" because "[o]ne cannot retaliate against an employee in good faith." # 62 at p. 3. *Hite,* 446 F.3d at 869 ("Showing good faith when a jury has determined intentional retaliation is a very high bar to clear, if indeed it can be."). Ted Orman, who made the decision to discharge Carroll, testified that it never crossed his mind that he might be violating the FMLA in doing so. In *Firth,* the court awarded liquidated damages on similar facts. 2006 WL 846377 at \*2 ("At trial in the instant matter, Don McGill testified that he did not think about the FMLA requirements before terminating Firth."). Plaintiff further points out that at trial Sanderson Farm did not present any evidence of either good faith or reasonable belief.

Carroll further asserts that prejudgment interest on the amount of damages found by the jury is mandatory, not discretionary. 29 U.S.C. § 2617(a)(ii); *Dotson v. Pfizer,* 558 F.3d 284, 302 (4th Cir.2009); *Hite,* 446 F.3d at 869; *Nero,* 167 F.3d at 925 n. 2. Carroll represents that the current prime rate is 3.25%, [1] there are 1,456 days between August 24, 2009 (date of Carroll's termination) [2] and August 19, 2013 (the submission date for the instant motion), resulting in prejudgment interest amounting to $3,241.10, with an additional $2.23 each day thereafter until entry of judgment. The prejudgment interest amount is included in the liquidated damages award.

Carroll also seeks post-judgment interest on the entire judgment (compensatory damages, liquidated damages, and attorney's fees) pursuant to 28 U.S.C. § 1961 (post judgment interest "shall be calculated [daily] from the

date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasure yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment").

### C. Sanderson Farms' Response in Opposition (# 66)

Sanderson Farms responds that a liquidated damages award is left to the discretion of the district court. Although liability is determined by the jury, the court is granted the power by the statute to determine good faith and reasonableness for purposes of liquidated damages and the employer bears the burden of proving both. Sanderson Farms argues that there is ample evidence in the record to support a finding that it acted in good faith terminating Carroll: the record shows that Sanderson Farms' FMLA and medical leave policy are more generous than required by the statute and that Plaintiff took two periods of medical leave during her employment without question or complaint. Sanderson Farms identified a legitimate, nondiscriminatory reason for terminating Plaintiff, i.e., the repeated negative feedback from employees about her in her role as the Waco plant's Field Employee Relations Manager, the highest ranking human resources official at the Waco, Texas plant. Division Manager of the Waco Processing Plant Todd Ormon testified that he terminated her because of job performance and negative perceptions of how she treated employees, and that neither the FMLA or her medical leaves were in his mind when he made the decision to do so.

### D. Carroll's Reply (# 68)

*5  Disagreeing that an award of liquidated damages is discretionary, Carroll quotes the language of 29 U.S.C. § 2617(a)(1)(A)(iii) to show that it is mandatory and that a court may only exercise discretion to reduce liquidated damages if the employer establishes that it acted in good faith and with reasonable grounds for believing its conduct did not violate the FMLA: "Any employer who violates section 2615 of this title *shall be liable* ... for damages equal to ... an additional amount as liquidated damages ...." *Nero,* 167 F.3d at 928–29.

Carroll challenges as meritless and not relevant Sanderson Farms' arguments that its generous FMLA policy and the fact that Carroll was not fired until she took her second medical leave show that it acted in good faith. Moreover and significantly, the jury rejected Sanderson Farms' arguments. The jury was specifically instructed that Plaintiff had to prove by a preponderance of the evidence that "she was discharged in retaliation for taking leave" and that "but for her taking Family Medical Leave Act leave, Sanderson [Farms] would not have terminated her employment when they did." In an FMLA suit, when legal and equitable issues are decided in the same case and depend on common determinations of fact, the questions of fact are submitted to the jury, and the court in resolving the equitable issues is bound by the jury's finding. *Arban v. W. Pub. Corp.,* 345 F.3d 390, 408 (6th Cir.2003) (finding abuse of discretion in court's denial of liquidated damages where its finding that defendant acted in good faith in firing plaintiff was contrary to jury's factual determinations that defendant knowingly retaliated against defendant; "When legal and equitable issues to be decided in the same case depend on common determinations of fact, such questions of fact are submitted to the jury, and the court in resolving the equitable issues is then bound by the jury's findings on them."), *citing Smith v. Diffee Ford–Lincoln–Mercury, Inc.,* 298 F.3d 955, 965 (10th Cir.2002), *citing Beaver Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) and *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 472–73, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). [3]

### E. Court's Decision

The Court agrees with Plaintiff that pursuant to the jury's verdict she is entitled to compensatory damages of $25,000.00, and, because Sanderson Farms has not submitted any evidence since the trial to demonstrate that it acted in good faith and had reasonable grounds for its discharge of Carroll, she is entitled to liquidated damages equal to the compensatory damages plus prejudgment interest. The Court agrees that the jury's verdict implies that it rejected Sanderson Farms' explanation that it discharged Carroll because of her poor performance and numerous negative comments from employees. Much of the circumstantial evidence presented by Plaintiff can be interpreted, as it was by the jury, to question Sanderson's articulated reason for firing her and to show that Sanderson Farms acted in bad faith and

Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.3d (2014)

2014 WL 549380

unreasonably. Examples include the fact that there was not a single document in Carroll's personal file to show that she was ever counseled or disciplined for hourly employee complaints about her or that she had any problems with hourly employees; the timing of her discharge on the day of returning from her medical leave of absence for only a week [4]; Ormon's claim that he had arranged for a performance improvement plan for Carroll but canceled it before plaintiff was even informed of the employee complaints against her purportedly made at the May 2009 anti-union training session and she was never given an opportunity to respond to them; Director of Organization Development and Corporate Communications Robin Robinson's deposition testimony that individual performance improvement plans are time consuming and expensive for Sanderson Farms and are not provided for employees in trouble or to be terminated; testimony that Ormon made angry comments and exhibited negative conduct each time the issue of Carroll's FMLA leave came up; and the absence of any evidence that Plaintiff had previously taken excessive leave or was excessively absent. Plaintiff is entitled to liquidated damages since Sanderson Farms has failed to meet its substantial burden to show that it acted in good faith and reasonably.

### II. Plaintiffs' Application for Attorney's Fees (# 63)

**\*6** Plaintiff requests an award of attorney fees in the amount of $153,418.

### A. Relevant Law

The FMLA mandates that "a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action" be awarded to a prevailing plaintiff. *29 U.S.C. § 2617(a)(3).* While an award of fees under the FMLA is nondiscretionary, the court has the discretion to determine the amount of the fee. *Jordan v. USPS,* 379 F.3d 1196, 1277 (10th Cir.2004); *Dotson v. Pfizer, Inc.,* 558 F.3d 284, 303 (4th Cir.2009). A plaintiff is a "prevailing party" when she " 'succeed[ ]s on any significant issue in litigation that achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), *quoting Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978), *overruled in part on other grounds as explained by Richardson v. Miller,* 279

F.3d 1, 4 (1st Cir.2002). Carroll is a prevailing party in that she obtained a judgment in her favor on her retaliation claim for taking FMLA leave under the FMLA, ADA, and TCHRA. Counsel bears the burden of showing the reasonableness of his fee request and that he exercised billing judgment. *Saizan v. Delta Concrete Products Co.,* 448 F.3d 795, 799 (5th Cir.2006).

"That the plaintiff is a 'prevailing party' ... may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Hensley,* 461 U.S. at 436. Where a plaintiff is only partially successful on her claims, the court must consider whether the unsuccessful claims were related to the successful claims, i.e., whether they were based on the same facts or legal theories, in other words, "inextricably related.". *Hensley,* 461 U.S. at 434. Where the plaintiff is unsuccessful on some of her claims and where the unsuccessful ones have different legal theories and the time spent on them related only to those unsuccessful ones, a reduction in the fee amount is required. *Bertrand v. City of Lake Charles,* No. 2:10–CV–867, 2013 WL 1790089, at *3–4 (W.D.La. Feb.25, 2013), *report and recommendation adopted,* 2013 WL 1789713 (W.D.La. May 3, 2012). *See also McDonnell v. Miller Oil Co., Inc.,* 134 F.3d 638, 640 (4th Cir.1998) ("Even when an award of attorneys' fees is mandatory, the district court may decrease the amount of fees that might otherwise be awarded in order to account for the plaintiff's limited success.").

The Supreme Court has acknowledged that "there is no certain method of determining when claims are 'related' or 'unrelated,' " and counsel need not "record in detail how each minute of his time was expended ... [b]ut at least counsel should identify the general subject matter of his time expenditures." *Hensley,* 461 U.S. at 437 n. 12. Moreover, " ' 'even where a plaintiff's claims were interrelated, nonfrivolous, and raised in good faith,' ' " the hourly rate requested may be an excessive amount. *Saizan v. Delta Concrete Products Co.,* 448 F.3d 795, 801 (5th Cir.2006), *quoting Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1048 (5th Cir.1998), *quoting Hensley,* 461 U.S. at 436. " 'When the documentation of hours is inadequate for the court to identify those hours spent on prevailing claims which are separate and distinct from other claims, the court may reduce the fee award accordingly." *Bertrand,* 2013 WL 1790089 at *4, *quoting Von Clark v. Butler,* 916 F.2d 255, 259 (5th Cir.1990). *In accord, Parton v. GTE North, Inc.,* 971 F.2d 150, 156 (8th Cir.1992) ("A district

Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.3d (2014)

2014 WL 549380

court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

**\*7** "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate," a sum commonly called the "lodestar." *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant ... should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." There is a strong presumption that the lodestar is a reasonable fee, and the fee applicant bears the burden of demonstrating that an upward adjustment by application of the *Johnson* factors is necessary to calculate a reasonable fee. *Walker v. Dept. of HUD,* 99 F.3d 761, 771 (5th Cir.1996); *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir.1995), *cert denied,* 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995).

A reasonable hourly rate is that rate in the community for such legal services rendered by attorneys of comparable skill, experience, and reputation. *Alberti v. Klevenhagen,* 896 F.2d 927, 936, *vacated in part on other grounds,* 903 F.2d 352 (5th Cir.1990); *Heidtman v. County of El Paso,* 171 F.3d 1039, 1043 (5th Cir.1999). A reasonable hourly rate should be in accord with rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "While the hourly rate must be 'adequate to attract competent counsel,' the 'measure is not the rates which lions at the bar may command.' " *Coleman v. Houston Independent School District,* 202 F.3d 264 (5th Cir.1999) (Table) (available on Westlaw), *citing Leroy v. City of Houston,* 906 F.2d 1068, 1079 (5th Cir.1990); *Hopwood v. Texas,* 236 F.3d 256, 281 (5th Cir.2000). Furthermore, the relevant legal community is the one in which the district court sits, no matter how much of the work is done elsewhere. *Green v. Administrators of Tulane Educational Fund,* 284 F.3d 642, 662 (5th Cir.2002), *abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). The fee applicant bears the burden of producing evidence that the requested rate is appropriate within the relevant community. *Condon v.*

*Hunting Energy Services, L.P.,* Civ. A. No. H–04–3411, 2006 WL 2882857, at \*2 (S.D.Tex. Oct.4, 2006). Usually the fee applicant establishes the community's reasonable rate through the affidavits of other attorneys of similar caliber practicing there. *Tollett v. City of Kemah,* 285 F.3d 357, 368 (5th Cir.2002); *Watkins v. Fordice,* 7 F.3d 453, 458 (5th Cir.1993).

In addition to the community rate, the district court must also consider the attorneys' regular rates. *Louisiana Power & Light Co. .,* 50 F.3d at 328. Generally when an attorney's requested hourly rate is his customary rate, when it is within the range of prevailing market rates, and when the rate is not contested, it is viewed as *prima facie* reasonable. *Id.,* 50 F.3d at 329. To establish the reasonableness of his requested rate, the fee applicant should produce satisfactory evidence beyond his own affidavit "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum,* 465 U.S. at 896 n. 11. Furthermore, the court may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees. *Davis v. Bd. of Sch. Comm'rs of Mobil County,* 526 F.2d 865, 868 (5th Cir.1976).

**\*8** The court must determine whether the hours expended by the prevailing party's counsel were "reasonably expended," both as to the total number of hours claimed and the specific hours claimed. *Condon,* 2006 WL 2882857, at \*2, *citing Louisiana Power & Light Co.,* 50 F.3d at 329. The fee applicant bears the burden of showing that the hours claimed were reasonably expended. *Hensley,* 461 U.S. at 437. Compensable hours, reasonably spent, are determined from the attorney's contemporaneous time or billing records or other documentation which the district court must examine and discern which hours are compensable and which are not. *Hensley,* 461 U.S. at 434; *Louisiana Power & Light,* 50 F.3d at 324.

The fee applicant should exercise "billing judgment" and keep billing time records in a way that enables the reviewing court can "identify distinct claims." *Hensley,* 461 U.S. at 437. *See also Gagnon v. United Technisource, Inc.,* 607 F.3d 1036, 1044 (5th Cir.2010) (An applicant for fees must submit documentation, e.g., contemporaneous billing records or detailed invoices or affidavits, to permit the court to identify noncompensable hours and to

determine an appropriate amount of fees.). Counsel must "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary ...." *Id. See also Saizan v. Delta Concrete Products Company,* 448 F.3d 795, 799 (5th Cir.2006) ("[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment. Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment. [footnotes omitted]"). *See also Louisiana Power,* 50 F.3d at 324–25 ("[T]he documentation must be sufficient for the court to verify that the applicant has met its burden.... [A] district court may reduce the number of hours awarded if the documentation is vague or incomplete.... Failing to provide contemporaneous billing statements does not preclude an award of fees per se as long as the evidence produced is adequate to determine reasonable hours."); *Saizan,* 488 F.3d at 799, 800 (billing judgment requires documentation of the hours charged and of the hours written off as duplicative, unproductive or excessive; finding the district court did not commit clear error in finding a failure to produce evidence of billing judgment nor abuse its discretion by imposing a ten percent reduction in the lodestar because of that failure). "Litigants take their chances when submitting fee applications" without adequate information for the court to determine the reasonableness of the hours expended or with vaguely described tasks such as "review pleadings," "correspondence," or documents. *Louisiana Power,* 50 F.3d at 327. The " 'contemporaneously created time records [should] specify, for each attorney, the date, the hours expended, and the nature of the work done.' " *Hilton v. Executive Self Storage Associates,* Civ. A. No. H–06–2744, 2009 WL 1750121 at *10 (S.D.Tex. June 18, 2009), *quoting Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 173 (2d Cir.1998). When there is no evidence of billing judgment, the appropriate remedy is to reduce the hours awarded by a percentage intended to replace the exercise of billing judgment. *Walker v. U.S. Dep't of Housing and Urban Development,* 99 F.3d 761, 770 (5th Cir.1996), *citing Leroy v. City of Houston,* 831 F.2d 576, 586 (5th Cir.1987) (reducing award by 13%) *See also Saizan,* 448 F.3d at 799–800 & n. 25 (affirming district court's 10% reduction for lack of evidence of billing judgment); *Hopwood,* 236

F.3d at 279 (25% reduction for lack of billing judgment and vague and duplicative work); *Johnson–Richardson v. Tangipahoa Parish School Bd.,* Civ. A. No. 12–0140, 2013 WL 5671165, at *4 (E.D.La. Oct.15, 2013) (30% reduction for block billing [5]), *citing Verizon Business Global LLC v. Hagan,* No. 07–0415, 2010 WL 5056021, at *5 (E.D.La. Oct.22, 2010) (citing cases showing that reductions for block billing between 15% and 35% have been found reasonable), *vacated on other grounds,* 467 Fed. Appx. 312, 2012 WL 1414448 (5th Cir. Apr.24, 2012).

**\*9** In determining what is a reasonable fee, the courts in the Fifth Circuit must consider the factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), abrogated on other grounds, *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (holding that a fee award under § 1988 should not be capped by a contingent fee agreement between the attorney and his client). The twelve *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19.

While the lodestar is relevant to determining a fee award, it is not the sole basis for determining that award; the *Johnson* factors are applicable to deciding whether the lodestar is reasonable, as well as to adjusting that award by a multiplier once the lodestar is calculated. *Abrams v. Baylor College of Medicine,* 805 F.2d 528, 536 (5th Cir.1986) ("The time and hours spent on a case are a necessary ingredient in determining a fee award, but they should not be the sole basis for determining a fee. The *Johnson* factors govern the determination of reasonableness itself; they are not merely factors to be considered in adjusting the award once the lodestar is calculated."), *citing Johnson v. Georgia Highway Express,* 488 F.2d at 717.

As noted, based on one or more *Johnson* factors, the court may apply a multiplier to adjust the lodestar up or down if

Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.3d (2014)

2014 WL 549380

that factor or factors are not already taken into account by the lodestar, itself. *Strong,* 137 F.3d at 850. An adjustment may only be made if the *Johnson* factor has not already been accounted for in the lodestar. *In re Fender,* 12 F.3d 480, 487 (5th Cir.), *cert. denied,* 511 U.S. 1143, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994); *Shipes v. Trinity Indus.,* 987 F.2d 311, 320 (5th Cir.) ("[T]he district court must be careful ... not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments."), *cert. denied,* 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993).

Four of the *Johnson* factors are presumably included in the lodestar calculation: the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation. *Blum v. Stenson,* 465 U.S. 886, 898–99, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Shipes,* 987 F.2d at 320. [6] "Although upward adjustments of the lodestar figure based on these factors are still permissible, such modifications are proper only in certain rare and exceptional cases supported by specific evidence on the record and detailed findings by the lower courts." *Id.;* see also *Walker,* 99 F.3d at 771, *citing Alberti v. Klevenhagen,* 896 F.2d 927, 936 (*citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air ("Delaware Valley I"),* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*quoting Blum v. Stenson,* 465 U.S. 886, 898–900, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)); *Dehoyos v. Allstate Corp.,* 240 F.R.D. 269, 323–24 (W.D.Tex.2007). The Fifth Circuit has also held that two other factors, time limitations imposed by the client or the circumstances and preclusion of other employment, are generally subsumed in the lodestar calculation, too. *Shipes,* 987 F.3d at 321–22; *Heidtman v. City of El Paso,* 171 F.3d 1038, 1043 (5th Cir.1999). Increasing the fee award based on the eighth factor (the amount involved and the results obtained) is only proper when the applicant shows that "it is customary in the area for attorneys to charge an additional fee above their hourly rates for an exceptional result ...." *Shipes,* 987 F.2d at 322. The *Shipes* panel did state that "enhancement due to the results obtained may be warranted." *Id.* at 321.

**\*10** To enhance a lodestar, the court " 'must explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied.' " *Id., quoting Shipes,* 987 F.2d at 320. "[O]f the *Johnson* factors,

the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision,* 135 F.3d 1041, 1047 (5th Cir.1998), *citing Von Clark v. Butler,* 916 F.2d 255, 258 (5th Cir.1990); *Saizan v. Delta Concrete Products Co.,* 448 F.3d at 799.

"The most critical factor in determining an attorney's fee award is the 'degree of success obtained.' " *Singer v. City of Waco, Texas,* 324 F.3d 1038, 829 (5th Cir, 2003), *quoting Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Saizan,* 448 F.3d at 800 & n. 19. "This factor is particularly crucial when, as in this case, a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims." *Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.,* 158 F.3d 205, 209 (5th Cir.1998), *citing Hensley,* 461 U.S. at 434.

In 7B *Federal Practice & Procedure Civ.3d* § 1803.1 (Database current through 2008), in discussing what factors may be taken into account to adjust a lodestar, Charles Alan Wright also identified as the most significant one the benefit (monetary or otherwise) conferred. Wright further observed,

> In addition to the benefit conferred, the district court should make a qualitative appraisal of the petitioning lawyer's professional services under each of the categories of work reflected in the time records. This might include the following series of inquiries, First, to what extent do the petitioning attorney's credentials and legal experience mark the attorney as someone above the qualitative medium of those of comparable age practicing in the community? Second, what was the quality of the work the attorney actually performed in the case? Third, how efficient was the petitioning attorney in processing the lawsuit? This factor can only be considered by a careful examination of the novelty of the issues presented by the matter and the lawsuit's overall complexity.... Fourth, what responsibility did the petitioning

attorney assume in the development and management of the case? .... All of these factors should help the court in evaluating the quality of the representation.

*Id.*

Furthermore, "[i]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted." *Abrams,* 805 F.2d at 535. "[H]ours ... spent in the passive role of an observer while other attorneys perform" are usually not billable. *Flowers v. Wiley,* 675 F.2d 704, 705 (5th Cir.1982), *quoted in Coleman,* 202 F.3d at 264 (Table, available on Westlaw).

**\*11** The hourly rate for attorneys should not be applied to clerical, secretarial or administrative work, since these are part of office overhead. *Reyes v. Spur Discount Store No. 4,* Civ. A. No. 07–2717, 2007 WL 2571905, \*3 & nn. 19–20 (E.D.La. Aug.31, 2007); *Abrams,* 805 F.2d at 536 (court should consider whether the work performed was "legal work in the strict sense,' or was merely clerical work that happened to be performed by a lawyer."), *quoting Johnson v. Georgia Highway Express,* 488 F.2d at 717. "[I]nvestigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers, but which a lawyer may do because he has no other help available ... may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Id.* at 535. Work by paralegals may only be recovered to the extent that it is similar to that typically performed by attorneys; otherwise it is an unrecoverable overhead expense. *Coleman,* 202 F.3d 264, *citing Allen v. United States Steel Corp.,* 665 F.2d 689, 697 (5th Cir. Unit B 1982).

Where the award of attorney's fees is disproportionate to the amount of damages awarded, that difference by itself does not require a reduction of fees. Proportionality is a factor that may be considered in deciding the reasonableness of a fee request, but proportionality is not necessarily required. *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); *Hensley,* 461 U.S. at 436 ("There is no precise rule or formula" for determining the reasonableness of the relation between the fee requested and the relief obtained);

*Saizan,* 448 F.3d at 802–03 ("It remains true that there is no per se proportionality rule. However the District Court had ample reason to reduce the fee award, not relying solely on the low settlement amount but also on Plaintiffs' failure to establish billing judgment and inability to prove any element of the case."); *Hernandez v. Hill Country Telephone Co-op., Inc.,* 849 F.2d 139, 144 (5th Cir.1988) ("There is no per se requirement of proportionality in an award of attorney fees under 42 U.S.C. § 1988.); *Green v. Administrators of Tulane Educ. Fund,* 284 F.3d 642, 663 (5th Cir.2002) ("The amount of damages a plaintiff recovers is only one of many factors that a court must consider when calculating an award of attorney's fees. An attorney's fee award does not need to be commensurate with the actual amount of dollars awarded to the plaintiff."), *overruled on other grounds, Burlington N. v. Santa Fe Ry. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

Nevertheless the Fifth Circuit has held that in awarding fees the district court must "give primary consideration to the amount of damages awarded as compared to the amount sought," particularly where the amount of recovery and the amount of attorney's fee awarded are substantially out of proportion. *Migis,* 135 F.3d at 1048 (reversing a fee award where plaintiff originally sought $325,000 in compensatory damages, which was more than twenty-six times the $12,233.32 in damages actually awarded by the jury), *citing Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ("Where recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought."), *quoting City of Riverside v. Rivera,* 477 U.S. 561, 585, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (Powell, J., concurring). In *Migis* the Fifth Circuit panel held that "the district court abused it discretion by failing to give adequate consideration to the result obtained relative to the fee award, and the result obtained relative to the result sought." 135 F.3d at 1048.

**\*12** While the FMLA allows a prevailing plaintiff to recover reasonable costs, Federal Rule of Civil Procedure 54(d) " 'creates a presumption in favor of awarding costs." *Coyne–Delany Co., Inc. v. Capital Dev. Bd. of State of Ill.,* 717 F.2d 385, 390 (7th Cir., 1983). The costs permitted in an FMLA action are basically the same as for taxable items for a bill of costs under 28 U.S.C. § 1920. *Alcazar–Anselmo v. City of Chicago,* 2011 WL 3236024,

at *8 (N.D.Ill. July 27, 2011), *citing Vaccaro v. Custom Sounds, Inc.,* No. 3:08–CV–776, 2010 WL 1223907, at *6 (M.D.Fla. Mar.4, 2010) (award costs under the FLSA using a similar analysis to that used in a motion under § 1920). The Court must decide if the requested costs are reasonable and necessary. *Id.*

### B. Plaintiff's Application for Fees

Plaintiff's counsel, G. Scott Fiddler, states that he was employed on a contingency fee basis and has thus far not been paid anything for his work, but he also provides the information for a calculating a lodestar. In an affidavit, Ex. 1 to # 63, he describes the contingency fee agreement under which he has represented Plaintiff since December 1, 2009: if the case settled before counsel filed her suit, he would recover 33.3%; if collection or settlement occurred after the suit was filed, the fee would be 40%; and after notice of appeal, the fee would be 45%. # 63, Ex. 1, Affid. of G. Scott Fiddler.

This Court concludes that because the United States Supreme Court has rejected contingency enhancement awards in fee-shifting awards and characterized the lodestar analysis as "the guiding light of our fee-shifting jurisprudence," and that there is a "strong presumption that the lodestar represents the reasonable fee," this Court will apply that method here. *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (ruling out contingency enhancements to the lodestar); *Perdue v. Kenny A. ex rel. Winn,* 599 U.S. 542, 551 (2010) (the lodestar approach has " 'achieved dominance in the federal courts.' ").[7] The Fifth Circuit has opined that while a contingent-fee arrangement

does not automatically limit the fee award, ... '[t]he presence of a pre-existing fee arrangement may aid in determining *reasonableness* [because] [t]he fee quoted to the client or the percentage of recovery agreed to is helpful in demonstrating the attorney's fee expectation

when he accepted the case. Although the contingent nature of the fee arrangement may be considered in determining whether to reduce the lodestar, a lodestar *enhancement* cannot be based on that factor.

*Migis,* 135 F.3d at 1057, *citing Blanchard v. Bergeron,* 489 U.S. 87, 92, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), and *Dague,* 505 U.S. at 567.

Plaintiff's counsel seeks fees for his own services (at a billing rate of $375.00 per hour), his associate Andrew W. Reed's (currently $150.00 per hour as an associate from August 2010, previously $75.00 per hour as a law clerk from June 2009–May 2010), and his paralegal or legal assistant E. Denise Chatham's ($125.00 per hour). He claims that these fees are reasonable, even low, based on *Texas Lawyer's* most recent survey of hourly rates in Houston, Texas.

***13** To explain his request for a fee award of $153,418, counsel attaches his own affidavit (Ex. 1), a resume (Ex. A), an article on *Texas Lawyer's* fee survey (Ex. B), his billing records (Ex. C) for work up to the date of the filing of his fee application, amounting to $130,043, and a Declaration from Houston attorney Peter Costea (Ex.2) stating that the fees requested are reasonable given the qualifications of Fiddler, Reed and Chatham. Ex. 1, Fiddler Aff ., p. 3, ¶ 11; Ex. C. Fiddler states,

> To date, the bill reflects $130,042.50 in reasonable and necessary attorney's fees (including paralegal and law clerk fees), using the lodestar method. In my opinion, Plaintiff will likely file a reply to Defendant's response to this application and will file a response to the post-trial motion filed by Defendant. [# 1, Fiddler Affid., p. 4, ¶ 12.] Therefore Plaintiff will reasonably incur the following additional fees for work until the filing, if any, of a notice of appeal, totaling $23,375:

| | |
|---|---|
| G. Scott Fiddler (Attorney) | $375.00/hr. [x] 30 hrs. = $11,250 |
| Andrew W. Reed (Associate) | $150.00/hr. [x] 60 hrs. = $9,000 |
| E. Denise Chatham (Legal Ass.) | $125.00/hr. [x] 25 hrs. = $3,125 |

# 63 at p. 6; Fiddler Aff., p. 4, ¶ 12. He does not seek an upward adjustment from the lodestar amount and contends that no downward adjustment is warranted. Without explaining why, counsel concedes that he did not drop his claims against Defendants Sanderson Farms, Inc., Sanderson Farms, Inc. (Production Division) and Sanderson Farms, Inc. (Food Division) until the morning of trial, but maintains that those claims were based on the same common core of facts and legal theories as Plaintiff's FMLA retaliation claims against Defendant Sanderson Farms, Inc. (Processing Division), as evidenced by the fact that the initial set of discovery requests for all three was the same. Fiddler Aff., p. 4, ¶ 13. He also asserts that the work performed in this case for claims of discrimination under the ADA and the TCHRA "were so intertwined with the work on the claim for retaliation under the FMLA that it is not practical to attempt to separate them." # 63 at p. 7. As examples he states that the work to establish that Carroll was "disabled" under the ADA and TCHRA was the same as establishing that she suffered from a "serious medical condition" under the FMLA. He further states that Plaintiff's FMLA retaliation claim was based on the same core of facts and legal theories as Plaintiff's ADA and TCHRA claims and that it would be "difficult, if not impossible to divide them on a claim-by-claim basis." *Id.;* Ex. 1 at p. 4. He also claims, without any supporting facts or documents or specificity, "The time spent on pleading and motion matters pertaining strictly to non-FMLA and related causes of action and any work relating exclusively to defamation, tortious interference, and/or to the dismissed defendants is essentially de minimis and is more than offset by the time I and my staff worked on the case and never billed," and he estimates "that lost time to be at least 22 hours." Ex. 1 at p. 4. Counsel further maintains, "Because of the intricacies of employment discrimination law, including United States Supreme Court opinions issued in June 2013 in *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* —— U.S. ——, 33 S.Ct. 2517 (2013) [*sic*], this case required more skill than the ordinary wrongful discharge case." *Id.* at 5. [8]

**\*14** In addition counsel seeks a conditional award of attorney's fees in the event of an appeal: (1) prevailing in appeal, $75,000; (2) prevailing in petition for certiorari to the Supreme Court, $20,000; and (3) prevailing in appeal before the Supreme Court, $75,000.

### C. Sanderson Farms' Objections (# 67)

Sanderson Farms highlights the fact that counsel has failed to exercise billing judgment. Moreover, the invoices he submitted are largely block-billed, obstructing the Court's ability to accurately discount hours that were unreasonably billed.

Sanderson Farms also questions Fiddler's hourly rate and states that the State Bar of Texas publishes an "Hourly Rate Fact Sheet," relied upon by attorneys and courts in Texas: http://www.texasbar.com/AM/T emplate.cfm? Section=Demographic_and_EconomicTrends & Template=/CM/ContentDisplay.cfm & ContentID=20499 (last visited August 5, 2013). # 67, Ex. 1, Declaration of Mark R. Flora, one of Sanderson Farm's attorneys. It shows that a reasonable hourly rate for attorneys with Scott Fiddler's years of experience practicing employment law in small Houston firms is $275. In his application, Mr. Fiddler relies on *Texas Lawyer's* rate survey's [9] average hourly rate for an "equity partner" in Houston of $388/hour. The magazine does not break down the average rate by practice areas, but includes more lucrative areas of legal practice such as mergers and acquisitions, antitrust, taxation, and intellectual property; it therefor does not represent the community's rate for employment law services as required by *Blum,* 465 U.S. at 896 n. 11. It also does not distinguish rates based on firm size; courts recognize that rates at larger firms tend to be higher than those at smaller firms. *Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058–59 (2d Cir.1989) (Case law does not compel "district courts to assign the same hourly rate to every law firm in the city .... [S]everal market rates may prevail in a given area."); *Wilcox v. Sisson,* No. Civ. A. 02–1455(RMC), 2006 WL 1443981, at *2 (D.D.C. May 25, 2006)* ("The market generally accepts higher rates from attorneys at firms with more than 100 lawyers than those at smaller firms-presumably because of their greater resources and investments, such as attorneys, librarians, researchers, support staff, information technology, and litigation services."); *Murray ex rel. Murray v. Mills,* 354 F.Supp.2d 231, 236 (E.D.N.Y.2005) (noting that hourly rates tend to be higher at larger firms to compensate for higher overhead costs).

Finally, the key factor in a fee award is the degree of success obtained by the plaintiff. *Farrar v. Hobby,* 506

2014 WL 549380

U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). In *Hensley,* the Supreme Court opined, if

> a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again the most critical factor is the degree of success obtained.

**\*15** *Hensley,* 461 U.S. at 436. The Fifth Circuit requires the district court to consider "whether the plaintiff failed on alternative claims and whether the award is excessive in light of the plaintiff's overall level of success." *Romaguera v. Gergenheimer,* 162 F.3d 893, 896 (5th Cir.1998). *See also Migis,* 135 F.3d at 1047 (" '[T]he most critical factor' in determining the reasonableness of a fee award in a civil rights suit 'is the degree of success obtained.' ").

In *Migis* the fees awarded were more than 6.5 times the amount of damages awarded, which the Fifth Circuit found to be unreasonable. It reversed and remanded, ruling, "Regardless of the effort and ability of her lawyers, we conclude that these ratios are simply too large to allow the fee award to stand. We hold that the district court abused its discretion by failing to give adequate consideration to the results obtained relative to the fee award and the result obtained relative to the results sought." *Id. See also Jason D.W. v. Houston I.S.D.,* 158 F.3d 205 (5th Cir.1998) (*per curiam* ) (where plaintiff prevailed on three of nineteen issues, but did not prevail on an issue upon which the parties spent over 50% of their time, the Fifth Circuit affirmed the district court's reduction of fees by 75%); *Dodge v. Hunt Petrol Corp.,* 174 F.Supp.2d 505 (N.D.Tex.2001) (where plaintiff prevailed on one of two claims, court reduced fee request by 75%); *Hilton v. Executive Self Storage Assoc., Inc.,* Civ. A. H–06–2744, 2009 WL 1750121, at \*14–16 (S.D.Tex. June 18, 2009) (court reduced fees by 67% for limited success in an FLSA case). Sanderson Farms argues that counsel's fees

must be adjusted substantially downward given his limited success.

Sanderson Farms points out that Plaintiff's Amended Complaint asserted six causes of action (FMLA interference, FMLA retaliation, ADA discrimination, TCHRA discrimination, defamation, and tortious interference), but she prevailed only on one, the FMLA retaliation claim. She also sought between $109,180 and $474,068.32 in lost wages and benefits, [10] approximately $300,000 in non-economic compensatory damages, and at least $300,000 in punitive damages, for a total amount between $709,280 and $1,074,068.32. The jury awarded her only $25,000, just 2.3% to 3.5% of the total amount that she sought. In other words, Carroll sought over twenty-eight times the damages actually awarded to her. Furthermore Plaintiff requests fees in an amount about 6.14 times the size of the jury award. The Fifth Circuit struck down similar ratios in *Migis* and reduced the award where the plaintiff "sought over twenty-six times the damages actually awarded" and the "attorney's fee award was over six and one-half times the amount of damages awarded." 135 F.3d at 1048. [11] Although the district court in *Migis* had reduced the lodestar amount that it calculated by ten percent based on the results it achieved, the Fifth Circuit found that it did not give sufficient consideration to the "degree of [monetary] success obtained," that the "ratios are simply too large to allow the fee award to stand." The panel reversed the district court's fee award and remanded the issue. 135 F.3d at 1048. In the instant case, Sanderson Farms suggests a 50% reduction of the lodestar amount as appropriate.

**\*16** Sanderson Farms also objects to counsel's failure to exercise billing judgment and distinguish hours that are insufficiently described, duplicative, clerical, and block-billed, notes the lack of documentation that it did so, and urges the court to look for duplication of effort, improper use of the lawyer's time, and differentiation of legal work traditionally performed by attorneys and clerical work. It points out that Fiddler's affidavit does not show that he or any other attorney exercised billing judgment regarding the Application for Attorney's Fees. Nor do the invoices demonstrate the exercise of billing judgment in their use of vague descriptions in entries such as "trial preparation" or "prepare for deposition," which appear a number of times in the invoices submitted. *Louisiana Power & Light Co.,* 50 F.3d at 326 ("The district court may properly reduce or eliminate hours when the supporting documentation

is too vague to permit meaningful review," e.g., citing cases that have done so for not identifying the subject matter or what was done, using entries such as "legal research," "trial preparation," and "met with client."); *Von Clark v. Butler,* 916 F.2d 255, 259 n. 6 (5th Cir.1990); *Wright v. Blythe–Nelson,* Civ. A. 3:99CV2522–D, 2004 WL 2870082 (N.D.Tex. Dec.13, 2004); *Nassar v. Univ. of Tex. Sw. Med. Ctr.,* No. 3:08–CV–1337–B, 2010 WL 3000877, at *4 (N.D.Tex. July 27, 2010) ("Court has the discretion to reduce or eliminate those hours" using conclusory phrases). Moreover, many time entries do not provide sufficient detail for the court to determine if they were reasonable and necessary, e.g., "research and review of cases," "library research," "analyzing documents," "reading background documents," "phone interviews," "revise memorandum," "review documents," and "correspondence," all of which courts have held to be inadequate. *See, e.g., League of United Latin Am. Citizens No. 4552 v. Roscoe I.S.D.,* 119 F.3d 1228, 1233 (5th Cir.1997); *Walker,* 99 F.3d at 773; *Louisiana Power,* 50 F.3d at 326. Sanderson Farms notes that Fiddler made duplicative entries on December 2, 2011 ("Draft additional requests" for discovery (# 63, Ex. C at 36)) and on May 14, 2013 (to review medical records and conference with paralegal (# 63, Ex. C at 56)). Attorneys Fiddler and Reed both billed for attorney conferences on November 16, 2011, October 4, 2011, and July 3, 2013. "The billing judgment rule does not permit the plaintiffs to bill for both attorneys' participation in an attorney-to-attorney conference. *Hilton,* 2009 WL 1750121, at *11. "If there is no evidence of billing judgment, ... the proper remedy is not a denial of fees, but a reduction of 'the hours awarded by a percentage intended to substitute for the exercise of billing judgment.' " *Walker v. City of Mesquite, Texas,* 313 F.3d 246, 251 (5th Cir.2002); *Saizan,* 448 F.3d at 799. Sanderson Farms further urges the Court that because Plaintiff's attorney sued Sanderson Farms three times in the last three years, without specificity in counsel's entries the Court cannot be sure that the fees sought here were necessary and reasonable for the prosecution of this case as opposed to that of the other unsuccessful actions.

**\*17** Sanderson Farms also complains that most of Plaintiff's entries are block billed, setting out multiple tasks for each period of time billed. For example (# 63–1 at 53), on May 6, 2013 Fiddler entered the following for five hours and forty-five minutes:

> Review medical release authorization; conference with

paralegal; review records request; review emails from opposing counsel; begin preparing cross examination of T Ormon; review documents to finish compiling exhibit list; review draft of Trial Memorandum-make revisions; review revisions to JPO, make revisions; email opposing counsel; conference with associate; review, revise and finalize Witness List, Plaintiff's Proposed Jury Instructions, etc[.], Voir Dire, Trial Memorandum, Joint Pretrial Order, email opposing counsel.

The Court cannot determine how much time is reasonable when an entry includes both compensable and non-compensable tasks. For instance, in an entry for 2.6 hours clerical work performed by counsel on August 28, 2010 he stated, "Review TWC–CRD Notice of Right to Sue; research; review, revise and finalize Complaint; e-file complaint." Time spent e-filing the complaint is clerical and cannot be reasonably billed to a client; time spent on "research" without specification should not be included in the lodestar; time spent reviewing and revising the complaint is reasonable and compensable. The block billing, however, prevents the Court from being able to separate the tasks and determine the appropriate reasonable number of hours. The proper remedy for such vague block billing is an across-the-board reduction in the attorney's hours. *Hensley,* 461 U.S. at 433 ("Where documentation of hours is inadequate, the district court may reduce the award accordingly."); *Role Models Am., Inc. v. Brownlee,* 353 F.3d 962, 973 (D.C.Cir.2004) ("In view of all this inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries-we will allow reimbursement for only fifty percent of the attorney hours that Role Models requests."); *Sun Trust Mortgage, Inc. v. AIG United Guar. Corp.,* 3:09CV529, 2013 WL 870093 at *14 (E.D.Va. Mar.7, 2013) (20% time reduction "for block billing and for the inconsistent time descriptions"); *EEOC v. AutoZone Inc.,* CIV. A. 10–11648–WGY, 2013 SL 1277873, at *8 (D.Mass. Mar. 29, 2013) ("twenty percent global reduction" to lodestar for block billing).

Sanderson contends that courts regularly reduce compensable hours by 10–15% for a lack of billing judgment. They also reduce compensable hours by up

2014 WL 549380

to 20% when entry descriptions are block billed. Both circumstances exist here, so Sanderson Farms requests that the Court reduce the number of hours billed by Fiddler and Reed by 20%.

Sanderson Farms also questions whether the work performed by Fiddler's legal assistant, Denise Chatham, was legal or clerical. The Supreme Court has held that regarding paralegal hours, the court must differentiate between tasks that are usually included in an attorney's hourly rate as overhead and tasks usually billed separately at market rates to a fee-paying client. *Missouri v. Jenkins,* 491 U.S. 274, 285–86, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (addressing attorney's fees under fee-shifting 42 U.S.C. § 1988) (reasonable attorney fee "should compensate the work of paralegals, as well as that of attorneys"). Only tasks of a paralegal billed separately at market rates to a fee-paying client qualify for inclusion in a fee award, rather than their cost to the attorney. *See Vela v. City of Houston,* 276 F.3d 659, 681 (5th Cir.2001) ("Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical."). Thus Chatham's work can be recovered "only to the extent that [she] performs work traditionally done by an attorney. Otherwise [legal assistant] expenses are separately unrecoverable overhead expenses." *Allen v. U.S. Steel Corp.,* 665 F.2d 689, 697 (5th Cir.1982). The court in *Au v. Funding Grp. ., Inc.,* 933 F.Supp.2d 1264, 1276 (D.Haw. Mar.21, 2013), compiled a nonexhaustive list of ministerial, non-compensable tasks:

> **\*18**  reviewing Court-generated notices; scheduling dates and deadlines; calendaring dates and deadlines; notifying a client of dates and deadlines; preparing documents for filing with the Court; informing a client that a document has been filed; personally delivering documents; bates stamping and other labeling of documents; maintaining and pulling files; copying, printing, and scanning documents; receiving, downloading, and emailing documents; and communicating with Court staff.

Sanderson Farms argues that the vast majority of time entries for Chatham are non-legal, clerical tasks

that no fee-paying client would consider appropriate: references to calendaring deadlines and reminds, Bates stamping documents, communicating with Court staff and vendors (court reporters, etc.), reviewing Court-generated notices and orders, preparing documents for filing/filing documents with the Court, reviewing emails or correspondence without an apparent legal purpose. Sanderson Farms identifies the dates of such entries in # 63–1, Ex. C.; # 67 at p. 22–23 & nn. 7–11. Sanderson Farms also charges that Chatham's time entries indicate a lack of billing judgment and most are block billed. Because courts have held that the costs of clerical work performed by staff members constitute an "overhead cost" built into the attorney's hourly rate and a separate charge for their staff's clerical time would be an unreasonable double recovery and because the vast majority of her recorded time was spent on clerical tasks, insufficiently described, and/or block billed, Sanderson Farms urges the Court to reduce her time by 75%.

Sanderson Farms further asks the Court to deny counsel's request for conditional fees for possible appeals. If there should be an appeal and Plaintiff prevails and requests a fee award for services relating to the appeal and the Fifth Circuit agrees, "the Fifth Circuit remands the appropriate fee determination to the district court once the claim for fees is ripe for adjudication." *Watkins v. Input/Output, Inc.,* 531 F.Supp.2d 777, 786 (S.D.Tex.2007). Any award for appellate fees at this stage would be speculative and likely subject to challenge, thus undermining judicial economy.

In sum, Sanderson Farms urges the Court to reduce counsel's hours by 20% from 214 hours to 171 hours, his hourly rate from $375.00 to $275.00, for a total amount of $47,000, rather than the $80,000 he requested. Similarly, Andrew Reed's hours by 20%, from the requested 173 to 138, for a total award of $20,700 instead of the $26,000 requested. It asks the court to reduce Chatham's compensable hours by 75%, from the 192 hours requested to approximately 48, for a total of $6,000 instead of the $24,000 requested. Once the totals are added, Sanderson's Farm's proposed lodestar of $73,7000 rather than the $130,000 requested, [12] it seeks a 50% reduction for lack of success on all but the FMLA retaliation claim, for a total attorney fee award of $36,850.

**Plaintiff's Reply (# 69)**

 *19  Insisting that counsel's lodestar calculation is presumptively reasonable, Plaintiff argues that Defendant's designated expert, Mark Flora, has not stated in his Declaration that Fiddler's regular hourly rate of $375.00 is unreasonable, or that the number of hours spent on the case were unnecessary or excessive, or that Flora is familiar with the rates in Houston since he is from Austin, and she asks the Court to strike the Declaration.[13] Plaintiff continues that because Defendant has not provided any controverting evidence, the affidavits of Plaintiff's two experts (Fiddler and Costea, another experienced employment law attorney practicing in the Southern District of Texas) that $375.00 per hour is a reasonable rate and lower than the average rate of $388 per hour, should be accepted as true.[14] Fiddler emphasizes that he is an equity partner in his firm, not an associate. Carroll insists that Defendant's proposed reduction of fees to 24% of what counsel sought is not supported by the evidence. Defendant also ignores the more than $23,000 in fees being incurred in post-trial motions when it claims that she is seeking only $130,000 in fees and imposes its reduction on that figure. Carroll also complains that Sanderson Farms manipulates the amount of damages that she sought in order to create a larger disparity compared with the amount she recovered; it claims that Carroll sought $474,068.32 in compensatory damages (# 67, p. 9), as stated in the First Supplemental Initial Disclosures, filed February 17, 2011, when she was at a job earning much less than she made at Sanderson Farms and therefore included $398,199 in potential front pay damages (# 17, p. 3). Once she started earning more money, she amended her disclosure to indicate that she was not seeking front pay damages (# 46, Plaintiff's Fifth Supplemental Initial Disclosure at p. 3).[15] Sanderson Farms took Carroll's disclosures that she was seeking $300,000 in compensatory damages and $300,000 in punitive damages for a total of $600,000 when its attorneys knew that the ADA and the TCHRA had caps of $300,000 on what Plaintiff can recover from Sanderson Farms, in compensatory, nonpecuniary, and punitive damages under each statute. 42 U.S.C. § 1981a(b) and Tex. Labor Code § 21.2585(d)(4). Thus Sanderson erroneously uses the number of $1,074.068. She also complains that Sanderson Farms' attorney failed to respond to her efforts

to settle the case, first for $50,000 and subsequently for $97,500, and now seeks to limit her award.

Carroll argues that the *Johnson* factors do not warrant a downward adjustment here because success at trial is only one factor in deciding if the time spent on the case was necessary. Furthermore, without specifying which, she maintains any downward adjustment is more than offset by factors meriting an upward adjustment.

Carroll contends that the "allegations of vague entries, block billing, and billing judgment are exaggerated and overblown and ignore the fact that such issues go to the necessity of the time spent on the case, a fact on which Defendant has failed to offer any evidence."[16] # 69 at p. 2. Carroll claims that Sanderson Farms' objections to the fee award requested for paralegal Chatham are unsupported by evidence and misstate the nature of the work she performed. She also argues that conditional appellate fees should be awarded now because Sanderson Farm has refused to make a settlement offer and should be given notice that "if it attempts to appeal from this clean and fair trial, it will not be able to use its vast financial resources to grind Plaintiff into submission by further delaying resolution of the case with a frivolous appeal." # 69 at p. 2. She adds that the appellate fees request is also "completely unrefuted and uncontroverted and should be awarded, conditionally, in their entirety." *Id.*

 *20  Regarding Sanderson Farms' reliance on the State Bar of Texas' "Hourly Rate Fact Sheet," counsel emphasizes that (1) he is double board certified by the Texas Board of Legal Specialization in Labor and Employment Law and Civil Trial law, a status shared by only approximately twenty-five of the 90,000 attorneys in Texas[17]; he has been selected to the Texas "Super Lawyers" every year since 2007, selected to "Super Lawyers" top 100 attorneys in Houston in 2012, and named to *H Texas Magazine's* "Top Lawyers" list every year since 2008; and he has served as the Chair of the Houston Bar Association Labor and Employment Section during the 2011–12 term. An attorney's worth or skill does not depend on the number of attorneys in his firm, he argues. Moreover Fiddler states that he is an equity partner in his firm, not an associate.

Fiddler summarily contends that he and his staff were precluded from working on other cases by the work on this case.

He also objects to Sanderson Farm's objections to the vagueness of Fiddler's billing entries, even though there is substantial case law supporting Sanderson's arguments. He charges that Sanderson Farms is impugning the integrity of his firm. He complains if Sanderson Farm's complaints of double billing, even though the Court notes that it is Fiddler's obligation to identify the billing entries sufficiently that the subject matter can be distinguished. Fiddler objects to the 75% reduction of Chatham's fees, summarizing the services she performed and her nineteen years of experience as a legal assistant.

Without identifying any of the factors that went into the courts' determination, Fiddler cites a couple of cases giving high fee awards in employment discrimination cases to argue that his request is in line with others and is "in fact quite modest." # 69 at p. 20. He further contends that reducing his fee award by over 75% would have a severe chilling effect on attorneys' taking civil rights cases on a contingency fee.

## Court's Decision

As noted, as a matter of law the most important factor in an award of attorney's fees is the degree of success. Initially in Carroll's complaint filed on August 28, 2010 and her First Amended Complaint (# 3) filed a few day later, Plaintiff sued Sanderson Farms, Inc., Sanderson Farms, Inc. (Production Division), Sanderson Farms, Inc. (Processing Division) and Sanderson Farms, Inc. (Food Division) for (1) violations of the FMLA, i.e., interfering with her rights under the statute, and retaliating against her by failing to restore her to the same job she had before taking leave, terminating her, and interfering with her attempts to find a new job after termination; (2) violation of the Americans with Disability Act, i.e ., discriminating against her by terminating her because of her knee problems (disability, "regarded as" disability, and/or record of disability); (3) violations of the Texas Commission on Human Rights Act because of her disability, "regarded as" disability, and/or record of disability; (4) defamation after her termination in preventing her from obtaining other employment; and (5) tortious interference with prospective contract/employment and/or business relations after her termination. # 1, Complaint.

**\*21** Counsel did not drop Plaintiff's claims against Defendants Sanderson Farms, Inc., Sanderson Farms, Inc. (Production Division) and Sanderson Farms, Inc. (Food Division), which were not her employers, until the morning of the first day of trial, July 12, 2013, almost three years after filing his suit, and then without explanation or excuse for his lengthy delay. His conduct hardly constitutes efficient processing of this litigation. Moreover, the only one of Plaintiff's claims that survived to go to trial and on which Plaintiff prevailed was her claim of retaliation for taking FMLA leave under the FMLA, ADA, and TCHRA against Sanderson Farms, Inc. (Processing Division).

Several of Carroll's claims failed as a matter of law because they are not legally cognizable or because Plaintiff failed to present sufficient evidence to raise genuine issues of fact about them on summary judgment. These claims are not based on the same facts or legal theories, i.e., are not inextricably related, to the claim on which she prevailed.

First, in the Court's lengthy November 5, 2012 Opinion and Order of Partial Summary Judgment (# 42), it determined as a matter of law that under the federal statutes Plaintiff's post-termination retaliation claim that Ormon refused to give her a reference for prospective employment, specifically with the City of Houston, failed as a matter of law because she did not timely exhaust her administrative remedies as to that claim. # 42 at pp. 55–56.

The Court further concluded that Carroll's FMLA claim that she was not restored to the same job or an equivalent position in violation of 29 U.S.C. § 2614 after returning from leave failed because she was discharged immediately upon her return. # 42 at pp. 54–55.

As discussed # 42 at pp. 49–51, Plaintiff has not and could not state or could not avoid summary judgment on Texas common-law claims for defamation and tortious interference on the grounds that Sanderson Farms (and/ or Todd Orman) refused to provide a reference to a prospective employer or that Sanderson Farms (and/or Todd Orman) gave a negative reference. Under Texas law a former employer is not required to provide job-related information to a prospective employer, but if he does, he has immunity from civil liability unless the former employee shows with clear and convincing evidence that the former employer provided information about a former employee that the employer knew was false or made

with malice and reckless disregard for the truth. Carroll failed to make such a showing in response to Defendant's motion for summary judgment. Counsel's conclusory statement that "[t]ime spent on pleading and motion matters pertaining strictly to non-FMLA and related causes of action and any work relating exclusively to defamation, tortious interference, and/or to the dismissed defendants is essentially de minimis and is more than offset by the time I and my staff worked on the case and never billed," is an ineffectual and futile effort to conceal the fact that it is his burden to expressly exercise billing judgment in written records, which, as Sanderson Farms points out, he has completely failed to satisfy. Nor are these Texas state-law claims in any way intertwined with the legal theories and facts of the federal statutory discrimination claims.

**\*22** Based on Plaintiff's failure to prevail on these claims the Court finds that counsel's fee award shall be reduced by 20%.

The Court disagrees with counsel's assertion that this case required "more skill than the ordinary wrongful discharge case" because of "the intricacies of employment discrimination law, including ... *Nassar.*" This Court has addressed the inapplicability of *Nassar* to this case at length in footnote 8, and finds that counsel, as an attorney specializing in employment law and requesting as substantial a fee, should have known it. Moreover, the Court finds that this case was clearly not complicated or novel, nor was the applicable law complex, but the issues were essentially questions of credibility.

Although counsel argues that Carroll's claims of disability discrimination based on her knee problems under the FMLA, the ADA, and the ADA were intertwined and based on a common core of fact, he did not have to spend significant time on briefing that issue because Sanderson Farms did not argue that the condition of her knee failed to satisfy the requirements for a disability under the FMLA, ADA, and TCHRA, nor did it deny Carroll FMLA leave based on that injury.

The Court next addresses whether counsel's requested hourly fee of $375, plus lesser sums for his associate and legal assistant's services, for the hours the three expended, plus an estimated $23,375 more for services since his filed his application, for total of $153,418, were reasonable; as noted, Plaintiff's attorney bears the burden of showing

that the hours billed are reasonable. *Hensley,* 461 U.S. at 427; *Saizan,* 448 F.3d at 799. With regard to hourly fees in the community for services rendered by attorneys of comparable skill, experience and reputation, the Court agrees with Sanderson Farms that Fiddler's request is high for a firm the size of his and that the State Bar of Texas' Hourly Rate Fact Sheet" is a more specific measure of fees for employment law legal specialists in the Houston area than is the very general *Texas Lawyer* survey.

While he claims his expertise and achievements warrant the higher fee, this Court did not find that the quality of his performance throughout the trial supports so high a fee. That Carroll, who in essence was the head Human Resource person at Sanderson Farms' Waco plant, was awarded only $25,000 (when Plaintiff sought at trial for over $100,000) in back pay for what the jury found was a retaliatory discharge reflects, at least in part, that counsel was not very effective.

Moreover, as noted, usually the fee applicant establishes a community's reasonable rate through the affidavits of other attorneys practicing there. Mr. Fiddler submitted two affidavits: one is his own, self-serving affidavit; the other from Peter Costea, who the record shows graduated from the same law school in the class as Mr. Fiddler and who public records show over the years has worked with Mr. Fiddler. *See, e.g., Persons v. Jack in the Box, Inc.,* Civ. A. H–03–4501, 2006 WL 846356, (S.D.Tex. Mar.31, 2006).* The Court cannot accord these affidavits as much weight as it would to independent, objective attorney's affidavits.

**\*23** Furthermore, a review of the invoices submitted by counsel ((# 63–1, Ex. C) demonstrates that counsel has completely failed to demonstrate that he exercised billing judgment. Furthermore the majority of his entries are vague, failing to identify the nature and subject matter of the work, therefore preventing the Court from determining whether the hours were reasonably expended on the claims on which Carroll prevailed. The Court agrees with Sanderson Farms that it is unclear whether Chatham's fees are for clerical work or legal work.

In addition, regarding the eighth *Johnson* factor, the amount requested for fees is substantially out of proportion to the amount of damages sought for two and a half years, up to the eve of the trial setting at that time, i.e., May 17, 2013. *Migis v. Pearle Vision,*

*Inc.,* 135 F.3d 1041, 1048 (1998). In her Initial Disclosure (# 14 at p. 3), filed November 11, 2010, Carroll sought Back Pay Damages in the amount of # 64,790.24, and Front Pay Damages in the amount of $398,199.00. In her First Supplemental Initial Disclosures (# 17 at p. 3), filed February 17, 2011 she sought back pay of $75,869.32 and front pay in the amount of $398,199.00. She did not abandon her claim until May 2, 2013. See footnote 15. While Fiddler accuses Sanderson Farm of manipulative tactics, it appears to the Court that the shoe fits his own foot.

Although beyond the $130,043 requested for work up to filing of his fee application, Fiddler requests an additional, but speculative, $23,375 in fees for subsequent work after, he has not submitted any additional time records or other documentation to support his request.

Because an award under the FMLA is only for a prevailing party and the Court cannot know if Plaintiff will prevail above and because the request for conditional appellate attorney fees is merely a speculative dollar figure without any information by which the Court could determine whether the amount requested is reasonable, the Court denies counsel's request for such an award without prejudice. *Preston Exploration Co., L.P. v. GSP, LLC,* No. Civ. A. H–08–3341, 2013 WL 3229678, at *12

(S.D.Tex. June 25, 2013); *Edwards v. Aaron Rents, Inc.,* 482 F.Supp.2d 803, 814 (W.D.Tex.2006). Plaintiff can apply to the Fifth Circuit for such a fee award if and when appropriate. *Gagnon,* 607 F.3d at 1045.

Based on all these deficiencies, the Court finds that Plaintiff's fee request should be reduced by another 30%, for a total reduction of the fee award by 50%. Thus the Court awards $76,709.00 in fees to Plaintiff.

Because Plaintiff has not yet moved for costs, the Court does not award them here, and counsel may seek them after entry of judgment.

Accordingly, the Court

ORDERS that Plaintiff's motion for judgment (# 62) is GRANTED as to compensatory and liquidated damages and prejudgment and post-judgment interest, as indicated. Plaintiff's application for attorney's fees (# 63) is GRANTED IN PART as explained in this order. Final judgment shall issue by separate instrument.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 549380

Footnotes

1   The FMLA does not set out a specific rate but requires that prejudgment interest on compensatory damages be calculated at "the prevailing rate." 29 U.S.C. § 2617(a)(1)(A)(ii). The Court observes that 3.25% is the federal prime rate and an appropriate rate for an FMLA case. *See e.g., E.E.O.C. v. Service Temps,* No. 3:08–CV–1552–D, 2010 WL 5108733, at *6 (N.D.Tex. Dec.9, 2010), *aff'd,* 679 F.3d 323 (5th Cir.2012); *see also Gutierrez v. Grant County,* No. CV–10–48–LRS, 2011 WL 5279017, at *2 (E.D.Wash. Nov.2, 2011) (applying a 3.25% interest rate from the date of plaintiff's termination to the date of final judgment); *Neel v. Mid–Atlantic of Fairfield, LLC,* No. SAG–10–CV–405, 2012 WL 3264965, at *12 (D.Md. Aug.9, 2012). Sanderson Farms has not objected to this rate nor suggested an alternative. *Id.* " 'Setting the rate of interest on a judgment is within the broad discretion of the district court.' " *Id., quoting Miles–Hickman v. David Powers Homes, Inc.,* Civ. A. No. H–07–0754, 2009 WL 1797872, at *1 (S.D.Tex. June 24, 2009), *citing United States v. Cent. Gulf Lines, Inc.,* 974 F.2d 621, 630 (5th Cir.1992).

2   The court should calculate prejudgment interest on back pay and past damages beginning on the date of the adverse employment action. *Thomas v. Tex. Dep't of Criminal Justice,* 297 F.3d 361, 372 (5th Cir.2002).

3   *In accord, Hometown Folks, LLC v. S & B Wilson, Inc.,* No. 1:06–cv–81, 2008 WL 918519, at *4 (E.D.Tenn. Apr.3, 2008), *aff'd,* 643 F.3d 520 (6th Cir.2011); *Case v. Graduate Medical Educ. Inc.,* No. 1:09–cv–897, 2010 WL 1744888, at *1 (W.D.Mich. Apr.28, 2010). The Tenth Circuit explained in *Ag. Servs. of America, Inc. v. Nielsen,* 231 F.3d 727, 730 (10th Cir.2000),

    "The strictures of the Seventh Amendment are particularly applicable in a case where, due to the presence of both equitable and legal issues, trial is both to the jury and to the court. In such a situation, when a case involves both a jury trial and a bench trial, any essential factual issues which are central to both must first be tried to the jury, so that the litigants' Seventh Amendment

> jury trial rights are not foreclosed on common factual issues. Moreover, the court is bound by the jury's determination of factual issues common to both the legal and equitable claims."

*Diffee Ford,* 298 F.3d at 965, *quoting Ag. Servs. of America,* 231 F.3d at 730, and *Brinkman v. Dep't of Corrections,* 21 F.3d 370, 372–73 (10th Cir.) (" 'We have held that when fact issues central to a claim are decided by a jury upon evidence that would justify its conclusion, the Seventh Amendment right to a jury trial prohibits the district court from reaching a contrary conclusion.' "), *cert denied,* 513 U.S. 927, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994).

4   Carroll took her first leave of absence for knee surgery on July 28, 2009, and returned to work on August 12, 2009. When her knee swelled up, she took her second leave of absence on August 18, 2009 and returned to work on August 24, 2009, when she was discharged.

5   " 'Block billing' is a 'time-keeping method by which each lawyer and legal assistant enters the total daily time working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers and Pipefitters Nat. Pension Fund,* 2011 WL 487754, at *4 (N.D. Feb. 11.2011), *quoting Glass v. U.S.,* 335 F.Supp.2d 736, 739 (N.D.Tex.2004). *See also Humphrey v. United Way of Texas Gulf Coast,* 802 F.Supp.2d 847, 864–65 (S.D.Tex.2011) (A block-billed entry "lists the tasks performed during that period, giving some detail about the kinds of work performed on a particular day, but does not itemize the amount of time spent on each."). Block billing can impede the court's ability to determine whether the amount of time spent on the different tasks is reasonable and some courts have reduced the hours block billed across the board. *Davis v. Perry,* ––– F.Supp.2d ––––, Nos. SA–11–CA–788–OLG, etc., 2014 WL 106990, at *19 (W.D.Tex. Jan.8, 2014); *Miller v. Raytheon Co.,* 2013 WL 6838302, at *10 (N.D.Tex. Dec.27, 2013) (and cases cited therein). A reduction for block billing is not automatic. *Id.; id.*

6   For example, in *Shipes,* the Fifth Circuit reviewed a district court's enhancement of the "lodestar amount based on the novelty and difficulty of the case because it found that there were over three hundred plaintiffs, an entire spectrum of employment decisions was being challenged, the case was complex and highly technical, and Trinity's obstinate conduct caused additional difficulties." 987 F.2d at 321. The panel opined,

> These factors—not so uncommon in much present-day litigation-simply do not render a case "rare" or "exceptional" for purposes of enhancing the lodestar amount. All counsel competent to handle a case such as this one are expected to be able to deal with complex and technical matters; this expertise is reflected in their regular hourly rate, based on fees for counsel of similar experience and ability. Still further, the difficulty in the handling of the case is adequately reflected in the number of hours billed—hours for which the attorney is compensated in the lodestar amount. Similarly, obstinate conduct by opposite counsel is compensated by the additional number of hours that are required to prevail over such obstinacy.

> *Id.*

7   The Supreme Court has made clear that a plaintiff may contract freely with her attorney to pay an additional contingency fee while seeking a lodestar award under the fee-shifting statute. *Giesbrecht v. Barnhart,* 535 U.S. 789, 806, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002) ("nothing prevents the attorney for the prevailing party from gaining additional fees, pursuant to contract, from his own client"); *Vanegas v. Mitchell,* 495 U.S. 82, 86–89, 110 S.Ct. 1679, 109 L.Ed.2d 74(1990) ("[T]here is nothing in [§ 1988] to regulate what plaintiffs may or may not promise to pay their attorneys if they lose of if they win"; "[w]e have ... accepted, at least implicitly, that statutory awards of fees can coexist with private fee arrangements ... [J]ust as we have recognized that it is the party's entitlement to receive the fees in the appropriate case, so we have recognized that as far as § 1988 is concerned, it is the party's right to waive, settle, or negotiate that eligibility.").

8   Not only did counsel incorrectly cite this case (it should be ––– U.S. ––––, 133 S.Ct. 2517, 186 L.Ed.2d 503), issued on June 24, 2013, but it is a Title VII suit in which a physician of Middle Eastern descent alleged that a state university with which his hospital was affiliated revoked a job offer because he complained that he was racially and religiously harassed by a superior. 133 S.Ct. at 2524. Below, the Fifth Circuit had denied the defendant's motion for summary judgment on the grounds that a reasonable jury could find that the plaintiff's protected activity was a "motivating factor" for the adverse action. 133 S. St. at 2524. Reversing the appellate court, the Supreme Court held that a plaintiff must prove "but-for" causation (i.e., the plaintiff's injury would not have occurred in the absence of the alleged wrongful action of the employer), and not merely that retaliation was a substantial or motivating factor, for a Title VII or ADA retaliation claim.

> *Nassar* was issued less than a month before Carroll's trial. The Fifth Circuit has since stated that it has not yet decided whether Nassar applies to FMLA-retaliation claims. *Ion v. Chevron USA, Inc.,* 731 F.3d 379, 389–90 (5th Cir.2013). Moreover, even if it applies to an FMLA retaliation claim, it should not have caused counsel increased work and challenge, nor does it warrant increased fees. The Fifth Circuit has always distinguished between the standard used for a *prima facie* case of retaliation or on summary judgment, which requires only the less stringent standard, and that at trial; it has always required "but-for" standard for a jury verdict, so counsel's argument is not persuasive. *See, e.g.,*

*Montemayor v. City of San Antonio,* 276 F.3d 687, 692 (5th Cir.2001) (on *prima facie case* ); *Kanida v. Gulf Coast Medical Personnel, LP,* 363 F.3d 568, 580 (5th Cir.2004) ("This Court has repeatedly stated that in retaliation cases the employee must prove that the adverse employment action would not have occurred 'but for' plaintiff's protected activity.' "), *citing Rios v. Rossotti,* 252 F.3d 375, 380 (5th Cir.2001) ("For retaliation claims this final burden requires the plaintiff to demonstrate that the adverse employment action would not have occurred 'but for' the protected activity."); *Richardson v. Monitronics Intern., Inc.,* 434 F.3d 327, 332–33 (5th Cir.2005) (applying mixed motive framework on summary judgment); *Johnson County Southwestern Institute of Forensic Science,* Civ. A. No. 3:12–CV–1461–D, 2014 WL 177284, at *7 (N.D.Tex. Jan.16, 2014) ("As to the third element [of a prima facie case of retaliation under Title VII], the requirement that a plaintiff show at the prima facie case stage a 'causal link' between a protected activity and an adverse employment action is 'much less stringent' than the 'but for' causation that a jury must find."); *Long v. Eastfield College,* 88 F.3d 300, 305 n. 4 (5th Cir.1996) ("The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but-for' cause of the adverse employment decision.").

Carroll's FMLA retaliation claim went to trial before a jury, and the proper "but-for" standard applied, as reflected in the jury charge, which expressly stated (# 73 at p. 5),

> To prevail in this case Ms. Carroll must prove by a preponderance of the evidence that:
>
> a. She took Family Medical Leave Act leave; and,
>
> b. She was discharged in retaliation for taking leave.
>
> Ms. Carroll must prove that but for her taking Family Medical Leave Act leave Sanderson would not have terminated her employment when they did.

9 # 63–1, Ex. B.

10 Carroll objects that while she sought that amount in the First Supplemental Initial Disclosures, filed on February 17, 2011 when she was at a job earning substantially less that she did at Sanderson Farms and included $398,199 in potential front pay damages, when she began earning more prior to trial she amended her disclosure and indicated that she was not seeking front pay damages. # 69 at pp. 7–8. Sanderson Farms argued from her disclosures that she is seeking $300,000 in non-economic compensatory damages and $300,000 in punitive damages, for a total of $600,000 (coming up with the figure of $1,074,068, when Sanderson Farms' attorneys knew that under the damage caps applicable to the ADA and TCHRA, the maximum amount a plaintiff can recover for compensatory and punitive damages combined is $300,000. 42 U.S.C. § 1981a; Tex. Labor Code § 21.2585.

> Plaintiff further argues that she demanded $50,000 to settle the case on November 16, 2011, also indicating that attorney's fees at that time amounted to $30,000, but warning that by the time of trial they might amount to $150,000. Sanderson Farms did not offer anything. In the spring of 2012 she again tried to settle the case, this time for $97,500, but Sanderson Farms did not offer anything. She complains, "Now having refused to even respond to any offer and forced Carroll's attorneys to incur more than $150,000 in fees, Sanderson Farms has the audacity to ask the district court to award only $36,850, claiming, unbelievably, that Carroll has not been successful in light of what she sought." # 69 at p. 8.

> The Court would remind Plaintiff that Sanderson Farms had the right to refuse to settle if it believed her claims lacked merit. The fact that only one of her claims survived until trial indicates Defendant was not completely wrong. Moreover, Plaintiff cites no authority, and the Court knows of none, that considers a refusal to settle to be a factor for consideration in determining an award of attorney's fees to a prevailing plaintiff.

11 The *Migis* panel made clear that prejudgment and post-judgment interest are not subject to the same analysis because "[t]he award of interest is automatic and bears no relation to the effort or skill of the attorneys or any other *Johnson* factor. It merely adjusts the damage award to reflect the time value of money." 135 F.3d at 1048 n. 6.

12 Carroll objects that she seeks $153,418 in fees as the lodestar amount and that Sanderson Farms ignores the fees sought for post-trial motions, already amount to # 12,000. # 69 at p. 7 & nn. 16–18.

13 The Court finds that these reasons do not warrant striking the declaration. It is Plaintiff's counsel's burden to prove that his fees and hours expended are reasonable, not Sanderson Farms'.

14 This decision is for the Court, not for designated experts, to be determined from the numerous factors discussed above.

15 The Court observes that # 46 was filed on May 2, 2013, when trial was scheduled for May 17, 2013. (The trial was reset to July to allow the Court to rule on a recently filed motion for summary judgment). In # 46 Plaintiff stated that she was seeking $102,840 in back pay plus $6,340 in lost benefits, and liquidated damages in an equal amount; non-economic damages in the amount of $300,000; and possibly $300,000 in punitive damages. While Fiddler charges that Sanderson Farms must have known that these requested amounts for compensatory and punitive damages were not available because of $300,000 statutory caps under § 1981a(b) and Texas Labor Code § 21.2585(d)(4), and that Sanderson Farms

**Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.3d (2014)**

2014 WL 549380

was trying to deceptively manipulate Plaintiff, that knowledge (which Fiddler clearly had) apparently did not keep Fiddler from filing a document stating at that late date that Plaintiff was seeking them.

16    The Court notes, as indicated *supra*, that under the law the fee applicant bears the burden of showing that his requested fee award is reasonable.

17    # 63–1. p. 1; http://www . texasbar.com/AM/Template.cfmSection=About Us FAQs# many, visited Aug. 25, 2013.

---

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# **<u>Tab 4</u>**

2000 WL 533515
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.

CAUSEWAY MEDICAL SUITE, et al.

v.

Murphy J. FOSTER, et al.

No. Civ.A. 99-509.
|
May 2, 2000.

*ORDER AND REASONS*

BERRIGAN, J.

**\*1** Plaintiffs move the Court for an award of attorneys' fees and costs. Defendants, hereinafter referred to as the State, oppose Plaintiffs' motion. For the reasons explained herein, the Court GRANTS IN PART Plaintiffs' motion and awards attorneys' fees and costs as specified below.

## I. FACTS

The governor issued an executive order, MJF 99-5, and the State promulgated a regulation, HB 1925, and amended a statute, La. R.S. 40:5, all of which Plaintiffs argued could deny the full protection of the Fourth Amendment to the United States Constitution to medical facilities in which abortions are performed. Plaintiffs contended that the order, the regulation, and the amended statute authorized inspections of abortion clinics by State health officials without the guarantees of the Fourth Amendment. Plaintiffs moved this Court for a temporary restraining order ("TRO") and a preliminary injunction to bar enforcement of the order, the regulation, and the amended statute. The Court partially granted Plaintiffs' requested relief and thereby enjoined the State from conducting the inspections ostensibly allowed under the various State mandates. *See* Rec. Doc. 24. Thereafter, the State and Plaintiffs reached a settlement resolving that any inspections of medical facilities performing abortions would comply with the full protections of the Fourth Amendment. The settlement, however, left open the issue of attorneys' fees and costs. [1] The parties are now before the Court to resolve that open issue.

## II. ANALYSIS

### A. Prevailing Party

On any motion for attorney's fees in a civil rights case, a court must determine whether the moving party was the "prevailing party" in the suit. *See* 42 U.S.C. § 1988(b). The United States Supreme Court has held that " '[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." ' *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) (alteration in original) (quoting *Texas State Teachers Ass'n v. Garland Independent School District,* 489 U.S. 782, 792-93, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989)).

In *Farrar,* the Supreme Court explained the concept of "prevailing party" as follows:

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise, the judgment or settlement cannot be said to affect the behavior of the defendant toward the plaintiff. Only under these circumstances can civil rights litigation effect the material alteration of the legal relationship of the parties and thereby transform the plaintiff into a prevailing party. In short a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

**\*2** 506 U.S. at 111-112, 113 S.Ct. at 573 (internal quotations and citations omitted).

In the instant case, the State takes the position that Plaintiffs did not prevail since no health inspections absent

2000 WL 533515

consent or a warrant took place or would have ever occurred. This is the same "good intentions" defense that was raised in response to the motion for TRO and preliminary injunction. However, neither the language of the original executive order, nor its amendment, nor the subsequently enacted statutes, restricted the application of those state mandates in a manner consistent with Fourth Amendment constitutional requirements. Instead of requiring probable cause, for example, the language of amended La. R.S. 40:5 authorized state officials to conduct safety inspections when they received a complaint that "shows appropriate and sufficient grounds" to indicate a code violation or health hazard. As this Court found in partially granting the TRO/preliminary injunction, the language in those mandates could be construed to authorize searches absent consent or a warrant issued by a court of law and therefore permit unconstitutional searches in violation of the Fourth Amendment. The Court therefore enjoined the State from conducting such inspections absent those requirements. Apparently, the settlement subsequently reached embodies the same commitment to refrain from searches without the protections of the Fourth Amendment.

This was the relief that Plaintiffs sought, and it was entirely achieved. Whether the State would have conducted constitutionally illegal searches had Plaintiffs not filed this suit to enjoin them is open to speculation. What is not open to speculation is that the language of the executive orders and the statutes could have been interpreted to allow them to do so. That is why they were enjoined.

Accordingly, because Plaintiffs achieved the relief they sought through settlement and affected a material alteration of their legal relationship with the State by insuring that the State mandates could not be used to permit unconstitutional searches, the Court finds that Plaintiffs did in fact prevail in this lawsuit and are thus entitled to attorney's fees.

### B. Determination of Fees Due

The State stated in its opposition memorandum that it does not challenge Plaintiffs' requested hourly billing rates, representations of counsels' level of expertise and experience in the field, or Plaintiff's stated costs in general. *See* Defs' Mem. Opp., at 1. However, the State does challenge three specific aspects of Plaintiffs' requested

relief: (1) that fees for calls between Plaintiffs' New York and New Orleans counsel should only be billed once rather than by both attorneys; (2) that billing in standard increments for calls that took considerably less time should be reduced accordingly; and (3) that billing at standard rates for counsel filing court documents is inappropriate where runners or other staff could have easily accomplished the same.

### 1. Calls Between Co-Counsel

**\*3** In another case, this Court previously addressed the argument that fees should be reduced for calls between co-counsel. *See Feinberg v. Hibernia Corp.,* 966 F.Supp. 442, 448 (E.D.La.1997). The Court refused to reduce the full billing by each attorney and observed that "[c]onsultation and 'sound-boarding' among attorneys is valuable to effective litigation ..." *Id.* The Court finds the same reasoning applies here. Furthermore, there has been no representation that the phone calls were excessive. Therefore, the Court will not reduce the fees requested by Plaintiffs for calls between co-counsel.

### 2. Standard Billing Increments

In *Roubideaux v. Cox,* 601 F.Supp. 174 (D.S.D.1985), the court found that "[d]efendants' detailed objections to each time entry of plaintiff's counsel, in some cases going so far as to demand that a request for twelve minutes work be reduced to two minutes, is nothing more than carping." *Id. at 176.* This Court similarly rejects the State's request to reduce standard billing increments in this case. Furthermore, the Local Rule on attorney's fees awards, LR 54.2, provides no requirement regarding billing increments. Law firms routinely bill in standard increments, most often six minutes (tenths of hours), ten minutes (sixths of hours), or fifteen minutes (quarters of hours). It would be inappropriate judicial micro-management to mandate billing practices by reducing a private firm's properly and adequately documented attorney's fees from the standard billing increment employed by the firm. Accordingly, the Court will not reduce the standard billing increments as urged by the State.

### 3. Filing Fees

Unlike the State's other two arguments, the Court does find merit in the State's contention that Plaintiffs should not recover full attorney billing rates for filing court

documents when runners or other staff could have easily accomplished the same. " 'It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate.' " *Cruz v. Hauch,* 762 F.2d 1230, 1235 (5th Cir.1985) (quoting *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir.1974)).

The State requests that the Court reduce the billing rates for 4.75 hours claimed by Plaintiffs for court filings. Of that time however, 1.25 hours was spent filing TROs and/or preliminary injunctions, 0.75 hours on February 19, 1999 and 0.50 hours on July 16, 1999. It is common practice in this courthouse for attorneys to file TROs and preliminary injunctions in person so that the attorneys can speak with chambers staff and generally be available to set hearing on these requests for expedited extraordinary relief as soon as possible. Therefore, the Court finds that the 1.25 hours billed at full attorney billing rates for filing TROs/preliminary injunctions should not be reduced. However, the Court does find it proper to reduce the other 3.50 hours billed for court filing from the full attorney billing rate of $250 per hour to a reasonable clerical rate of $50 per hour. Accordingly, the Court reduces the overall claim for attorneys' fees and costs by $875.

### 4. *Other Claimed Fees Not Objected To*

**\*4** The Court finds all the other fees and costs claimed by Plaintiffs to be reasonable, compensable and fully and adequately documented. Accordingly, the Court exercises its discretion to award those fees and costs to Plaintiffs.

## III. CONCLUSION

For the reasons stated above, the Court awards Plaintiffs attorneys' fees and costs in the amount of $52,631.36, which represents the $53,506.36 claimed by Plaintiffs less the $875 by which the Court reduced the claim.

Accordingly, IT IS ORDERED that Plaintiffs' Motion for Attorneys' Fees and Costs (Rec.Doc. 34) is hereby GRANTED IN PART. IT IS FURTHER ORDERED that Defendants owe Plaintiffs $52,631.36 in attorneys' fees and costs.

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 533515

---

Footnotes

1   Plaintiffs challenged state action, i.e., the order, regulation, and statute, as unconstitutional under the provisions of 42 U.S.C. § 1983. Accordingly, attorney's fees are available under 42 U.S.C. § 1988(b), which provides in part:
    In any action or proceeding to enforce a provision of section [ ] ... 1983 [and other various civil rights statutes], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ...
    *Id.*

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# **<u>Tab 5</u>**

2014 WL 1326576
Only the Westlaw citation is currently available.
United States District Court,
D. Hawai'i.

Jack CRAWFORD, Plaintiff,

v.

JAPAN AIRLINES; Jalways Co.,
Ltd.; Hawaii Aviation Contract
Services, Inc.; Does 1–10, Defendants.

Civil No. 03–00451 LEK–KSC.
|
Signed Jan. 21, 2014.
|
Filed Jan. 22, 2014.

**Attorneys and Law Firms**

James Frechter, Forest Hills, NY, Michael Jay Green, Honolulu, HI, for Plaintiff.

Albert H. Ebright, Steven M. Egesdal, William Matsujiro Harstad, Carlsmith Ball LLP, Los Angeles, CA, Andrew L. Pepper, Bronster Hoshibata, Attorneys at Law, A Law Corporation, Gary G. Grimmer, Gary G. Grimmer & Associates, Jennifer B. Lyons, Roeca, Louie & Hiraoka, Joseph F. Kotowski, III, Carl H. Osaki, Honolulu, HI, for Defendants.

*FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT JAPAN AIRLINES' MOTION FOR ATTORNEY'S FEES*

KEVIN S.C. CHANG, United States Magistrate Judge.

**\*1** On May 31, 2013, U.S. District Judge Leslie Kobayashi issued an Order (1) Denying Plaintiff Jack Crawford's Motion for Sanctions Against JAL Defendants, HACS, Carlsmith Ball, Certain Carlsmith Ball Attorneys and Carl Osaki; (2) Denying Defendant Japan Airlines' Motion For The Court to Issue an Order Requiring Plaintiff Jack Crawford to Show His Medical Fitness to Litigate; and (3) Granting Japan Airlines' Motion to Strike Plaintiff Jack Crawford's Supplemental Statement of Authorities Filed Pursuant to LR 7.8 in Support of Plaintiff Jack Crawford's Motion for Sanctions Against JAL Defendants, Filed February 28,

2013 ("Sanction Order"). In the Sanction Order, Judge Kobayashi found that Plaintiff failed to comply with the requirements of Rule 11 and that Plaintiff's motion for sanctions was without merit. Sanction Order at 21. She therefore concluded that Defendants were the prevailing parties entitled to an award of reasonable attorneys' fees, pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure ("FRCP"), that were incurred directly as a result of Plaintiff's filing. *Id.* Judge Kobayashi specified that the amount to be awarded should be sufficient to deter repetition of Plaintiff's conduct. *Id.*

Defendant Japan Airlines ("JAL") timely filed a Motion for Attorney's Fees on June 24, 2013. JAL filed a Statement of Consultation on July 3, 2013. Plaintiff Jack Crawford ("Plaintiff") did not file a response. On July 31, 2013, JAL filed a Reply. [1]

At the direction of the Court, Plaintiff filed a memorandum concerning the propriety of addressing JAL's Motion (or any other matters) when questions concerning the existence of subject matter jurisdiction have been raised. *See* Doc. No. 505.

On September 11, 2013, JAL filed a motion to dismiss. This Court deferred ruling on this Motion until the disposition of JAL's motion to dismiss.

On December 31, 2013, Judge Kobayashi issued an Order Granting Defendant's Motion to Dismiss Plaintiff Jack Crawford's Complaint For Lack of Subject Matter Jurisdiction, concluding that federal diversity jurisdiction was lacking from the outset of this case.

*DISCUSSION*

Insofar as Judge Kobayashi has already concluded that Defendants were the "prevailing parties" pursuant to FRCP 11(c)(2), the Court need not determine whether JAL is entitled to fees. However, the Court must, as an initial matter, ascertain whether it has the authority to issue this Findings and Recommendation when Judge Kobayashi concluded that subject matter jurisdiction is lacking and in fact, never existed. The Court concludes that it does.

Crawford v. Japan Airlines, Not Reported in F.Supp.2d (2014)
2014 WL 1326576

The Supreme Court has held that although a final determination of lack of subject matter jurisdiction precludes all further adjudication of a case in federal court, "such a determination does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction." *Willy v. Coastal Corp.,* 503 U.S. 131, 137 (1992); *In re Exxon Valdez,* 102 F.3d 429, 431 (9th Cir.1996). Because the imposition of Rule 11 sanctions is a collateral matter that does not involve judgment on the merits of an action, a district court does not adjudicate the merits of a "case or controversy" over which it lacks jurisdiction by imposing sanctions. *Willy,* 503 U.S. at 138. District courts have the authority to determine whether an attorney abused the judicial process and assess appropriate sanctions. *Id.*

**\*2** Plaintiff attempts to distinguish this case from *Willy v. Coastal Corp.,* arguing that "there is no Rule 11 sanction against any party or attorney nor a finding that any party or attorney abused the judicial process." Pl.'s Memo. at 4. The Court is not persuaded. Plaintiff abused the judicial process by filing an improper Rule 11 sanction motion that was premature, procedurally defective, and substantively specious. Sanction Order at 17. FRCP 11 specifically contemplates and provides for the recovery of reasonable expenses, including attorneys' fees, by the prevailing party. Fed.R.Civ.P. 11(c)(2). JAL successfully opposed Plaintiff's motion for sanctions and has been deemed the prevailing party.

Plaintiff additionally asserts that the fee issue is not collateral because Judge Kobayashi found that the

sanctions issue was premature. This finding actually bolsters this Court's determination to proceed with evaluating JAL's fee request. Plaintiff should not have filed his sanction motion, as it was not only premature, but also deficient. Plaintiff's conduct provided Judge Kobayashi with a legal basis to conclude that JAL is entitled to fees.

Finally, Plaintiff argues that this case is distinguishable from *Willy* because this is not a case where the Court's jurisdiction was later found to be lacking. To the contrary, that is precisely what happened here. At the time Judge Kobayashi adjudicated Plaintiff's sanction motion, JAL had yet to file its motion to dismiss. Notably, Judge Kobayashi made the legal determination about JAL's entitlement to fees *before* the filing of the motion to dismiss and prior to dismissing this action for lack of subject matter jurisdiction. This Court is not deciding a new legal issue or revisiting Judge Kobayashi's Sanction Order; this Court is merely assessing the reasonableness of the fee request and recommending the amount to be awarded. The legal basis for the award has already been established by the Sanction Order. Accordingly, the Court finds that it may address JAL's Motion notwithstanding the fact that this action has been dismissed, as this Findings and Recommendation merely recommends the amount of the award to which JAL is entitled.

I. *Attorneys' Fees*
JAL requests $74,441,48 in attorneys' fees and tax, as reflected in the following table:

| NAME | HOURS | RATE % | TOTAL |
|---|---|---|---|
| Lawrence Okinaga | 41.6 | $395.00 | $16,432.00 |
| Steve Egesdal | 113.1 | $360.00 | $40,716.00 |
| William Harstad | 50.5 | $210.00 | $10,605.00 |
| Michael Scanlon | 1.1 | $200.00 | $220.00 |
| Lesa Douglas–Wong (paralegal) | 20 | $150.00 | $3,000.00 |
| Rodney Nagasako (office clerk) | 1.2 | $100.00 | $120.00 |
| **Subtotal** | | | $71,093.00 |

| | |
|---|---|
| *TAX (4.71%)* | $3,348.48 |
| **TOTAL** | **$74,441.48**[2] |

A. *Calculation of Fee Award*

Under federal law, reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). *See Fischer v. SJB–P.D., Inc.,* 214 F.3d 1115, 1119 (9th Cir.2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley,* 461 U.S. at 433. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), which have not already been subsumed in the lodestar calculation. *See Fischer,* 214 F.3d at 1119 (citation omitted).

**\*3** The factors articulated by the Ninth Circuit in *Kerr* are as follows:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case,

(5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys,

(10) the "undesirability" of the case,

(11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr,* 526 F.2d at 70.[3]

For Rule 11 sanctions, "[t]here is no need to rigidly apply the factors set forth in [*Kerr* ], but the court must make some evaluation of the fee breakdown submitted by counsel." *Yagman,* 796 F.2d at 1185. Once calculated, the "lodestar" is presumptively reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483

U.S. 711, 728 (1987); *see also Fischer,* 214 F.3d at 1119 n. 4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

1. *Hourly Rate*

JAL requests the following hourly rates for its counsel, paralegal, and office clerk: 1) Mr. Okinaga—$395.00; 2) Mr. Egesdal—$360.00; 3) Mr. Harstad—$210.00; 4) Mr. Scanlon—$200.00; 5) Ms. Douglas-Wong—$150.00; and 6) Mr. Nagasako—$100.00. In determining the reasonableness of an hourly rate, the experience, skill, and reputation of the attorney requesting fees are taken into account. *See Webb v. Ada County,* 285 F.3d 829, 840 & n.6 (9th Cir.2002). The reasonable hourly rate should reflect the prevailing market rates in the community. *See id.; Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir.1992), *as amended on denial of reh'g,* (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district"). It is the burden of the fee applicant to produce satisfactory evidence, in addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services. *See Jordan v. Multnomah County,* 815 F.2d 1258, 1263 (9th Cir.1987).

This Court is well aware of the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill and reputation. Based on this Court's knowledge of the community's prevailing rates, the hourly rates generally granted by the Court, the Court's familiarity with this case, and JAL's counsel's submissions, this Court finds that with the exception of Mr. Harstad's hourly rate, the requested hourly rates are excessive.

In addition, although JAL requests fees for Mr. Nagasako, "only the reasonable hours incurred by attorneys and paralegals [are] compensable. This Court does not compensate for the time expended by other professionals such as librarians, litigation specialists, litigation coordinators, or legal assistants." *HRPT Props. Trust v. Lingle,* 775 F.Supp.2d 1225, 1239–40 (D.Haw.2011). According to JAL, Mr. Nagasako has a certificate in paralegal studies. However, just as someone

Crawford v. Japan Airlines, Not Reported in F.Supp.2d (2014)

2014 WL 1326576

with a law degree acting in the capacity of a paralegal would not be treated as an attorney, Mr. Nagasako's credentials will not alone transform him into a paralegal if Carlsmith employs him as an office clerk. Thus, the Court will not designate an hourly rate for Mr. Nagasako. [4]

**\*4** In view of the foregoing, the Court reduces the requested hourly rates and concludes that the following hourly rates are reasonable: 1) Mr. Okinaga—$375.00; 2) Mr. Egesdal—$300.00; 3) Mr. Harstad—$210.00; 4) Mr. Scanlon—$150.00; and 5) Ms. Douglas–Wong—$85.00.

### 2. *Hours Reasonably Expended*

Beyond establishing a reasonable hourly rate, a prevailing party seeking attorneys' fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained. *See Tirona v. State Farm Mut. Auto. Ins. Co.,* 821 F.Supp. 632, 636 (D.Haw.1993) (citations omitted). The court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable. *Id.* at 637 (citing *INVST Fin. Group v. Chem–Nuclear Sys.,* 815 F.2d 391, 404 (6th Cir.1987), *cert. denied,* 484 U.S. 927 (1987)). This Court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Soler v. G & U, Inc.,* 801 F.Supp. 1056, 1060 (S.D.N.Y.1992) (citation omitted). Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated. *See Gates,* 987 F.2d at 1399 (quoting *Hensley,* 461 U.S. at 433–34).

After careful review of JAL's submissions, the Court finds that reductions for clerical work, insufficient descriptions, and duplication are necessary and appropriate.

### a. *Clerical or Ministerial Tasks*

Some of counsel's time entries reflect billing for clerical/ministerial work, and must be reduced accordingly. "[C]lerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate." *Jeremiah B. v. Dep't of Educ.,* Civil No. 09–00262 DAE–LEK, 2010 WL 346454, at \*5 (D.Haw. Jan. 29, 2010) (citing *Sheffer v. Experian Info. Solutions, Inc.,* 290 F.Supp.2d 538, 549 (E.D.Pa.2003)).

The following is a list of tasks previously deemed clerical or ministerial in this district and therefore deemed non compensable:

> reviewing Court-generated notices; scheduling dates and deadlines; calendering dates and deadlines; notifying a client of dates and deadlines; preparing documents for filing with the Court; filing documents with the Court; informing a client that a document has been filed; personally delivering documents; bates stamping and other labeling of documents; maintaining and pulling files; copying, printing, and scanning documents; receiving, downloading, and emailing documents; and communicating with Court staff. [5]

*Haw. Motorsports Inv., Inc. v. Clayton Group Servs., Inc.,* Civ. No. 09–00304 SOM–BMK, 2010 WL 4974867, at \*5 (D.Haw. Dec. 1, 2010), *adopted by Haw. Motorsports Inv., Inc. v. Clayton Group Servs., NC,* Civ. No. 09–00304 SOM–BMK, 2010 WL 5395669 (D.Haw. Dec. 22, 2010) (also deeming clerical identification and organization of exhibits); *see also, e.g., Yamada v. Weaver,* Civil No. 10–00497 JMS–RLP, 2012 WL 6019363, at \*10 (D.Haw. Aug. 30, 2012), *adopted in pertinent part by Yamada v. Weaver,* Civil No. 10–00497 JMS–RLP, 2012 WL 6019121 (D.Haw. Nov. 30, 2012) (deeming clerical work completed on table of authorities).

**\*5** Here, counsel worked on clerical tasks such as communicating with the court, reviewing court notices, preparing hearing binders, and communicating about word count and table of authorities. Counsel expended the following hours on clerical tasks: 1) Mr. Egesdal—1.8 hours; 2) Mr. Harstad—3.1 hours; and 3) Ms. Douglas–Wong—2.2 hours. Therefore, 7.1 hours should be excluded from JAL's fee award.

### b. *Insufficient Descriptions*

Although counsel's time entries are in large part sufficiently descriptive, certain entries must be excluded

due to the inadequacy of the descriptions. Local Rule 54.3(d)(2) requires that the "party seeking an award of fees must describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated." Local Rule 54.3(d)(2). The rule further provides:

> [C]ounsel should be sensitive to matters giving rise to attorney-client privilege and attorney work product doctrine, but must nevertheless **furnish an adequate non-privileged description of the services in question.** If the time descriptions are incomplete, or if such descriptions fail to describe adequately the services rendered, the court may reduce the award accordingly. For example, the time entries for telephone conferences must include an identification of all participants and the reason for the call.

Local Rule 54.3(d)(2) (emphasis added). Here, multiple entries do not contain the subjects or participants of emails or discussions/meetings, and the Court is therefore unable to determine whether the entries resulted directly from Plaintiff's motion for sanctions. Sanction Order at 21. The following hours can be attributed to insufficient entries: 1) Mr. Okinaga—21.9 hours; 2) Mr. Egesdal—2.3 hours; and 3) Mr. Harstad—1.4 hours. The Court consequently recommends a total reduction of 25.6 hours for insufficient descriptions.

### c. *Duplication*

The Court additionally reduces the attorneys' hours for meetings and discussions for which multiple attorneys billed. The general rule is that two professionals cannot bill for attending the same meeting. *Brandon E. v. Dep't of Educ., State of Hawaii,* No. CV 07–00536 ACK–LEK, 2008 WL 4602533, at *3 (D.Haw. Oct. 16, 2008). Thus, when a party's counsel meet with one other, the Court deducts the duplicative time billed. *Id.; In re Mullins,* 84 F.3d 459, 467 (D.C.Cir.1996) (deducting fees incurred by the two lowest-billing attorneys where three attorneys billed time spent attending a meeting together)). After reviewing counsel's time entries, the Court notes that not all communications between JAL's counsel resulted in duplicate billings, but reductions are warranted in those instances where multiple attorneys submitted billings for the same discussions/meetings.[6]

Similarly, the Court finds duplicative the hours billed for multiple attorneys attending the hearing on the motion for sanctions. Mr. Egesdal and Mr. Harstad submitted time entries for the hearing. The Court will allow Mr. Egesdal's time, but will exclude Mr. Harstad's time. Co-counsel's attendance at hearings and status conferences is understandable, but the resulting duplicative fees should not be taxed against Plaintiff. The reductions are as follows: 1) Mr. Egedsal—3.4 hours; 2) Mr. Harstad—1.6 hours; and 3) Mr. Scanlon—0.2 hours. As a result, the Court further reduces counsel's hours by 5.2.

### d. *Total Fee Award*

**\*6** The Court is satisfied that JAL has established the appropriateness of the following attorneys' fees incurred in the present action:

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| Lawrence Okinaga | 19.7 | $375.00 | $7,387.50 |
| Steve Egesdal | 105.6 | $300.00 | $31,680.00 |
| William Harstad | 44.8 | $210.00 | $9,408.00 |
| Michael Scanlon | 0.9 | $150.00 | $135.00 |
| Lesa Douglas–Wong (paralegal) | 18.1 | $85.00 | $1,538.50 |
| Rodney Nagasako (office clerk) | 0 | $0.00 | $0.00 |

| Subtotal | $50,149.00 |
|---|---|
| *TAX (4.71%)* | $2,362.02 |
| **TOTAL** | **$52,511.02** |

The Court accordingly recommends that JAL recover $52,511.02 in fees and tax. There is no basis to adjust this lodestar.

## II. *Costs*

JAL also requests $4,947.12 in costs, which includes $42.94 in international telephone charges, $4,537.93 in electronic research, and $366.25 for photocopies. FRCP 11(c)(2) authorizes recovery of reasonable expenses. Fed.R.Civ.P. 11(c)(2) ("[ T] he court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."). The Sanction Order did not expressly award costs, but given the Order's citation to and reliance on FRCP 11(c)(2), this Court believes that reasonable costs are also recoverable.

The Court finds that the international telephone charges and the research charges were reasonably incurred. *Jackson v. McKay–Davis Funeral Home,* No. 07–C–1037, 2013 WL 627055, at *1 (E.D.Wis. Feb. 20, 2013) (finding reasonable Westlaw charges incurred in opposition to the plaintiff's Rule 11 motion). However, JAL has not provided sufficient information for the Court to ascertain whether the copying costs were reasonable, and the copying rate was $0.25 per page, when this Court authorizes copying at $0.15 per page. Local Rule 54.2(f)(4) provides:

> The cost of copies necessarily obtained for use in the case is taxable provided the party seeking recovery submits an affidavit describing the documents copies, the number of pages copied, the cost per page,

and the use of or intended purpose for the items copied. As of the effective date of these rules, the practice of this court is to allow taxation of copies at $.15 per page or the actual cost charged by commercial copiers, provided such charges are reasonable. The cost of copies obtained for the use and/or convenience of the party seeking recovery and its counsel is not taxable.

Local Rule 54.2(f)(4). [7] Without information about what copies were made and for what purpose, the Court is unable to assess the reasonableness of the request. Consequently, the Court declines to recommend that the copying costs be awarded. The Court concludes that JAL reasonably incurred **$4,580.87** in costs.

## *CONCLUSION*

In accordance with the above analysis, the Court HEREBY FINDS AND RECOMMENDS that JAL's Motion for Attorney's Fees be GRANTED IN PART AND DENIED IN PART and that JAL be awarded **$52,511.02** in attorneys' fees and tax and **$4,580.87** in costs.

**\*7** IT IS SO FOUND AND RECOMMENDED.

**All Citations**

Not Reported in F.Supp.2d, 2014 WL 1326576

Footnotes

1  In its Reply, JAL argues that because Plaintiff failed to timely respond to its Motion, Plaintiff waived any right to contest the Motion, and that its fees and costs should be awarded in full. The Court agrees that Plaintiff has waived any right to challenge the Motion, but the Court will not summarily grant the Motion. Even in the absence of objections by an opposing party, the Court conducts its own evaluation of reasonableness. *Matter of Yagman,* 796 F.2d 1165, 1184–85 (9th Cir.1986) ("When the sanctions award is based upon attorney's fees and related expenses, an essential part of

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works. 6

2014 WL 1326576

determining the reasonableness of the award is inquiring into the reasonableness of the claimed fees. Recovery should never exceed those expenses and fees that were reasonably necessary to resist the offending action.").

2    The Court's calculations differ from those set out in the time sheets. For example, Mr. Harstad's total hours in his 4/2/13 entry under "Case Development" was 2.2 hours, but the total of the itemized time entries in the narrative section is 2.1 hours. The itemized narrative reflects that Ms. Douglas–Wong expended 5.4 hours on 4/2/13 (under "Motions Practice"), but the calculation provided by counsel is 5.1 hours. The Court will rely on its own calculations.

3    Factors one through five have been subsumed in the lodestar calculation. *See Morales v. City of San Rafael,* 96 F.3d 359, 364 n. 9 (9th Cir.1996). Further, the Ninth Circuit, extending *City of Burlington v. Dague,* 505 U.S. 557, 567 (1992), held that the sixth factor, whether the fee is fixed or contingent, may not be considered in the lodestar calculation. *See Davis v. City & County of San Francisco,* 976 F.2d 1536, 1549 (9th Cir.1992), *vacated in part on other grounds,* 984 F.2d 345 (9th Cir.1993).

4    Even if an office clerk's time was compensable, Mr. Nagasako's time would be excluded because the tasks he completed were clerical. The Court later discusses reductions for time expended on clerical tasks.

5    This list is a sampling and is not exhaustive.

6    For example, on January 18, 2013, Mr. Okinaga and Mr. Egesdal billed time for a conference. Mr. Okinaga's time is allowable, but Mr. Egesdal's time is duplicative.

7    The Court recognizes that this rule pertains to taxable costs. However, this is the standard the Court employs in assessing taxable and non-taxable copying costs to ensure consistency.

---

**End of Document** © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# **<u>Tab 6</u>**

2014 WL 1326580
Only the Westlaw citation is currently available.
United States District Court,
D. Hawai'i.

Jack CRAWFORD, Plaintiff,

v.

JAPAN AIRLINES; Jalways Co., Ltd., a subsidiary
of Japan Airlines; Hawaii Aviation Contract
Services, Inc.; and Does 1–10, Defendants.

Civil No. 03–00451 LEK–KSC.
|
Signed March 28, 2014.

**Attorneys and Law Firms**

James Frechter, Forest Hills, NY, Michael Jay Green,
Honolulu, HI, for Plaintiff.

Albert H. Ebright, Carlsmith Ball LLP, Los Angeles,
CA, Andrew L. Pepper, Bronster Hoshibata, Attorneys
at Law, A Law Corporation, Gary G. Grimmer, Gary
G. Grimmer & Associates, Jennifer B. Lyons Roeca,
Louie & Hiraoka, Joseph F. Kotowski, III, Steven M.
Egesdal, William Matsujiro Harstad, Carlsmith Ball LLP,
Honolulu, HI, for Defendants.

*ORDER: 1) GRANTING PLAINTIFF'S
OBJECTIONS TO THE MAGISTRATE JUDGE'S
FINDINGS AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART
DEFENDANT HAWAII AVIATION CONTRACT
SERVICES, INC.'S MOTION FOR AWARD OF
ATTORNEY'S FEES AND REJECTING THE
FINDINGS AND RECOMMENDATION; AND
2) DENYING PLAINTIFF'S OBJECTIONS
TO THE MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDATION TO GRANT IN
PART AND DENY IN PART DEFENDANT
JAPAN AIRLINES' MOTION FOR
ATTORNEY'S FEES AND ADOPTING THE
FINDINGS AND RECOMMENDATION*

LESLIE E. KOBAYASHI, District Judge.

**\*1** On January 21, 2014, the magistrate judge filed
the Findings and Recommendation to Grant in Part

and Deny in Part Defendant Hawaii Aviation Contract
Services, Inc.'s Motion for Award of Attorney's Fees
("HACS F & R") and the Findings and Recommendation
to Grant in Part and Deny in Part Defendant Japan
Airlines' Motion for Attorney's Fees ("JAL F & R").
[Dkt. nos. 531, 532.] Before the Court are Plaintiff Jack
Crawford's ("Crawford") objections to the HACS F &
R ("HACS Objections"), filed on February 4, 2014,
and Crawford's objections to the JAL F & R ("JAL
Objections"), filed on February 5, 2014. [Dkt. nos. 533,
534.] HACS and JAL (collectively "Defendants') each
filed its response on February 18, 2014. [Dkt. nos. 536,
535.] The Court finds these matters suitable for disposition
without a hearing pursuant to Rule LR7.2(e) of the
Local Rules of Practice of the United States District
Court for the District of Hawaii ("Local Rules"). After
careful consideration of the objections, responses, and the
relevant legal authority, this Court HEREBY GRANTS
the HACS Objections and REJECTS the HACS F &
R, and HEREBY DENIES the JAL Objections and
ADOPTS the JAL F & R, for the reasons set forth below.

## BACKGROUND

In December 2002, Crawford and then-co-plaintiff Martin
Ventress ("Ventress") filed their Complaint for Damages
("Complaint") against JAL, its subsidiary, JALways, Co.,
Ltd. ("JALways"), [1] and HACS in the United States
District Court for the Central District of California. [2]
[Dkt. no. 23.] The Complaint alleged diversity jurisdiction.
[Id. at ¶ 8.] According to the Complaint, at the time of
filing, Crawford, who was a pilot for JAL and HACS, was
a United States citizen domiciled in California. [Id. at ¶¶ 5,
11.] Crawford later repudiated that assertion and claimed
that his domicile at the time he filed the Complaint was
Alabama. [Pltf.'s Decl. of Domicile, filed 8/7/13 (dkt. no.
500), at ¶ 1.]

On September 13, 2013, JAL filed its Motion to Dismiss
Plaintiff Jack Crawford's Complaint for Lack of Subject
Matter Jurisdiction ("Motion to Dismiss"). [Dkt. no. 510.]
JAL argued that there was no diversity of citizenship
in this case because, at the time Crawford filed the
Complaint, he was an expatriate residing in Thailand,
and therefore he was "stateless" for purposes of diversity
jurisdiction. On December 31, 2013, this Court issued
an order granting the Motion to Dismiss ("Dismissal
Order"). [Dkt. no. 528.] Although this Court found that

Crawford v. Japan Airlines, Not Reported in F.Supp.2d (2014)

2014 WL 1326580

it was not necessary to determine exactly where Crawford was domiciled at the time he filed the Complaint, this Court found that Crawford failed to identify a genuine issue of material fact as to the issue of whether Alabama was his domicile. This Court therefore concluded that there was no federal diversity jurisdiction over this case from the outset.

On January 18, 2013, well before this Court ruled that it did not have subject matter jurisdiction over Crawford's case, Crawford filed his "Motion for Sanctions Against JAL Defendants, HACS, Carlsmith Ball, Certain Carlsmith Ball Attorneys, and Carl Osaki" ("Sanctions Motion"). [3] [Dkt. no. 405] Crawford asked this Court to "impose appropriately severe sanctions under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927 and the Court's inherent authority to sanction bad faith litigation, and also refer the responsible attorneys to the Hawaii State Bar and the Bar of this Court for appropriate disciplinary action." [Mem. in Supp. of Sanctions Motion at 4.] This Court denied the Sanctions Motion in a May 31, 2013 order ("Sanctions Order"). [Dkt. no. 453 . [4]] This Court found that, to the extent that the Sanctions Motion was based on Crawford's qualification to fly, that issue had not been fully litigated, and Crawford's argument that Defendants' position was frivolous was premature. This Court also found that his "request for Rule 11 sanctions [was] both procedurally defective and substantively specious" and denied the request. Sanctions Order, 2013 WL 2420715, at *7. Further, this Court concluded that Crawford failed to meet "the more stringent subjective bad faith standard" of § 1927 and that sanctions pursuant to this Court's inherent power were not warranted. Id. at *8–9.

**\*2** Based on its findings that Crawford failed to comply with Rule 11's procedural requirements and that the Sanctions Motion was "substantively without merit," this Court concluded that "Defendants, and any additional sanctions targets, are the prevailing parties" and, pursuant to Fed.R.Civ.P. 11(c)(2), "these responding parties and counsel are entitled to their reasonable attorneys' fees resulting directly from Plaintiff's filing, in an amount sufficient to deter repetition of such conduct." Id. at *9. Pursuant to the Sanctions Order, JAL and HACS each filed a motion for attorneys' fees ("JAL Fee Motion" and "HACS Fee Motion") on June 24, 2013. [Dkt. nos. 469, 470.] The magistrate judge deferred ruling on the motions for attorneys' fees pending the disposition of the Motion

to Dismiss. [EO, filed 9/12/13 (dkt. no. 512).] Thus, the magistrate judge issued the HACS F & R and the JAL F & R after the Dismissal Order.

In the HACS F & R, the magistrate judge recommended granting the HACS Fee Motion in part and denying it in part. The magistrate judge recommended reducing the requested award of $12,796.79 to $7,972.61. In the JAL F & R, the magistrate judge recommended reducing the requested award of $74,441.48 in attorneys' fees and $4,947.12 in costs to $52,511.02 in attorneys' fees and $4,580.87 in costs.

The instant objections followed.

### *STANDARD*

This district court reviews a magistrate judge's findings and recommendations regarding an award of attorneys' fees under the following standard:

> When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz,* 447 U.S. 667, 673 (1980); *United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise.").

> Under a de novo standard, this Court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." *Freeman v. DirecTV, Inc.,* 457 F .3d 1001, 1004 (9th Cir.2006); *United States v. Silverman,* 861 F.2d 571, 576 (9th Cir.1988). The district court need not hold a de novo hearing; however, it is the court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendation to which a party objects. *United States v. Remsing,* 874 F.2d 614, 616 (9th Cir.1989).

*Valencia v. Carrington Mortg. Servs., LLC,* Civil No. 10–00558 LEK–RLP, 2013 WL 3223628, at *5 (D. Hawai'i June 25, 2013).

## *DISCUSSION*

### I. *Whether Crawford Sought Sanctions Against HACS*

At the outset, the HACS Objections argue that the magistrate judge should not have considered the HACS Fee Motion because Crawford never sought Rule 11 sanctions against HACS or HACS's counsel. In the Sanctions Order, this Court denied Crawford's request for Rule 11 sanctions in its entirety, 2013 WL 2420715, at *7, and awarded attorneys' fees pursuant to Rule 11(c)(2) to, *inter alia,* HACS and HACS's counsel:

> **\*3** The Court finds that Plaintiff failed to comply with the procedural requirements of Rule 11 and that the Plaintiff's Motion is substantively without merit. The Court therefore concludes that Defendants, and any additional sanctions targets, are the prevailing parties. Accordingly, these responding parties and counsel are entitled to their reasonable attorneys' fees resulting directly from Plaintiff's filing, in an amount sufficient to deter repetition of such conduct....

*Id.* at *9. Thus, Crawford's first objection to the HACS F & R is essentially an untimely objection to the Sanctions Order, which this Court filed on May 31, 2013. *See* Local Rule LR60.1 (stating that motions asserting "[m]anifest error of law or fact" pursuant to subsection (c) "must be filed not more than fourteen (14) days after the court's written order is filed."). Although Crawford filed the HACS Objections on February 4, 2014, this Court, in its discretion, will still consider Crawford's argument.

According to the pertinent section headings in the Sanctions Motion, Crawford asked this Court to impose: Rule 11 sanctions "JOINTLY ON THE JAL DEFENDANTS, CARLSMITH BALL AND ANNA M. ELENTO–SNEED;" [Mem. in Supp. of Sanctions Motion at 18 (emphasis in original);] sanctions pursuant to 28 U.S.C. § 1927 against "CARLSMITH BALL AND CARLSMITH BALL PARTNERS ANDREW PEPPER, STEVEN EGESDAL AND MATTHEW MATSUNAGA, AND UPON HACS ATTORNEY CARL OSAKI [sic];" [*id.* at 30;] and sanctions pursuant to this Court's inherent authority against

"DEFENDANTS AND THEIR COUNSEL" [*id.* at 34]. These indicate that Crawford only sought § 1927 and inherent authority sanctions against HACS and HACS's counsel.

In its Response to the HACS Objections, HACS argues that the Sanctions Motion did seek Rule 11 sanctions against it and its counsel. [Response to HACS Objections at 3–4 (quoting Mem. in Supp. of Sanctions Motion at 4, 30, 37).] The first passage that HACS relies on stated:

> "Given (a) the severity of the collusive misconduct by Defendants and their counsel, (b) that the attorneys involved are all experienced, senior attorneys, and (c) the evidence of calculated, deliberate bad faith and utter lack of concern for the consequences of their misconduct, the Court should impose appropriately severe sanctions under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927 and the Court's inherent authority to sanction bad faith litigation...."

[Mem. in Supp. of Sanctions Motion at 4.] Similarly, the conclusion of the Sanctions Motion argued:

> Plaintiff's motion for an order levying sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927 and the Court's inherent authority, against the JAL Defendants, HACS, Carlsmith Ball, Anna M. Elento–Sneed, Andrew Pepper, Steven Egesdal, Matthew M. Matsunaga and Carl Osaki, should be granted in its entirety....

[*Id.* at 37.] These passages do not indicate that Crawford sought Rule 11 sanctions against HACS and HACS's counsel. They are merely summaries of his arguments for sanctions in general, and Rule 11 was only one basis of his request for sanctions.

**\*4** HACS also relies upon the section of the Sanctions Motion discussing the "Appropriate Rule 11 Sanctions."

Case 4:09-cv-01237  Document 755-3  Filed on 06/30/17 in TXSD  Page 50 of 91
Crawford v. Japan Airlines, Not Reported in F.Supp.2d (2014)
2014 WL 1326580

Crawford stated, "**Defendants** and their counsel have unwaveringly insisted that their reason and basis for terminating Crawford was precisely that ..., as Carlsmith Ball attorney Matsunaga put it, Crawford had 'lost his license to fly.' " [Mem. in Supp. of Sanctions Motion at 30 (emphasis added).] Although in portions of the Sanctions Motion, Crawford used the term "Defendants" to refer to JAL, JALways, and HACS and the term "JAL Defendants" to refer to JAL and JALways, *see, e.g.*, Mem. in Supp. of Sanctions Motion at 2, the quotation that HACS relies upon in its Response to the HACS Objections appeared in section III.C., which was titled "Appropriate Rule 11 Sanctions," *id.* at 28. The previous two sections were III.A., "THE COURT SHOULD IMPOSE RULE 11 SANCTIONS JOINTLY ON THE JAL DEFENDANTS, CARLSMITH BALL AND ANNA M. ELENTO–SNEED," and III.B., "The JAL Defendants and their Attorneys Violated Rule 11." [*Id.* at 18, 24 (emphasis in original).] Thus, while not the model of clarity, it appears that Crawford used the term "Defendants" in III.C. to refer to JAL and JALways.

Based on further review of the Sanctions Motion, this Court concludes that Crawford did not seek Rule 11 sanctions against HACS and HACS's counsel, and this Court erroneously awarded attorneys' fees pursuant to Rule 11(c)(2) to HACS and HACS's counsel. This Court therefore WITHDRAWS the award of attorneys' fees to HACS and HACS's counsel. In light of the withdrawal, this Court GRANTS the HACS Objections and REJECTS the HACS F & R.

## II. *Jurisdiction*

As a threshold matter in the JAL Objections, Crawford argues that this Court does not have the authority to award "statutory prevailing party attorneys' fees" because this Court has ruled that it does not have subject matter jurisdiction over Crawford's Complaint. [JAL Objections at 2.]

In finding that he could address the JAL Fee Motion, the magistrate judge stated:

> The Supreme Court has held that although a final determination of lack of subject matter jurisdiction precludes all further adjudication of a case in federal court, "such a determination does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the

misapprehension that it had jurisdiction." *Willy v. Coastal Corp.,* 503 U.S. 131, 137 (1992); *In re Exxon Valdez,* 102 F.3d 429, 431 (9th Cir.1996).

Because the imposition of Rule 11 sanctions is a collateral matter that does not involve judgment on the merits of an action, a district court does not adjudicate the merits of a "case or controversy" over which it lacks jurisdiction by imposing sanctions. *Willy,* 503 U.S. at 138. District courts have the authority to determine whether an attorney abused the judicial process and assess appropriate sanctions. *Id.*

[JAL F & R at 4–5.] In the JAL Objections, Crawford argues that *Willy* is inapplicable to the instant case because the instant case "involves only a prevailing party fee award under Rule 11(c)(2) and does not involve a Rule 11(b) sanction." [JAL Objections at 3 (emphasis omitted).] Crawford, however, cites no case law supporting such a narrow interpretation of *Willy.*

**\*5** Crawford argues that:

> Other cases finding that district courts properly exercise jurisdiction to award attorneys' fees where subject matter jurisdiction is found to have been lacking are generally limited to instances involving statutory provisions specifically authorizing an award of attorneys' fees where subject matter jurisdiction is lacking, i.e. improvident removal pursuant to 28 U.S.C. § 1447(c).

[JAL Objections at 3–4 (citing *Moore v. Permanente Medical Group, Inc.,* 981 F.2d 443 (9th Cir.1992); *Mints v. Education Testing Service,* 99 F.3d 1253 (3d Cir.1996)).] Although *Willy* involved an action that the Fifth Circuit Court of Appeals held was improperly removed, 503 U.S. at 132–33, the United States Supreme Court did not rely on § 1447(c) in holding that the district court had the authority to impose Rule 11 sanctions. Ultimately, the Supreme Court held that:

> The interest in having rules of procedure obeyed ... does not disappear upon a subsequent determination that the court was without subject-

Crawford v. Japan Airlines, Not Reported in F.Supp.2d (2014)

2014 WL 1326580

matter jurisdiction.... [T]here is no constitutional infirmity under Article III in requiring those practicing before the courts to conduct themselves in compliance with the applicable procedural rules in the interim, and to allow the courts to impose Rule 11 sanctions in the event of their failure to do so.

*Id.* at 139. Thus, this Court had the authority to enforce the rules of procedure during the pendency of this case even though this Court ultimately ruled that it did not have subject matter jurisdiction over the case. This Court therefore DENIES Crawford's objection that this Court lacks jurisdiction to award attorneys' fees to JAL pursuant to Fed.R.Civ.P. 11(c)(2).

### III. *Objections to the Calculation of the Total Award*

Crawford argues that the magistrate judge failed to evaluate the reasonableness of the work that JAL's counsel performed. This objection is DENIED because the magistrate judge clearly reviewed the reasonableness of the hours reflected in the requested fee award within the lodestar analysis.

This Court next turns to Crawford's objection that the magistrate judge's "award of $2,362.02 in tax and $4,580.87 in costs, pursuant to Fed.R.Civ.P. 11(c)(2), is unsupported and without a basis in law." [JAL Objections at 7.] Rule 11(c)(2) states, in pertinent part: "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." An award of reasonable costs is clearly within the meaning of the term "reasonable expenses." Further, it is common practice in this district court to award the associated general excise tax with an award of reasonable attorneys' fees. *See, e.g., Hawaii Tapers Health & Welfare Fund v. B & A Builders Inc.,* Civ. No. 13–00208 JMS–RLP, 2014 WL 957457, at *5 (D. Hawai'i Mar. 12, 2014); *Hawaii Glaziers Trust Funds v. Island Glazing, Inc.,* No. CV 13–00448 SOM–RLP, 2014 WL 819208, at *6 & n. 4 (D. Hawai'i Mar. 3, 2014); *Au v. Republic State Mortg. Co.,* Civ. No. 11–00251 JMS–KSC, 2014 WL 770291, at *9 (D. Hawai'i Feb. 25, 2014). This Court therefore DENIES Crawford's objection to the legal basis for the recommended award of taxes and costs.

*6 Crawford's next objection is that the magistrate judge should have excluded the attorneys' fees and costs incurred in responding to: his request for § 1927 sanctions; his request for sanctions pursuant to this Court's inherent authority; his request for sanctions against Carlsmith Ball; and his request for sanctions against Elento–Sneed. Crawford is correct that the award of attorneys' fees was limited to the fees incurred in responding to the request for Rule 11 sanctions, as opposed to responding to the § 1927 or inherent powers request. Crawford, however, has not identified any specific hours of the fee request that were attributable solely to the § 1927 issue or the inherent powers issue. Further, this Court concludes that a percentage apportionment of fees attributable only to the Rule 11 request is not warranted in this case because Crawford's requests for sanctions, based on three different legal theories, shared the same factual basis. *See, e.g .,* Mem. in Supp. of Sanctions Motion at 2 (arguing that JAL, JALways, HACS, and their respective counsel, "have defended this wrongful termination action for nearly ten years on the grounds—now exposed as utter fabrication—that the Japan Civil Aviation Bureau (the "JCAB") revoked Plaintiff Capt. Jack Crawford's pilot credentials and that Capt. Crawford was necessarily terminated as a consequence").

As to Crawford's argument that JAL is not entitled to fees attributable to responding to his request for sanctions against Carlsmith Ball and against Elento–Sneed, this Court notes that, during the events at issue in the Sanctions Motion, Elento–Sneed was an attorney with Carlsmith Ball, which represented JAL. JAL filed a single memorandum in opposition to the Sanctions Motion, and the memorandum in opposition addressed both the request for sanctions against JAL and the request for sanctions against JAL's counsel. Assuming, *arguendo,* that some of the award of attorneys' fees is due to JAL as reimbursement of attorneys' fees it paid and some of the award is due directly to JAL's counsel, that distribution is JAL's responsibility and is not grounds for Crawford to object to the award itself.

This Court therefore DENIES Crawford's objection that the magistrate judge should have reduced the award of attorneys' fees to JAL to reflect only work on the Rule 11 issue and should have excluded work on the request for sanctions against JAL's counsel.

Case 4:09-cv-01237 Document 755-3 Filed on 06/30/17 in TXSD Page 52 of 91
Crawford v. Japan Airlines, Not Reported in F.Supp.2d (2014)
2014 WL 1326580

Finally, Crawford objects to the recommended fee award to JAL on the ground that the award should only be a minimal amount sufficient for deterrence. Fed.R.Civ.P. 11(c)(4) states, in pertinent part:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include ..., if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

*7 Michael J. Green, Esq., James A. Frechter, Esq., and Martin Sterenbuch, Esq., signed the Sanctions Motion. [Sanctions Motion at 3.] Crawford's pro hac vice counsel, Mr. Frechter and Mr. Sterenbuch, apparently authored the Sanctions Motion, and Crawford's local counsel, Mr. Green, argued the motion at the hearing before this Court. [Trans. of 4/8/13 Hrg., filed 6/4/13 (dkt. no. 456), at 7 (Mr. Green states, "I agreed to argue this motion for counsel.") .] Crawford submitted an extensive declaration in support of the Sanctions Motion.

Under the circumstances of this case, where the request for Rule 11 sanctions was "procedurally defective," as well as "substantively specious" and "without merit," Sanctions Order, 2013 WL 2420715, at *7, *9, this Court finds that the recommended award of $52,511.02 in attorneys' fees and $4,580.87 in costs, for a total award of $57,091.89, is an appropriate amount to deter Crawford, Crawford's counsel, and other similarly situated parties and their counsel, from filing similar motions. This Court therefore DENIES Crawford's objection that the recommended award is more than is necessary for deterrence.

**IV.** *Award in Favor of JAL*
Having denied all of Crawford's objections to the JAL F & R, this Court ADOPTS the JAL F & R in its entirety. Further, this Court ORDERS Crawford to pay fifty percent of the $57,091.89 total award ($28,545.94) and ORDERS Crawford's counsel to pay fifty percent of the $57,091.89 total award ($28,545.95). Michael Green, James Frechter, and Martin Sterenbuch shall be jointly and severally liable for the portion of the total award attributable to Crawford's counsel.

### *CONCLUSION*

On the basis of the foregoing, Crawford's Objections to the magistrate judge's Findings and Recommendation to Grant in Part and Deny in Part Defendant Hawaii Aviation Contract Services, Inc.'s Motion for Award of Attorney's Fees, filed February 4, 2014, are HEREBY GRANTED, and Crawford's Objections to the magistrate judge's Findings and Recommendation to Grant in Part and Deny in Part Defendant Japan Airlines' Motion for Attorney's Fees, filed February 5, 2014, are HEREBY DENIED. This Court therefore REJECTS the magistrate judge's HACS F & R and ADOPTS the magistrate judge's JAL F & R as the order of this Court.

This Court ORDERS Crawford's counsel to arrange the transmission of the total award to JAL, through JAL's counsel, by **May 27, 2014.**

There being no other pending matters, this Court directs the Clerk's Office to enter judgment and close the case.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2014 WL 1326580

Footnotes

1   Where appropriate, this Court will refer to JAL and JALways collectively as "the JAL Defendants." On December 3, 2010, the JAL Defendants filed a Supplemental Corporate Disclosure Statement stating that, "[a]s of December 1, 2010, JAL and JALways merged into a single Japan corporation, with JAL the surviving corporation." [Dkt. no. 394.] Thus, JALways is not an active Defendant in this case.

2   On November 14, 2007, the magistrate judge approved the parties' Stipulation for Complete Severance under Fed.R.Civ.P. 21 of Plaintiffs' Cases for All Purposes. [Dkt. no. 267.] Ventress's claims were adjudicated in CV 07–00581 LEK–RLP.

3   The Carlsmith Ball firm represents JAL, and Mr. Osaki represents HACS.

4   The Sanctions Order is also available at 2013 WL 2420715.

---

**End of Document**                     © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# **<u>Tab 7</u>**

Daniels v. Progressive Turf, LLC, Not Reported in F.Supp.2d (2006)

2006 WL 2589114

2006 WL 2589114
Only the Westlaw citation is currently available.
United States District Court,
E.D. Texas, Sherman Division.

Ralph S. DANIELS, Daniels Plant Food
Inc., Carrie Lee Mahoney as Trustee of
RDR Trust and RDR Trust, Plaintiffs,

v.

PROGRESSIVE TURF, LLC, Defendant.

No. 4:05-CV-394.
|
Sept. 7, 2006.

**Attorneys and Law Firms**

Thomas Scott Smith, Smith & Smith, Sherman, TX, for
Plaintiffs.

Millard Othello Anderson, Jr., Millard Anderson,
Attorney at Law, McKinney, TX, for Defendant.

*MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION
FOR AWARD OF ATTORNEYS' FEES*

SCHELL, J.

 *1  Pending before the court is the Defendant's motion
for award of attorneys' fees (docket entry # 17).
Having considered the Defendant's motion, the Plaintiffs'
response (docket entry # 18), the Defendant's reply
(docket entry # 19) and the Defendant's supplemental
affidavit (docket entry # 21), the court is of the opinion
that the Defendant's motion for attorneys' fees should be
granted.

*ATTORNEYS' FEES*

On December 2, 2005, the court granted the Defendant's
motion to dismiss and dismissed the Plaintiffs' case
with prejudice. The court concluded that (1) the license
agreement contained a valid agreement to arbitrate the
disputes between the Plaintiffs and the Defendant, and
(2) the Plaintiffs' claims fell within the scope of the
arbitration clause. The Defendant is now seeking an

award of attorneys' fees. "The law is clear that in suits
to compel one party to submit to arbitration ..., fees
are generally awarded if the ... party resisting arbitration
did not have a 'reasonable chance to prevail.' " *Hires
Parts Service, Inc. v. NCR Corp.,* 859 F.Supp. 349, 355
(N.D.Ind.1994), citing *Chauffeurs, Teamsters and Helpers,
Local No. 765 v. Stroehmann Brothers,* 625 F.2d 1092, 1094
(3d Cir.1980); *International Association of Machinists v.
Texas Steel Co.,* 538 F.2d 1116, 1121 (5th Cir.1976).

Here, the law is clear that the license agreement's broad
arbitration provision encompassed the Plaintiffs' claims
against the Defendant. Further, in 2004, the Plaintiffs filed
a similar lawsuit against the Defendant under the license
agreement on virtually identical grounds. Def. Mtn. to
Dismiss, p. 5, ¶ 17; Aff. of Richard B. Bradshaw, Jr.
(Attached to Def. Mtn. to Dismiss), p. 3, ¶ VI. That
lawsuit was referred to arbitration as well. *Id.* As such, the
court finds that the Plaintiffs did not have a reasonable
chance of prevailing against the Defendant's motion to
dismiss.

Additionally, the license agreement provides as follows:

> 11.7 *Attorneys' Fees.* In the event of
> any action, suit or other proceeding
> instituted to remedy, prevent or
> obtain relief from a breach of
> this Agreement, or arising out of
> a breach of this Agreement, the
> prevailing party shall recover all of
> such party's reasonable attorneys'
> fees and costs, including expert fees,
> incurred in each and every action,
> suit or other proceeding, including
> any and all appeals or petitions
> therefrom.

Pls. Comp., Exh. A, p. 10, ¶ 11.7. The court finds
that the Defendant prevailed in its efforts to dismiss
the Plaintiffs' lawsuit. Accordingly, the Defendant is a
"prevailing party" entitled to an award of reasonable
attorneys' fees.

"The determination of what is a 'reasonable attorney's
fee' is left to the discretion of the trial court." *Nelson,*
967 F.Supp. at 931. The computation of a reasonable
attorneys' fee award is a two-step process. *Rutherford v.
Harris County, Texas,* 197 F.3d 173, 192 (5th Cir.1999)
(citation omitted). First, the court must utilize the

Daniels v. Progressive Turf, LLC, Not Reported in F.Supp.2d (2006)

2006 WL 2589114

"lodestar" analysis to calculate a "reasonable" amount of attorneys' fees. *Id.* The "lodestar" is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. *Id.* Second, in assessing the "lodestar" amount, the court must consider the twelve *Johnson* factors before final fees can be calculated. *Id.*

**\*2** The *Johnson* factors are:

> (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Id.* at 192 n. 23, citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974).

After considering the twelve *Johnson* factors, the court may adjust the "lodestar" upward or downward. *Shipes v. Trinity Indus.,* 987 F.2d 311, 320 (5th Cir.1993). "If the plaintiff obtained limited success, the hours reasonably spent on the case times the reasonable hourly rate may be excessive." *Virginia McC v. Corrigan-Camden Independent School District,* 909 F.Supp. 1023, 1032 (E.D.Tex.1995)(Heartfield, J.). "[T]he most critical factor" in determining the reasonableness of an attorney's fee award "is the degree of success obtained." *Giles v. General Electric Co.,* 245 F.3d 474, 491 n. 31 (5th Cir.2001), quoting *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *see also Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir.1998). " 'The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." ' *Virginia McC,* 909 F.Supp. at 1032, quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941.

### A. LODESTAR

#### 1. Hours Expended
The Defendant seeks $9,200.00 in attorneys' fees for 46 hours expended by its counsel, Millard O. Anderson, Jr. ("Anderson"). The Plaintiffs argue that Anderson's affidavit is insufficient to support a claim for 46 hours of work in that the affidavit fails to set forth any details supporting the number of hours claimed. Anderson subsequently corrected the insufficiency by providing the court with a detailed summary of the number of hours claimed. [1] The Plaintiffs did not file any objections to Anderson's detailed summary. After reviewing Anderson's explanation of the number of hours billed, and in light of the fact that the Plaintiffs did not object to Anderson's detailed summary, the court finds that Anderson expended a reasonable number of hours on this case.

#### 2. Prevailing Hourly Rate
Anderson seeks to be compensated at $200 per hour. The Plaintiffs do not contest Anderson's hourly rate. Based on Anderson's level of experience, the court finds that the hourly rate submitted by Anderson is reasonable.

Accordingly, pursuant to the lodestar analysis, the attorneys' fees are $9,200.00.

### B. THE *JOHNSON* FACTORS
In analyzing the *Johnson* factors, the court finds that the requested fee is reasonable. The court further notes that the Plaintiffs did not object to Anderson's analysis of the *Johnson* factors. Accordingly, the court will briefly review the *Johnson* factors.

#### 1. Time and Labor
**\*3** The time and labor expended on this relatively straightforward lawsuit was not excessive.

#### 2. Novelty and Difficulty of Issues
This case was not particularly difficult. None of the issues presented were novel or difficult.

#### 3. Skill Required
The court finds that counsel was adequately skilled and otherwise qualified to pursue this case.

2006 WL 2589114

*4. Preclusion of Other Employment*
Counsel's work on this case did not preclude him from accepting new employment opportunities.

*5. Customary Fee*
This factor is part of the "lodestar" analysis and need not be considered again.

*6. Whether the Fee is Fixed or Contingent*
Counsel billed the Defendant at the hourly rate of $200.00.

*7. Time Limitations Imposed by the Client or Circumstances*
Counsel was not burdened by any significant time limitations.

*8. Amount Involved and Results Obtained*
Counsel achieved the intended results for the Defendant, i.e. dismissal of the Plaintiffs' lawsuit.

*9. Experience, Reputation and Ability of the Attorneys*
The court has already considered this factor in determining the "lodestar."

*10. Undesirability of the Case*
This case was not undesirable.

*11. Nature and Length of the Professional Relationship with the Client*
Anderson has represented the Defendant since June 2001.

*12. Awards in Similar Cases*
This factor is not applicable to the instant action.

*CONCLUSION*

Based on the foregoing, the Defendant's motion for award of attorneys' fees (docket entry # 17) is GRANTED. The Defendant is awarded attorneys' fees in the amount of $9,200.00. The Plaintiffs shall tender payment of $9,200.00 to counsel for the Defendant on or before October 6, 2006.

IT IS SO ORDERED.

SIGNED this the 6th day of September, 2006.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 2589114

Footnotes

1    Defendant's counsel actually expended 47.5 hours on this case. However, counsel is apparently only seeking compensation for 46 of those hours.

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# **<u>Tab 8</u>**

2011 WL 487754
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas,
Dallas Division.

Patricia Ann FRALICK as Executrix of the Estate
of Fred Fulton Fralick, Plaintiff-counterdefendant,
v.

PLUMBERS AND PIPEFITTERS NATIONAL
PENSION FUND, Defendant-counterplaintiff.

Civil Action No. 3:09–CV–0752–D.
|
Feb. 11, 2011.

**Attorneys and Law Firms**

David Stanley Jones, Law Offices of David S.
Jones, James Michael Klancnik, Law Offices of
James M. Klancnik, P. C., Dallas, TX, for Plaintiff–
counterdefendant.

Andrew G. Jubinsky, Joshua J. Iacuone, Figari &
Davenport LLP, Dallas, TX, R. Richard Hopp,
O'Donoghue & O'Donoghue LLP, Washington, DC, for
Defendant–counterplaintiff.

*MEMORANDUM OPINION AND ORDER*

SIDNEY A. FITZWATER, Chief Judge.

**\*1** Following the court's decision granting plaintiff-
counterdefendant Fred Fulton Fralick ("Fralick") relief
in this ERISA [1] action against defendant-counterplaintiff
Plumbers and Pipefitters National Pension Fund (the
"Fund") under ERISA § 502, Fralick [2] applies for an
award of attorney's fees. For the reasons that follow, the
court grants the application to the extent of awarding the
sum of $53,123.00 for the services of two attorneys and a
paralegal.

I

In the court's prior memorandum opinion and order, it
held that Fralick is entitled to retirement benefits and

cessation of the Fund's efforts to collect sums previously
paid to him. *See Fralick v. Plumbers & Pipefitters Nat'l
Pension Fund,* 2010 WL 2563429, at \*22 (N.D.Tex. June
22, 2010) (Fitzwater, C.J.). The court also concluded that
the Fund's trustees abused their discretion in denying
Fralick plan benefits. *Id.* at \*19. Fralick moves for an
award of attorney's fees under ERISA § 502(g).

Fralick requests attorney's fees totaling $114,475.00 for
the services of attorneys James M. Klancnik, Esquire
("Klancnik") and David S. Jones, Esquire ("D.Jones"),
and for the paralegal services of Brian C. Jones
("B.Jones"). Klancnik has been a practicing attorney
since 1967 and currently maintains his own private
practice, primarily involving employee benefits and
executive compensation matters. According to Klancnik's
declaration, he handled the pleadings, discovery, and
pretrial motions related to this litigation. Fralick seeks
compensation for Klancnik's 177.75 hours of recorded
legal work, at the rate of $350.00 per hour, for a
total of $62,212.50. D. Jones is a solo practitioner who
has handled employment and labor law matters since
1976. According to D. Jones's declaration, he researched,
drafted, consulted, and filed litigation documents and
served as the "litigation point person" and "lead attorney"
for notification purposes. For D. Jones's legal services,
reportedly amounting to 133.75 hours at the rate of
$350.00 per hour, Fralick requests $46,812.50. B. Jones
worked for his father, D. Jones, as a legal assistant in
this case. According to D. Jones's declaration, B. Jones
provided research, drafting, and cite-checking assistance.
Fralick requests fees for 54.5 hours of work performed
by B. Jones, at the hourly rate of $100.00, for a total of
$5,450.00.

The parties do not contest whether Fralick is entitled to
attorney's fees or that $350.00 per hour is a reasonable rate
for an attorney of Klancnik's or D. Jones's experience. [3]
And neither side requests an upward or downward
adjustment to a properly computed lodestar. Instead, the
parties dispute whether all the time for which Fralick is
seeking fees was adequately documented and reasonably
incurred.

The Fund maintains that Klancnik's invoices include
hours that are unproductive, excessive, or redundant. It
specifically cites the number of hours that Klancnik spent
on clerical work, the complaint, the motion to compel,
and the motion for judgment on the pleadings. The Fund

also argues that Klancnik engaged in "block billing" and that he did not sufficiently itemize the time expended on specific tasks, so that it is impossible to determine whether the time actually spent on each task was reasonable. The Fund posits that some entries are too vague and that Klancnik's time entries are not sufficiently specific, using 15–minute increments instead of smaller units. The Fund also argues that the court should reduce the hours included in Klancnik's fee request by 45% to account for unproductive hours, block billing, and vague entries, make deductions for clerical work and excessive time spent on pleadings and pretrial motions, and award fees for only 63.02 of the 177.75 requested hours.

**\*2** The Fund challenges D. Jones's time entries for similar reasons. It alleges that none of D. Jones's entries gives a contemporaneous account of the amount of time expended. The Fund contends that D. Jones's invoice relies on "terse and vague" descriptions of tasks performed, and it merely provides a lump sum of all the time he spent on the case over a 17–month period, without specifying the time he devoted to particular tasks. The Fund argues that the court should entirely reject such "block billing" because it cannot evaluate the reasonableness of the 133.75 claimed hours. The Fund challenges B. Jones's invoice for similar reasons, noting that his entries are identical to his father's on the days he reported work. The Fund maintains that the court should disallow the entire fee requested for D. Jones's and B. Jones's services.

Fralick responds that the Fund's arguments are misplaced, and he submits supplemental documents that provide more specific accounts of the time expended on each task.

## II

ERISA § 502, 29 U.S.C. § 1132(g)(1), permits the court, in its discretion, to award a reasonable attorney's fee to either party in an ERISA action. *See, e.g., Salley v. E.I. DuPont de Nemours & Co . ,* 966 F.2d 1011, 1016 (5th Cir.1992). The court applies a twostep analysis when awarding attorney's fees: "The court must first determine whether the party is entitled to attorneys' fees by applying the five factors enumerated in *Bowen.* If the court concludes that the party is entitled to attorneys'['] fees, it must then apply the lodestar calculation to determine the amount to be awarded." *Todd v. AIG Life Ins. Co.,* 47

F.3d 1448, 1459 (5th Cir.1995); *see Bellaire Gen. Hosp. v. Blue Cross Blue Shield,* 97 F.3d 822, 833 (5th Cir.1996) (holding that district court abused its discretion by failing to discuss *Bowen* factors and lodestar calculation method in determining attorney's fees). [4] A court may award attorney's fees if an administrator abused its discretion in denying benefits. *See Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F.3d 287, 302 (5th Cir.1999) (en banc).

After determining whether attorney's fees are warranted, the court calculates how much it should award, using the lodestar method. Under this method, the court determines the "reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multipl [ies] the two figures together to arrive at the 'lodestar.' " *Wegner v. Standard Ins. Co.,* 129 F.3d 814, 822 (5th Cir.1997) (citing *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir.1995); *Forbush v. J .C. Penney Co.,* 98 F.3d 817, 821 (5th Cir.1996)). After determining the lodestar amount, the court may adjust the figure upward or downward after assessing the twelve *Johnson* factors:

> (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases.

**\*3** *Wegner,* 129 F.3d at 822 n. 17 (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)). [5]

### III

Because the Fund does not challenge Fralick's entitlement to attorney's fees under the *Bowen* factors, the court will not discuss its assessment of these factors at length and will instead turn to a determination of the lodestar.[6]

As noted, *see supra* note 3, the $350.00 hourly rate for Klancnik and D. Jones and the $100 hourly rate for B. Jones are not at issue. The court therefore finds that these rates are reasonable, and it proceeds to analyze the hours claimed. *See Islamic Ctr. of Miss., Inc. v. City of Starkville,* 876 F.2d 465, 469 (5th Cir.1989) ("When th[e] rate is not contested, it is *prima facie* reasonable."); *Cookston v. Freeman, Inc.,* 1999 WL 714760, at *1 (N.D.Tex. Sept.14, 1999) (Fitzwater, J.) (applying uncontested rate, except where adjusted for clerical work).

The party seeking fees bears the burden of proving that the hours claimed were reasonably expended on the litigation, and he can meet this burden only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement. *See Bode v. United States,* 919 F.2d 1044, 1047 (5th Cir.1990) (applying Supreme Court's placement of burden of proof on fee applicant in civil rights context to other contexts as "instructive") (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1982)); *see also Kellstrom,* 50 F.3d at 324 (quoting *Hensley,* 461 U.S. at 437) (stating that fee applicant should " 'maintain billing time records in a manner that will enable a reviewing court to identify distinct claims' ").

### IV

The court turns first to the fees requested for the services of Klancnik. The Fund requests four categories of deductions: a 15% reduction for lack of billing judgment, a 10% reduction for block billing, a 20% reduction for vagueness, and itemized reductions for excess hours spent on "clerical work," the complaint, the motion to compel, and the Fed.R.Civ.P. 12(c) motion.

### A

The Fund argues that Klancnik has failed to show evidence of billing judgment. His invoice contains no indication that any hours of the 177.75 claimed were written off as redundant, unproductive, or excessive. Klancnik responds that he did exercise billing judgment but that, as a sole practitioner, he had no need to document non-billable hours and he only recorded hours he intended to bill. In other words, he maintains that he exercised billing judgment contemporaneously, before recording his hours, reporting only time that he determined was productive, necessary, and not redundant.

The court finds that a percentage reduction is necessary to reflect the lack of evidence of the exercise of billing judgment. A fee applicant must prove that he exercised billing judgment. *See Walker v. U.S. Dep't of Housing & Urban Dev.,* 99 F.3d 761, 770 (5th Cir.1996). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 799 (5th Cir.2006); *see Walker,* 99 F.3d at 769 n. 9 (quoting *Alberti v. Klevenhagen,* 896 F.2d 927, 930 (5th Cir.1990)) (recommending that fee applications document "not only hours claimed, but also hours written off"); *Leroy v. City of Houston,* 831 F.2d 576, 585 & n. 15 (5th Cir.1987) (holding that district court erred in accepting faulty records with no reduction of hours and disapproving billing records that were "completely devoid of any hours written off"). The Fifth Circuit has repeatedly determined that bald assertions regarding the exercise of billing judgment are insufficient. *See, e.g., Saizan,* 448 F.3d at 800 (concluding that fee applicant's arguments for neglecting to list unbilled time were "unconvincing [ ]" and upholding reductions for lack of billing judgment); *Hopwood v. Texas,* 236 F.3d 256, 279 (5th Cir.2000) (upholding reductions for lack of billing judgment where there was evidence of inadequate time entries and duplicative work product, and finding that lead attorney's affidavit that he exercised billing judgment, without more, did not demonstrate abuse of discretion).

**\*4** Because Klancnik's declaration says nothing about exercising billing judgment, he does not explain what efforts he undertook to exclude redundant, unproductive, or excessive time. He avers that he "personally *spent* 177.75 hours on this matter." D.App. 2 (emphasis added). This appears to contradict the assertion, first made in Fralick's reply brief, that the 177.75 hours represent the total hours *after* Klancnik exercised billing judgment, rather than the total number of hours spent.[7] *See* P. Reply Br. 4 (alleging that there is no evidence of deductions

Fralick v. Plumbers and Pipefitters Nat. Pension Fund, Not Reported in F.Supp.2d (2011)

2011 WL 487754

made because Klancnik does not record unproductive time or excessive time in his time records in the first place). Furthermore, "[s] tatements by counsel in briefs are not evidence." *Skyline Corp. v. NLRB,* 613 F.2d 1328, 1337 (5th Cir.1980).

Having found that Fralick has failed to produce sufficient evidence that Klancnik exercised billing judgment, the court reduces Klancnik's overall fee request by 10%. Although there have been instances, as the Fund notes, where this court has imposed a greater percentage reduction based on lack of billing judgment, *see, e.g., Cookston,* 1999 WL 714760, at *5 (reducing fee request by 15% for lack of billing judgment), the court is making other, taskspecific reductions below for excessive hours. *See infra* § IV(D). The court finds that the combination of these task-specific reductions in § IV(D) and the percentage reduction imposed here sufficiently accounts for excessive, unproductive, and redundant time.

### B

The Fund requests that the court reduce Klancnik's fees by 10% for block billing. It points out that Klancnik reports all of the tasks performed on a given day in a single entry, stating the daily total hours spent rather than specifying the time spent per task. The Fund argues that, as a result of block billing, it is impossible to tell whether the 15 entries of communication with cocounsel in January 2010 or the time billed for travel to and from court on October 28, 2009 was reasonable. Klancnik responds that the Fifth Circuit permits compensation for travel time at attorney billing rates to account for the attorney's opportunity cost in forgoing other legal work. *Cf. In re Babcock & Wilcox Co.,* 526 F.3d 824, 828–29 (5th Cir.2008) (noting that courts have broad discretion to award travel time, such that while some courts compensate travel at full rate, it was not abuse of discretion to reduce award by half). And he posits that he is justified under the work product doctrine in not explaining the nature of his 15 entries for communications. Klancnik also contends that his record-keeping cannot be characterized as block billing.

The term "block billing" refers to the " 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.' " *Glass v. United States,* 335 F.Supp.2d 736, 739 (N.D.Tex.2004)

(Lindsay, J.) (citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1534 n. 15 (10th Cir.1996)); *accord Barrow v. Greenville Indep. Sch. Dist.,* 2005 U.S. Dist. LEXIS 34557, at *10 (N.D.Tex. Dec. 20, 2005) (Fitzwater, J.) (citing *Robinson v. City of Edmond,* 160 F.3d 1275, 1284 n. 9 (10th Cir.1998)), *aff'd,* 2007 WL 3085028 (5th Cir. Oct.23, 2007). Klancnik engaged in block billing. He may have itemized his *tasks* to a certain extent, providing some detail as to the various types of work performed on a particular day, but he did not itemize his *time* on a per-task basis.

**\*5** Because Klancnik engaged in block billing, the court must next decide whether this warrants a percentage reduction in Fralick's fee request. A reduction for block billing is not automatic. "Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation. When time records are block billed, the court cannot accurately determine the number of hours spent on any particular task, and the court is thus hindered in determining whether the hours billed are reasonable." *Barrow,* 2005 U.S. Dist. LEXIS 34557, at *11. But "even a failure to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours." *Hollowell v. Orleans Reg'l Hosp. LLC,* 217 F.3d 379, 392 n. 18 (5th Cir.2000) (quoting *Kellstrom,* 50 F.3d at 325). Therefore, before reducing the fee request based on block billing, the court must evaluate whether the applicant's evidence is adequate to enable it to determine the reasonableness of the hours expended.

The court finds that Klancnik's practice of block billing has impeded its ability to determine the reasonableness of his request. Klancnik's billing statement contains no more than one entry per day, and it often groups several tasks under one entry. On some days, Klancnik's billing practice is sufficient because he only performed one task on that day related to this case. *See, e.g.,* D.App. 4 (time entry reflecting that Klancnik expended 2.5 hours on 1/28/09 preparing exhibits to complaint and did nothing else on this case); *id.* at 5 (showing that Klancnik served the Secretary of Labor and Secretary of Treasury by certified mail over the course of .75 hours on 5/15/09, and did nothing else); *id.* at 6 (reporting on 9/25/09 that Klancnik spent 3.0 hours outlining the Rule 12(c) motion and performed no other work related to this lawsuit). For such

entries, the table would have a one-to-one correspondence with the number of hours reported for that day.

For many other entries, however, there are several tasks reported on a particular day, and the time reported for the day reflects the total time for all work performed. *See, e.g., id.* at 7 (reporting 2.75 hours for a single entry on 10/28/09 for "Hearing before Judge Ramirez; conf. with DJones and RHopp place tel. calls to DJones and Sam Zurik, III; tel. conf. with Bob Lombardi; travel to and from court"); *id.* at 8 (reporting 5.25 hours for a single entry on 1/4/10 for "Tel Conf. with DJonesmotion to strike; revising motion to strike or exclude evidence; outlining response to motion for summary judgment"). Although some block-billed entries contain sufficient information to enable the court to assess the reasonableness of the time expended, [8] too many entries lump together tasks in such a way that it is impossible to tell whether, for any particular task, the number of hours spent and claimed was reasonable.

**\*6** For example, Klancnik reported his longest blocks of hours on 1/20/10 and 1/21/10. On each day, Klancnik recorded 5.50 hours for drafting a reply, or reply brief, on the Rule 12(c) motion, teleconferencing with D. Jones, and "researching." *Id.* at 8. The court cannot determine from such entries how much time was spent simply conferring about the Rule 12(c) motion or other matters, as opposed to drafting and researching the motion. It is conceivable —even if unlikely—that Klancnik spent 4.50 hours each day conferring with co-counsel about the motion, and expended only a modest amount of time each day on drafting and research. The point is that the court cannot how much time was spent on each task due to the use of block billing. [9]

Given that some challenged entries are not block billed [10] and that the block-billed entries have fewer tasks per day or shorter time increments per entry than some of the more egregious examples of block billing found in various cases, [11] the court concludes that a 10% deduction is sufficient.

C

The Fund also requests a 20% deduction for vague entries, and it challenges Klancnik's practice of billing in 15–minute increments and of vague descriptions, such as "phone conference with co-counsel" and "legal research." The Fund alleges that a 20% deduction is appropriate because about 20% of the entries contain imprecise and vague descriptions. Klancnik responds that this court has permitted billing in 15–minute increments and that it has long been his practice to bill this way. Klancnik also cites *Cookston,* 1999 WL 714760, at \*3, contending that because this court has previously allowed some recovery for entries that are even more vague than the ones at issue, the court should also allow recovery here.

The use of 15–minute increments is not prohibited *per se,* and the Fifth Circuit has expressly declined to decide whether it is. *See Conoco, Inc. v. Director, Office of Worker's Compensation Programs,* 194 F.3d 684, 692 (5th Cir.1999) (declining to opine on use of quarter-hour increments, and affirming attorney's fees where quarter-hour increments appeared to represent adequately the work actually performed). This court has permitted fees based on such increments except where the task performed required so little time that 15 minutes appeared excessive. *See, e.g., Young v. Sea Horse Venture IV, LLC,* 2009 WL 614823, at \*2 (N.D.Tex. Mar.10, 2009) (Lynn, J.) (finding that some tasks could easily have taken fewer than 15 minutes and finding risk of overbilling unreasonable for that case); *Sandoval v. Apfel,* 86 F.Supp.2d 601, 615 (N.D.Tex.2000) (Fitzwater, J.) (concluding that quarter-hour method was not excessive *per se,* but finding that quarter-hour billing was excessive for certain small tasks); *compare Radiant Sys., Inc. v. Am. Scheduling, Inc.,* 2007 WL 582923, at \*3 (N.D.Tex. Feb.23, 2007) (Solis, J.) (reducing a .25–hour entry to a .10–hour entry because it involved a very short task) *with Donihoo v. Dallas Airmotive, Inc.,* 1999 WL 740692, at \*3 (N.D.Tex. Sept.15, 1999) (Solis, J.) (noting that billing in quarter-hour increments is an accepted, if regrettable, local practice and declining to apply "across-the-board" reductions for general excessiveness). The court therefore declines to reduce the fee application based on the use of 15–minute increments generally; instead, it will apply a percentage reduction for vagueness.

**\*7** Among the entries that reflect quarter-hour billing, several are too vague to determine whether the time expended was reasonable. As with similarly deficient entries in *Cookston,* several of the descriptions provide no explanation of the subject matter of the task or of what was done, thereby preventing the court from

determining whether the time was reasonably expended. *See Leroy,* 906 F.2d at 1080 (striking hours where record notations were "not illuminating as to the subject matter" or "vague as to precisely what was done"). Several of the "telephone conference" entries provide no indication of the purpose of the communication. *Compare* D.App. 8 (listing several descriptions stating, "Tel. confs. with DJones," without describing subject matter) *with id.* at 7 (providing adequate description of subject matter in an 11/6/09 conference by explaining, "Tel. conf. with RHopp re joint status report"). Many entries that list "research" tasks provide inadequate descriptions of subject matter, as well. *Compare id.* (listing vague descriptions such as "researching cases" and "researching") *with id.* at 4 (giving sufficient description of subject matter by explaining, "Researching Mello case" or "Researching suspension of benefits"). Some reduction of the time requested in these entries is necessary to account for vague descriptions of communications and research-related entries and the inability to determine whether those billed in 15–minute increments were reasonable. [12]

Klancnik maintains that the time entries for "research" and for telephone conferencing that state no more than "tel. conf." and the names of the people participating are allowable under *Cookston* . The court disagrees. The court did not "allow" such entries in full in *Cookston.* The communication entries in *Cookston* were vague (e.g., "Telephone call to Cookston," "Telephone call from Sherry," "Message Cookston"). But rather than disallow the entire amount, the court applied reductions to permit a reasonably expected number of hours for conferring with co-counsel and the client during that stage of the litigation. *See Cookston,* 1999 WL 714760, at *3 (adjusting entries with vague entries to 0.25 hours, but keeping intact entries that specified subject matter to justify time spent, such as "Telephone call to James re: discovery"). As the court explained in *Cookston,* it "denie[d] or reduce[d] [attorney's] fees for all entries except those that specifically refer[red] to the complaint, discovery following the filing of the complaint, and judicial proceedings." *Id.* Likewise, in this case, the court applies a reduction to reflect the number of descriptions that merely state "tel. conf." or "conf.," without specifically referring somewhere in the entry to a court document, proceeding, or some other indication of subject matter. [13] There are about 28 descriptions involving correspondence that do not specify subject matter within the same entry. The entries containing these descriptions involve a total of 8.5 hours.

There are 0 descriptions of research where the subject matter of the research is not at least suggested elsewhere in the entry. There are approximately 166 descriptions involving correspondence in total (regardless whether they specify subject matter), and the entries containing such descriptions total about 133.5 hours. In addition, there are stand-alone entries for "organizing files, and "organizing research," for 1.0 and .50 hours, respectively, that the court finds vague. There are about 243 descriptions of tasks in total, for 177.25 total hours claimed for Klancnik. Based on the number of vague descriptions and the inability to determine whether billing by the quarter-hour is reasonable, the court applies a 10% reduction.

D

*8 The court now considers whether specific reductions are necessary for excessive time spent on clerical work and drafting the complaint, the motion to compel, and the Rule 12(c) motion.

1.

The Fund alleges that Klancnik has billed for clerical work such as preparing exhibits, serving and filing proofs of service, organizing files, faxing drafts, telephone conferences with an assistant, organizing research, telephone conferences with chambers regarding status, and emailing comments to co-counsel about the court's opinion. It is especially notable that Klancnik billed 3.75 hours solely for preparing, assembling, and redacting exhibits to the complaint. [14]

Klancnik offers three reasons for billing this time at attorney rates: assembling exhibits to the complaint required care because Fralick intended to file a motion for judgment on the pleadings; the exhibits were "replete with complete social security numbers," and "care had to be taken to redact the social security numbers"; and, "[a]s a solo practitioner with no secretarial employee, some tasks just fell to Klancnik." P. Reply 6–7. Although Klancnik maintains that the time spent on exhibits should be allowed in full at attorney rates, he does not appear to question the premise that serving and filing proofs of service, organizing files, faxing drafts, telephone conferences with an assistant, organizing research, telephone conferences with chambers regarding

status, and emailing comments to co-counsel about the court's opinion should in the context of this case be considered clerical.

The court finds that Fralick is not entitled to recover fees at an attorney's rate for the clerical work in question. Even assuming that Klancnik took special care in collecting the exhibits because he anticipated filing a Rule 12(c) motion, he has failed to explain how preparing, assembling, and redacting these documents required the services of an attorney. It is not evident from the record what "prepar[ation]" was done to the exhibits other than affixing labels and redacting Fralick's social security number, union membership number, and home address. Although an attorney can render professional services in a manner that is not apparent from the court's independent review of a pleading, there are indications in the record that Klancnik, a solo practitioner who lacked support staff, was performing clerical work. One time entry states that he spent 1.0 hour "[r]edacting and preparing exhibits [to] complaint, notice etc." D.App. 4 (4/16/2009 entry). And while handling personal information may require care, one need not be a lawyer to review documents for the presence of social security numbers and home addresses. This is the type of work that a professional clerical assistant can perform.

Klancnik also asserts generally that it was necessary that he perform clerical tasks himself because he is a sole practitioner. But under *Johnson* and its progeny, this court must distinguish between "legal work, in the strict sense," and clerical work "that a lawyer may do because he has no other help available." *See Abrams v. Baylor Coll. of Med.,* 805 F.2d 528, 535 (5th Cir.1986) (citing *Johnson,* 488 F.2d at 717); *see Johnson,* 488 F.2d at 717 ("Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.").

**\*9** Accordingly, the court finds that the following 7.0 hours expended for clerical work should be compensated at the reduced hourly rate of $100: 1/28/09 (2.5 hours); 1/29/09 (.25 hours); 4/16/09 (1.0 hour); 4/24/09 (1.0 hour of 1.5 claimed); 5/15/09 (0.75 hours); 5/19/09 (0.5 hours); and 6/1/09 (1.0 hour).

2.

The Fund alleges that the sum of 25.25 hours claimed for the drafting of the complaint is excessive. It contends that, of the 59 paragraphs in the complaint, 40 are simply factual descriptions of documents and events and that the elements of the causes of action stated in the remaining paragraphs are not complicated and novel. Klancnik responds that pure notice pleadings are no longer sufficient under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and that care was required in drafting the complaint so that the suit could withstand a motion for more definite statement.

The court finds that the sum of 25.25 hours expended in drafting of the complaint is excessive. It is not apparent that *Twombly* and *Iqbal* made it particularly difficult to draft the complaint in this case given the nature of Fralick's suit. Moreover, D. Jones seeks compensation for 7.0 hours of work on the complaint, meaning that Fralick's attorneys are seeking 32.25 hours of supposedly non-redundant work (i.e., the equivalent of more than four days of eight billable hours per day of work). The court finds that a total of 15 hours is reasonable for Klancnik's work in preparing the complaint.

3.

The Fund argues that the 7.13 hours requested [15] for preparing the motion to compel should be reduced to 3.0 hours based on the fact that the 1½ page motion cites only the leading case on the issue of attorney-client privilege in the way of legal analysis and that the motion was denied. The court notes that some of the hours counted toward the Fund's total were not related to *drafting* the motion to compel (i.e., the 10/28/09 entry for the hearing on the motion to compel, which the Fund counted as 1.3 hours toward the motion to compel, and the 12/30/09 entry on "Tel. confs. with DJones and RHopp; tel. conf. with DJones re motion to strike evidence," which the Fund counts as .25 hours toward the motion to compel). D.App. 13–14. Disregarding these hours that do not appear to have been spent on the motion to compel, Klancnik would have claimed 5.58 hours by the Fund's count. D. Jones also requests compensation for an additional 1.75 hours, and B. Jones spent an additional 0.5 hours, [16] amounting to a total of 7.83 hours to write and brief the motion to compel. The court finds this to be excessive given the

limited content of the motion and brief. The court finds that 3.0 hours were reasonably expended by Klancnik.

### 4.

The Fund maintains that Klancnik billed 56.48 hours for drafting the Rule 12(c) motion and reply. It alleges that the motion and reply were of poor quality and failed to analyze any authority beyond the leading cases, and it requests the court award only 40 hours. Fralick responds that the Rule 12(c) motion was complicated by the Fund's attempts to introduce material facts not in the administrative record.

**\*10** Given the nature of the motion and the issues presented, the court cannot say that Klancnik's fee request is excessive of itself. But because D. Jones seeks compensation for an additional 9.25 hours, and B. Jones an additional 12 hours, for work on the Rule 12(c) motion (for a total of 77.73 allegedly non-redundant hours devoted to the 12(c) motion), the court will address below whether their requests should be reduced.

### 5.

As explained in § IV(D)(1)-(4), the court awards 7.0 hours at the rate of $100 per hour, versus $350 per hour, for a reduction of $1,750.00; reduces 25.25 hours for drafting the complaint to 15 hours, for a reduction of 10.25 hours; and reduces 5.58 hours to 3.0 hours for drafting the motion to compel, for a reduction of 2.58 hours. In order to facilitate the computation of reductions in § IV(E), the court converts the $1,750.00 rate reduction to its hourly equivalent of 5 hours (i.e., 1,750.00 ÷ 350 = 5). The total reduction is therefore 17.83 hours.

### E

In sum, the court finds that Klancnik did not exercise billing judgment, that he block-billed in a manner that affected the court's ability to assess the reasonableness of the fees requested, that some of the descriptions are too vague as to the nature of the task or that 15–minute increments are excessive, and that certain work performed is clerical or unreasonable given the nature of the service. The court subtracts 17.83 specific

hours, leaving a balance of 159.92 hours. The court next applies a total percentage reduction of 30% from the remaining amount that Klancnik has requested (159.92– 47.98 = 111.94). [17] Multiplying the result of 111.94 hours times $350.00 per hour, the court finds that the sum of $39,179.00 is reasonable for Klancnik's services.

### V

The court now considers the fees requested for D. Jones.

### A

D. Jones's initial submission only listed his time expenditures in increments that spanned at least one entire day and sometimes up to several months. He reported only the total number of hours claimed for the lawsuit, without specifying a per-activity accounting of his time. In reply to the Fund's opposition response, D. Jones submitted a revised claim that reported the number of hours expended each day and added several notes that highlighted where hours had been deducted for duplicative work. D. Jones maintains that his record-keeping was contemporaneous with the work reported and that his earlier submission omitted a daily accounting for the court's convenience.

### B

First, the Fund objects to D. Jones's fee request on the ground that he is relying on "terse and vague" descriptions of the services rendered. The Fund cites entries such as "telephone calls or conferences," "emails,", and "research and evidence gathering," contending they are too general to demonstrate that the time expended was reasonable. The court holds that D. Jones has not met his burden of demonstrating the reasonableness of these hours. The entry dated "6/20/09–9/5/09" contains a possible explanation that the "Research and Evidence Gathering" was for "Our Discovery/Their Discovery," but the entry itself is still impermissibly vague because it is grouped with a task described as "Correspondence (63 emails sent/received and 42 telephone calls/conferences)." See Walker, 99 F.3d at 773 (finding "woefully inadequate" terse listings such as "library research," "analyzing documents," and "phone interviews"). Bare descriptions, without any

Case 4:09-cv-01237 Document 755-3 Filed on 06/30/17 in TXSD Page 67 of 91
Fralick v. Plumbers and Pipefitters Nat. Pension Fund, Not Reported in F.Supp.2d (2011)
2011 WL 487754

reference to content or purpose, do not demonstrate that the services were necessary and that the amount of time expended was reasonable. "The district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *Kellstrom,* 50 F.3d at 326. Given that the entries describing correspondence are "not illuminating as to the subject matter" and nearly all of the entries listing document work are "vague as to precisely what was done," [18] *see id.* (designating entries with such deficiencies as sufficiently vague to merit reduction or elimination of hours), the court applies a 20% reduction.

C

**\*11** Second, the Fund challenges D. Jones's use of block billing. The Fund cites as especially deficient the entries describing time spent on telephone calls and emails. Instead of describing the purpose and time spent on each, D. Jones includes a single entry for all email and telephone communication that occurred over periods spanning several months. *See, e.g.,* D.App. 20 (reporting the dates "1/21/09–4/30/09" and describing the services as 25 emails and 16 calls for "Research and consulting," and reporting entries for "correspondence" dated "5/1/09–6/16/09" and "6/20/09–9/5/09" and listing total number of emails and calls exchanged over period); *id.* at 21 (reporting entry date as "12/28/09" but covering span of 10/12/09–12/28/09, and giving total of 151 emails and 83 calls exchanged); *id.* at 22 (reporting entry dated 6/28/10 but explaining that total of 87 emails and 38 calls and conferences were made between 2/20/10–6/28/10). In response, D. Jones submitted a revised statement listing the number of hours spent on the case each day, but declined to parse the email/correspondence entries into individual entries. D. Jones posits that contemporaneous records exist for the block-billed correspondence entries, but that he chose to submit only a summary because he did not want to inconvenience the court with the production of hundreds of pages of email and telephone records. He also argues that there was "good reason" for the lumped records, pointing to the fact that he employed a legal assistant who was studying abroad and "often unavailable," and the fact that Klancnik, his co-counsel, had no reliable email or cell phone until recently.

The court is not persuaded by this reasoning. Problems of distance or of co-counsel's lack of reliable communication

devices do not excuse a fee applicant from providing specific, contemporaneous descriptions of the nature of emails and telephone calls. D. Jones need not have produced a voluminous record; it would have been sufficient to provide details of the purpose or nature of each communication and of the time expended so that the court could determine the reasonableness of the hours claimed. *See Kellstrom,* 50 F.3d at 325. D. Jones's correspondence entries, spanning months of discussion on unspecified subject matter, fail to provide any indication of the reasonableness of distinct claims.

Nevertheless, the court will not entirely reject D. Jones's application. Although some of the entries are block-billed (the correspondence entries are the most egregious examples), others provide sufficient explanation of the nature of the activities and of the time spent on a given task to enable the court to evaluate the reasonableness of the time claimed. *See, e.g.,* P. Reply App. 4 (noting, in an 11/10/09 entry, 6.0 hours for the "Deposition of Freddy Fralick," and nothing more for the day). Furthermore, most courts that have addressed block billing have concluded that denying all block-billed attorney's fees is not appropriate. *See Bramlett v. Med. Protective Co.,* 2010 WL 3294248, at \*3 (N.D.Tex. Aug.20, 2010) (Fitzwater, C.J.) (recounting cases that have addressed block billing and applied percentage reductions, typically in the range of 10 to 30 percent, rather than disallowing fees entirely). Considering how other courts have addressed attorney's fees requests under analogous circumstances, the court finds that a 25% reduction is warranted.

D

**\*12** Third, the Fund argues that there is no evidence that D. Jones exercised billing judgment by documenting unproductive, excessive, or redundant hours. In the billing statement that D. Jones submitted initially, he only mentioned "[n] ine hours administrative time not included in invoice total hours." D.App. 20. In response to the Fund's opposition based on lack of billing judgment, D. Jones submitted a revised supplemental statement that added to four entries an asterisked note on the number of hours excluded for duplicative work. The administrative time subtracted is not evidence of billing judgment, however, because D. Jones should not have included these hours anyway. But the asterisked notes indicating time subtracted for redundant work do provide

some evidence of D. Jones's efforts to exclude redundant hours. Accordingly, the court will not reduce the fee request on this ground.

E

Fourth, the Fund maintains that the hours claimed are excessive, given that D. Jones was working on the same matters as Klancnik, and, according to the Fund, Klancnik's time expenditures were themselves excessive. In Fralick's reply brief, Klancnik and D. Jones acknowledge that Klancnik was "the primary draftsman of all pleadings and other documents leading up to the Court's Judgment." P. Reply 4. Furthermore, the brief alleges that "Klancnik did not repeat any tasks already completed by [D.] Jones." *Id.* Yet a comparison of Klancnik's hours with D. Jones's reveals a number of duplications. *Compare* D.App. 4 (claiming 25.25 hours for preparation of complaint) *with* P. Reply App. 3 (claiming 7.0 hours for preparation of complaint, with no reductions for duplicative work); *compare, e.g.,* D.App. 5 (claiming 4.0 hours for preparation of answer) *with* P. Reply App. 4 (claiming 3.5 hours for preparation of answer); *compare* D.App. 6 (claiming 7.0 hours for preparing motion to compel) *with* P. Reply App. 4 (claiming in a block-billed entry containing three other tasks 7.0 hours for preparing motion to compel, with a reduction of 2.0 hours for duplicative work).

Fralick has failed to show that the time expended by D. Jones on the complaint, the motion to compel, and the motion for judgment on the pleadings—i.e., the items specifically challenged as excessive in Klancnik's billing—was not redundant and excessive. Accordingly, the court reduces 7.0 hours from D. Jones's time for the complaint, 1.75 hours for the motion to compel, and 9.25 hours for the Rule 12(c) motion, for a total reduction of 18 hours.

The court is also unable to determine whether any of D. Jones's work was redundant generally. Although D. Jones has shown that he exercised some billing judgment, the court cannot determine from the record whether these reductions are adequate. D. Jones's vague descriptions of services rendered, often stating no more than the name of the motion, do not indicate why a second lawyer was necessary for the legal service provided. For example, it is unclear why it was reasonable for D. Jones to bill an additional 1.5 hours at attorney rates to file a certificate of

interested persons on 4/27/09, when Klancnik had already "reviewed and signed" the certificate on 4/16/09. And in this case, the certificate should have been relatively simple to prepare. It is also doubtful that it was reasonable for D. Jones to expend 7.0 hours on 4/24/09 to prepare the complaint when co-counsel had already "assembled exhibits" and "proof [ed]," "complet[ed] and sign[ed]," and "redact[ed]," and "prepar[ed] exhibits" a second time by 4/16/09. Given that Klancnik reported filing the complaint on 4/24/09 (requesting 1.5 hours at attorney billing rates for doing so), it is unclear why it was necessary for D. Jones to devote another 7.0 hours on that same date (i.e., on the date of filing), and D. Jones's statement of services rendered provides no explanation. [19] In fact, throughout the statement of services, D. Jones's entries state no more than the names of documents, and the explanatory footnote at the beginning of the statement merely advises the court to construe all such entries to mean "research, consulting, drafting, and filing" of the named document. The court concludes from this that D. Jones has failed to demonstrate that his reported hours were reasonable. The court cannot determine from the names of documents and the general description of "research, consulting, drafting, and filing" the nature of the services D. Jones rendered and whether they were duplicative of Klancnik's work as primary draftsman.

**\*13** "The court should exclude all time that is excessive, duplicative, or inadequately documented." *See Jimenez v. Wood Cnty.,* 621 F.3d 372, 379–80 (5th Cir.2010) (citing *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir.1993)). " 'It is impermissible, however, to eliminate wholesale the services of attorneys without identifying the particular services which are regarded as duplicative.' " *Tasby v. Estes,* 651 F.2d 287, 289–90 (5th Cir. Unit A July 1981) (quoting *Northcross v. Bd. of Educ.,* 611 F.2d 624, 637 (6th Cir.1979) (agreeing with Sixth Circuit's observation)). Nevertheless, as noted in *Tasby,* in certain factual settings, "the use of a number of attorneys frequently results in some duplication of effort, and a district court may take this factor into account by deducting some small percentage of the total hours." *Id.* at 289 & n. 1 (cautioning that panel does not require a "small" percentage as a rule and explicitly permitting district court to adjust percentage where duplication of effort is "not small"). As applied to D. Jones, the case law counsels against disallowing the entirety of his claimed fees, even though his records effectively prevent the court from reliably determining which particular hours were

duplicative. Given that D. Jones's statement lists many of the same documents claimed by Klancnik, however, *see* D.App. 4–9; P. Reply App. 3–5 (listing in common the complaint, certificate of interested parties, Rule 12(c) motion and reply, answer to counterclaim, discovery responses, motion for protective order, motion to compel, motion to strike, motion to exclude evidence and reply, response to motion for summary judgment), and applying Fifth Circuit precedent that the number of attorneys frequently results in some duplication of effort, the court concludes that a percentage reduction of 30%.

F

The court finds that D. Jones's time should be reduced for the reasons explained. Starting from the total of 133.75 claimed hours, the court subtracts 18.0 hours for time expended regarding the complaint, the motion to compel, and the Rule 12(c) motion. To this net figure of 115.75 hours, it applies a 20% reduction for vague descriptions, a 25% reduction for block billing, and a 30% reduction for inadequate documentation to account for the possibility of duplicative work not reflected in the records, resulting in 28.94 compensable hours (115.75–86.81 = 28.94 hours) and a fee award of $10,129.00 for D. Jones.

VI

Finally, the court considers the fee request of paralegal B. Jones.

A

On the dates when B. Jones's billing statement reflects an entry, each contains a description of services that is essentially identical to the one reflected in D. Jones's records for that day. In response to the Fund's opposition response that B. Jones's records are merely a "cut and paste" of D. Jones's records, Fralick submits a more detailed statement that reflects that the hours claimed for B. Jones are different from those claimed for D. Jones and that deductions had been made for duplicative research work. Also, whereas D. Jones's footnote alleges that every document listed under "services rendered" represents "research, consulting, drafting, and filing," B. Jones's footnote states that all entries under services rendered

involved "research, citation-checking, and drafting." *Compare* P. Reply App. 3 *with id.* at 7. Fralick justifies the similarity between D. Jones's and B. Jones's records on the ground that, as D. Jones's paralegal, B. Jones worked on the same matters on the same day as did D. Jones. Fralick argues that allowing B. Jones and/or D. Jones to cut and paste one another's entries was "computer savvy" and "probably saved time" for both. P. Reply 6.

B

**\*14** The court finds that Fralick has failed to demonstrate that some of the time claimed by B. Jones was reasonably expended. Because the descriptions in each of B. Jones's entries are merely copies of D. Jones's descriptions, the records of both suffer from the same deficiencies. Moreover, the cut-and-paste method used here exacerbates the deficiencies by introducing potential inaccuracies through the non-contemporaneous copying of entries made by another, and by facilitating the use of generic descriptions that do not distinguish between the distinct contributions of each person.

For the same reasons set out in § V regarding D. Jones, the court concludes that it should reduce rather than deny compensation for the services claimed by B. Jones. As with D. Jones's records, B. Jones's time records are unduly vague, block billed, and duplicative. The court will therefore make percentage reductions from the total hours claimed. The court does not find that the *paralegal* services of B. Jones are redundant of the *legal* services that Klancnik expended on the complaint, the motion to compel, or the motion for judgment of pleadings. It will therefore make no reductions for work B. Jones performed for these services. Additionally, the court will make lower percentage reductions than it did for D. Jones because, for example, many more of B. Jones's entries involve one document per day, and B. Jones's entries do not contain large blocks of time spanning months for correspondence tasks. And there is less risk that his paralegal services are duplicative of the work performed by Fralick's lawyers.

Accordingly, starting from the total of 54.5 hours claimed, the court applies a 10% reduction for vague descriptions, [20] a 10% reduction for block billing, and a 10% reduction for inadequate documentation to account for the possibility of duplicative work not reflected in

the records, resulting in 38.15 compensable hours (54.5 —16.35 = 38.15 hours). Multiplied by the hourly rate of $100, this results in a fee award of $3,815.00 for the paralegal services of B. Jones. The court finds some evidence of billing judgment, as documented by the reductions in B. Jones's revised statement, and applies no reduction for lack of billing judgment.

VII

Given that the lodestar analysis already reflects considerations raised by many of the *Johnson* factors, *see Perdue v. Kenny A.,* 559 U.S. 542, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 (2010), that a court must be careful not to double-count a *Johnson* factor already reflected in the lodestar calculation, *see Shipes v. Trinity Industries,* 987 F.2d 311, 320 (5th Cir.1993), and that neither party seeks

an adjustment to the lodestar under *Johnson, see* D. Resp. Br. 12; P. Reply Br. 8, the court finds that the fee award should be based on the lodestar amount alone.

\* \* \*

In summary, the court awards attorney's fees in the sum of $39,256.00 for Klancnik and the sum of $10,129.00 for D. Jones, and paralegal fees in the sum of $3,815.00 for B. Jones, for a total award of $53,200.00. Fralick shall recover this award from the Fund.

**\*15 SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 487754

Footnotes

1    Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461.

2    Fralick died while this motion was pending, and the court deferred a ruling on the motion until his executrix, Patricia Ann Fralick, was substituted in his place. For ease of reference, the court will refer to the plaintiff-counterdefendant as "Fralick."

3    The Fund concedes that $350 is a reasonable hourly rate for attorney services. It does not appear to question that $100.00 is a reasonable hourly rate for the paralegal services of B. Jones, and it offers no evidence that this rate is excessive. The Fund contends in a footnote that the same reasons for supporting a reduction of hours also justify reducing the rate, but it focuses its arguments on adjusting the number of hours in the lodestar calculation. It may be that the Fund has chosen not to contest the $100 hourly rate because it is arguing that B. Jones's hours should be entirely disallowed based on insufficient records. Regardless, the court finds this rate to be reasonable for someone of B. Jones's education and experience. *See, e.g., EsNtion Records, Inc. v. Triton TM, Inc.,* 2010 WL 3446910, at \*3 (N.D.Tex. Aug.31, 2010) (Lindsay, J.) (accepting $125 an hour rate for paralegal without further discussion where parties did not dispute rate).

4    The *Bowen* factors are:
        (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.
        *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980). "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g)." *Id.*

5    The Supreme Court has subsequently "barred any use" of the sixth *Johnson* factor. *See Rutherford v. Harris Cnty.,* 197 F.3d 173, 193 (5th Cir.1999) (citing *Walker v. U.S. Dep't of Housing & Urban Dev.,* 99 F.3d 761, 772 (5th Cir.1996)).

6    "It is an abuse of discretion for a district court to assess attorneys' fees without considering the factors announced in [*Bowen* ]." *Lemon v. Liberty Life Assur. Co.,* 304 Fed. Appx. 273, 275 (5th Cir.2008) (per curiam). The Fund offers no evidence to counter Fralick's discussion of the *Bowen* factors, and it does not appear to contest that Fralick is entitled to attorney's fees. *Cf. Baptist Mem'l Hosp.-DeSoto, Inc. v. Crain Auto. Inc.,* 392 F.3d 288, 299 (5th Cir.2010) (upholding award of attorney's fees where district court considered *Bowen* factors and defendant denied claim without any supporting evidence). The court has considered each of the *Bowen* factors in light of the Fund's response and has concluded that attorney's fees should be awarded.

7    Moreover, the hours for which Klancnik seeks compensation call into question whether Klancnik adequately understands the concept of billing judgment. *See Walker,* 99 F.3d at 770. While the fee applicants in *Walker* at least attempted to deduct some time for matters not ultimately pursued or for non-legal expenses, Klancnik has failed to do even this, as evidenced by his inclusion of such minuscule tasks as a voicemail regarding a formatting correction, organizing files, faxing, and service of process, and by the high number of hours reported for tasks such as drafting the complaint and preparing/re-preparing exhibits (especially when viewed in light of the allegedly non-redundant hours spent by D. Jones and B. Jones on the same documents). *See infra* § IV(D)(2).

8    For example, the court could decide that Klancnik's 6/19/09 entry, which reports a total of .25 hours for "Tel. conf. DJones re discovery; returning client's call," D.App. 5, is reasonable, even if the court cannot determine precisely what part was spent conferring with D. Jones or Fralick, respectively, or knowing the precise content of the conversations. The court could conclude that spending a total of 15 minutes on a particular day responding to a client and consulting with co-counsel about discovery matters is reasonable.

9    Klancnik's arguments regarding the work product doctrine and the compensability of travel time are misplaced. Even assuming, for example, that travel time is compensable, block billing impedes the court's ability to determine whether the portion of the total that comes from travel time is reasonable. And, as discussed above, there are other examples of how block billing has hindered Klancnik's ability to demonstrate the reasonableness of reported hours.

     Nor does the work product doctrine excuse the failure to carry the burden of proof of reasonableness. Klancnik could have done what fee applicants often do: present additional details *in camera* that explain the services rendered.

10   Of 139 entries, about 85 appear to be block-billed.

11   *See, e.g., Barrow,* 2005 U.S. Dist. LEXIS 34557, at *11 (illustrating egregiousness of block billing with sample entry containing over 14 tasks, and applying 20% reduction for block billing); *Paris v. Dallas Airmotive, Inc.,* 2004 WL 2100227, at *9, *11 (N.D.Tex. Sept.21, 2004) (Lindsay, J.) (applying 40% reduction for block billing where entries were month to month). *Cf. Walker,* 99 F.3d at 773 (disallowing entirety of hours claimed by paralegal because she was "always lumping all of the day's activities together").

12   The Fund appears to concede that the remainder of the entries (i.e., all entries other than those designating "tel. conf." and "research" without subject matter descriptions) are not vague. *See* D.App. 11–16.

13   Although the court applied task-specific reductions in *Cookston* where all of the tasks in the block-billed entry involved short tasks, the court takes an overall percentage reduction approach in the instant case because Klancnik's block-billed entries group tasks of varying time commitments together, making task-specific reductions infeasible.

14   Additionally, there is one hour of block billing that contains the description "assembling exhibits" along with other non-clerical tasks. D.App. 4 (describing 2/25/09 entry).

15   The Fund calculates this number by adding up all of the entries that mention the motion to compel, plus some time spent on the hearing itself, and erroneously includes a "motion to strike evidence." D.App. 11, 13. On days where there are tasks unrelated to the motion to compel that are block-billed with tasks related to it, the Fund appears to have multiplied the number of hours reported for the day by the fraction of the total number of tasks that involved work on the motion to compel, with the exception of the hearing on 10/28/09, which the Fund assigns the value of 1.3 hours. *See id.* at 13.

16   This follows the Fund's methodology of taking the total number of hours claimed and scaling the figure based on the proportion of tasks during the day spent on the motion to compel.

17   Fralick criticizes the methodology various courts in the Fifth Circuit that determines the percentage reduction appropriate for each deficiency (e.g., 15% for vague entries and 10% for block-billing) and adds the reductions together to determine a total reduction to apply to the hours claimed (e.g., applying a 25% total reduction). *See, e.g., Abner v. Kan. City S. Ry. Co.,* 541 F.3d 372, 377–78 (5th Cir.2008); *Tyler v. Union Oil Co.,* 304 F.3d 379, 390 (5th Cir.2002); *Barrow,* 2005 U.S. Dist. LEXIS 34557, at *59. He requests that the court consider an alternate method that applies one percentage reduction after the other (e.g., applying a 15% reduction, and then applying a 10% reduction to the result, yielding a total reduction of 23.5%). Although this is a reasonable approach, the court will not deviate from the method followed by courts that have applied percentage reductions, because that method is also reasonable as well.

18   D. Jones includes one footnote at the beginning of the statement of services rendered that declares that each entry that lists a document name should be presumed to signify "research, consulting, drafting, and filing." P. Reply App. 3. This is insufficient. Not only are some of the tasks listed in the footnote vague, this method of record-keeping introduces inaccuracies and is itself a form of block billing (i.e., reporting only the total time for multiple tasks, rather than itemizing time spent on each task).

2011 WL 487754

19   It is possible, of course, that this results from totaling the number of hours spent on the complaint and reporting all such hours on the date the complaint was filed. It is also conceivable that D. Jones was mistaken about the date when he performed the work. Regardless, such inaccurate record-keeping does not support awarding fees for this service.

20   As discussed above, the mere listing of names of documents and a blanket after-the-fact declaration that every entry reported involved "research," "citation-checking," and "drafting" is inadequate to apprise the court of the reasonableness of hours claimed for each task and the precise nature of the tasks done on a particular day.

---

**End of Document**
© 2017 Thomson Reuters. No claim to original U.S. Government Works.

# **Tab 9**

Case 4:09-cv-01237 Document 755-3 Filed on 06/30/17 in TXSD Page 74 of 91

Harman v. City of University Park, Not Reported in F.Supp. (1997)

1997 WL 53120

🚩 KeyCite Yellow Flag - Negative Treatment
Declined to Follow by In re Affiliated Foods Southwest, Inc.,
Bankr.E.D.Ark., June 6, 2012

1997 WL 53120
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas,
Dallas Division.

Lieutenant Evelyn HARMAN, Plaintiff,
v.
The CITY OF UNIVERSITY PARK; the Police
Dept. of the City of University Park; City Manager
Bob Livingston, individually and in his official
capacity; Captain E.L. Holman, individually
and in his Official Capacity; Captain Michael C.
Brock, individually and in his Official Capacity;
Wayne Cook, individually; and Robert E. Hager;
individually and in his Official Capacity, Defendants.

Civil Action No. 3:94–CV–2450–P.
|
Feb. 3, 1997.

*MEMORANDUM OPINION AND ORDER*

BOYLE, United States Magistrate Judge.

**\*1** Pursuant to the District Court's Order of Reference, filed December 13, 1996, came on to be considered Plaintiff's Objection to Defendants' Request for Attorneys' Fees Pursuant to Magistrate Judge's *Memorandum Opinion and Order of October 29, 1996,* filed December 2, 1996. At issue is whether Defendants' charges for fees incurred in opposing Plaintiff's Rule 11 Motion for Sanctions were reasonable. Having considered the pertinent pleadings, the undersigned GRANTS in part and DENIES in part Plaintiff's motion for the reasons that follow.

I. Background

In the unsuccessful Rule 11 motion giving rise to the instant motion, Plaintiff Evelyn Harman challenged the Defendants' Answer to Plaintiff's Third Amended Complaint, arguing that the Defendants denied verifiable facts and made frivolous legal arguments. Prior to a hearing on Plaintiff's Rule 11 Motion, the undersigned

ordered the parties to meet and attempt to resolve their dispute. At that conference, several items were resolved. Nonetheless, Plaintiff continued to seek Rule 11 sanctions for Defendants' alleged failure to reasonably investigate the factual basis for their denials. After a hearing on the Rule 11 motion, held October 23, 1996, the undersigned denied Plaintiffs' motion and held,

> In light of the complexity of the averments contained in Plaintiff's complaint, the Defendants' detailed response to those allegations, and the fact that no formal discovery has taken place, the undersigned finds Defendants' response to the third amended complaint to be the product of an objectively reasonable legal and factual inquiry. Furthermore, although it appears that Plaintiff acted in good faith in bringing her Rule 11 motion, the time and expense expended on a basic pleading issue in a two-year-old case is of grave concern. The undersigned is especially troubled by the Plaintiff's determination to pursue sanctions on issues resolved at the *Dondi* conference.

*See* Memorandum Opinion and Order, filed October 19, 1996. The court further ordered that Plaintiff pay Defendants' attorneys' fees incurred after the face-to-face *Dondi* conference.[1] Pursuant to the court's order, Lu Pham, attorney for the defendants, submitted an affidavit detailing the hours spent on Plaintiffs' Rule 11 Motion. On December 2, 1996, Plaintiff filed her objections to Defendants' expenses.

II. Analysis

Rule 11 was revised in 1993, and under the revision the court may award reasonable expenses, including attorney's fees, incurred in presenting or opposing a motion for sanctions to the prevailing party.[2] Fed.R.Civ.P. 11(c)(1)(A); Fed.R.Civ.P. 11 Advisory Committee Notes; *see Connecticut General Life Ins. Co. v. Thomas,* 910 F.Supp. 297, 304–05 (S.D.Tex.1995). This award does not require a cross-motion for sanctions and is available whether or not the original motion for sanctions itself violates Rule 11. *See Equal Employment Opportunity*

Harman v. City of University Park, Not Reported in F.Supp. (1997)

1997 WL 53120

*Commission v. Tandem Computers Inc.,* 158 F.R.D. 224, 228 (D.Mass.1994); *Williams v. General Motors Corp.,* 158 F.R.D. 510 (M.D. Georgia 1993).

**\*2** In assessing the reasonableness of an attorneys' fees, a court must first determine the reasonable number of hours expended and the reasonable hourly rate for each participating attorney. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The multiplication of the hours by the hourly rate yield the lodestar. *Id.; Brantley v. Surles,* 804 F.2d 321, 325 (5th Cir.1986). It is within the discretion of the court to either accept the lodestar amount or adjust the lodestar amount, depending upon the circumstances of the case. *Riley v. City of Jackson, Miss.,* 99 F.3d 757, 760 (5th Cir.1996). The reasonableness of the time and rate, and the appropriateness of any upward or downward adjustment, is guided by the following factors:

(1) the time and labor required,

(2) the novelty and difficulty of the case,

(3) the skill required,

(4) the preclusion of other employment,

(5) the customary fee,

(6) whether the fee is fixed or continent, [3]

(7) time limitations imposed,

(8) the results obtained,

(9) the experience, reputation and ability of the attorneys,

(10) the undesirability of the case,

(11) the nature and length of the professional relationship with the client, and

(12) awards in similar cases.

*Johnson v. Georgia Highway Express,* 488 F.2d 714, 717–19 (5th Cir.1974).

In light of the above factors, the court finds that reasonable attorneys' fees in the amount of $2,483, representing the requested $2,808 reduced by $325, should be awarded to Defendants. First, the court finds that $130 per hour is a reasonable rate for the services of Mr.

Pham. The court is aware of customary rates for attorneys practicing in this district. Mr. Pham has practiced in Texas for six years. *See* Aff. of Lu Pham. In hearings, Mr. Pham was well-prepared and exhibited above average legal skills. The court finds Mr. Pham's customary billing rate of $130 per hour to be reasonable in light of his experience and skill.

Second, Mr. Pham states that he expended 21.6 hours reviewing and responding to Plaintiffs' motion, and preparing for and representing Defendants at the Rule 11 hearing. *See* Aff. of Lu Pham. In her objection, Plaintiff argues that this is an unreasonable amount of time. *See* Pl.'s Objection, pp. 2–3. On the whole, the court disagrees, as will be discussed below.

The Billing Memorandum attached to Mr. Pham's affidavit includes an entry for 2.5 hours for "Meeting with city representative to discuss response to Plaintiff's Motion for Sanctions and general trial strategy." Aff. of Lu Pham, exh. A. The undersigned awarded Defendants expenses incurred in opposing Plaintiffs Rule 11 Motion for Sanctions only. *See* Memorandum Opinion and Order, filed October 29.1996. Time spent developing general trial strategy is not included in the award. Furthermore, the burden is on the fee applicant to prove the reasonableness of the number of hours expended and hourly rate. *Riley,* 99 F.3d at 760. Because the court is unable to determine what percentage of the 2.5 hours was spent in opposing Plaintiff's Rule 11 Motion, the award will be adjusted to reflect the elimination of these hours. *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 236 (5th Cir.), *cert. denied,*—U.S.—, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995)(citing cases).

**\*3** After making this adjustment, the court finds that $2,483 (19.1 hours at $130 per hour) to be a reasonable attorneys' fee award. The sanctions motion arose out of a Answer to her 91 page Complaint was inadequate. Furthermore, Plaintiff's Rule 11 Motion was itself 50 pages long, excluding exhibits, and was further supplemented by Plaintiff's 56 page Report to the Magistrate on Results of *Dondi* Conference. Plaintiffs' Rule 11 motion stated that Defendants' pleading responses were insufficient and was supported with a paragraph-by-paragraph analysis. The motion itself necessitated a time-consuming, detailed response. Mr. Pham's conduct at the hearing reflected this preparation, including a willingness and ability to justify the challenged

1997 WL 53120

responses in Defendants' Answer line-by-line if the court so requested. Furthermore, it is reasonable that Mr. Pham would have endeavored to be thoroughly prepared, given his familiarity with the abilities of Plaintiff's attorney and her tendencies toward extensive and factually complex allegations. The court therefore finds that 19.1 hours is a reasonable amount of time to review and respond to Plaintiff's Rule 11 Motion, and to prepare for the Rule 11 hearing.

### III. Conclusion

For the reasons stated above, the court ORDERS Plaintiff's former counsel, Ms. Ruth Kollman, to pay attorneys' fees in the amount of $2,483 to the Defendants.

**All Citations**

Not Reported in F.Supp., 1997 WL 53120

---

Footnotes

1   A motion for sanctions that crosses the line of vigorous advocacy into frivolous conduct is itself sanctionable. *See Alliance to End Repression v. City of Chicago,* 899 F.2d 582, 583–84 (7th Cir.1990). The court emphasizes that although its October 29, 1996 Order awarded attorneys' fees to the prevailing party, it did not sanction Plaintiff.

2   There was no such provision in Rule 11 prior to the 1993 amendment. The rule only provided that

   If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

   Fed.R.Civ.P. 11 (West 1992). As amended, Rule 11 provides,

   If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorneys' fees incurred in presenting or opposing the motion.

   Fed.R.Civ.P. 11(c)(1)(A) (West 1996).

3   The contingency nature of a plaintiff's case is no longer a relevant factor. *City of Burlington v. Dague, 505* U.S. 557, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

---

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# **<u>Tab 10</u>**

2012 WL 3155137
Only the Westlaw citation is currently available.
United States District Court,
D. Nevada.

Randy RICH, as personal representative of Ryan
Rich, deceased, and Nick Jensen and Tanya
Jensen as guardians for R.J., a minor, Plaintiffs,

v.

TASER INTERNATIONAL, INC., and
Does 1 to 10, inclusive, Defendants.

No. 2:09–cv–02450–ECR–RJJ.
|
Aug. 2, 2012.

**Attorneys and Law Firms**

John Burton, Law Offices of John Burton, Pasadena, CA,
Peter M. Williamson, Williamson & Krauss, Woodland
Hills, CA, John A. Snow, Vancott, Bagley, Cornwall &
McCarthy, Las Vegas, NV, for Plaintiffs.

Damon R. Leichty, Barnes & Thornburg LLP, South
Bend, IN, David T. Ballard, Barnes & Thornburg LLP,
Chicago, IL, Peter M. Angulo, Olson Cannon, Gormley &
Desruisseaux, Las Vegas, NV, Holly L. Gibeaut, Michael
A. Brave, Taser International, Inc., Scottsdale, AZ, J.
Curtis Greene, John R. Maley, Barnes & Thornburg LLP,
Indianapolis, IN, for Defendants.

*Order*

EDWARD C. REED, District Judge.

**\*1** This case arises out of allegations that an
Electronic Control Device produced by Defendant
TASER International, Inc. ("TASER") caused the death
of Dr. Ryan Rich. Now pending before the Court is
Defendant TASER's Motion for Sanctions (# 111). The
motion is ripe and we now rule on it.

*I. Factual Background*

On January 4, 2008, decedent Dr. Ryan Rich ("Dr.Rich"),
who had a history of seizure disorders, was driving on
Interstate–15 in Las Vegas, Nevada when he had a seizure
which resulted in several minor traffic collisions, witnessed

by Nevada Highway Patrol Officer Loren Lazoff ("Officer
Lazoff"). (Compl.¶¶ 11–13.) After the accident, Officer
Lazoff approached the vehicle and a struggle ensued, as
Dr. Lazoff was in a dazed post-seizure state. (*Id.* ¶¶ 13–15.)
When Dr. Rich eluded Officer Lazoff's grasp and began
heading toward oncoming traffic, Officer Lazoff found it
necessary to discharge his TASER Model X26 Electronic
Control Device (the "ECD") three times into Dr. Rich's
chest from a distance of about three to four feet, and then
two additional times to Dr. Rich's right thigh before he
was able to handcuff Dr. Rich with the help of a passerby.
(*Id.* ¶¶ 16–18.) When Officer Lazoff returned to his patrol
vehicle to call an ambulance, the passerby informed him
the Dr. Rich was turning blue. (*Id.* ¶ 20.) Paramedics
transported Dr. Rich to Spring Valley Hospital where he
was pronounced dead. (*Id.* ¶ 21.)

*II. Procedural Background*

Plaintiffs filed the Complaint (# 1) on December 30,
2009, alleging the following five causes of action: (1)
Negligence; (2) Strict Product Liability; (3) Intentional
Misrepresentation; (4) Fraudulent Concealment and
Deceit; and (5) Negligent Misrepresentation. TASER filed
its answer (# 13) on April 26, 2010.

On July 2, 2011, TASER filed three Motions in Limine
(50, 51, 52), seeking to exclude the testimony of Dr.
Jerome Engel, Dr. Michael Wogalter, and Dr. Douglas
Zipes, respectively, and a Motion for Summary Judgment
(# 53).

On January 25, 2012, TASER filed a Motion for Sanctions
(# 111) pursuant to Federal Rule of Civil Procedure 11
and 28 U.S.C. § 1927 for failure to voluntarily dismiss the
case. Plaintiffs filed their Response (# 114), which also
requests Rule 11 sanctions against TASER, on February
13, 2012. TASER replied (# 116) on February 23, 2012.

On March 30, 2012, we issued an Order (# 119) granting
TASER's Motions in Limine (50, 51) to exclude the
testimony of Drs. Jerome Engel and Michael Wogalter,
respectively, and denying TASER's Motion in Limine
(# 52) to exclude the testimony of Dr. Douglas Zipes.
Further, we granted TASER's Motion for Summary
Judgment (# 53) with regard to Plaintiffs' third, fourth,
and fifth causes of action, and denied the motion
as to Plaintiffs' first and second causes of action for

WESTLAW   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 3155137

negligence and strict product liability. We further granted TASER's Motion to Strike (# 109) and struck Dr. Zipes' supplemental report (# 108–1) from the record.

### III. Legal Standard

**A. Rule 11 Sanctions**

**\*2** Federal Rule of Civil Procedure 11(b) provides that by presenting or submitting any filing to the court,

> an attorney ... certifies that to the best of the person's knowledge, information, and belief, formed afer an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; ...

For violations of Rule 11(b), Rule 11(c) further provides that "[a] motion for sanctions must be made separately from any other motion and 3 must describe the specific conduct that allegedly violates Rule 11(b)." FED.R.CIV.P. 11(c)(2). Rule 11(c)(2) further authorizes the court to award the prevailing party reasonable expenses, including attorney's fees, incurred for the motion. Id. Rule 11 imposes an objective test. *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986).

Under this objective standard, "improper purpose" as set forth in 11(b)(1) may be deduced where there is no legal or factual basis for a claim. See *Huettig & Schromm, Inc. v. Landscape Contractors,* 790 F.2d 1421, 1427 (9th Cir.1986). For purposes of Rule 11(b)(2), a cause of action is not warranted by law where no "plausible, good faith argument can be made by a competent attorney" in support of the proposition asserted. *Zaldivar,* 780 F.2d at 829. Finally, under Rule 11(b)(3), a cause of action is grounded in fact if an independent examination reveals "some credible evidence" in support of a party's

statements. *Himaka v. Buddhist Churches of Am.,* 917 F.Supp. 698, 710 (N.D.Cal.1995) (quoting *Kendrick v. Zanides,* 609 F.Supp. 1162, 1172 (N.D.Cal.1985)). The terms of Rule 11 are mandatory: where the certification required by Rule 11 has been violated, sanctions must be imposed. *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1536, 1540 (9th Cir.1986). The type and amount of sanction, however, remain within the discretion of the Court. Id. Rule 11 does not inhibit the Court from imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under 28 U.S.C. § 1927. See *Chambers v. NASCO,* 501 U.S. 32, 48–49, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

**B. Section 1927 Sanctions**

Title 28 U.S.C. § 1927 provides that an attorney in federal court "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." This section is "concerned only with limited the abuse of court processes" and is "indifferent to the equities of a dispute and to the values advanced by the substantive law." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 762, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Under prevailing Ninth Circuit law, a court must find that an attorney acted "recklessly or in bad faith" before imposing costs and fees under § 1927. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 638 (9th Cir.1987). Frivolity does not of itself establish bad faith. Id. Finally, "[n]otice and a hearing should precede imposition of a sanction under § 1927." Id.

### IV. Discussion

**A. Defendant TASER's Motion for Sanctions (# 111)**

**\*3** Defendant TASER argues that Plaintiffs have failed to produce evidence that establishes that TASER failed to provide adequate warnings or that the TASER X26 ECD caused Dr. Rich's death and should therefore be sanctioned for failing to dismiss the case voluntarily. TASER's arguments are completely without merit and simply restate the arguments made in TASER's motion for summary judgment (# 53). In our March 30, 2012 order (# 119) denying TASER's motion for summary judgment with regard to Plaintiffs' negligence and strict liability claims, we found that Plaintiffs produced evidence

sufficient to establish a genuine issue of material fact as to whether the TASER's X26 ECD device caused Dr. Rich's cardiac arrest and whether TASER's failure to warn users against the danger of deploying the device at a target's chest area caused Dr. Rich's death. In that order (# 119), we specifically relied upon Officer Lazoff's testimony that he was instructed to fire the ECD at the chest area and that he was not made aware of any known cardiac risks associated with the used of the ECD. (*See* Order (# 119) at 18.) We also relied upon the testimony of Plaintiffs' expert witness, Dr. Douglas Zipes, as evidence that repeated discharges of an ECD into a target's chest can cause ventricular fibrillation and asystole. (*Id.* at 20.) For these reasons, TASER's request for sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 based upon Plaintiffs' failure to voluntarily dismiss the case must be denied.

Moreover, Rule 11(c)(2) authorizes the court to award the prevailing party reasonable expenses, including attorney's fees, incurred for the motion "[i]f warranted." The Court finds that an award to Plaintiffs, to be borne by counsel for Defendant TASER, of the reasonable expenses, including attorney's fees, incurred in defending against Defendant TASER's motion is in fact warranted in this case. As Plaintiffs point out, the Advisory Committee Notes to the 1993 Amendments to Rule 11 provide, in relevant part, as follows:

> [Rule 11 motions] should be not be employed.. to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position,.. to intimidate an adversary into withdrawing contentions that are fairly debatable, [or] to increase the costs of litigation, ...

FED.R.CIV.P. 11 1993 Amendments advisory committee's note. *See also Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 485 ("The use of Rule 11 as an additional tactic of intimidation and harassment has become part of the so-called 'hardball' litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct. A

court may impose sanctions on its own initiative when the Rule is invoked for an improper purpose.") (footnote and citation omitted). TASER's Motion for Sanctions (# 111) is composed almost entirely of arguments that Plaintiffs have not produced evidence of essential elements of their claims—arguments that have already been made in TASER's Motion for Summary Judgment (# 53) and Motion in Limine (# 52) to exclude the testimony of Dr. Douglas Zipes. TASER even includes the testimony of its own expert, Dr. Mark Kroll, Ph.D., to refute Dr. Zipes' testimony. A Rule 11 motion is not a proper vehicle for arguing the merits of a case or refuting the testimony of an expert witness—"other motions are available for those purposes." FED.R.CIV.P. 11 advisory committee's note. TASER's Motion for Sanctions (# 111) is completely without merit and quite probably, in this Court's estimation, brought for an improper purpose. Plaintiffs will therefore be awarded the reasonable expenses of defending such a motion pursuant to Federal Rule of Civil Procedure 11(c)(2).

**\*4** Moreover, TASER is not entitled to sanctions pursuant to 28 U.S.C. § 1927. Plaintiffs did not vexatiously multiply the proceedings by refusing to withdraw their complaint in the face of TASER's threat to move for sanctions. A complaint that survives a motion for summary judgment is not an "unnecessary filing[ ]" subject to the sanction of section 1927. *In re Keegan Mgmt. Co. Sec. Litig.,* 78 F.3d 431, 435 (9th Cir.1996); *see also Handte v. Wells Fargo Bank N.A.,* No. 3:11–cv–00900–ECR–VPC, 2012 WL 2921493, at \*5 (D.Nev. Jul.16, 2012) (holding that section 1927 sanctions cannot be applied to the filing of a complaint). And while we seriously question the conduct of counsel for Defendant TASER, we cannot say that Plaintiffs' attorneys acted "recklessly or in bad faith" in refusing to withdraw their meritorious case, as is required by the Ninth Circuit before imposing sanctions. *See T.W. Elec. Serv., Inc. .,* 809 F.2d at 638. Moreover, section 1927 sanctions cannot be applied to an initial pleading, but rather "only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt.,* 78 F.3d at 435 (citations omitted). TASER's motion for section 1927 sanctions therefore fails on its face and must be denied.

## B. Plaintiffs' Motion for Sanctions (# 114)
While we award to Plaintiffs the cost of defending against TASER's Motion for Sanctions (# 111), it appears that Plaintiffs also request additional Rule 11

sanctions in their Response (# 114). Plaintiffs' motion is unnecessary if Plaintiffs merely seek recompense for the cost of defending against TASER's baseless Rule 11 motion. *See* FED.R.CIV.P. 11 1993 Amendments advisory committee's note ("[T]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. However, service of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion."). To the extent that Plaintiffs seek additional sanctions, Plaintiffs' request must be denied as procedurally improper. Rule 11(c)(2) proves that "[a] motion for sanctions must be made separately from any other motion...." Further, Plaintiffs did not serve notice of the intent to seek sanctions twenty-one days prior to filing the request, as is also required by Rule 11(c)(2). For this reason, Plaintiffs' request for additional Rule 11 sanctions against TASER must be denied.

### V. Conclusion

Defendant TASER moved for sanctions on the grounds that Plaintiffs should have voluntarily dismissed their case because they have no evidence of causation. Plaintiffs presented evidence of causation, however, sufficient to survive a motion for summary judgment. As such, TASER's argument for sanction are without merit, and we find that it was brought for the improper purpose of emphasizing the merits of TASER's case. As such, we find that an award to Plaintiffs of the costs of defending against TASER's motion is warranted in this case. However, to the extent that Plaintiffs seek additional sanction, Plaintiffs' request must be denied as procedurally improper.

**\*5** ***IT IS, THEREFORE, HEREBY ORDERED*** that Defendant TASER International, Inc.'s Motion for Sanctions (# 111) is ***DENIED.***

***IT IS FURTHER ORDERED*** that Plaintiffs shall have fourteen (14) days within which to file an Application for Costs and Fees incurred for TASER's Motion for Sanctions (# 111).

***IT IS FURTHER ORDERED*** that Plaintiffs' Motion for Sanctions (# 114) is ***DENIED.***

### All Citations

Not Reported in F.Supp.2d, 2012 WL 3155137

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

# **<u>Tab 11</u>**

2015 WL 6964290
Only the Westlaw citation is currently available.
United States District Court,
M.D. Florida,
Tampa Division.

Penelope Sewald, Petitioner,
v.
John Reisinger, Respondent.

Case No. 8:08-cv-2313-T-27TBM
|
Signed November 9, 2015
|
Filed 11/10/2015

**Attorneys and Law Firms**

Donald A. Foster, The Foster Law Group, Tampa, FL for Plaintiff.

Mark Adam Neumaier, Law Office of Mark Neumaier, Tampa, FL, for Defendant.

**ORDER**

JAMES D. WHITTEMORE, United States District Judge

**\*1 BEFORE THE COURT** is Petitioner's Renewed Motion for Attorney Fees and Costs (Dkt. 35), which Respondent opposes (Dkt. 37). A hearing was held on the motion (Dkt. 54), after which the parties submitted supplemental affidavits and memoranda in support of their respective positions (Dkts. 55, 56, 57, 58, 59, 60). Upon consideration, the motion is **GRANTED** *in part* and **DENIED** *in part*. While Petitioner's entitlement to fees and expenses was established in 2009, many of the requested fees and expenses will be denied, because they are not authorized by the relevant statute or Respondent has shown that the passage of time has prejudiced him.

**I. BACKGROUND**

In this international child abduction case brought pursuant to the Hague Convention, Petitioner/Mother Penelope Sewald prevailed on the merits against Respondent/Father John Reisinger, securing release of her son's passport and the return of her son to Germany.

(Dkts. 9, 14). Sewald timely moved for attorneys' fees and costs of $14,000, as well as her living expenses of $17,548.16 'incident to these proceedings.' (Dkt. 19). Reisinger did not respond to that motion. On April 30, 2009, Petitioner's motion was granted 'as to Petitioner's entitlement to an award of attorneys' fees and costs.' Ruling was deferred on the amount due pending resolution of the appeal. (Dkt. 27). The Eleventh Circuit affirmed the decision in favor of Sewald on April 15, 2010. (Dkt. 29).

*Six* years after the order establishing Petitioner's entitlement to fees and costs, and *five* years after the Eleventh Circuit's affirmance on the merits, Sewald moved to substitute David Hurvitz as counsel for Donald A. Foster, who litigated the case in 2008-2009. (Dkts. 32, 33). That motion was granted. (Dkt. 34). Sewald, through Hurvitz, moved to renew the motion for attorneys' fees, costs, and living expenses. (Dkt. 35). Reisinger responded in opposition. Based on the delay in renewing the motion, Respondent argues that he and his counsel no longer possess documentation to oppose the motion, particularly with regard to Petitioner's claimed living expenses. (Dkt. 37). The matter was set for hearing on June 18, 2015. (Dkt. 39). At the hearing, the parties were ordered to submit affidavits and memoranda regarding the fees and costs incurred, which they have. (Dkts. 55, 56, 57, 58, 59, 60).

Reisinger makes two arguments against Sewald's attempt to renew the motion for fees, costs, and expenses. First, Reisinger argues that Sewald's extreme delay in renewing the motion is in itself sufficient reason to deny or reduce the award. Second, Reisinger disputes many of the amounts claimed for fees, costs, and expenses, based on (1) the delay in renewing the motion and resulting prejudice and (2) the lack of statutory authorization for certain fees, costs, and expenses claimed.

**II. DELAY IN RENEWING MOTION**

Reisinger argues that the six-year delay in renewing the motion justifies denial or reduction of the fees and expenses. In the analogous situation of when a prevailing party has a statutory right to attorneys' fees but fails to seek them within a reasonable time, however, courts have rejected the argument that a lengthy delay alone justifies a denial or reduction of fees, and have required that the party opposing fees show it has been 'unfairly ... prejudice [d]' by the passage of time. *White v. New Hampshire*

*Dep't of Employment Sec.*, 455 U.S. 445, 454 (1982). [1] *See Baird v. Bellotti,* 724 F.2d 1032, 1033, 1034-36 (1st Cir. 1984) (even when delays in seeking fees were 'plainly unreasonable,' fees would be denied only if affected party can show 'actual prejudice'). In *Baird*, although the First Circuit reasoned that a delay of thirty months 'comes close to a delay so long that courts might infer prejudice simply from its length, without more,' it upheld the denial of fees on the basis of the delay and the fact that the district court had identified 'actual prejudice' to the non-moving party based on memory loss, change in counsel, and intervening changes in the law. *Id.*

**\*2** Other courts have interpreted White and Baird as requiring a showing of prejudice to deny a long-delayed fee motion. *See Gross v. City of Cleveland Heights,* 53 F.3d 331 (6th Cir. 1995) (unpublished table decision) (affirming grant of attorneys' fees even though petition was filed 30 months after the district court's judgment, because '[e]ven a 'plainly unreasonable' delay does not prove laches; 'prejudice remains a significant factor.' ') (quoting *Baird,* 724 F.2d at 1034); *Walker v. Coughlin,* 909 F. Supp. 872, 875-76 (W.D.N.Y. 1995) (granting fee petition despite four year delay in seeking fees because defendants did not 'actually suffer[ ] any prejudice because of [the delay].'); *James v. Nashua School Dist.,* 720 F. Supp. 1053, 1060-61 (D.N.H. 1989) (delay in seeking fees of over two years 'patently untimely,' but granting fee petition because delay did not 'result in prejudice' to non-moving party) (quotation omitted).

Although not directly invoked by Reisinger, the doctrine of laches, which provides a defense to late-filed claims not subject to a statute of limitations, also requires the party to demonstrate 'prejudice[, which] requires more than simply negligence or delay.' *Cruz v. Hauck,* 762 F.2d 1230, 1238 (5th Cir. 1985)(quoting *Matter of Bohart,* 743 F.2d 313, 326 (5th Cir. 1984)). A party seeking laches 'must show a delay which has subjected him to a disadvantage in asserting and establishing his claimed right or defense, or other damage caused by his detrimental reliance on his adversary's conduct. ' *Law v. Royal Palm Beach Colony, Inc.,* 578 F.2d 98, 101 (5th Cir. 1978). [2]

Accordingly, even though the delay in renewing the motion was 'plainly unreasonable,' and arguably could, in itself, warrant denial or reduction in the requested fee, I find that Reisinger must nonetheless show that he was prejudiced by the delay. [3] *Baird,* 724 F.2d at 1033-36; *Law,* 578 F.2d at 101.

## III. REASONABLENESS OF ATTORNEYS' FEES AND OTHER EXPENSES

Sewald claims attorneys' fees, costs, and other expenses pursuant to 22 U.S.C. § 9007(b)(3) (formerly codified at 42 U.S.C. § 11607), which provides:

> Any court ordering the return of a child pursuant to [the Hague Convention] shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate. 22 U.S.C. § 9007(b) (3) (emphasis added).

The petitioner bears the burden to show that expenses are 'necessary,' and if the petitioner satisfies that burden, the burden shifts to the respondent to establish that the expenses are 'clearly inappropriate.' *Salazar v. Maimon,* 750 F.3d 514, 522 (5th Cir. 2014).

### A. Attorneys' Fees and Costs

Sewald's attorney during the course of the Hague Convention proceeding, Donald A. Foster, avers that he spent 49.8 hours representing Sewald. His paralegal billed an additional 17.5 hours. (Dkt. 56 ¶ 2). [4] Foster's rate is $250 per hour and the paralegal's rate is $80 per hour, for a total of $13,850.(Id. ¶¶ 1-2). [5] Foster further avers that he incurred costs of $1,044.43 in the course of his representation, for a total of $14,894.43. (*Id.*) [6]

**\*3** Reisinger challenges Foster's affidavit on two grounds. First, Reisinger argues that the delay in renewing the motion warrants denial of attorneys' fees. This argument fails because Reisinger has not demonstrated any prejudice based on the delay in renewing the motion as to attorneys' fees. *See Baird,* 724 F.2d at 1033 (requiring

more than a 'plainly unreasonable' delay to deny motion for fees). Second, Reisinger contends that many of the specific fee entries should be denied, because they were incurred in the state marriage dissolution proceeding between the parties and the Eleventh Circuit appeal of this Court's decision.

Foster's April 7, 2010 statement is based entirely on the Eleventh Circuit appeal. Those fees, $7,859.06, will be denied. (Dkt. 56-2; Dkt. 54; see Dkt. 27). See 11th Cir. R. 39-2 (application for attorneys' fees for Eleventh Circuit proceedings must be filed in the Eleventh Circuit). The February 2, 2009 statement of $7,436.54 includes entries for both the Hague Convention proceeding and the state court dissolution proceeding. (Dkt. 56-1). [7]

The fees based on the following entries will be denied because they appear to have been incurred in the state court proceeding and were not 'necessary' for the Hague action:

> 11/19/2008 telephone conference with Kathy Moffit ($121.67 (two entries)); 12/16/2008 review orders granting extension of time and hearing of October 8, 2008 ($100 (three entries)); 1/22/2009 filing order from this court in state court ($41 (two entries)); 1/23/2009 review answer and letter re case management conference in state court ($58 (three entries)). (Id.)

As Reisinger argues, the 11/13/2008 entries for 'letter regarding visitation' (totaling $165) will be reduced by half because they were incurred for both the Hague Convention and state court proceedings. (Id.) Reisinger's remaining challenges to the fee entries are rejected.

Reisinger also takes issue with the costs claimed, arguing that only the filing fee of $350 is related to the Hague Convention proceeding and the other costs of $929.37 should be denied. (Id.) This argument is well taken, as Sewald has not shown how the costs, with the exception of the filing fee, were incurred during 'the course of proceedings in [this] action.' 22 U.S.C. § 9007(b)(3). Accordingly, Sewald is entitled to an award of $6,104 in attorneys' fees and costs. [8]

**B. Other Necessary Expenses**

In addition to her attorneys' fees and costs, Sewald seeks reimbursement of 'necessary expenses' incurred during the Hague Convention proceedings, including airfare of $1,287, hotel and car expenses of $7,909.70, translation services of $3,204.50, mail, document production, internet, and telephone charges of $850.94. (Dkt. 55 ¶¶ 2-3 & Dkt. 55-1). Reisinger challenges all of these expenses on various grounds.

The statute provides for reimbursement of costs related to the return of the child.' 22 U.S.C. § 9007(b)(3); see Seaman v. Peterson, 762 F. Supp. 2d 1363, 1382 (M.D. Ga. 2011), aff'd, 766 F.3d 1252 (11th Cir. 2014). However, Sewald has not shown that her claimed airfare expenses were incurred during this action. Three entries in her spreadsheet are categorized as airfare. However, the NWA Air entry for September 5, 2008 is before the filing of this proceeding. And the 'Flight' entry for May 27, 2015, is well after Sewald and her child returned to Germany. (See Dkt. 55-1). The $50 for 'US Airways' on January 26, 2009 appears to be appropriate. (Id.). However, Reisinger avers that Sewald possessed return tickets which could have been modified, and his records of those tickets were lost during the six-year period between the court proceedings and the renewal of Petitioner's motion. (Dkt. 58 ¶¶ 5, 8-11, 37). Accordingly, Reisinger has demonstrated that he is prejudiced by the delay in Petitioner renewing her motion with regard to the claimed airfare expenses. Those expenses will therefore be denied. See White, 455 U.S. at 454 (unfair surprise or prejudice sufficient basis to deny fees to which prevailing party is otherwise entitled).

**\*4** The claimed hotel and car expenses appear to be for Sewald's hotel and rental car while she was in Tampa for the Hague Convention proceeding. (Dkt. 55-1). See Antunez-Fernandes v. Connors-Fernandes, 259 F. Supp. 2d 800, 816 (N.D. Iowa 2003) (granting expenses of car rental and hotel in Hague Convention case); Lebiedzinski v. Crane, No. A03-0248 CV (JKS), 2005 WL 906368, at *4 (D. Alaska Apr. 13, 2005) (same). However, Reisinger avers that Sewald was staying at her parents' home in Tampa before she moved into the hotel, and Sewald has provided no evidence that it was 'necessary' for her to stay at the hotel rather than at her parents' home. [9] (Dkt. 58 ¶¶ 3, 28). Reisinger also avers that Sewald had a car available to her which Sewald unilaterally refused to use, despite the fact it was titled in both Reisinger and Sewald's

Sewald v. Reisinger, Not Reported in F.Supp.3d (2015)
Case 4:09-cv-01237 Document 755-3 Filed on 06/30/17 in TXSD Page 86 of 91
2015 WL 6964290

names. (*Id.* ¶ 4). Based on Reisinger' s averments and Sewald's failure to show that the hotel and rental car were 'necessary expenses,' the hotel and rental car expenses will be denied. *See* 22 U.S.C. § 9007(b)(3).

Reisinger also challenges the translation services of $3,204.50. Sewald does not adequately show that translation services were necessary for materials used in this case, with the exception of invoices #991 ($462.50) and #1003 ($654), translations of documents that were attached to the original petition. (Dkt. 1-2; Dkt. 55-2 at pp. 3, 8). The remaining translation costs will be denied because Sewald fails to show they were necessary for use in the Hague Convention proceeding. *See Wasniewski v. Grzelak-Johannsen*, 549 F. Supp. 2d 965, 979 (N.D. Ohio 2008) (denying request for translation services in Hague Convention case because of petitioner's failure to provide 'supporting documentation.').

Finally, Sewald's request for '[m]ail costs, document production costs, internet and phone expenses' of $850.94 will be denied, because she has failed to demonstrate that these expenses were 'necessary' for the Hague Convention

proceeding. (Dkt. 55 2). *See Aldinger v. Segler*, 338 F. Supp. 2d 296, 298 (D.P.R. 2004), *aff'd*, 157 Fed. App'x 317 (1st Cir. 2005)(denying telephone costs not shown to be incurred during Hague Convention case).

## IV. CONCLUSION

Accordingly, Petitioner's Renewed Motion for Attorney Fees and Costs (Dkt. 35) is **GRANTED** *in part* and **DENIED** *in part*.

Petitioner is awarded $6, 104 in attorneys' fees and costs and $1,116.50 in necessary expenses pursuant to 22 U.S.C. § 9007(b)(3). The Clerk is directed to enter judgment in this amount in favor of Petitioner and against Respondent. The file shall remain closed.

## DONE AND ORDERED.

## All Citations

Not Reported in F.Supp.3d, 2015 WL 6964290

Footnotes

1    In *White* and *Baird*, there was no issue as to the timeliness of the motion, as the district courts had not adopted local rules setting deadlines for seeking attorneys' fees. While Sewald complied with Local Rule 4.18, which requires all claims for fees and costs to be submitted within 14 days following entry of judgment, the extreme delay in renewing her motion is similar to the delay in moving for fees by the prevailing parties in *White* and *Baird*.

2    Opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

3    Respondent cites to a number of Eighth Circuit cases regarding a plaintiff's failure to prosecute, usually based on intentional violations of court orders. These cases are in apposite to this situation, however, where Petitioner's entitlement to fees and expenses has been established through a timely motion. *See Givens v. A.H Robins Co.*, 751 F.2d 261 (8th Cir. 1984); *Sterling v. United States*, 985 F.2d 411 (8th Cir.1993); *Rodgers v. Curators of Univ. of Mo.*, 135 F.3d 1216 (8th Cir. 1998); *DiMercurio v. Malcom*, 716 F.3d 1138 (8th Cir. 2013); *Bergstrom v. Frascone*, 744 F.3d 571 (8th Cir. 2014).

4    To the extent Sewald claims attorneys' fees for her second attorney, David Hurvitz, the request is denied, as they were not incurred 'during the course of [the Hague Convention] proceedings.' 22 U.S.C. § 9007(b)(3).

5    Reisinger does not challenge the rates charged, which are reasonable. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302-03 (11th Cir. 1988).

6    As Reisinger notes, this is less than the $16, 160 averred in the affidavit filed before the hearing, but more than the $14,000 initially requested. (See Dkts. 19, 53 ¶ 2.)

7    Reisinger argues that Foster's fee in preparing for and attending the hearing held before Judge Mccoun should be reduced. That time and rate are reasonable, however, and will not be reduced. Reisinger does not challenge the other hours spent by Sewald's counsel (except on the grounds of timeliness). They are reasonable. *See Norman*, 836 F.2d at 1302-03.

8    This figure is based on the $7,436.54 figure from the February 2, 2009 invoice less the specific items which were rejected above, plus the federal filing fee.

2015 WL 6964290

9    Reisinger also avers that Sewald was welcome to stay at his residence in Hunter's Green, Tampa. Notwithstanding, it was
      understandable that Sewald would leave that residence while the Hague Convention proceedings were being conducted,
      and in any event, does not mitigate against her claim..

---

**End of Document**                                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# **<u>Tab 12</u>**

2014 WL 1632181

2014 WL 1632181
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas,
Dallas Division.

VANLINER INSURANCE COMPANY, Plaintiff,
v.
Greg DERMARGOSIAN, et al., Defendants.

Civil Action No. 3:12–CV–5074–D.
|
Signed April 24, 2014.

**Attorneys and Law Firms**

Jo Allison Stasney, Linda M. Szuhy, Thompson Coe Cousins & Irons, Dallas, TX, for Plaintiff.

Ernest Skip E. Reynolds, III, Law Offices of Ernest (Skip) Reynolds III, Fort Worth, TX, John Howell House, Jr., Burt Barr & Associates, Dallas, TX, Jerry Fazio, Jason E. Kipness, Owen & Fazio PC, Dallas, TX, for Defendants.

*MEMORANDUM OPINION AND ORDER*

SIDNEY A. FITZWATER, Chief Judge.

**\*1** Plaintiff Vanliner Insurance Company ("Vanliner") —the prevailing party in a motion for sanctions brought against it under Fed.R.Civ.P. 11—moves pursuant to Rule 11(c)(2) for an award of attorney's fees against defendants Greg DerMargosian ("Greg") and Martina DerMargosian ("Martina") (collectively, "the DerMargosians"), the parties who brought the motion. For the following reasons, the court grants Vanliner's motion and awards it the sum of $1,066.00 in attorney's fees.

I

Martina and Greg filed separate motions to dismiss Vanliner's complaint pursuant to Rules 12(b)(1) and 12(b)(6). Before the court decided Martina's or Greg's motion, the DerMargosians filed a motion for Rule 11 sanctions against Vanliner. The court denied the motion two days later because the DerMargosians failed to comply with the safe harbor provision of Rule 11(c)(2).[1]

The DerMargosians then complied with the safe harbor provision and filed an amended motion for sanctions. They argued that Vanliner's complaint constituted an improper attempt to draw them into the lawsuit and was a form of harassment. The court denied Martina's and Greg's motions to dismiss, *Vanliner Insurance Co. v. DerMargosian,* 2014 WL 113595, at \*4 (N.D.Tex. Jan.13, 2014) (Fitzwater, C.J.), and also denied the DerMargosians' amended motion for sanctions, Jan. 13, 2014 Order at 1.

Vanliner now moves under Rule 11(c)(2) for an award of attorney's fees as the prevailing party in the proceeding regarding the DerMargosians' amended motion for sanctions. The DerMargosians respond that Vanliner's application does not comply with the procedural provisions of Rule 11(c)(2). They also argue that the application should be denied because their amended motion for sanctions was reasonable under the circumstances and was not filed in bad faith.

II

A

Under Rule 11(c)(2), "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred" for litigating a Rule 11 motion.[2] The court's authority to award reasonable expenses under Rule 11(c)(2) is distinct and separate from its authority to award attorney's fees under Rule 11(c)(4). An award of reasonable expenses under Rule 11(c)(2) is not a sanction for violating Rule 11. *See Boim v. Quranic Literacy Inst.,* 2003 WL 1956132, at \*3–4 (N.D.Ill. Apr.24, 2003) (distinguishing reasonable expenses provision from sanction-based fees provision); *Harman v. City of Univ. Park,* 1997 WL 53120, at \*1 & n. 1 (N.D.Tex. Feb.3, 1997) (Boyle, J.) (stating that reasonable expenses award under Rule 11(c)(2) "is available whether or not the original motion for sanctions itself violates Rule 11"); *EEOC v. Tandem Computers Inc.,* 158 F.R.D. 224, 229 (D.Mass.1994) (same). Accordingly, a party seeking reasonable expenses pursuant to Rule 11(c)(2) is not required to comply with the procedural requirements of Rule 11(c)(2). *See Patelco Credit Union v. Sahni,* 262 F.3d 897, 913 (9th Cir.2001) (stating that "[a] party defending a Rule 11 motion need not comply with the

Vanliner Ins. Co. v. DerMargosian, Not Reported in F.Supp.3d (2014)

2014 WL 1632181

separate document and safe harbor provisions"); *Browne v. Nat'l Ass'n of Sec. Dealers, Inc.,* 2006 WL 1506711, at *3 (N.D.Tex. May 31, 2006) (Fish, C.J.) (awarding attorney's fees under Rule 11(c)(2) where party seeking fees did not comply with procedural requirements); *Boim,* 2003 WL 1956132, at *3 (same regarding safe harbor provision); *Jawbone, LLC v. Donohue,* 2002 WL 1424587, at *8 (S.D.N.Y. June 28, 2002) (same regarding safe harbor provision); *Harman,* 1997 WL 53120, at *1 (same regarding separate writing requirement). The court considering a request for reasonable expenses pursuant to Rule 11(c)(2) is not required to apply the substantive requirements of Rule 11(c)(4)-(6) either. *See Browne,* 2006 WL 1506711, at *3 (awarding reasonable expenses in the form of attorney's fees because movant failed to comply with safe harbor provision); *Boim,* 2003 WL 1956132, at *4 (stating that judge simply awarded fees and costs pursuant to Rule 11(c)(2), and, "[a]s such, neither Plaintiffs nor [the judge] are required to comply with Rule 11's rules with regard to filing or granting a Motion for Sanctions"). Instead, the court applies the requirements of Rule 11(c)(2) itself, which provides that the award of expenses to the prevailing party must be warranted and reasonable.

B

**\*2** The court concludes that an award of reasonable expenses—in this case, the attorney's fees that Vanliner incurred in responding to the DerMargosians' amended motion for sanctions—is warranted. Not only did Vanliner prevail on the DerMargosians' amended motion, but the motion was devoid of any good-faith arguments. [3] And although the DerMargosians' amended motion need not have been frivolous to warrant a fee award under Rule 11(c)(2), the fact that it was frivolous informs the court's finding that a fee award is warranted. [4] Vanliner should not have to bear the expense of paying its lawyers to respond to an amended sanctions motion that should never have been filed.

III

The court is not required to apply the lodestar method to calculate reasonable expenses under Rule 11(c)(2), but in the exercise of its discretion, the court will do so

in determining the amount of reasonable expenses that should be awarded in this case. *Cf. Harman,* 1997 WL 53120, at *2 (applying lodestar method to determine reasonable expenses under Rule 11(c)(2)).

Vanliner presents the affidavit of its counsel and billing records showing that its counsel expended a total of 5.2 hours responding to the DerMargosians' amended motion for sanctions. After reviewing the affidavit and billing records, and in the absence of any opposition response on this issue, the court finds that this expenditure of time was reasonable. Vanliner requests that its attorney be compensated at an hourly rate of $205.00. Given the attorney's level of experience (she was licensed in Oklahoma in 1998 and in Texas in 2001) and the relevant prevailing rates, the court, as an expert on the reasonableness of attorney's fees, [5] finds that this hourly rate is not only reasonable, but that it is lower than what is customarily charged in this locality for similar legal services by an attorney of comparable experience. The court will therefore use this rate in calculating the lodestar.

The lodestar award is $1,066.00, the same amount that Vanliner requests in its motion. There is a "strong presumption that the lodestar award is the reasonable fee." *Heidtman v. Cnty. of El Paso,* 171 F.3d 1038, 1044 (5th Cir.1999). Nevertheless, "the court must consider whether the lodestar amount should be adjusted upward or downward, depending on the circumstances of the case and after addressing the *Johnson* factors." *SEC v. AmeriFirst Funding, Inc.,* 2008 WL 2185193, at *1 (N.D.Tex. May 27, 2008) (Fitzwater, C.J.) (internal quotation marks omitted). Based on its application of the pertinent *Johnson* factors, *see id.* at *1 n. 2, the court holds that the lodestar amount is reasonable and should not be adjusted. [6] Accordingly, the court awards Vanliner $1,066.00 in reasonable expenses.

For the foregoing reasons, the court grants Vanliner's application for attorney's fees. The court awards Vanliner the sum of $1,066.00 in attorney's fees ($205.00 x 5.2 hours) against the DerMargosians. This award must be paid within 30 days of the date this memorandum opinion and order is filed.

**\*3** SO ORDERED.

2014 WL 1632181

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1632181

Footnotes

1   *See* Rule 11(c)(2) ("The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."); *see also* Rule 11 advisory committee's note (1993 Amendments) (discussing "safe harbor" provision of Rule 11(c)(2)).

2   Before Rule 11 was amended in 2007, the Rule provided: "If warranted, the court may award to the party prevailing on the [Rule 11] motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed.R.Civ.P. 11(c)(1)(A) (2006) (amended 2007). The opinions relied on below cite the former version of the Rule, in which the reasonable expenses provision was contained in Rule 11(c)(1)(A). The 2007 amendments to the Federal Rules of Civil Procedure were "intended to be stylistic only." *See, e.g.,* Rule 11 advisory committee's note (2007 Amendment). Accordingly, the reasoning of the opinions that cite the prior version of Rule 11 apply with equal force to the Rule as amended. In summarizing the holdings and reasoning of these opinions, the court will treat references to pre–2007 Rule 11(c)(1)(A) as if they were to Rule 11(c)(2).

3   Regrettably, at the same time, the amended motion contains statements that impugn the character and actions of Vanliner's counsel.

4   The DerMargosians' opposition arguments—which are based on the mistaken premise that a motion for reasonable expenses under Rule 11(c)(2) should be decided using the standards applicable to a motion for fees under Rule 11(c)(4)—are irrelevant to the court's consideration of Vanliner's application.

5   *See, e.g., Gromer v. Mack,* 2012 WL 28835, at *2 (N.D.Tex. Jan.4, 2012) (Fitzwater, C.J.) (collecting cases holding that courts are experts regarding reasonableness of attorney's fees).

6   District courts "need not specifically discuss the *Johnson* factors where [they have] applied the *Johnson* framework." *EEOC v. Agro Distribution, LLC,* 555 F.3d 462, 473 (5th Cir.2009). Because the DerMargosians do not oppose the specific amounts of fees requested by Vanliner, the court does not discuss the applicable factors individually.

    * * *

---

End of Document                              © 2017 Thomson Reuters. No claim to original U.S. Government Works.