**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RAMCHANDRA ADHIKARI, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:09-CV-1237 |
| | § | |
| DAOUD & PARTNERS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM AND ORDER**</u>

This major human rights lawsuit alleging human trafficking by Defendants KBR and its subsidiaries following the American invasion of Iraq is nearly at an end.[1] One final question remains. Plaintiffs have filed a Motion for Expenses, Including Attorney's Fees, as the Prevailing Party Pursuant to Fed. R. Civ. P. 11(c)(2). (Doc. No. 748.) Defendants KBR and various KBR entities had filed a Motion for Sanctions against Plaintiffs in February 2013. (Doc. No. 480.) Finding that motion "not—even remotely—justified," this Court rejected Defendants' sanctions motion in August 2013. *Adhikari v. Daoud & Partners*, 2013 WL 4511354, at *11 (S.D. Tex. Aug. 23, 2013). Plaintiffs now seek attorney's fees and other expenses incurred in litigating that motion. Based on careful consideration of the filings, applicable law, and oral argument, the Court **GRANTS** Plaintiffs' motion.

I.     **BACKGROUND**

The heart-rending story of this case has been told elsewhere, sparing the need for a full recounting here. *See Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 190–91 (5th Cir.

---

[1] The United States Supreme Court denied Plaintiffs' petition for a writ of certiorari on October 2, 2017, concluding the litigation of the merits.

2017); *Adhikari v. Daoud & Partners*, 994 F. Supp. 2d 831, 832–35 (S.D. Tex. 2014).

On February 11, 2013, Defendants filed a motion that requested sanctions on three grounds: Rule 11 of the Federal Rules of Civil Procedure; 28 U.S.C. § 1927, which penalizes the unreasonable and vexatious multiplication of proceedings; and this Court's inherent power. (Doc. No. 480.) The motion contained 44 substantive pages, accompanied by around 440 pages of exhibits. At the time, Defendants were represented by attorneys from the Houston and Washington offices of Baker & Hostetler. KBR's Vice President for Litigation, Mark Lowes, was also on the motion. (Doc. No. 480 at 1.) Attorneys from Susman Godfrey would soon replace the Baker & Hostetler attorneys. (Doc. No. 625.) The former litigated the case thereafter, while the latter have had no role.

Defendants' sanctions motion arrived in the thick of the litigation. Numerous motions to compel, arising from the sharply contested discovery process, were then pending. (Doc. Nos. 427, 478.) According to Plaintiffs, their "two primary attorneys on the case were engaged in their clients' long-scheduled depositions, for which visas had laboriously been obtained and which could not be postponed." (Doc. No. 755 at 8.)

Defendants' motion for summary judgment also was pending at the time. (Doc. No. 347.) It too was substantial, containing 41 substantive pages and nearly 800 pages of exhibits. Plaintiffs had already filed their Response (Doc. No. 405), but a hearing on the summary judgment motion was scheduled for April 12, 2013. By filing their sanctions motion two months before the summary judgment hearing, Defendants saddled Plaintiffs with considerable work atop much other pressing business. Plaintiffs provide an email dated February 14, 2013 asking Defendants' agreement to postpone briefing on the sanctions motion until after the Court ruled on the summary judgment motion. (Doc. No. 755-1 at 8.) Defendants evidently refused. (Doc.

No. 755 at 9.)

Waiting for the resolution of the summary judgment motion would have been sensible, because Defendants' sanctions motion mostly challenged Plaintiffs' lack of evidence. (Doc. No. 480 at 4–15, 20–33.) Defendants argued that Plaintiffs had no evidence connecting KBR to Plaintiffs' injuries when the lawsuit began. (*Id.* at 20–25.) They further argued that the facts revealed in discovery were contrary to Plaintiffs' claims. (*Id.* at 25–32.) In their view, this showed that Plaintiffs' counsel failed to conduct a reasonable inquiry before filing suit. (*Id.* at 32–33.) Defendants also charged that Plaintiffs "consistently promoted the false impression that their work on this case has been on a pro bono basis," when in fact they were proceeding on a "for-profit basis." (*Id.* at 35–38.) Defendants described this as "a pattern of deceit" and insinuated that Plaintiffs' counsel did not deserve a pro bono award that they received in 2011. (*Id.* at 36–38.)

Plaintiffs took Defendants' motion for sanctions seriously. Their Response ran to 69 substantive pages, supported by nearly 1,100 pages of exhibits. (Doc. No. 505.) In it, they described Defendants' sanctions motion as a "sprawling litany" of "baseless accusations and falsehoods," which took great time and care to rebut. (*Id.* at 1.) In the view of Plaintiffs' counsel, the discussion in Defendants' sanctions motion about factual deficiencies essentially just repeated summary judgment arguments. (Doc. No. 748 at 8–9.) As they note, Defendants' summary judgment motion made substantially similar arguments about the evidentiary support for Plaintiffs' claims. (Doc. No. 347 at 10–28, 33–34.) Plaintiffs also rebutted Defendants' allegations about misrepresenting the pro bono nature of the litigation. (Doc. No. 505 at 60–64.) They noted various bar association rules and Pro Bono Institute standards defining pro bono work and represented that their conduct was well within those definitions. (*Id.*)

In August 2013, the Court partly granted and partly denied Defendants' motion for summary judgment. *Adhikari v. Daoud & Partners*, 2013 WL 4511354 (S.D. Tex. Aug. 23, 2013). The Court granted summary judgment to Defendants on Plaintiffs' claims under the Alien Tort Statute, the necessary consequence of the Supreme Court's decision several months earlier on the extraterritorial application of that law in *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013). *Id.* at *6–7. The Court also followed the reasoning of *Kiobel* in granting summary judgment to Defendants on Plaintiffs' RICO claims. *Id.* at *7–8. The Court found, by contrast, that Plaintiffs had created genuine issues of material fact regarding its claims under the Trafficking Victims Protection Reauthorization Act (TVPRA). *Id.* at *8–11. The Court would eventually reconsider this judgment and dismiss Plaintiffs' TVPRA claims, having concluded that the version of the TVPRA in effect for the events in question did not apply extraterritorially. *Adhikari v. Daoud & Partners*, 994 F. Supp. 2d 831, 835–40 (S.D. Tex. 2014).

It was not for lack of evidentiary support, pre-suit investigation, or diligence on the part of Plaintiffs' counsel, however, that Plaintiffs' claims failed. On the contrary, as this Court has previously said, "the herculean efforts of Plaintiffs' counsel have been in the highest traditions of the bar. No lawyer or group of lawyers could have done more or done better." (Doc. No. 700 at 18.) Given that, the Court rejected Defendants' sanctions motion as "not—even remotely— justified." *Adhikari*, 2013 WL 4511354, at *11.

## II.     APPLICABLE LAW

Rule 11 of the Federal Rules of Civil Procedure authorizes district courts to impose an "appropriate sanction" for various forms of attorney misconduct "on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed R. Civ. P. 11(c)(1). The

Supreme Court has said that "the central purpose of Rule 11 is to deter baseless filings in district court and thus … streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

The availability of sanctions under Rule 11 carries risks. The Supreme Court has cautioned that "the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy." *Cooter & Gell*, 496 U.S. at 393. The Fifth Circuit has added that "misapplication of Rule 11 can chill counsel's 'enthusiasm and stifle the creativity of litigants in pursuing novel factual or legal theories,' contrary to the intent of its framers." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 794 (5th Cir. 1993) (quoting *Thomas v. Capital Security Servs., Inc.*, 836 F.2d 866, 885 (5th Cir. 1988) (en banc)).

In its commentary, the Advisory Committee on Civil Rules has also warned against the misuse of Rule 11:

> Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b). They should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine.

Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

Owing partly to the risk of misuse, Rule 11(c)(2) permits the award of expenses to the party prevailing on the sanctions motion: "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). As the Advisory Committee explains, this prevailing-party expenses award will sometimes replace a cross-motion for sanctions:

> As under former Rule 11, the filing of a motion for sanctions is itself subject to

the requirements of the rule and can lead to sanctions. However, service of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion.

Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

Importantly, the expenses available under Rule 11(c)(2) are not meant only to sanction parties responsible for abusive Rule 11 motions. If the non-movant prevails, there is no requirement in the rule's text or commentary that the movant's conduct be found worthy of sanction. It is also possible for a prevailing movant to get expenses in addition to whichever "appropriate sanction" the court chooses. These features of the rule indicate that Rule 11(c)(2) expenses are not necessarily in the nature of a sanction. This important distinction between sanctions and awards of expenses will recur throughout the analysis that follows.

## III. TIMELINESS

Before considering whether Plaintiffs' request for expenses is warranted and reasonable, there is a threshold issue: whether Plaintiffs' motion for expenses is timely. Defendants have three arguments on the issue of timeliness. First, they argue that Plaintiffs' motion was filed more than 14 days after entry of final judgment, in violation of Rule 54(d)(2), which requires motions for attorney's fees to be filed before that deadline. (Doc. No. 752 at 4–11.) Second, they argue that Plaintiffs' motion was filed after the dispositive and non-dispositive motions deadline set by the Court's docket control order. (*Id.* at 11.) Third, they argue that, regardless of rule-based or court-ordered deadlines, Plaintiffs' delay was inordinately long, causing prejudice and requiring denial of the motion. (*Id.* at 11–12.)

Defendants' argument concerning the docket control order can be addressed in short order. Rule 11(c)(2) expenses are available only to the prevailing party. When the motions

deadline passed on June 9, 2013, the Court had not ruled on Defendants' motion for sanctions, so the prevailing party was not yet known. It would be nonsensical to require motions for expenses in advance of the ruling on the sanctions motion itself.

Defendants' other two arguments on timeliness warrant more discussion, to which the Court now turns.

### a.     Rule 54(d)(2)

Defendants argue that Rule 54(d)(2) governs Plaintiffs' request for attorney's fees. Rule 54 governs judgment, and Rule 54(d) governs claims for attorney's fees. Defendants rely on Rule 54(d)(2)(B)(i): "Unless a statute or a court order provides otherwise, the motion [for attorney's fees] must … be filed no later than 14 days after the entry of final judgment." Defendants cite no case applying the 14-day deadline to motions for Rule 11(c)(2) expenses, and the Court knows of none.[2] The cases Defendants cite to illustrate the application of Rule 54(d)(2)'s deadline all involve other statutory bases for attorney's fees.[3] None involves Rule 11.

Defendants' argument, then, amounts to a request that this Court make new law. There are good reasons to decline to do so, starting with the plain text of the rules. Subsection (E) of

---

[2] The Fifth Circuit acknowledged the question of whether Rule 54(d) applies to Rule 11 motions for sanctions—a related, but distinct question—but did not answer it. *Ratliff v. Stewart*, 508 F.3d 225, 233–34 (5th Cir. 2007). It has not acknowledged or addressed the more specific question of whether Rule 54(d) applies to motions for Rule 11(c)(2) expenses.

[3] *Estate of Thompson v. Sun Life Assur. Co. of Canada*, 354 F. App'x 183 (5th Cir. 2009) (fees based on ERISA); *United Industries, Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762 (5th Cir. 1996) (fees based on English law); *OneBeacon Ins. Co. v. T. Wade Welch & Assoc.*, 2015 WL 5098552 (S.D. Tex. Aug. 31, 2015) (Texas Civil Practice & Remedies Code § 38.001, a Texas fee-shifting provision for breach of contract disputes); *Johnson v. Select Energy Servs., LLC*, 2014 WL 4388538, (S.D. Tex. Sept. 5, 2014) (fee-shifting provision for Title VII); *Taharah v. Astrue*, 2011 WL 1882821, (S.D. Tex. May 16, 2011) (Equal Access to Justice Act); *CSMG Techs., Inc. v. Allison*, 2009 WL 2242351 (S.D. Tex. July 24, 2009) (contract terms and Texas Civil Practice & Remedies Code); *Adams v. Rivera*, 13 F. Supp. 2d 550 (S.D.N.Y. 1998) (Section 1988).

Rule 54(d)(2) says that "Subparagraphs (A)-(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. § 1927." The few courts to consider Subsection (E) expressly have understood it to refer to Rule 11. *See Baker v. Urban Outfitters, Inc.*, 249 F. App'x 845, 846 n.3 (2nd Cir. 2007); *Royal Surplus Lines Ins. Co. v. Coachmen Industries, Inc.*, 229 F.R.D. 695, 696 (M.D. Fla. 2005); *Miller v. Credit Collection Servs.*, 200 F.R.D. 379, 382 n.5 (S.D. Ohio 2000). As such, Rule 54(d)(2)(B) should be considered altogether inapplicable to Rule 11.

Given Subsection (E), Defendants need to explain why Rule 54(d)(2) nevertheless applies to attorney's fees awarded as expenses under Rule 11(c)(2), if not to motions under Rule 11 generally. They focus on the phrase "as sanctions" in Subsection (E), arguing that expenses awarded under Rule 11(c)(2) technically are not sanctions.[4] (Doc. No. 752 at 9.) Indeed, to award expenses under Rule 11(c)(2) to the prevailing party, it is not necessary that the other party actually violated the Federal Rules. That said, as explained above, the Advisory Committee contemplated that Rule 11(c)(2) expenses would sometimes stand in for sanctions against a misbehaving Rule 11 movant. Given that, Rule 11(c)(2) expenses may not always constitute sanctions, but sometimes they do. Consequently, Defendants' interpretation of Subsection (E) would be troublesome in practice. Sometimes motions for Rule 11(c)(2) expenses would be the equivalent of sanctions and sometimes not. Some motions for Rule 11(c)(2) expenses would therefore be excluded from the 14-day deadline by Rule 54(d)(2)(E), but not others. Whether a given motion should be subject to the deadline could only be known after it was filed, the underlying facts considered, and a decision rendered.

Defendants' attempt to apply Rule 54(d)(2)'s procedures to Rule 11 is further

---

[4] Elsewhere, Defendants collapse this distinction. *Infra*, Section III.b.

complicated by the different scopes of the two rules. Rule 11(c)(2)'s authorization of "reasonable expenses" is not limited to attorney's fees. The effect of Defendants' interpretation is to apply a special procedural requirement only to certain portions of expense requests. Perhaps there is a sensible reason that Rule 54(d)(2)'s deadline should apply to some forms of expenses awarded under Rule 11(c)(2) but not others. If there is, Defendants have not provided it.

It is better to view Rule 11 and Rule 54 as altogether distinct and to reject attempts to tie the latter to the former. The Supreme Court has held and the Fifth Circuit has confirmed that district courts have the power to consider Rule 11 motions after final judgment. "It is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell*, 496 U.S. at 395. *See also Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010).[5] Jurisdiction over various other matters outlasts final judgment as well, like cost determinations and contempt proceedings. *Qureshi*, 600 F.3d at 525. "As the Supreme Court has explained, the reason that these actions survive dismissal is that each requires the determination of a collateral issue…. The maintenance of the original action that occasioned the court's inquiry into that abuse is irrelevant to the court's jurisdiction." *Id.* (cleaned up).

Courts' collateral jurisdiction to address Rule 11 motions extends well beyond 14 days after final judgment. Though some Rule 11 motions have been filed so late that they were deemed untimely, such delays have ordinarily been two or more years after final judgment. *See Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 413 n.3 (S.D.N.Y. 2003) (collecting cases). If a court's collateral jurisdiction extends to Rule 11 motions more than 14 days after

---

[5] Defendants argue *Cooter & Gell*, decided in 1990, is no longer good law because it predated the amendment in 1993 that added the 14-day deadline to Rule 54(d)(2). (Doc. No. 752 at 6.) The Fifth Circuit continues to cite *Cooter & Gell* without any sign that its validity is in question. *See, e.g.*, *Qureshi*, 600 F.3d at 525. This should prompt little surprise, given the absence of cases applying Rule 54(d)(2) to Rule 11.

final judgment, it stands to reason that it would extend to the subpart of Rule 11 at issue here. Rule 11(c)(2) expense awards also entail a kind of equitable determination—whether expenses are "warranted"—similar to other collateral issues. This similarity lends further credence to the view that a court's collateral jurisdiction to address Rule 11 motions for sanctions and Rule 11(c)(2) motions for expenses after final judgment is unencumbered by Rule 54(d)(2).

Moreover, Rule 11 and Rule 54 each lay out procedures that are comprehensive and self-contained. A litigant who studies the rules to learn how to file a Rule 11 motion has no need, and is never told, to refer to Rule 54. As the Seventh Circuit has said about the relationship (or lack thereof) between the two rules, "Subsections (A) through (D) [of Rule 54(d)(2)] merely specify procedures for asking for attorneys' fees, and those procedures happen to be inapplicable to a Rule 11 motion, which specifies its own procedures." *Feldman v. Olin Corp.*, 673 F.3d 515, 517 (7th Cir. 2012) (Posner, J.). "[W]hen Rule 11 is the basis of the right [to attorney's fees], Rule 54 procedures are inapplicable." *Id.* This logic holds for the subpart of Rule 11 at issue here.[6]

_____

[6] At the motion hearing, Defendants noted that *Feldman* did connect Rule 11 and Rule 54 in one respect. The case concerned the deadline for appeals of attorney's fee awards. 673 F.3d at 516–17. The district court in that case had ordered plaintiff's counsel to pay attorney's fees as a Rule 11 sanction but had not entered a separate judgment document effecting the order. The attorneys had dawdled in filing their appeal of the sanction, perhaps rendering it untimely. To save their appeal, they argued that the absence of a separate document meant that 150 days had to elapse for the order to become final, per Rule 4(a)(7)(A)(ii) of the Federal Rules of Appellate Procedure. The appellees responded that no separate judgment document was required, owing to Rule 58, which says that "a separate document is not required for an order disposing of a motion … for attorney's fees under Rule 54." Fed. R. Civ. P. 58(a)(3). The implication was that the appellants had 30 days to appeal, not 150.

Ruling for the appellees, the Seventh Circuit concluded that the award of attorney's fees under Rule 11 came within the provision of Rule 58 disclaiming the need for a separate document. The court thus said that the Rule 11 award constituted an award "under Rule 54" for the purposes of Rule 58. In the process, the court distinguished the matter of deadlines for appealing attorney's fee awards from the matter of procedures for obtaining attorney's fees. While the court could not "think of any reason for drawing … distinctions among the different grounds for asking for

If any possibility remains that Rule 54(d)(2) applies to Rule 11, it contains an exception that arguably is applicable to this case. Rule 54(d)(2)(B)'s 14-day deadline applies to claims for attorney's fees "[u]nless a statute or a court order provides otherwise…." The Court entered an order in this case that likely fits the bill. After the Court granted summary judgment to Defendants and Plaintiffs appealed, Defendants filed a bill of costs. (Doc. Nos. 710–11.) At that point, the Court issued an order saying "[t]he Court will defer consideration of KBR's costs— and Plaintiffs' objections thereto—until Plaintiffs' appeal has been resolved. In the interim, no action is to be taken and no costs taxed, pursuant to KBR's bill of costs." (Doc. No. 727.) Of course, this order's own terms limit it to the bill of costs, and the order says nothing about expenses related to the Rule 11 motion. Plaintiffs nevertheless may reasonably have concluded that there was no point in moving for Rule 11(c)(2) expenses until the conclusion of the appeal. As such, the Court's order staying Defendants' bill of costs may be viewed as a court order triggering the exception to Rule 54(d)(2).

### b.      Inordinate Delay

Whatever the impact of the Federal Rules or this Court's orders, Defendants argue that Plaintiffs simply waited too long to file for expenses. (Doc. No. 752 at 11–12.) This argument in essence asks the Court to make a discretionary, equitable determination that Plaintiffs' motion for expenses is untimely.

*White v. New Hampshire Department of Employment Security*, 455 U.S. 445 (1982), a Supreme Court decision on post-judgment awards of prevailing-party attorney's fees under

---

attorneys' fees, so far as the deadline for appealing is concerned," the court was clear that Rule 54's "procedures happen to be inapplicable to a Rule 11 motion, which specifies its own procedures." *Id.* at 517.  The question of timeliness now before this Court is a matter of the procedures for seeking attorney's fees. The Seventh Circuit's clear separation of Rule 11 from Rule 54 with respect to such procedures therefore favors Plaintiffs over Defendants.

Section 1988, addressed an analogous situation. *White* was decided before the creation of Rule 54(d)(2)'s 14-day deadline. Because no formal deadline was in effect then, just as none is in effect for Rule 11 now, *White*'s discussion of the equitable considerations implicated by delay offers useful points for the present question.

The prevailing party in *White* had waited four and a half months after final judgment to seek attorney's fees. 455 U.S. at 447–48. Acknowledging that district courts have discretion to declare motions untimely, the Supreme Court suggested that a court might deny a motion for fees filed so late that it "unfairly surprises or prejudices the affected party." 455 U.S. at 454. Since *White*, courts have heeded its emphasis on unfair surprise or prejudice when addressing the timeliness of post-judgment motions for fees. *See, e.g.*, *Sewald v. Reisinger*, 2015 WL 6964290 (M.D. Fla. Nov. 10, 2015); *Forgione v. AC & R Advertising, Inc.*, 147 F.R.D. 30 (S.D.N.Y. 1993). Relying on *White*, the court in *Sewald* looked for actual prejudice to the other party, not just long delay. 2015 WL 6964290 at *1. Doing the same, the court in *Forgione* likewise looked for "the potential for prejudice to either one or both of the parties." 147 F.R.D. at 32. It also suggested that judicial economy is important. *Id.*

Defendants have a different view. As they see it, deterrence is the main concern. (Doc. No. 752 at 15–16.) An award of fees that occurs well after the triggering conduct is too late to achieve the desired deterrent effect. Defendants rely here on two cases that rejected Rule 11 sanctions because the motions were filed too long after the offending conduct. *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 152 (4th Cir. 2002); *Gen. Motors Acceptance Corp. (GMAC) v. Bates*, 954 F.2d 1081, 1086–87 (5th Cir. 1992). In *Hunter*, the Fourth Circuit declared untimely a motion for sanctions filed fourteen months after the circuit court's affirmance of the summary judgment decision in the case. 281 F.3d at 152. The court

acknowledged that "Rule 11 sanctions may be imposed when a case is no longer pending," but stated that "the delay here—absent an adequate explanation—contravenes the Rule's purposes." *Id.* In *GMAC*, the Fifth Circuit rejected as untimely a Rule 11 motion filed two years and nine months after the misconduct at issue. 954 F.2d at 1086. Finding that "the primary purpose for imposing sanctions is to deter" and that deterrence requires prompt action, the court ruled that "the purposes behind Rule 11 were not served" by sanctions imposed after such delay. *Id.*

But Defendants are blurring the lines here. They are citing cases about motions for Rule 11 sanctions, not Rule 11(c)(2) expenses for presenting or defending sanctions motions. While "the purpose of Rule 11 sanctions is to deter rather than to compensate," according to the Advisory Committee, compensation is quite clearly the primary purpose of the expenses provision. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. The logic of deterrence is not necessarily applicable to all awards of Rule 11(c)(2) expenses because, as explained above, these awards of expenses are not always in the nature of a sanction. Moreover, as explained further below, a Rule 11 movant's conduct does not need to be worthy of sanction in order for Rule 11(c)(2) expenses to be warranted. Defendants' favored cases supply the wrong conceptual framework for the present question.

Defendants' favored cases are unhelpful on the question of timeliness for other reasons. Neither case provides a standard for determining just how long after final judgment, affirmance on appeal, or the offending conduct a motion must come in order to be untimely. In addition, the motion at issue in *Hunter* was filed well later than Plaintiffs' motion here, so in and of itself, *Hunter* does not establish that the present motion is untimely.

The Court looks instead to the concerns emphasized in *White* and subsequent cases— surprise, prejudice, and judicial economy. As previously noted, the Court had issued an order

staying Defendants' bill of costs until the conclusion of the appeal. (Doc. No. 727.) Given that this stay was in effect, it should be unsurprising that Plaintiffs' motion for expenses arrived only after the Fifth Circuit's decision on the merits. In addition, Plaintiffs assert that Defendants have known of their intention to seek Rule 11(c)(2) expenses since at least 2015. Plaintiffs attach to their Reply a copy of an email from Plaintiffs' counsel to Defendants' counsel in April 2015, stating their intention to seek expenses. (Doc. No. 755-1 at 6.) This email appears to have been sent while Defendants' bill of costs was initially being briefed, before the Court entered its stay.[7] Taken together, the stay and the email suggest that Defendants should not now be surprised at Plaintiffs' motion for Rule 11(c)(2) expenses.

Defendants say they are prejudiced by the multiplication of appeals. If Plaintiffs had filed for expenses earlier, the Court's ruling on the issue of expenses could have been reviewed by the Fifth Circuit along with the case's merits. (Doc. No. 752 at 13.) It is doubtful that much cost would be saved by this. Although the Court does not retreat from its view that Defendants should have delayed this sanctions motion until after a ruling on their summary judgment motion, by the time of Plaintiffs' appeal, the issue being appealed was quite distinct from the issues pertinent to the sanctions motion. The appeal on the merits concerned the extraterritorial application of the

---

[7] At the motion hearing, Defendants argued that this email was inadequate notice, relying on *Romaguera v. Gegenheimer*, 162 F.3d 893 (5th Cir. 1998), *clarified on denial of rehearing*, 169 F.3d 223 (5th Cir. 1999). In *Romaguera*, the prevailing plaintiff had waited until long after Rule 54(d)(2)'s 14-day deadline to seek fees under Section 1988, but the Fifth Circuit held that the plaintiff's fee request was not untimely. The plaintiff had previously indicated her intention to seek fees, and the district court had acknowledged her intention in a court order. The Fifth Circuit found that this was enough notice to the opposing party to satisfy Congress's purpose in enacting Rule 54(d)(2)'s 14-day deadline. In Defendants' view, Plaintiffs' email, without court involvement or acknowledgement, is insufficient.

Defendants' argument has merit only if the 14-day deadline of Rule 54(d)(2) applies. It does not, so *Romaguera* does not govern this case and there is no need to consider what forms of notice are adequate to satisfy Congress's purposes in enacting the deadline.

TVPRA and other statutes. This is quite apart from the issues discussed in this opinion. Separate research and briefing would be necessary, so only so much efficiency would be achieved by bundling the appeals. In addition, merits and attorney's fee issues routinely go up on appeal separately. It may be an unpleasant aspect of litigation, but its normalcy makes it hard to claim that it amounts to unfair prejudice.

Still, the concern for judicial economy favors Defendants here. Without question, Plaintiffs' motion has extended the litigation. Because the issue of expenses is collateral to the merits, Plaintiffs could have filed the motion and the Court could have resolved it while the merits appeal was pending. But because the Court stayed consideration of Defendants' bill of costs, it likely signaled to Plaintiffs that they should wait. This at least partly absolves Plaintiffs of blame for the uneconomical timing of their motion.

The foregoing concerns are not so great that the Court must declare Plaintiffs' motion inordinately delayed and thus unfair to Defendants. As discussed next, expenses are warranted in this case. Given that, and given the lack of surprise to Defendants, the small degree of prejudice and the minor concern for judicial economy are insufficient to render Plaintiffs' motion untimely.

## IV.    WHETHER EXPENSES ARE WARRANTED

Rule 11(c)(2) does not mandate the award of expenses to all parties that prevail on motions for sanctions. It permits an award "[i]f warranted." Fed. R. Civ. P. 11(c)(2). The Court has found no binding precedent addressing when Rule 11(c)(2) expenses are warranted and when not. As such, it must look elsewhere to identify the dividing line between warranted and unwarranted awards.

Though the rule's "if warranted" qualification is susceptible to various interpretations, the more extreme readings can easily be ruled out. As noted, it cannot be the case that all prevailing parties are entitled to expenses, or else the qualification would have no meaning. It also cannot be the case that a movant must itself have violated Rule 11 for the non-movant to get expenses. Nothing in the text requires this. Moreover, "reasonable expenses" and "prevailing party" are the terms used, when all else in Rule 11 speaks of sanctions. The commentary contemplates Rule 11(c)(2) expenses sometimes effectuating a sanction on a misbehaving movant, but it by no means says that is their only appropriate use.

There should be something negative, then, in the losing party's conduct, but it does not have to be so serious that sanctions are appropriate. When considering an award of expenses to the non-movant, some courts have looked to the Advisory Committee's warnings about misuses of Rule 11. *See, e.g.*, *Rich v. Taser Int'l, Inc.*, 2012 WL 3155137, at *3 (D. Nev. Aug. 2, 2012); *Jawbone, LLC v. Donohue*, 2002 WL 1424587, at *6–7 (S.D.N.Y. June 28, 2002). These were quoted at length above. Pertinent to the present case are the following: that Rule 11 motions "should not be employed … to test the legal sufficiency or efficacy of allegations in the pleadings"; "to emphasize the merits of a party's position"; "to intimidate an adversary into withdrawing contentions that are fairly debatable"; or "to increase the costs of litigation." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

District courts awarding Rule 11(c)(2) expenses have shared these concerns and raised others. One court found expenses warranted when a Rule 11 motion was "frivolous," was "devoid of any good-faith arguments," and "impugn[ed] the character and actions of [opposing] counsel." *Vanliner Ins. Co. v. DerMargosian*, 2014 WL 1632181, at *2, *2 n.3 (N.D. Tex. Apr. 24, 2014). Another found expenses warranted when the Rule 11 motion was "completely without

merit," replicated arguments in other motions, re-litigated factual issues, and "quite probably" was for the "improper purpose[s]" of intimidation and increasing costs. *Rich*, 2012 WL 3155137, at *3. Baseless motions meant to intimidate and drive up costs have triggered Rule 11(c)(2) expenses on several occasions. *See Browne v. Nat'l Ass'n of Sec. Dealers, Inc.*, 2006 WL 1506711, at *3 n.4 (N.D. Tex. May 31, 2006); *EEOC v. Tandem Computers Inc.*, 158 F.R.D. 224, 229–30 (D. Mass. 1994). Likewise, a movant's unusually complex and onerous approach to litigation has sometimes been the occasion for awarding expenses. *See Harman v. City of University Park*, 1997 WL 53120, at *3 (N.D. Tex. Feb. 3, 1997); *In re Affiliated Foods Sw., Inc.*, 472 B.R. 538, 549 (Bankr. E.D. Ark. 2012) (applying Rule 9011, the bankruptcy court analogue). Needlessly hostile or inconsiderate behavior towards opposing counsel has too. *See Williams v. General Motors Corp.*, 158 F.R.D. 510, 511–12 (M.D. Ga. 1993).

These misbehaviors and misuses of Rule 11 connect to a common, fundamental idea. Rule 11 embodies "the principle that attorneys and pro se litigants have an obligation to the court to refrain from conduct that frustrates the aims of Rule 1." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Rule 1 calls for the Federal Rules to be construed and applied so that they "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Each instance in which courts have found expenses warranted has featured conduct, either by the movant or non-movant, that somehow rendered the litigation markedly less fair, less speedy, or more costly. Motions intended to intimidate or to impugn make litigation less fair. Motions without sound argument make litigation less quick and cost-effective. The concerns of fairness, time, and cost also explain why expenses are warranted both when sanctions motions are intended to drive up costs and when motions do so as a perhaps unintended byproduct of complex litigation practice, even though the responsible attorneys'

mindsets differ.

Defendants propose a "bad faith" standard. (Doc. No. 752 at 13–14.) In support, they cite two district court decisions that looked for bad faith on the part of the movant and, not finding it, denied an award of expenses. *Bailey v. Pride Mfg. Co., LLC*, 2014 WL 12607715 (D. Idaho Apr. 21, 2014); *Velazquez v. Waste Mgmt. Nat'l Servs., Inc.*, 2013 WL 5076320 (N.D. Cal. Sept. 13, 2013). Defendants also point to these two courts' rejection of the idea that an expenses award is warranted just because there is overlap in the substance of the Rule 11 motion and another pending motion. In *Velazquez*, the sanctions motion duplicated a motion to dismiss, but the movants "engaged in no conduct evidencing bad faith." 2013 WL 5076320, at *1. Similarly, in *Bailey*, the same sort of overlap was present. 2014 WL 12607715, at *2. As that court pointed out, "it should come as no surprise that Defendants' motion for sanctions related to their motion to dismiss when the bases for the latter motion was that Plaintiff's Complaint is allegedly without factual and legal moorings." *Id.* This is a reasonable point.

Defendants are wrong to argue that these cases establish a formal "bad faith" requirement. They simply involve behavior less egregious than the other decisions cited above. For instance, one of those decisions, *Rich*, faulted the movant not solely for having common content in its sanctions and substantive motions, but for using the sanctions motion "to emphasize the merits of a party's position," an act condemned in the Advisory Committee's commentary. The other decisions above rested on additional grounds: the motions' meritless arguments, undue onerousness, or improper purpose. Defendants also present one of their favored cases, *Bailey*, unduly narrowly. *Bailey* suggested that an award of expenses would be justified not only by bad faith, but also by evidence that the sanctions motion was "not grounded in fact or law." 2014 WL 1207705, at *2. Read in its fullness, *Bailey* looks not unlike the cases

cited above.

It is also imprudent to establish a "bad faith" requirement. It has no basis in the rule's text or commentary. Perhaps "bad faith" is useful shorthand for some of the conduct that has yielded expenses awards in prior cases, but not for all. A "bad faith" standard risks setting the bar too high. It would also turn a relatively tractable and objective examination of fairness, time, and cost into a more amorphous and subjective consideration of litigants' aims and intentions.

In seeking sanctions, Defendants engaged in conduct akin to the conduct of movants that triggered awards of expenses in prior cases. As noted, Defendants' sanctions motion was entirely meritless. Defendants reiterated the same alleged factual deficiencies in Plaintiffs' case that were central to Defendants' summary judgment motion, which was then pending. Simply waiting for the resolution of their summary judgment motion would have mooted much of their Rule 11 motion. Because Defendants did not wait, the length and complexity of their motion placed an onerous burden on Plaintiffs at a time when the intensity of the litigation was at its peak. The baselessness, onerousness, and inconvenience raise the inference of improper motive. Defendants' effort to impugn the integrity of Plaintiffs' counsel—insinuating that Plaintiffs' counsel had misrepresented its work as pro bono and thereby gained accolades through false pretenses—bolsters the inference of improper motive. In sum, Defendants' motion made the litigation markedly less fair and more costly, likely for improper reasons. This is more than enough to warrant the award of expenses.


## V.    LODESTAR CALCULATION

Rule 11(c)(2) permits the award of "reasonable expenses, including attorney's fees, incurred for the motion." "The most useful starting point for determining the amount of a

reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is the "lodestar" method, which the Supreme Court has adopted as "the centerpiece of attorney's fee awards." *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). "There exists a strong presumption of the reasonableness of the lodestar amount." *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

The Fifth Circuit and Supreme Court have not said whether the lodestar method is required for Rule 11(c)(2), but the Supreme Court's general endorsement recommends its use here. With its use of the term "prevailing party," Rule 11(c)(2) speaks in the language typical of a fee-shifting statute,[8] and the Supreme Court has said that a "strong presumption that the lodestar figure … represents a 'reasonable' fee is wholly consistent with the rationale behind the usual fee-shifting statute." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). As a result, courts awarding Rule 11(c)(2) expenses in the form of attorney's fees have used the lodestar method. *See, e.g.*, *Vanliner*, 2014 WL 1632181, at *2; *In re Affiliated Foods Sw., Inc.*, 472 B.R. at 557–59 (applying Rule 9011, the bankruptcy-court analogue); *Potter v. Crosswhite*, 2011 WL 2149420, at *2–6 (D. Or. May 5, 2011), *report and recommendation adopted*, 2011 WL 2144575 (D. Or. May 31, 2011).

After determining a reasonable hour total and a reasonable hourly rate, "the court may decrease or enhance the amount based on the relative weights of the twelve factors set forth in *Johnson*." *Saizan*, 448 F.3d at 800 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714,

---

[8] *E.g.*, 42 U.S.C. § 1988(b) ("… the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs" in civil rights suits); 42 U.S.C. § 2000e-5(k) ("… the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee" in Title VII suits).

717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). Those are described and considered below.

Before wading into the details, it is worth recalling the Supreme Court's recent reminder that "the determination of fees 'should not result in a second major litigation.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437). "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal of shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

Defendants argue for a different approach than the "rough justice" achieved with the lodestar method and *Johnson* factors. In their view, this Court should determine a reasonable fee for Plaintiffs' counsel in light of Rule 11's "goals of deterrence, punishment, and compensation." (Doc. 752 at 16.) They rely here on the *en banc* Fifth Circuit's decision in *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir. 1988). Noting the late filing of Plaintiffs' motion and the change in Defendants' counsel since the sanctions motion, Defendants argue that the goals of deterrence and punishment would not be served by awarding any fees. (Doc. No. 752 at 15–17.) Defendants again blur the distinction between Rule 11 sanctions and Rule 11(c)(2) expenses. *Thomas* concerned the determination of attorney's fees as an appropriate sanction under Rule 11 for attorney misconduct. As previously discussed, expenses under Rule 11(c)(2) do not necessarily serve the same purpose or become appropriate under the same circumstances. The need for deterrence and punishment is perhaps relevant when deciding whether an award is warranted, but not when calculating a reasonable fee.

Based on a lodestar calculation, Plaintiffs seek $312,861.38 in attorney's fees. (Doc. No.

748-2 at 21.) They arrive at this figure by compiling the hours worked by nine people, each with a particular hourly rate, and then applying a 10% reduction. (*Id.* at 12–21.) Plaintiffs make the reduction because Defendants' Rule 11 motion was the first ever defended by the attorney in charge, Agnieszka Fryszman, and inefficiencies likely resulted. (Doc. No. 748-2 at 9.) The sections that follow address the reasonableness of Plaintiffs' hour totals and hourly rates that went into this calculation, before turning to the *Johnson* factors, and then to the other expenses that Plaintiffs request.

### a. Hour Totals

Plaintiffs are "charged with the burden of showing the reasonableness of the hours billed." *Saizan*, 448 F.3d at 799. This means showing "billing judgment," about which the Fifth Circuit has said:

> Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment.

*Id.* Upholding counsel's billing judgment turns on the existence of "sufficient documentation." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) (quoting *La. Power & Light v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)). "The documentation supporting a factual finding regarding the amount of attorney's fees must be sufficient for the court to verify that the applicant has met its burden of establishing an entitlement to a specific award." *Id.* It must consist of "contemporaneous billing records or other sufficient documentation." *Id.* If the latter, "the evidence produced [must be] adequate to determine reasonable hours." *Id.* (quoting *La. Power & Light*, 50 F.3d at 325).

As Defendants note, Plaintiffs have "chose[n] not to submit actual contemporaneous time records." (Doc. No. 752 at 17.) Instead, Plaintiffs provide a declaration by Fryszman and a set of

tables for the nine people whose fees they seek. (Doc. No. 748-2 at 12–21.) Each row of each table has a day, number of hours, and description of work. Plaintiffs say these tables "collate[] entries from an electronic system. The entries were recorded contemporaneously and then reproduced [in table form] for clarity and legibility." (Doc. No. 755 at 7.)

The Fifth Circuit has been willing to accept "less-than-perfect documentation." *Portillo v. Cunningham*, 872 F.3d 728, 742 (5th Cir. 2017). But it has rejected, for instance, a fee application supported only by an attorney's affidavit that asserted entitlement to a particular sum "in conclusory fashion." *Bynum v. American Airlines, Inc.*, 166 F. App'x 730, 736 (5th Cir. 2006). The Fifth Circuit has also rejected an application with "only summaries of [attorneys'] timesheets" that lacked notations indicating the subject matter of the work. *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990).

Plaintiffs' records are imperfect but adequate. They identify each person, each period of work, and the subject matter thereof, so they are better than the summaries rejected in *Von Clark*. They do have some deficiencies, however. Given the records' level of detail, the appropriate approach is "a reduction of the award by a percentage," *Saizan*, 448 F.3d at 799, rather than granting what Defendants request: further discovery, including an order to produce "actual and unredacted timesheets for the timekeepers in question." (Doc. No. 752 at 19.) Precedent does not require that. Moreover, if Defendants' request were granted, this would begin to look like the kind of "second major litigation" against which the Supreme Court recently warned.

Plaintiffs take five noteworthy steps in the exercise of their billing judgment. First, there is the general 10% reduction, already mentioned, for Fryszman's lack of experience with Rule 11. Second, Fryszman says that 34.75 hours were not counted due to "block-billing," that is, simultaneous work on Rule 11 and on other pending motions. (Doc. No. 748-2 at 8.) Third, the

time of one attorney, Martina Vandenburg, was reduced by 4.5 hours because those hours also involved work related to summary judgment. (*Id.*) Fourth, four individuals' hours were not counted altogether: Paul Hoffman, who just did "read and review" work; Peter Romer-Friedman, whose work was duplicative; Maureen McOwen, whose contribution was limited; and a law clerk. (*Id.* at 7.) Fifth, roughly $6,000 in time spent by more senior attorneys supervising associates and law clerks was not counted. (*Id.*)

There are more issues. First, it is unclear whether the Court should award fees for time spent on a Rule 11 response letter, written when Defendants were threatening to file a motion but had not yet done so. Rule 11(c)(2) permits awarding expenses "incurred for the motion." On the one hand, a pre-filing letter is not "the motion." On the other, Rule 11's procedures require a party seeking sanctions to first demand the other side withdraw or correct the improper filings,[9] so Defendants' threat to Plaintiffs was a part of the prescribed Rule 11 process. A lengthy and detailed response letter is not, however. This counsels a narrow interpretation, as does the text's use of the phrase "for the motion." The Court therefore declines to award expenses for the hours that Plaintiffs' counsel spent on their pre-filing response letter.[10]

Second, Plaintiffs' two main attorneys on the sanctions response, Fryszman and Thomas Saunders, did extensive work in mid-March 2013, for which they provide vague entries and

---

[9] That is the effect of the following "safe harbor" provision: "The motion [for sanctions] … must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). *See, e.g.*, *Margetis v. Furgeson*, 666 F. App'x 328 (5th Cir. 2016).

[10] This conclusion results in striking the following: 56.25 hours of Angieszka Fryszman's time from August 23 to November 15, 2012; 2.5 hours of Joe Sellers's time on August 24 and September 4, 2012; 7 hours of Thomas Saunders's time in November 2012; and 3.5 hours of Alysson Ouoba's time in November 2012. (Doc. No. 748-2 at 12–21.)

remarkably high hour totals. (Doc. No. 748-2 at 13, 16.) The two repeatedly put in 14- to 18-hour days, billed in quarter-hour increments. Particularly questionable is the fact that all of Fryszman's time entries in March are whole numbers. (*Id.* at 13.) This is exceedingly unlikely to happen through random chance if accurately billing in quarter-hour increments. Most of Saunders's entries during the critical March stretch are whole numbers too. (*Id.* at 16.) On the last three days, March 13 to 15, Saunders billed 49 total hours, each entry carrying the same description: "Work on section of Rule 11 opposition, including revising brief." (*Id.*)

The Fifth Circuit has said it is "mindful that practical considerations of the daily practice of law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *La. Power & Light*, 50 F.3d at 327. It has also admitted that its "case law has not precisely defined the appropriate standard" for the detail required in billing records, "if in fact it is susceptible of being thus defined." *Id.* at 326. Even so, the Fifth Circuit has warned against records that are "scanty as to subject matter" and given district courts "leeway" to accept or reject them. *Id.* at 326–27. "Litigants take their chances when submitting such fee applications." *Id.* at 327.

To the Defendants, Fryszman's and Saunders' vague, high-hour entries "may be an indication of inefficient work, or inadvertently recorded time, or inaccurately or imprecisely remembered time." (Doc. No. 752 at 19.) Plaintiffs attribute the high totals and vague descriptions to the demands of the litigation process, which was Defendants' fault: "KBR's litigation strategy necessitated the long days." (Doc. No. 755 at 10.) Plaintiffs' point is fair, but Defendants' criticism is merited. These hours are already subject to Plaintiffs' general 10% cut. Due to the high totals, round numbers, and vague descriptions, the Court reduces the hour totals of Fryszman for March 11–15 and Saunders for March 8–15 by another 10%.

Third, Joe Sellers, a member of Cohen Milstein's executive committee, claims 11.75 total hours, of which 3.5 hours do not appear directly related to the Rule 11 motion (August 29; September 21, 24, and 27; November 16; and February 6). (Doc. No. 748-2 at 18.) Accordingly, the Court strikes these 3.5 hours.

Fourth, the billing records do not distinguish between the time spent on Rule 11 sanctions and time spent on the other two potential grounds for sanctions, 28 U.S.C. § 1927 and this Court's inherent power. Plaintiffs point to no provision that authorizes awarding them fees for prevailing on these other two parts of Defendants' sanctions motion. This is a problem, because "[p]art of the applicant's … burden includes maintaining billing time records in a manner that would enable the reviewing court to identify each distinct claim." *Von Clark*, 916 F.2d at 259.

With Rule 11(c)(2) as the only basis for an award, it must be limited to Plaintiffs' counsel's work on the Rule 11 portion of Defendants' motion. This presents a thorny partitioning problem. When the same preparatory work is relevant to rebutting each of the three sanctions requests, how should the Court attribute hours to one or the other? The Supreme Court recently considered an analogous problem. *See Fox v. Vice*, 563 U.S. 826 (2011). The case concerned prevailing-party awards to defendants under Section 1988. The law permits awards to defendants who prevail on frivolous claims, but it was unclear "whether and to what extent a court may award fees to a defendant under § 1988 when a plaintiff asserts both frivolous and non-frivolous claims." *Id.* at 832. The Supreme Court reasoned that "the lawyer would have taken and committed the same time [to the case] even if the case had involved only the non-frivolous allegation." *Id.* at 836. As such, "he has suffered no incremental harm from the frivolous claim." *Id.* The Supreme Court then remanded the case to the district court to determine "whether the costs would have been incurred in the absence of the frivolous allegation." *Id.* at 838.

The logic of *Fox* is transferable. Plaintiffs would have had to do all the same document review and other fact development to defend the motion even if it had sought only Rule 11 sanctions. The addition of the § 1927 and inherent-power theories should have added some legal research and drafting time but not much more. The reasoning of *Fox* therefore leads the Court to reject simply partitioning the hour totals of Plaintiffs' counsel equally across the three bases for sanctions. A much smaller reduction is appropriate.

There is, however, no clear way to make a suitable partition; Plaintiffs' timesheets are no help. One instructive point is that the argument on § 1927 and inherent-power sanctions occupied roughly five of the 24 pages of argument in Defendants' sanctions motion and six of the 48 pages of argument in Plaintiffs' response (21% and 12.5%, respectively). Because Plaintiffs have already imposed a 10% general reduction on their hour totals, another 10% is reasonable. The Court will apply this after making the tailored reductions to specific attorneys' hour totals already described.

Finally, Defendants raise doubts about the sheer number of people and hours involved in this work. (Doc. No. 752 at 18.) As Plaintiffs note, the real work here was done by a core team—Fryszman, Saunders, and Vandenberg—and the sanctions motion was filed when many other demands were placed on their time. (Doc. No. 755 at 8.) There was much work, and many hands were needed to handle it. Moreover, the sanctions motion was serious matter, enough to implicate the firm's insurance policy,[11] which entailed drawing in a senior partner, Christine Webber, and an executive committee member, Sellers. (Doc. No. 748 at 12–13.) Once Plaintiffs' exercise of billing judgment is recognized, and the various issues raised by the Court are

---

[11] Plaintiffs make clear that "the time spent on reporting to Cohen Milstein's insurance carrier, and on work related to and necessitated by that reporting," is not being claimed here. (Doc. No. 748 at 15.)

addressed, Defendants' challenge to the sheer size of Plaintiffs' request does not stand.

In sum, the Court takes the following actions with regard to the hour totals of Plaintiffs' counsel: excluding hours spent on the Rule 11 response letter; a 10% reduction for vague and substantial billing by Fryszman for March 11–15 and Saunders for March 8–15, 2013; excluding Sellers's unrelated time entries; and a general 10% reduction to account for time spent on the § 1927 and inherent-power sanctions issues.

The following table lists each attorney and staff-member for which Plaintiffs seek fees, Plaintiffs' proposed hour total, and the Court's determination, sorted by hour total.

| Attorney | Position | Proposed Hours | Awarded Hours | Reductions |
|---|---|---|---|---|
| Agnieszka Fryszman | Attorney in charge | 189.5 | 125.15 | Time on Rule 11 letter 10 % for March 11–15 |
| Thomas Saunders | Fellow | 155.25 | 135.6 | Time on Rule 11 letter 10 % for March 8–15 |
| Martina Vandenberg | Contract attorney | 114 | 114 | None |
| Christine Webber | Senior partner | 43.75 | 43.75 | None |
| Katherine McKeon | Paralegal | 38.25 | 38.25 | None |
| Amanda Krause | Law clerk | 17.25 | 17.25 | None |
| Joe Sellers | Executive committee member | 11.75 | 5.75 | Time on Rule 11 letter Unrelated work |
| Tiffany Lam | Paralegal | 4.25 | 4.25 | None |
| Alysson Ouoba | Fellow | 3.5 | 0 | Time on Rule 11 letter |

### b.     Hourly Rate

"When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is *prima facie* reasonable." *La. Power & Light*, 50 F.3d at 328 (quoting *Islamic Cent. of Miss., Inc. v. City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989)). The requested rates, in

descending order, are as follows: $910 for Sellers; $790 for Webber; $745 for Fryszman and Vandenberg; $375 for the fellows, Saunders and Ouoba; and $280 for the paralegals and law clerks, McKeon, Krause, and Lam. (Doc. No. 748-2 at 12–21.)

Defendants do not contest these rates, and Plaintiffs' counsel says that this is the "customary billing rate" for each person. (Doc. No. 748 at 16.) They cite four recent cases accepting their requested rates, including a decision by this Court in February 2017 finding their rates fair and reasonable. (*Id.*) (citing Order Granting Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees and Expenses, and Final Judgment, *In re BP p.l.c. Securities Litig.*, No. 4:10-md-02185 (S.D. Tex. Feb. 13, 2017)).

The requested rates are fair and reasonable here too. Plaintiffs' lead counsel and senior attorneys are credentialed, decorated, and experienced. They also practice in Washington, D.C., perhaps the most expensive legal market in the country.[12] Their professional biographies are impressive. (Doc. No. 748-2 at 25–27.) Martina Vandenberg, the attorney temporarily contracted to work on the Rule 11 response, is a good example. A former partner at Jenner & Block, a Rhodes Scholar, and a Truman Scholar, she is now the president of the Human Trafficking Pro Bono Legal Center. (*Id.* at 26.) The other biographies are notable as well.

Accordingly, the Court accepts the proposed rates. Applying the proposed rates to the adjusted hour totals yields the appropriate lodestar figure. Plaintiffs' counsel requested $312,861.38 in fees, the product of their proposed hours, requested rates, and a 10% general reduction. The Court arrives at a different figure: $228,433.40. This figure is the product of the

---

[12] According to the Bureau of Labor Statistics, the annual mean wage for lawyers in Washington, D.C., in 2016 was $182,810. The national mean was $139,880. In the Los Angeles metro area, it was $165,350. In the New York City metro area, it was $167,960. Bureau of Labor Statistics, *Occupational Employment and Wages, May 2016: 23-011 Lawyers*, (last visited October 20, 2017), https://www.bls.gov/oes/current/oes231011.htm#st.

Court's adjustment to the hour totals, the proposed rates, and a 20% general reduction that accounts both for counsel's acknowledged inexperience with Rule 11 sanctions and for the time Plaintiffs' counsel spent on the other types of sanctions sought by Defendants.

### c. *Johnson* Factors

"After calculating the lodestar, the court may decrease or enhance the amount based on the relative weights of the twelve factors set forth in *Johnson*." *Saizan*, 448 F.3d at 800. Those factors are as follows:

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 800 n.18 (citing *Johnson*, 488 F.2d at 717–19). "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Id.* at 800.

Plaintiffs argue that there should be no adjustment based on the *Johnson* factors. (Doc. No. 748 at 16–17.) They do make arguments based on certain factors in order to justify the lodestar and prevent a decrease. The hour totals and hourly rates already discussed subsume the first, second, third, fifth, and ninth factors, so further amendment to the award on their basis is foreclosed. Plaintiffs point to the fourth, opportunity cost, to justify fees for Sellers and Webber, which is reasonable. (*Id.* at 18.) Plaintiffs make no arguments on the remaining factors. Defendants make no arguments on any of the factors.

The twelfth factor—awards in similar cases—deserves mention, though neither party raises it. Previous cases have awarded only small fractions of the amount under discussion here.

*See, e.g.*, *Williamson v. Basco*, 2008 WL 954173, at *3 (D. Haw. Apr. 3, 2008) ($776.96 awarded for 5.3 hours of work); *Browne*, 2006 WL 1506711, at *3 ($24,495 awarded for unknown hour total); *Boim v. Quranic Literacy Inst.*, 2003 WL 1956132, at *8 (N.D. Ill. Apr. 24, 2003) ($7,694.50 awarded for around 59 hours of attorney and paralegal time); *Harman*, 1997 WL 53120, at *3 ($2,483 awarded for 19.1 hours of work); *Williams*, 158 F.R.D. at 512 ($250).

This case is different, and a large award is justified, for several reasons. First, this was an unusually complex suit, owing to the number of plaintiffs, number of corporate defendants, and international sprawl of the underlying events. Second, this suit relied on novel theories and relatively untested statutes, necessitating extensive legal research and careful argument. Third, the sanctions motion to which Plaintiffs had to respond was quite lengthy and detailed. Fourth, the attorneys for Plaintiffs' case are uncommonly distinguished and skilled. Fifth, those attorneys are based in one of the country's most expensive legal markets. Each of these aspects separates this case from previous cases, and taken together, these aspects yield an unprecedented award. Consideration of the *Johnson* factors thus leads not to an increase or decrease but to an affirmation of the lodestar figure.

### d.    Other Expenses

Plaintiffs ask for $4,860.83 in expenses. (Doc. No. 748 at 19–20.) The lion's share is "online research charges," amounting to $4,151.33. (Doc. No. 748-2 at 23.) Translation services and overtime pay are the next-largest, $306.40 and $287.73, respectively. Delivery charges, overtime meals, and overtime transportation round out the total. (*Id.*)

Plaintiffs are at pains in their briefing to explain that these sorts of expenses are within Rule 11(c)(2)'s scope, carefully distinguishing various statutory provisions that use the term "cost" instead of "expenses" and exclude such items. (Doc. No. 748 at 19–20 n.1.) The text of

the rule says "reasonable expenses," and these eminently are that. Perhaps in recognition of that, Defendants make no argument on this issue. The Court therefore awards the requested expenses.

## VI.     THE INCIDENCE OF THE AWARD

Finally, the Court must determine whether to impose the requested expenses on Defendants or their counsel. Defendants changed their representation from Baker & Hostetler to Susman Godfrey after the denial of the sanctions motion. The Susman Godfrey attorneys now handling the case had nothing to do with the motion. (Doc. No. 752 at 14–15.) KBR's Vice President of Litigation, by contrast, signed the sanctions motion. (Doc. No. 480 at 1.) These facts recommend imposing the award on Defendants themselves, not their present counsel.

Imposition of the award on Defendants, rather than their counsel, would be in keeping with most prior decisions. *See Vanliner*, 2014 WL 1632181, at *2; *In re Affiliated Foods Sw., Inc.*, 472 B.R. at 557; *Williamson*, 2008 WL 954173, at *3; *Browne*, 2006 WL 1506711, at *3; *Tandem Computers*, 158 F.R.D. at 229; *Williams*, 158 F.R.D. at 512. Less often, courts impose the award on the counsel of the party moving for sanctions, seemingly if the attorneys' conduct in carrying out the motion is particularly egregious. *See, e.g.*, *Harman*, 1997 WL 53120, at *3 (awarding expenses due to opposing counsel's unduly burdensome litigation style); *Connecticut Gen. Life Ins. Co. v. Thomas*, 910 F. Supp. 297, 305 (S.D. Tex. 1995) (faulting the attorney's serious factual and legal errors, "extremely contentious" behavior, and "frankly dumbfound[ing]" litigation strategy). The midstream change of counsel makes the present case dissimilar to those. One court imposed the award "jointly and severally" on the movants and their counsel. *Boim*, 2003 WL 1956132, at *8. There is no reason to follow that approach in the present case. Consequently, Defendants, not their current counsel, shall pay the award.

## VII.   CONCLUSION

The process of examining records and calculating fees is anodyne and emotionless. The facts and events giving rise to that process in this case are very much the opposite. It has not been pleasant to recall the story at the heart of this case or to dwell on Defendants' effort to sanction Plaintiffs' counsel, which occasions this award of expenses. Another district judge, confronted with similar acrimony, gave voice to a warning that is worth repeating and heeding here: "If all courtesy, goodwill and decency should finally be bled out of the practice of law it will be a sad and bitter calling that remains; I cannot imagine a more unpleasant way to earn a living than to be a lawyer in a profession devoid of any semblance of kindness, courtesy or humanity." *Williams*, 158 F.R.D. at 512.

Plaintiffs' motion is hereby **GRANTED**. The Court awards $233,294.23 in expenses to Plaintiffs' counsel. That figure is the sum of $228,433.40, the adjusted attorney's fees, and $4,860.83, the other requested expenses. Defendants must pay this award.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 30th day of November, 2017.


_____
HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE